IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN F. PORTILLO, RAFAEL SUAREZ, MARTIN DURAN, GERMAN BENCOSME, EDIN VARGAS, LUIS A. HERNANDEZ, JOSUE PAZ, and ALVARO CASTANEDA, *individually and on behalf of all others similarly situated*, | HONORABLE JEROME B. SIMANDLE<br><br>Civil Action No. 15-7908 (JBS/KMW) |
| Plaintiffs, | **OPINION** |
| v. | |
| NATIONAL FREIGHT, INC. and NFI INTERACTIVE LOGISTICS, INC., | |
| Defendants. | |

Appearances:

Alexandra K. Piazza, Esq.
Shanon J. Carson, Esq.
Sarah Schalman-Bergen, Esq.
BERGER & MONTAGUE PC
1622 Locust Street
Philadelphia, PA 19103
     -and-
Harold Lichten, Esq.
Thomas Fowler, Esq.
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
     -and-
James W. Simpson, Jr., Esq.
LAW OFFICES OF JAMES W. SIMPSON, JR. P.C.
100 Concord Street, Suite 3B
Framingham, MA 01702
     Counsel for Plaintiffs

Robert H. Bernstein, Esq.
James N. Boudreau, Esq.
Mark D. Lurie, Esq.
GREENBERG TRAURIG LLP

500 Campus Drive, Suite 400
Florham Park, NJ 07932
    Counsel for Defendants

**SIMANDLE, Chief Judge:**

This case presents interesting issues regarding the timing of the removability of a class action upon the jurisdictional grounds of "minimal diversity" under the Class Action Fairness Act of 2005, and especially 28 U.S.C. §§ 1446(b)(1) and (b)(3) which create two periods of time for such a removal to federal court.

From approximately 2009 to 2014, Plaintiffs John F. Portillo, Rafael Suarez, Martin Duran, German Bencosme, Edin Vargas, Luis A. Hernandez, Josue Paz, and Alvaro Castaneda (hereinafter, "Plaintiffs") performed deliveries to Trader Joe's stores throughout the Commonwealth of Massachusetts on behalf of Defendants National Freight, Inc. and NFI Interactive Logistics, Inc. (hereinafter, "NFI" or "Defendants"). (See Compl. at ¶¶ 1, 6-13.)  During this period, however, Plaintiffs claim that Defendants misclassified them as independent contractors rather than employees and made unlawful deductions from their wages, in violation of Massachusetts General Law c. 149, §§ 148, 148B (hereinafter, "section 148").  (See id. at ¶¶ 1, 14, 18-48.)

As a result, Plaintiffs brought claims in the New Jersey Superior Court on behalf of themselves and other similarly situated delivery drivers.  Upon completion of the parties'

briefing on Defendants' motion to dismiss (and on the eve of the state court return date), Defendants removed this action under the expanded diversity provisions of the Class Action Fairness Act of 2005 (hereinafter, "CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005) (codified in scattered sections of Title 28 of the United States Code), and Plaintiffs' pending motion to remand followed.  [See Docket Item 4.]

In seeking to remand, Plaintiffs challenge Defendants' removal on timeliness grounds, and on the basis that their Notice of Removal fails to sufficiently demonstrate that this action meets the jurisdictional amount in controversy requirement under CAFA.  (See generally Pls.' Br. at 3-8; Pls.' Reply at 3-12.)  On the issue of timeliness, Plaintiffs claim that the allegations of their Complaint, viewed through the lens of Defendants' own records at the time of filing, provided ample information from which to divine an arguable basis for federal CAFA jurisdiction within the removal windows of 28 U.S.C. § 1446(b).  (See generally Pls.' Br. at 3-5; Pls.' Reply at 10-12.)  As a result, they submit that Defendants' tardy removal – 128 days after receipt of Plaintiffs' Complaint – plainly exceeded the 30-day requirement of 28 U.S.C. §§ 1446(b)(1) and (b)(3).  (See generally Pls.' Br. at 3-5; Pls.' Reply at 10-12.)  In addition, Plaintiffs claim that Defendants' Notice of Removal falls far short of establishing jurisdiction under CAFA, because

3

it provides little more than a "baseless, blind 'guestimate'"
that this action meets the jurisdictional amount in controversy
(of $5,000,000).[1]  (Pls.' Br. at 5-8; Pls.' Reply at 3-10.)

Defendants, by contrast, take the position that Plaintiffs'
submissions during the state court proceedings failed to
sufficiently tip them off to federal CAFA jurisdiction.  (See
Defs.' Opp'n at 3-6, 10-11.)  Rather, Defendants claim that they
only learned that this action satisfied the CAFA requirements
through their own internal investigation into Plaintiffs'
allegations, and submit that they promptly removed this action
upon receipt of these independently uncovered jurisdictional
facts.  (See id. at 7-11.)  In addition, Defendants state that
their Notice of Removal, together with their supplemental
declaration on damages,[2] easily satisfies their burden of

---

[1] On account of their position that Defendants' removal lacks a
"colorable basis," Plaintiffs seek an award of attorneys' fees
and costs pursuant to 28 U.S.C. § 1447(c).  (Pl.'s Br. at 8-9.)
Nevertheless, because the Court finds Defendants' removal
proper, Plaintiffs' request for attorneys' fees and costs must
be denied.

[2] Although Defendants maintain that they need not submit evidence
of their damage calculations, on January 4, 2016, Defendants
submitted a declaration that explains and substantiates
Defendants' position that the amount in controversy in this
action exceeds $5,000,000.  [See Docket Item 8.]  Plaintiffs
have not taken issue with Defendants' informal sur-reply, and so
the Court has considered it, as explained below.  Indeed,
Defendants' supplemental submission addresses essentially all of
Plaintiffs' objections to Defendants' showing on the amount in
controversy, and this Court's review of the amount of
controversy largely hinges upon the supplement's evidentiary
showing.

demonstrating that the amount in controversy here exceeds the $5,000,000 threshold under CAFA.  (See id. at 11-14.)

CAFA dramatically expanded the role of the federal judiciary in class action litigation, and expressed a clear preference for qualifying class actions to be entertained in federal forums.  In view of the breadth of CAFA, this case calls upon the Court to consider the time clocks for removal under 28 U.S.C. §§ 1446(b)(1) and (b)(3), as well as the showing necessary to meet the removal requirements under CAFA.

More specifically, and as applied here, the Court must examine whether the Complaint contained sufficient notice to trigger CAFA's jurisdiction, thus launching the first thirty-day period for removal under 28 U.S.C. § 1446(b)(1).  If not, the Court must determine whether Defendants' removal runs afoul of the thirty-day period for removal under 28 U.S.C. § 1446(b)(3), which is triggered by a defendant's receipt of a litigation document demonstrating sufficient jurisdictional facts to make the matter removable under CAFA.  If neither of these periods has been triggered, as Defendants suggest, the issue becomes whether the case can be removed based on Defendants' discovery of their own documents that demonstrate, for the first time, that CAFA jurisdiction is present, including minimal diversity, numerosity of over 100 class members, and at least $5,000,000 in dispute.

5

For the reasons that follow, this Court concludes that Defendants properly removed this action following their independent discovery of jurisdictional facts satisfying CAFA's requirements, and that Defendants have shown that this action meets the amount in controversy requirement.  Plaintiffs' motion to remand will, accordingly, be denied.  The Court finds as follows:

1.  **Factual and Procedural Background**.[3]  The Complaint alleges that Defendants provide transportation, logistics, and distribution services to national grocery chains, including Trader Joe's stores in Massachusetts, Rhode Island, Connecticut, New York, New Jersey, and Virginia.[4]  (See Compl. at ¶¶ 18-19.) In order to provide these delivery services, Defendants utilize "employee drivers" as well as drivers classified as "independent contractors," like Plaintiffs.  (Id.)  Despite the labeling of this arrangement, however, Plaintiffs claim that Defendants treated their "independent contractors" in many respects the same as their "employee drivers," by (1) requiring them to

---

[3] For purposes of the pending motion, the Court accepts as true the version of events set forth in Plaintiffs' Complaint.  See Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014).

[4] Plaintiffs permanently reside in either Rhode Island or Pennsylvania, while Defendants are organized and incorporated under the laws of the State of New Jersey.  (See Compl. at ¶¶ 2-13.)  In other words, although this action rests upon Massachusetts law, the parties' primary contact with Massachusetts appears to have occurred through the deliveries at issue in this litigation.

comply with all of Defendants' "written and unwritten policies," (2) imposing fixed work schedules, (3) precluding them from performing outside delivery services, and (4) subjecting them to pay deductions for delivery issues, certain costs, and/or insurance premiums.[5] (Id. at ¶¶ 22-24, 30-35.)  In other words, Plaintiffs allege that Defendants "controlled nearly every aspect" of Plaintiffs' work, as if they acted as fulltime employees. (Id. at ¶ 34.)

2.   In light of these circumstances, on June 22, 2015, Plaintiffs filed a Class Action Complaint in New Jersey Superior Court, "'on behalf of [a]ll individuals who [Defendants] classified as independent contractors while performing deliveries on behalf of Defendants to Trader Joe's stores in the Commonwealth of Massachusetts during the applicable limitations period,'" and asserting claims for violations of section 148 of Massachusetts' General Law, unjust enrichment, and quantum meruit.  (Notice of Removal at ¶ 4 (citation omitted).) Although dressed in different terms, each claim advances, in essence, Plaintiffs' position that Defendants required Plaintiffs (and their proposed class) to effectively operate as employed drivers, yet deprived them of the financial rewards,

---

[5] In removing this action, Defendants failed to attach page 9, or paragraphs 36 to 39, of Plaintiffs' Complaint, which Defendants have subsequently furnished.  [See Docket Item 10.]

benefits, and statutory protections appurtenant to that
employment status.  (See generally Compl.)

3.   Following Defendants' receipt of Plaintiffs' Complaint
on June 30, 2015, Defendants did not initially seek to remove
the matter to federal court; instead, Defendants moved to
dismiss Plaintiffs' Class Action Complaint on August 15, 2015,
arguing that the Federal Aviation Administration Authorization
Act of 1994, 49 U.S.C. § 14501(c)(1) (hereinafter, the "FAAAA"),
preempted the Massachusetts' state law wage claims at issue.
(Notice of Removal at ¶ 6; see also Ex. A to the Notice of
Removal.)  In other words, the 30-day removal period, if
triggered by the contents of the Complaint, would have elapsed
on July 30, 2015, about two weeks before Defendants moved to
dismiss in Superior Court.

4.   Seventeen days after the parties completed the
briefing on Defendants' dismissal motion (and 128 days after
Defendants received service of Plaintiffs' Complaint),[6]
Defendants filed a Notice of Removal, asserting that this
federal Court "has original jurisdiction over this action" under
CAFA.  (Notice of Removal at ¶ 10.)  In support of this
assertion, Defendants allege, in particular, (1) that they

---

[6] In other words, upon removal, Defendants presented this Court
with a fully-briefed dismissal motion, consisting of lengthy
briefs attached as exhibits to their Notice of Removal, as well
as seemingly outstanding motions for admission pro hac vice.
(See generally Ex. A to the Notice of Removal.)

"determined" that the putative class consists of at least 100
proposed class members; (2) that the citizenship of the parties,
as alleged in the Complaint, meets the minimal diversity
requirements for CAFA; (3) that "a review of [their] documents
reveals that the amount in controversy exceeds $5,000,000
million, exclusive of interest and costs;" and (4) that they
timely removed this action under 28 U.S.C. § 1446(b). (Notice
of Removal at ¶¶ 10-16, 18.) Based upon these allegations,
Defendants assert that jurisdiction rightfully belongs in
federal court. (See generally id.) The pending motion to
remand followed.[7]

5. **Removal Jurisdiction, Generally**. A defendant may
remove a case in "any civil action brought in a State court of
which the district courts of the United States have original
jurisdiction [.]" 28 U.S.C. § 1441(a). In other words, "[t]he
propriety of removal ... depends on whether the case originally
could have been filed in federal court." City of Chi. v. Int'l
Coll. of Surgeons, 522 U.S. 156, 163 (1997). Original
jurisdiction, in turn, arises in cases involving federal
questions under 28 U.S.C. § 1331 and cases involving diversity

---

[7] After screening the Complaint, the Court entered an Order on
November 10, 2015, questioning the propriety of Defendants'
removal, and setting a briefing schedule for any motion to
remand. [See Docket Item 3.]

jurisdiction under 28 U.S.C. § 1332.  See generally Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987).

6.    **Original Diversity Jurisdiction and the Class Action Fairness Act**.  As relevant here, though, diversity jurisdiction, in its pure form, grants federal district courts "original jurisdiction of all civil actions where the matter in controversy [for each plaintiff] exceeds the sum or value of $75,000" and concerns a dispute between "citizens of [completely] different States" (a requirement known as the complete-diversity rule).  28 U.S.C. § 1332(a); see also Swiger v. Allegheny Energy, Inc., 540 F.3d 179, 181-82 (3d Cir. 2008) (same).  As a result of these requirements, "many" early class actions could not be litigated in federal courts, "even if those actions implicated matters of national importance affecting millions of parties from many different states." Kaufman v. Allstate N.J. Ins. Co., 561 F.3d 144, 148 (3d Cir. 2009).

7.    In enacting CAFA in 2005, Congress dramatically altered this landscape, by authorizing "[f]ederal court consideration of interstate cases of national importance" under diversity jurisdiction, upon a lesser jurisdictional threshold than required under 28 U.S.C. § 1332(a).[8]  Standard Fire Ins. Co.

---

[8] This Court recently addressed the minimal diversity requirements under CAFA, and detailed the standard that applies to the determination of whether a removed case satisfies CAFA's jurisdictional prerequisites.  See Gallagher v. Johnson &

v. Knowles, ___ U.S. ____, 133 S. Ct. 1345, 1350 (2013); see also 28 U.S.C. §§ 1332(d), 1453; Farina v. Nokia Inc., 625 F.3d 97, 110 (3d Cir. 2010).  More specifically, CAFA vests federal district courts with "original [diversity] jurisdiction" over civil class actions, if (1) the amount in controversy exceeds $5,000,000, as aggregated across all individual claims, see 28 U.S.C. § 1332(d)(2) & (6), (2) the citizenship of at least one class member differs from that of any defendant (e.g., there exists at least minimal diversity), see 28 U.S.C. § 1332(d)(2)(A), and (3) the class consists of at least 100 or more members, see 28 U.S.C. § (d)(5)(B).[9]  See also Standard Fire

---

Johnson Consumer Cos., Inc., Civil Action No. 15-6163, 2016 WL _____ (D.N.J. March 15, 2016).

[9] In other words, the language of CAFA favors federal jurisdiction over class actions.  See Anthony v. Small Tube Mfg. Corp., 535 F. Supp. 2d 506, 512 (E.D. Pa. 2007) (citing Evans v. Walter Indus., Inc., 449 F.3d 1159, 1163 (11th Cir. 2006)).  For that reason (and unlike non-CAFA removal situations), "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court."  Dart Cherokee Basin Operating Co., LLC v. Owens, ___ U.S. ____, 135 S. Ct. 547, 554 (2014); compare The Bank of N.Y. Mellon v. ACR Energy Partners, LLC, ___ B.R. ____, No. 15-7644, 2015 WL 6773719, at *3 (D.N.J. Nov. 5, 2015) (explaining, in a non-CAFA case, that "doubt[s]" concerning removal should be "resolved in favor of remand").  Indeed, the provisions of CAFA "'should be read broadly, with a strong preference that interstate class actions [] be heard in a federal court if properly removed by any defendant.'"  Dart Cherokee Basin Operating Co., LLC, 135 S. Ct. at 554 (quoting S. Rep. No. 109-14, p. 43 (2005)).  For that reason too (and, again, unlike non-CAFA removal situations), 28 U.S.C. § 1453(c)(1) permits a party to request review of an order "granting or denying a motion to remand a class action."  Compare 28 U.S.C. § 1453(c)(1), with 28 U.S.C. § 1447(d)

Ins. Co., 133 S. Ct. at 1347; Judon v. Travelers Prop. Cas. Co.
of Am., 773 F.3d 495, 500 (3d Cir. 2014).  As the party
asserting federal jurisdiction in a removal case, Defendants
bear the burden of demonstrating the propriety of removal.  See
Frederico v. Home Depot, 507 F.3d 188, 193 (3d Cir. 2007)
(citing Samuel-Basset v. KIA Motors Am. Inc., 357 F.3d 392, 396
(3d Cir. 2004); Morgan v. Gay, 471 F.3d 469, 473 (3d Cir.
2006)).[10]

      8.    As explained above, Plaintiffs contest Defendants'
removal on timeliness grounds and on the adequacy of Defendants'
showing relative to the amount in controversy required for
CAFA.[11]  In other words, the Court must consider whether
Defendants timely removed under 28 U.S.C. §§ 1446(b)(1) and
(b)(3) and whether a basis for removal exists under 28 U.S.C. §
1332(d).  These inquiries, however, "'are not two sides of the
same coin,'" and instead present distinct questions.  Cutrone v.

---

(explaining, in a non-CAFA context, that an order remanding a
case "is not reviewable on appeal or otherwise").

[10] For that reason, 28 U.S.C. § 1447(c) states, in relevant part,
that "[i]f at any time before final judgment it appears that the
district court lacks subject matter jurisdiction, the case shall
be remanded."

[11] Although Defendants provide little detail concerning the basis
of their calculation, Plaintiffs mount no challenge to
Defendants' representation in their Notice of Removal "that the
number of potential putative class members approximates 150
individuals."  [See Docket Item 1 at ¶ 11.]  Nor do Plaintiffs
dispute Defendants' representation concerning the minimally
diverse nature of the parties, a position that Defendants
advanced, in any event, based upon the allegations of
Plaintiffs' Complaint.  [See id. (citing Compl. at ¶¶ 6-13).]

                               12

Mortg. Elec. Registration Sys., Inc., 749 F.3d 137, 146 (2d Cir. 2014) (citation omitted); see also Mumfrey v. CVS Pharmacy, Inc., 719 F.3d 392, 398 (5th Cir. 2013) (distinguishing between "amount disputes" pursuant to 28 U.S.C. § 1332(d) and "timeliness disputes" under 28 U.S.C. §§ 1446(b)(1) and (b)(3)). Indeed, an evaluation of whether this action meets the jurisdictional predicates involves consideration of materials outside the state-court pleadings (like, for example, the supplemental damages declaration submitted by Defendants), while the timeliness inquiry hinges upon an examination of the clock-trigger pleading or other litigation paper (here, Plaintiffs' Complaint and dismissal briefing). See Walker v. Trailer Transit, Inc., 727 F.3d 819, 824-25 (7th Cir. 2013). Thus, even if a defendant could venture beyond the pleadings to demonstrate removability immediately, a defendant need not do so within the time strictures of 28 U.S.C. § 1446(b), unless the plaintiff's own documents and submissions sufficiently "convey the removability of [the] case." Cutrone v. Mortg. Elec. Registration Sys., Inc., 749 F.3d 137, 146 (2d Cir. 2014) (citation omitted). With that introductory explanation, the Court turns to the parties' positions on each issue.

9.   **Timeliness**.[12]  As to the issue of timeliness, 28 U.S.C. § 1446(b) speaks of two paradigmatic scenarios.[13]  See 28 U.S.C. §§ 1446(b)(1), (b)(3).  First, in the event the initial pleading demonstrates the basis for removal, the notice of removal must be filed "within 30 days after the receipt by the defendant." See 28 U.S.C. § 1446(b)(1).  In other words, if the pleading discloses CAFA jurisdiction on its face, a defendant must petition for removal within 30 days.  See Farina, 625 F.3d at 113.  If, however, the initial pleading does not demonstrate a basis for removal, the petition must "be filed within 30 days after receipt by the defendant" of a litigation document (either an "amended pleading, motion, order or other paper") demonstrating sufficient jurisdictional facts.  28 U.S.C. § 1446(b)(3).  Stated differently, in the face of an indeterminate pleading, the 30-day removal clock does not begin to run until litigation documents, subsequent to the initial pleading, reveal facts supporting removal.  See Romulus v. CVS Pharmacy, Inc., 770 F.3d 67, 69 (1st Cir. 2014).  As a result, a defendant may be able to remove an action under CAFA well into the course of

---

[12] Few cases within the Third Circuit explain the time requirements of 28 U.S.C. § 1446 in connection with cases removed under the provisions of CAFA cases.  For that reason, the Court turns, as it must, to cases outside of the Third Circuit.
[13] Under 28 U.S.C. § 1453(b), CAFA explicitly adopts the removal procedures embodied in 28 U.S.C. § 1446, except for the 1-year limitation for removal pursuant to 28 U.S.C. § 1446(c)(1).

the litigation.  See Judon, 773 F.3d at 508 (citations omitted).
Critically, though, in either scenario, the triggering event
focuses solely upon the defendant's receipt of a litigation
document, that is, the scope of the defendant's knowledge, at
the initial pleading or otherwise, plays no role in triggering
the 30-day removal clock.  See Romulus, 770 F.3d at 74.

    10.  Here, although the parties quibble over what a
pleading must contain to trigger the 30-day removal period
(compare Defs.' Opp'n at 4-6, with Pls.' Reply at 11),[14] neither

---

[14] Defendants, on the one hand, take the position that a pleading
does not trigger the 30-day requirements of 28 U.S.C. §
1446(b)(1), unless it "affirmatively and unambiguously" reveals
the predicates for removal.  (Defs.' Opp'n at 1, 4-7.)
Plaintiffs, on the other hand, take the position that the
initial pleading need not "explicitly allege facts satisfying
the CAFA requirements in order to trigger the deadline."  (Pl.'s
Reply at 11.)  Rather, they submit that the pleading need only
provide "sufficient information regarding the monetary scope of
the litigation."  (Id. at 11 (citations omitted).)  Critically,
although the "majority" of the federal Courts of Appeals "have
concluded that the '30-day removal clock does not begin to run
until the defendant receives a pleading or other paper that
affirmatively and unambiguously reveals'" the predicates for
removal, the Court of Appeals for the Third Circuit has not yet
had occasion to resolve that question.  Judon, 773 F.3d at 509
n.13 (citing Walker, 727 F.3d at 824); Romulus, 770 F.3d at 78);
see also Moltner v. Starbucks Coffee Co., 624 F.3d 34, 38 (2d
Cir. 2010) (citations omitted) ("the removal clock does not
start to run until the plaintiff serves the defendant with a
paper that explicitly specifies the amount of monetary damages
sought"); In re Willis, 228 F.3d 896, 897 (8th Cir. 2000)
(same); Harris v. Bankers Life & Cas. Co., 425 F.3d 689, 690-91
(9th Cir. 2005) (same).  Federal district courts within this
District, however, have not required that the initial pleading,
or subsequent "other paper," provide clear and unequivocal
notice of the jurisdictional prerequisites for removal.  Rather,
these courts have evaluated whether the document demonstrated a

party genuinely advances the position that the Complaint,
standing alone and without the benefit of Defendants' records,
discloses a basis for removal under CAFA, nor that Plaintiffs'
dismissal briefing otherwise clarified the complexion of this
litigation.  Indeed, even a cursory inspection of Plaintiffs'
Class Action Complaint reveals that it fails to describe a basis
for federal jurisdiction, regardless of whether the Court
reviews the Complaint through the lens of an affirmative and
unambiguous standard (as argued by Defendants) or one that looks
for substantial specificity (as claimed by Plaintiffs).  (See
generally Compl.)  Rather, the Complaint discloses only minimal
diversity (see id. at ¶¶ 2-13),[15] but provides no clue as the

_____

basis for federal jurisdiction to a substantial degree of
specificity.  See, e.g., Vesper v. 3M Co., No. 15-1322, 2015 WL
4603629, at *3 (D.N.J. July 30, 2015); Thomasson v. Air & Liquid
Sys. Corp., No. 13-1034, 2013 WL 3071304, at *3 (D.N.J. June 17,
2013); Fenza's Auto, Inc. v. Montagnaro's, Inc., No. 10-3336,
2011 WL 1098993, at *11 (D.N.J. Mar. 21, 2011).  In other words,
although Defendants appear to advocate for the prevailing
nationwide trend, neither of the parties' positions fully
capture the universally accepted (or binding) practice.
Nevertheless, given the limited detail of Plaintiffs' pleading,
this Court need not definitively resolve the issue.
[15] Despite recognizing the limited nature of their own pleading,
Plaintiffs nevertheless argue that the "thirty-day time limit
for removal began to toll" at Defendants' receipt of the
Complaint, because they "cite to the Complaint to support
[their] unfounded contention that federal jurisdiction exists."
(Pl.'s Br. at 4-5.)  Nevertheless, Defendants only "relied" upon
the Complaint to meet the minimal diversity requirement (see
Notice of Removal at ¶¶ 13-14), and specifically pointed to
results of their own internal investigation in order to
establish the remaining requirements of CAFA.  (See id. at ¶¶
11, 16.)

numeric composition of the proposed class, nor to the aggregate damages sought by the unquantified class.[16]   The parties' subsequent dismissal briefing, in turn, details their positions on federal preemption under the FAAAA, but adds no clarity to the complexion, size, and/or monetary scope of this action. (See Ex. A to the Notice of Removal.)  Rather, it reveals little more than the parties' competing positions on whether these claims may proceed at all, regardless of whether they are styled as individual or class claims.  (See id.)  Therefore, because neither Plaintiffs' Complaint nor their subsequent dismissal submissions provided Defendants with facts demonstrating federal jurisdiction under CAFA, the Court concludes that the 30-day removal clocks of 28 U.S.C. § 1446(b)(1) and (3), supra, have not been triggered either by the Complaint or any other litigation document received by Defendants.

        11.    The inquiry thus becomes whether Defendants could remove this action based upon facts gleaned from their own internal investigation, without awaiting receipt of any amended pleading or "paper" within the meaning of 28 U.S.C. § 1446(b)(3).  Nevertheless, the Court need not engage in any

---

[16] In fact, Plaintiffs' Complaint appears to make an active effort to avoid CAFA, by estimating that "the putative class consists of about sixty drivers."  (Pl.'s Br. at 6 (citing Compl. at ¶ 39).)  Nevertheless, Plaintiffs do not, as explained above, challenge Defendants' representation that the putative class exceeds 100 members, based upon Defendants' review of their own records.

complex inquiry, because the weight of persuasive authority has rejected the view that the 30-day removal windows of 28 U.S.C. §§ 1446(b)(1) and (b)(3) provide the exclusive periods for removal, embracing instead the notion that defendants may remove once they determine, based upon a review of their own records, that the action meets the requirements of CAFA.  See, e.g., Cutrone, 749 F.3d at 146-48; Roth v. CHA Hollywood Med. Ctr., L.P., 720 F.3d 1121, 1124-26 (9th Cir. 2013).

12.  In Roth, the plaintiffs filed a state court wage and hour class action, but did not quantify the damages sought in their complaint.  749 F.3d at 1123.  Despite the limited averments in the plaintiffs' pleading, the defendants investigated the underlying facts, and determined that minimal diversity existed, that the potential class included over 100 members, and that the amount in controversy exceeded $5,000,000. See id.  Based upon this investigation, the defendants removed the case to district court under CAFA, over 4 months after receipt of the plaintiffs' complaint.  See id.  The district court then granted the plaintiffs' motion to remand, because the complaint did not provide adequate notice of CAFA jurisdiction, and because neither of the 30-day periods specified under 28 U.S.C. § 1446(b) had been triggered by documents received from the plaintiffs.  See id. at 1123-24.  On appeal, the Ninth Circuit reversed, finding that the removal statutes, "read

18

together, permit a defendant to remove outside the two thirty-
day periods on the basis of its own information, provided that
it has not run afoul of either of the thirty-day deadlines."
Id. at 1125.   Indeed, the Ninth Circuit found that it "would be
odd, even perverse, to prevent removal" simply because the
plaintiffs "fail[ed] to reveal information showing
removability."[17]   Id.

13.   Then, in Cutrone, the plaintiffs filed a state court
class action, alleging that defendants engaged in an array of
deceptive business practices in connection with their
facilitation of mortgages to consumer-borrowers.   749 F.3d at
139.   The plaintiffs' complaint, however, did not detail the
damages sought or provide other information supporting
satisfaction of CAFA's requirements.   See id. at 140.
Nevertheless, based upon an examination of their "own records,"
the defendants removed the matter to federal district court
"more than 90 days" after receipt of the plaintiffs' state court
complaint.   Id.   The federal district court then granted the

---

[17] The Ninth Circuit equally noted that a defendant should not be
able to shirk its "notice of removability," by simply ignoring
"pleadings or other documents from which removability may be
ascertained and [then] seek[ing] removal only when it becomes
strategically advantageous for it to do so."   720 F.3d at 1125.
For that reason, 28 U.S.C. 1446(b)(1) and (b)(3) impose "strict
limits" on timeliness in the face of such notice.   Id.   These
concerns are not present here, however, because Plaintiffs'
state court submissions did not sufficiently describe a case
satisfying CAFA's requirements.

plaintiffs' motion to remand, on the grounds that the complaint
provided the defendants "with 'all [they] needed to know in
order to enable [them] to make an intelligent assessment as to
CAFA removability,'" and because the defendants did not file
their notice of removal "within 30 days of receiving the
complaint." Id. at 141 (citations omitted).  On appeal, the
Court of Appeals for the Second Circuit adopted the Roth
reasoning and reversed.  Id. at 148.  More specifically, the
Second Circuit determined, as in Roth, that if the initial
pleading or other litigation document fails "to trigger the
removal periods of 28 U.S.C. §§ 1446(b)(1) and (b)(3), a
defendant may remove a case when, upon its own independent
investigation, it determines that the case" meets the
requirements of CAFA.  Id.

14.  Although the Court of Appeals for the Third Circuit
has not addressed this issue,[18] the facts and procedural
circumstances of this action closely resemble those presented in
Roth and Cutrone, and this Court finds their reasoning
convincing.  Indeed, 28 U.S.C. § 1441(a) permits removal of
cases over which federal district courts may exercise original
jurisdiction, like CAFA cases.  28 U.S.C. § 1446(b), in turn,
imposes a time limit on such removal only where the plaintiff's

---

[18] Nor has any other federal district court within the Third
Circuit, so far as research reveals.

initial pleading or subsequent document sufficiently
demonstrates removability.  In other words, these limitations
focus "solely on when the plaintiffs' papers reveal
removability," and defendants have, in their own right, no duty
to investigate or supply facts outside of those provided by the
plaintiff.  Romulus, 770 F.3d at 74-75.

15.  Beyond the statutory text, CAFA generally envisions a
broad jurisdictional grant, see, e.g., In re Processed Egg
Products Antitrust Litig., 836 F. Supp. 3d 290, 302 n.16 (E.D.
Pa. 2011) (citation omitted), and the Third Circuit has
repeatedly recognized that "a defendant may be able to remove an
action under CAFA well into the course of the litigation" upon
"discover[y]" of facts "supporting removal."  Judon, 773 F.3d at
509 (citations omitted); see also Farina, 625 F.3d at 113 n. 17
(citation omitted) (explaining the Third Circuit's view that
"CAFA operates as a[] [significant] expansion of diversity
jurisdiction").

16.  Given this statutory scheme, this Court agrees that
when confronted with an indeterminate pleading (or other
document), the removal statutes, read together, necessarily
enable a defendant to remove based upon its own information
and/or investigation.[19]  See Cutrone, 770 F.3d at 145; Roth, 720

---

[19] Plaintiffs have advanced no reason why this Court should
depart from the well-reasoned decisions of the Ninth and Second

F.3d at 1125.  Stated differently, this Court joins <u>Roth</u> and
<u>Cutrone</u> in concluding that if the removal periods of 28 U.S.C.
§§ 1446(b)(1) and (b)(3) have not been triggered (by one of the
plaintiff's litigation documents), a defendant may remove a case
when the fruits of its own independent investigation demonstrate
that the case satisfies CAFA's requirements.

    17.  For all of these reasons (and especially those
expressed in <u>Roth</u> and <u>Cutrone</u>), this Court finds Defendants'
removal timely, and turns to the adequacy of Defendants'
submissions on the amount in controversy.

    18.  **<u>Amount in Controversy</u>**.  Generally speaking, in order
to determine whether the amount in controversy exceeds the sum
or value of $5,000,000, "the claims of the individual class
members [must] be aggregated."  28 U.S.C. § 1332(d)(6).  In
other words, CAFA instructs courts "to determine whether it has

---

Circuits.  Rather, they suggest that this approach could result
in gamesmanship and intentional delay by defendants.  (<u>See</u> Pl.'s
Reply at 11-12.)  Nevertheless, in <u>Roth</u> and <u>Cutrone</u>, the Ninth
and Second Circuits rejected precisely this argument, because
plaintiffs "'are in [the prime position] to protect
themselves.'"  <u>Cutrone</u>, 749 F.3d at 147 (quoting <u>Roth</u>, 720 F.3d
at 1126)).  Indeed, "'[i]f plaintiffs think that their action
may be removable and think, further, that the defendant might
delay filing a notice of removal until a strategically
advantageous moment, they need only provide to the defendant a
document from which removability may be ascertained.'"  <u>Id.</u>
(citation omitted).  Even more, defendants have equal incentive
to ensure a putative class action proceeds in the correct forum,
and so this Court expects that most defendants would, as
occurred here, remove as soon as the jurisdictional predicates
become apparent.

jurisdiction by adding up the value of the claim of each person who falls within the definition of [the] proposed class and determine whether the resulting sum exceeds $5 million." Standard Fire Ins. Co., 133 S. Ct. at 1348.

19.   Where, as here, the plaintiff contests a removing defendant's showing on the amount in controversy, a court must apply a preponderance of the evidence standard to determine whether the amount in controversy satisfies CAFA's requirements. See Dart Cherokee Basin Operating Co., LLC, ___ U.S. ____, 135 S. Ct. at 553-54; see also Leff v. Belfor USA Grp., Inc., No. 15-2275, 2015 WL 3486883, at *2 (D.N.J. June 2, 2015) (same).  A defendant's "plausible allegations" regarding the amount in controversy will, however, ordinarily suffice.  Dart Cherokee Basin Operating Co., LLC, ___ U.S. ____, 135 S. Ct. at 554. Even against this liberal standard, though, a defendant must still do more than provide "fanciful 'pie-in-the-sky,' or simply wishful amounts."  Samuel-Bassett, 357 F.3d at 403; see also Edginton-Steward v. Wal-Mart Corp., No. 11-4686, 2011 WL 3625599, *2 (D.N.J. Aug. 17, 2011) (citations omitted) (explaining that "a removing party must provide more than mere speculation or tenuous inferences about the amount in controversy to satisfy its burden").  Rather, a defendant must justify its jurisdictional assertions with some objective, factual basis.  See, e.g., Leff, 2015 WL 3486883, at *4

(granting remand and noting that defendants' assertion that the
amount in controversy had been met based on a "general search of
its records" lacked any factual basis).

20.  Here, however, in light of Defendants submission of a
supplemental and detailed damages affidavit, this issue becomes
relatively straightforward.  [See generally Docket Item 8.]
More specifically, in the declaration of Peter H. Vink, Mr. Vink
explains that Defendants "review[ed] the records of just 34 of
the over 100 independent contractors" encompassed by the
proposed class, and determined that their claimed damages alone
"resulted in potential damages in excess of $5,000,000."[20]  (Vink
Dec. at ¶¶ 3, 5.)  Mr. Vink then provides a lengthy spreadsheet,
i.e., a factual basis, substantiating this assertion.  (See Ex.
A to Vink. Dec.)  Plaintiffs do not contest the facts and
assumptions behind Defendants' $5 million-plus amount in
controversy computation.  In that way, Defendants' objective and
factually-grounded estimates, easily meet their burden of
establishing the requisite amount in controversy by a
preponderance of the evidence.  Compare Martin v. Wal-Mart
Stores, Inc., 709 F. Supp. 2d 345, 350 (D.N.J. 2010) (granting a

---

[20] The declaration itself provides no detail on the timeline of
Defendants' investigation.  (See generally Vink Dec.)  In their
briefing, though, Defendants claim that the investigation
concluded recently, and state that they removed promptly upon
discovery of these jurisdictional facts.  (See, e.g., Defs.'
Opp'n at 10-11 & n.4.)

motion to remand for lack of evidence on the amount in controversy); <u>Russ v. Unum Life Ins. Co.</u>, 442 F. Supp. 2d 193, 199 (D.N.J. 2006) (same).  In the present case, Plaintiffs only take exception to the lack of evidentiary support for Defendants' claimed calculation.  (<u>See, e.g.</u>, Pls.' Reply at 7-10.)  Nevertheless, Defendants' supplemental affidavit addresses this concern, and satisfies Defendants' burden of proof on the issue of amount of controversy.

21.  For all of these reasons, Plaintiffs' motion to remand will be denied.  An accompanying Order will be entered.

**March 15, 2016**
Date

**s/ Jerome B. Simandle**
JEROME B. SIMANDLE
Chief U.S. District Judge

25