IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN F. PORTILLO, RAFAEL SUAREZ, MARTIN DURAN, GERMAN BENCOSME, EDIN VARGAS, LUIS A. HERNANDEZ, JOSUE PAZ, and ALAVARO CASTANEDA, individually and on behalf of all others similarly situated, | HONORABLE JEROME B. SIMANDLE |
| Plaintiffs, | Civil Action No. 15-7908 (JBS/KMW) |
| v. | **OPINION** |
| NATIONAL FREIGHT, INC. and NFI INTERACTIVE LOGISTICS, INC., | |
| Defendants. | |

APPEARANCES:

Alexandra Koropey Piazza, Esq.
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA 19103
    Attorney for Plaintiffs, Portillo et al.

Robert H. Bernstein, Esq.
Greenberg Traurig, LLP
500 Campus Drive, Suite 400
P.O. Box 677
Florham Park, NJ 07932-0677
    Attorney for Defendants

**SIMANDLE, Chief Judge:**

I.   **INTRODUCTION**

     This matter comes before the Court on Defendants' National

Freight, Inc. and NFI Interactive Logistics, LLC (hereinafter,

"Defendants") motion to dismiss Plaintiffs' Class Action

Complaint asserting claims for violation of Massachusetts

General Law c. 149, §§ 148, 148B (hereinafter, "Wage Law" or

"Section 148B") and for unjust enrichment and quantum merit

under Massachusetts law.  The putative class action, brought by

delivery drivers, alleges that Defendants misclassified them as

independent contractors instead of employees, thus entitling

them to compensation for unpaid wages, unjust enrichment and

quantum meruit.  Defendants allege that Plaintiffs have failed

to state a viable claim under the Wage Law because federal law,

specifically, the Federal Aviation Administration Authorization

Act of 1994 (hereinafter "FAAAA") preempts the Wage Law.  For

the reasons explained below, the Court will deny Defendants'

motion to dismiss.

## II.   BACKGROUND[1]

From approximately 2009 to 2014, Plaintiffs John F.

Portillo, Rafael Suarez, Martin Duran, German Bencosme, Edin

Vargas, Luis A. Hernandez, Josue Paz, and Alvaro Castaneda

(hereinafter, "Plaintiffs") performed deliveries to Trader Joe's

grocery stores throughout the Commonwealth of Massachusetts on

behalf of Defendants National Freight, Inc. and NFI Interactive

---

[1] For purposes of the pending motions, the Court accepts as true
the version of events set forth in Plaintiff's Complaint,
documents explicitly relied upon in the Complaint, and matters
of public record.  See Schmidt v. Skolas, 770 F.3d 241, 249 (3d
Cir. 2014).

Logistics, Inc. (hereinafter, "NFI" or "Defendants") (See Compl.
¶¶ 1, 6-13.) Defendants, who provide transportation, logistics
and distribution services, are incorporated in New Jersey and
their corporate headquarters are located in Cherry Hill, New
Jersey (Id. at 2-3, 18.)  From 2009-2014, Plaintiffs claim that
Defendants misclassified them as independent contractors rather
than employees and made unlawful deductions from their wages, in
violation of the Massachusetts Wage Law. (Id., ¶¶ 1, 14, 18-48.)

      According to Plaintiffs' complaint, drivers working for NFI
pick up merchandise from NFI's distribution center warehouse in
Nazareth, Pennsylvania, and deliver it to Trader Joe's stores in
Massachusetts, as well as Rhode Island, Connecticut, New York,
New Jersey, and Virginia. (Id., ¶ 19.)  Plaintiffs are
classified as independent contractors, but they allegedly must
(1) "lease" their trucks to NFI, (2) only perform delivery
services for NFI and not for any other company, (3) accept
payment from NFI for fewer miles than they actually drive each
day, (4) place money into an escrow account to cover claims for
damages made by third parties, (5) work full time, six days per
week, (6) drive NFI's assigned set route each day without
deviating from the schedule, and (7) pick up merchandise outside
their set routes without pay. In other words, Plaintiffs allege
that Defendants are generally in "complete control" of the
manner in which Plaintiffs perform their services, as if they

acted as fulltime employees. (Id., ¶¶ 19-30.)  This "control"

also includes (1) Defendants forcing Plaintiffs to comply with

their instructions dictated by written and unwritten policies,

including delivery manifests, (2) appointment of managers with

supervisory responsibility over Plaintiffs, (3) requirements to

use NFI's scanning/radio devices, and (4) requirements to obtain

insurance. (Id., ¶ 34.)

As a result, pursuant to the forum selection clause,

Plaintiffs filed suit seeking class certification in New Jersey

Superior Court on behalf of themselves and other similarly

situated delivery drivers, including all persons who have worked

for NFI as delivery drivers operating in the Commonwealth of

Massachusetts who had been classified as independent contractors

rather than employees. (Compl. ¶ 14.)  Defendants then removed

the action under the expanded diversity provisions of the Class

Action Fairness Act of 2005 (hereinafter, "CAFA"), Pub. L. No.

109-2, 119 Stat. 4 (2005) (codified in scattered sections of

Title 28 of the United States Code), and Plaintiffs' filed a

motion to remand. [See Docket Item 4.]  This Court, in Portillo

v. National Freight, Inc., No. 15-7098, 2016 WL 1029854 at *2

(D.N.J. Mar. 15, 2016), denied Plaintiffs' motion to remand

because it found that Defendants had properly removed this

action following their independent discovery of jurisdictional

facts satisfying CAFA's requirements and had shown that the

4

action met CAFA's amount in controversy requirement [See Docket Number 12.]

## III.   STANDARD OF REVIEW

Pursuant to Rule 8(a)(2), Fed. R. Civ. P., a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not required, and "the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citations omitted). While a complaint is not required to contain detailed factual allegations, the plaintiff must provide the "grounds" of his "entitle[ment] to relief", which requires more than mere labels and conclusions. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

A motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that the plaintiff failed to set forth fair notice of what the claim is and the grounds upon which it rests. Id.[2]  A complaint will survive a

---

[2] In their briefing, the parties use New Jersey Rule 4:6-2(e) as the standard for failure to state a claim. (Defs.' Br. at 4; Pl. Opp'n at 2-3.)  However, in this Court, "the standards under [Rule 4:6-2(e)] are irrelevant" and the Court "must apply federal pleading standards," namely Fed. R. Civ. P. (12)(b)(6), in analyzing the Plaintiffs' allegations. See Crozier v. Johnson

motion to dismiss if it contains sufficient factual matter to
"state a claim to relief that is plausible on its face."
Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009). Although a court
must accept as true all factual allegations in a complaint, that
tenet is "inapplicable to legal conclusions," and "[a] pleading
that offers labels and conclusions or a formulaic recitation of
the elements of a cause of action will not do." Id. at 678.

## IV.   DISCUSSION

### A. The Forum Selection Clause

The case is properly in this forum even though Plaintiffs'
claims arise under Massachusetts law.  The Independent
Contractor Operating Agreement, which each Plaintiff was
required to sign in order to work for Defendants, includes a
forum selection clause "requiring all disputes to be brought in
the state or federal courts serving Cumberland or Camden County,
New Jersey." (Compl. ¶ 1.) (hereinafter, "the forum selection
clause").  Here, neither party has disputed the enforceability
of the forum selection clause, so the Court will proceed in
applying Massachusetts law to the case.

### B. FAAAA Preemption

Defendants argue that the FAAAA preempts Plaintiffs' Wage
Law claim and common law claims.  The FAAAA's express preemption

---

& Johnson Consumer Cos., Inc., 901 F. Supp. 2d 494, 499-500
(D.N.J. 2012).

provision provides that all state laws that "relate[] to a price, route, or service of any motor carrier ... with respect to the transportation of property" are preempted. 49 U.S.C. § 14501(c)(1).  The provision was enacted to enforce deregulation of motor carriers by allowing open market competition to govern, and to avoid a patchwork of various state laws hindering efficient national motor carrier service. Rowe v. New Hampshire Motor Transport Ass'n, 552 U.S. 364, 368, 371 (2008).  FAAAA preemption is "purposefully expansive and may occur even when the state law has only an indirect effect on prices, routes, or services." Massachusetts Delivery Ass'n v. Healey, 821 F.3d 187, 191 (1st Cir. 2016)(citations omitted).  Preemption applies where state laws have a "significant impact" on carriers' prices, routes, or services, which may be proven by empirical evidence or "the logical effect that a particular scheme has on the delivery of services." Healey, 821 F.3d at 191.

**C. Count 1 – Violation of Massachusetts Wage Law**

In their Complaint, Plaintiffs argue that Defendants violated the Massachusetts Independent Contractor Statute, Mass. Gen. Laws ch. 149 § 148B, which establishes a three-prong test to determine who is an "employee" for the purposes of Massachusetts law.  The statute presumes that "an individual performing any service" is an employee and therefore is entitled to the benefits of the Massachusetts wage and overtimes law.

7

Ruggiero v. Am. United Life Ins. Co., 137 F. Supp. 3d 104, 112 (D. Mass. 2015).  Unlike many other states, Massachusetts's Wage Law is employee-friendly and provides that a person providing "any service" is presumed to be an employee unless:

> (1) the individual is free from control and direction in connection with the performance of the service, both under his contract for the performance of service and in fact; and

> (2) the service is performed outside the usual course of the business of the employer; and,

> (3) the individual is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed.

Mass. Gen. Laws ch. 149 § 148B.  The second requirement is what the First Circuit has termed "Prong 2." Massachusetts Delivery Ass'n v. Healey, 821 F.3d 187, 190 (1st Cir. 2016). "Prong 2 also stands as something of an anomaly because it makes any person who performs a service within the usual course of the enterprise's business an employee for state wage law purposes." Schwann v. FedEx Ground Package System, Inc., 813 F.3d 429, 437 (1st Cir. 2016). This Prong reflects the Massachusetts' unique presumption of employment. See Amero v. Townsend Oil Co., No 071080C, 2008 WL 5609064, at *3 (Mass. Super. Ct. Dec. 3, 2008)

8

(noting that the presumption of employment prevents

"unscrupulous employers from obtaining comparative advantage by

classifying their workers as independent contractors and thereby

avoiding the requirements of wage, overtime, and other laws").

        Defendants argue that courts have consistently held that

the FAAAA preempts "this precise [Wage Law] statute with regard

to motor transportation employees" because re-classification of

independent contractors could "potentially affect a carrier's

business" since requiring carriers "to cover health insurance,

unemployment insurance, liability insurance, fuel and other

costs . . . would . . . affect the carrier's cost structure, and

the carrier would therefore have to charge more to recoup its

costs." (Def. Br. at 1, 12.)  While Defendant supports its FAAAA

preemption argument with several precedents that were extant at

the time of briefing,[3] recent First Circuit case law in Schwann

clarified that only Prong 2 the Wage Law is preempted; as a

result, Plaintiff's Wage Law claim can survive Defendant's

motion to dismiss.  The Court will therefore grant Defendants'

---

[3] Defendants originally cited Schwann v. FedEx Ground Package
System, Inc., No. 11-11094, 2015 WL 501512 (D. Mass Feb. 5,
2015) and Remington v. J.B. Hunt Transport, Inc., No. 15-10010,
2015 WL 501884 (D. Mass Feb. 5, 2015) for the proposition that
the FAAAA preempts not only Prong 2 of Section 148B, "but the
statute in its entirety." (Reply Br. at 4.)  However, as
explained infra, the First Circuit has recently reversed both of
these decisions and remanded both cases for further proceedings
concerning the plaintiff's claims under Prongs 1 and 3.

motion only with respect to Prong 2 of the Wage Law, but will deny Defendants' motion with respect to Prong 1 and Prong 3.

First, in Schwann, the First Circuit reviewed a suit by delivery drivers who claimed that, under the same Massachusetts statute at issue here, FedEx should have treated them as employees rather than as independent contractors. 813 F.3d at 432. The First Circuit affirmed the district court's holding that the FAAAA preempted the application of the Prong 2 requirement as applied to FedEx. Id. The court reasoned that requiring a court to define the degree of integration that a company may employ by mandating that any services deemed "usual" to its course of business be performed by an employee poses a "serious potential impediment to the achievement of the FAAAA's objectives because a court, rather than the market participant, would ultimately determine what services that company provides and how it chooses to provide them." Id. at 438. As a result, the application of Prong 2 would have a significant impact, as a matter of logical effect, on FedEx's services and routes. Healey, 821 F.3d at 191. In a companion case to Schwann, Remington v. J.B. Hunt Transport, Inc., No. 15-1252 (1st Cir. Feb. 22, 2016), the court also held that Prong 2 was preempted by the FAAAA for similar reasons.

Finally, in Healey, the First Circuit held that the FAAAA preempted application of Prong 2 to a group of same-day delivery

service companies. Healey, 821 F.3d at 187.  The association

argued that the requirement of Prong 2 – the "usual course of

business" prong – makes it impossible for any delivery company

to treat its delivery delivers as independent contractors.  It

argued the prong of the test should be preempted because, by

requiring carriers to treat their couriers as employees, the law

related to the carrier's prices, routes, or services.  The

Court, following Schwann, agreed with the group of companies,

and found that Prong 2 was preempted by the FAAAA. Id. at 193.

Importantly, while the First Circuit has consistently held

that Prong 2 is preempted by the FAAAA,[4] it also reversed lower

court rulings in both Schwann and Remington that Prongs 1 and 3

are not severable from Prong 2. See Schwann, 813 F.3d at 440;

Remington, slip op. at 2.  Prong 1 relates to freedom of control

of the employer, and Prong 3 concerns whether the individual is

customarily engaged in an independent trade, occupation,

profession, or business of the same nature as that involved in

the service provided.  Notably, in Schwann, regarding preemption

on Prongs 1 and 3, the Court remanded the matter to the District

Court for a determination of whether Plaintiffs could show that

---

[4] Defendants point out that the First Circuit had previously held
that Prong 2 is preempted by the FAAAA, by citing to
Massachusetts Delivery Ass'n v. Coakley, 769 F.3d 11 (1st Cir.
2014). (Reply Br. at 3-4.)  The recent First Circuit cases did
not change this holding.

they were misclassified under those two prongs. The Court did
not, however, express any opinion as to whether Prongs 1 or 3
would be found preempted if a future defendant were to raise
that argument. Id.  Similarly, in Remington, the court reversed
the lower court holding that Prong 2 is not severable and that
Prongs 1 and 3 are preempted.  Remington, No. 15-1252 at 2.  As
a result, the issue of Prong 1 and Prong 3 preemption is now an
open question, as opposed to "already settled law," as
Defendants describe it. (Defs.' Br. at 2.)

     While the law in this area is certainly still evolving, it
is clear that the First Circuit has not explicitly held that the
FAAAA preempts Prongs 1 and 3 of the Section 148B. Defendants
still must address: (1) plaintiffs' freedom from control and
direction in connection with the performance of their services,
both under their contract for the performance of service and in
fact; and (2) plaintiffs' customarily engaging in an
independently established trade, occupation, profession or
business of the same nature as that involved in the service
performed. See Schwann, 813 F.3d at 441 ("In short, Prong 2 may
easily be eliminated from the statute, leaving the remainder
intact.").

     Plaintiffs have stated a plausible claim for relief under
Prong 1; namely, through the list of ways that NFI controlled
Plaintiffs, ranging from the order and manner in which

12

deliveries are to be made, to supervisory responsibility, to the requirement of obtaining insurance. (Compl. ¶ 34.)  Plaintiffs have also sufficiently pled a claim under Prong 3 because the workers "were not permitted to perform delivery services for any other company during their time working for NFI," "entirely dependent upon NFI for their work," and "were not allowed to offer their services to any other company."(Id. at ¶ 22, 36.)[5] While Defendant argues that the FAAAA entirely preempts the Wage Law, this recent case law has clarified that only Prong 2 is preempted.

For the following reasons, this Court finds that Plaintiff's Wage Law claims arising under Prongs 1 and 3 are not preempted by the FAAAA, as their resolution does not have a significant impact on prices, routes, or services to customers as Prong 2 would.

First, while empirical evidence is not mandatory to conclude that the prongs are preempted, Defendants have failed to articulate how the leftover prongs would impact their prices, routes or services beyond asserting conclusory statements.  They claim that the change would "affect [NFI's] cost structure,"

---

[5] Regarding Prong 3, the Massachusetts Supreme Court has stated that "we determine whether the worker is wearing the hat of the employee of the employing company, or is wearing the hat of his own independent enterprise." Coverall v. Div. of Unemployment Assistance, 447 Mass. 852, 857–58 (2006). Taking Plaintiffs' Complaint as true, their allegations meet this test.

thereby forcing them to "charge more to recoup [their] costs."

(Defs.' Br. at 12, Reply Br. at 6-7), while it would also

"trigger[] application of numerous Massachusetts [tax, labor and

health] statutes." (Reply Br. at 10.)  But the First Circuit has

stated that it does not endorse the view that state regulation

is preempted "wherever it imposes costs on [carriers] and

therefore affects [prices] because costs 'most be made up

elsewhere, i.e., other prices raised or charges imposed.'"

DiFiore v. Am. Airlines, Inc., 646 F.3d 81, 89 (1st Cir. 2011).

This "would effectively exempt [carriers] from state taxes,

state lawsuits of many kinds, and perhaps most other state

regulation of any consequence." Id.  Since it is unclear from

Defendants' briefing how exactly Prongs 1 and 3 would

significantly impact its business model, Plaintiffs' claims

regarding control and independently established business are not

preempted by the FAAAA.

Additionally, while Prong 2 is "relatively novel" and

"stands as something of an anomaly" among state wage laws

because it makes any person who performs a service within the

usual course of business an employee, the Prong 1 "right to

control" test and the Prong 3 economic realities test are very

common among other states. Schwann, 813 F.3d at 438; see also

Sanchez v. Lasership, Inc., 937 F. Supp. 2d 730, 741 (E.D. Va.

2013) (noting that Prong 2 "is unlike any other statute in the

14

country).  Importantly, the <u>Schwann</u> court added that the types

of state laws "that are more or less nationally uniform, and

therefore pose no patchwork problem, or that have less of a

reference to and effect on a carrier's service and routes pose

closer questions" than Prong 2 does. <u>Id.</u> at 440.  With the First

Circuit conclusively holding that Prong 2 is preempted and that

Prongs 1 and 3 are severable, the remaining prongs are "simply a

type of pre-existing and customary manifestation of the state's

police power that we might assume Congress intended to leave

untouched." (<u>Id.</u> at 438.).[6]  Moreover, in drafting the FAAAA,

Congress aimed at preempting "a State's direct substitution of

its own government commands for competitive market forces in

determining (to a significant degree) the services that motor

carriers will provide." <u>Dan's City Used Cars, Inc. v. Pelkey</u>,

133 S. Ct. 1769, 1780 (2013) (quoting <u>Rowe v. New Hampshire</u>

<u>Motor Transp. Ass'n</u>, 552 U.S. 364, 372 (2008)).  As a result, it

---

[6] Plaintiffs cite several states that employ either the right to control test or the economic realities test. (Pl. Opp'n at 25.) Courts have utilized these two tests for decades. <u>See, e.g.</u>, <u>Logue v. United States</u>, 412 U.S. 521, 527 (1973)(stating power to control determines employer's liability); <u>Bartels v. Birmingham</u>, 332 U.S. 126 (1947) (explaining that one must examine where individuals "are dependent upon the business to which they render service" as a matter of economic reality); <u>see also</u> Restatement (Second) of Agency § 2(3) (1958) (defining an independent contractor as a "person who contracts with another to do something for him but who is <u>not controlled</u> by the other nor <u>subject to the other's right to control</u> with respect to his physical conduct in the performance of the undertaking") (emphasis added).

15

is unlikely that Congress intended to eliminate frequently-used state law tests such as Prong 1 and Prong 3 for determining who is an employee.

Finally, Defendants argue that a recent Massachusetts lower court case, Chambers v. RDI Logistics, Inc., 33 Mass L. Rptr. 190, 2015 WL 9911425 (Sup. Ct. Oct. 26, 2015), supports their position that the FAAAA preempts Prongs 1 and 3. (Defs.' Opp'n to Pl's Supp. Br. at 5.)  There, the court granted summary judgment to the defendant because of the "inevitable significant [financial] consequences" that the company would suffer if it would be forced to reclassify its delivery drivers from independent contractors to employees. Chambers, 2015 WL at *13. As a result, the court found that the FAAAA preempted all of Section 148B. Id.  However, as Plaintiffs point out, in a more recent case from the same level of Massachusetts state court, the court found that Prongs 1 and 3 were not preempted by the FAAAA. (Pls.' Second Notice of Supp. Auth. at 1).  In Khan v. East Coast Critical, LLC, No. MICV 2015-2762-D (Mass Super. Ct. May 4, 2016), an action brought by a delivery deliver for a courier company, the court concluded that "[a]t least on the allegations of the complaint, there is no logical basis for finding FAAAA preemption of Prongs 1 and 3," because both prongs "on their face adopt wide-spread and apparently nationally uniform tests for determining the employer/employee

16

relationship." (Id., Ex. 1)  The court concluded that the

complaint "alleges sufficient facts to show an employee/employer

relationship under Prongs 1 and 3." (Id.)

   Plaintiffs' Wage Law claim therefore survives Defendant's

motion to dismiss with respect to Prongs 1 and 3.

### D. Counts 2 and 3 – Unjust Enrichment and Quantum Meruit

   Unjust enrichment is the "retention of money or property of

another against the fundamental principles of justice or equity

and good conscience." Santagate v. Tower, 64 Mass. App. Ct. 324,

329 (2005).  To state a claim for unjust enrichment, a plaintiff

must allege facts indicating (1) a benefit conferred upon the

defendant by the plaintiff; (2) an appreciation or knowledge by

the defendant of the benefit, and (3) acceptance or retention by

the defendant of the benefit under the circumstances would be

inequitable without payment for its value. Mass. Eye & Ear

Infirmary v. QLT Phototherapeutics, Inc., 552 F. 3d 47, 57 (1st

Cir. 2009).  Quantum meruit is a measure of damages that may be

properly awarded where, for example, a plaintiff has "in good

faith substantially perform[ed] a contract," but cannot recover

on a contractual claim. See J.A. Sullivan Corp. v. Com., 397

Mass. 789, 796 (1986); see also Newfield House, Inc. v. Mass.

Dept. of Pub. Welfare, 651 F.2d 32, 38 (1st Cir. 1981) (awarding

quantum meruit recovery).

Plaintiffs bring an unjust enrichment claim against Defendants for Defendants' deductions for the cost of workers' compensation insurance, liability insurance, and fuel, as well as a quantum meruit claim, because Defendants have been deprived by NFI of the fair value of their services. (See Compl. Counts and 2 and 3).  Both of these allegations state plausible claims of recovery under Massachusetts law.  However, Defendants argue that both common law claims are preempted by the FAAAA. (Defs.' Br. at 10.)  Because these two common law claims are derivative of Plaintiff's Section 148B Wage Law claim,[7] Defendants' motion to dismiss with respect to Counts 2 and 3 is also denied. See Martins v. 3PD, Inc., No. 11-11313, 2013 WL 1320454 at *11 (D. Mass. Mar. 28, 2013) (explaining that Plaintiff's unjust enrichment claim was derivative of its Section 148B Wage Law claim and merely clarified Defendant's obligations as an

_____

[7] In Counts II and III, Plaintiffs state an alternative equitable theory of recovery available "where the remedy at law is not clear or as adequate and complete as that which equity can afford." Massachusetts v. Mylan Labs., 327 F. Supp. 2d 314, 324 (D. Mass. 2005) (quoting G.E. Co. v. Callahan, 294 F.2d 60, 64 (1st Cir. 1961).  As a result, at this stage in the litigation, the existence of statutory and quasi-contractual claims "does not necessitate the dismissal" of Plaintiff's equitable unjust enrichment and quantum meruit claims. Dorney v. Pindrop Security, Inc., No., 2015 WL 5680333 at *6 (D. Mass Sept. 25, 2015); see also Mylan Labs., 357 F. Supp. 2d at 324 ("The Court need not resolve these issues at this stage of the proceeding, since [Plaintiff] may have to elect only one theory of recovery eventually, and will not force Plaintiff to choose its remedy at this stage of the litigation.").

employer).  Moreover, the Massachusetts Supreme Judicial Court has held that the Massachusetts Wage Act contains no express language preempting common law claims nor does it is structure and provisions displace common law remedies. See Lipsitt v. Plaud, 466 Mass. 240, 245 (2013) (holding that plaintiffs' quantum meruit claim was not preempted by the Wage Act); see also Cormier v. Landry's, Inc., No. 13-11822, 2013 WL 61960000 at *5 (D. Mass Nov. 22, 2013) (holding that plaintiffs' unjust enrichment claims were not preempted by the Wage Act).


**V.   CONCLUSION**

An accompanying Order will be entered.




**September 26, 2016**                    **s/ Jerome B. Simandle**
Date                                JEROME B. SIMANDLE
                                    Chief U.S. District Judge