IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN F. PORTILLO, et al., individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> NATIONAL FREIGHT, INC., et al., <br><br> Defendants. | HONORABLE JEROME B. SIMANDLE <br><br> Civil Action No. 15-7908(JBS/KMW) <br><br> **OPINION** |

APPEARANCES:

Alexandra Koropey Piazza, Esq.
Camille Fundora, Esq.
BERGER & MONTAGUE, P.C.
1622 Locust St.
Philadelphia, PA 19103
      Attorneys for Plaintiffs

Robert H. Bernstein, Esq.
GREENBERG TRAURIG LLP
500 Campus Drive, Suite 400
P.O. Box 677
Florham Park, NJ 07932
--and—
Christiana Lynn Signs, Esq.
GREENBERG TRAURIG LLP
Two Commerce Sq.
2001 Market St.
Philadelphia, PA 19107
      Attorneys for Defendants


**SIMANDLE, District Judge:**

## I.    INTRODUCTION

Plaintiffs John F. Portillo, Rafael Suarez, Martin Duran, German Bencosme, Edin Vargas, Luis A. Hernandez, Josue Paz, and Alvaro Castaneda ("Plaintiffs") bring this putative class action case against two New Jersey corporations, Defendants National Freight, Inc., and NFI Interactive Logistics, Inc. ("NFI" or "Defendants"). Plaintiffs are truckers from Pennsylvania and Rhode Island who claim that they performed deliveries to Trader Joe's stores throughout many East Coast states on behalf of Defendants, but Defendants erroneously classified them as independent contractors rather than employees, thereby taking unlawful deductions from their wages. [See Compl. at ¶¶ 1, 6-14, 18-48.] Plaintiffs claim Defendants are liable for violations of the Massachusetts Wage Act (Count I, ¶¶ 51-62), unjust enrichment (Count II, id. ¶¶ 63-72), and in quantum meruit (Count III, id. ¶¶ 73-77), but they seek to amend their pleadings to assert that New Jersey law should govern this dispute.

Pending before the Court is Plaintiffs' Motion for Declaratory Relief that New Jersey law applies to Plaintiffs' claims [Docket Item 78]. Defendants filed a Response in Opposition [Docket Item 79], and Plaintiffs filed a Reply [Docket Item 82]. Plaintiffs subsequently filed two submissions directing the Court's attention to supplemental authority

[Docket Items 86 and 92]. Oral argument on this issue was held on October 25, 2017 [Docket Item 88]. For the reasons discussed below, the Court finds, pursuant to a choice-of-law analysis, that New Jersey law should be applied to all of Plaintiffs' claims, as New Jersey has the most significant relationship with the claims, parties, and relationships at issue here.

Defendant's Motion for Summary Judgment [Docket Item 66] and Plaintiff's Motion for Leave to File an Amended Complaint [Docket Item 68], also pending before the Court, are dismissed without prejudice; the parties have leave to re-file these motions (or modified versions thereof applying New Jersey law, at their respective elections) pursuant to the schedule previously set in this matter.

## II.   BACKGROUND[1]

### A. Factual Background

Defendants provide transportation, logistics, and distribution services for companies, including Trader Joe's (a grocery store chain). [Docket Item 79 at 9.] Both are incorporated in New Jersey and have their principal places of business in New Jersey. Id.

---

[1] For purposes of adjudicating Plaintiffs' motion to apply New Jersey law, the Court looks to the exhibits to the pending motions filed by the parties, and notes disputes as they arise.

Each Plaintiff drove for Defendants under a written contractual agreement, providing delivery services to Trader Joe's stores. Id. Defendants claim that each Plaintiff served as an independent contractor. Id. at 9-22. Plaintiffs claim that each Plaintiff was required to sign a contract with NFI, called an "Independent Contractor Operating Agreement," [Docket Item 78-1 at 7] which states as follows:

> 23. GOVERNING LAW AND FORUM. This Agreement shall be interpreted in accordance with, and governed by, the laws of the United States and, of the State of New Jersey, without regard to the choice-of-law rules of New Jersey or any other jurisdiction. THE PARTIES AGREE THAT ANY CLAIM OR DISPUTE ARISING FROM OR IN CONNECTION WITH THIS AGREEMENT SHALL BE BROUGHT EXCLUSIVELY IN THE STATE OR FEDERAL COURTS SERVING CUMBERLAND OR CAMDEN COUNTY, NEW JERSEY. CARRIER AND CONTRACTOR HEREBY CONSENT TO THE JURISDICTION AND VENUE OF SUCH COURTS.

("ICOA Provision") [Docket Item 78-2 at 8.]

Defendants state that the Plaintiffs' contracts differed slightly, as follows:

1. Plaintiff Bencosme, who owned his own company, Bencosme Enterprises, entered that company into a "Lessor and Lease Operating Agreement" with NFI, which stated in relevant part: "J. GOVERNING LAW. This Agreement shall be governed by laws of the State of New Jersey, both as to interpretation and performance." ("LLOA Provision") [Docket Item 66-24 at 6.]
2. Plaintiff Castaneda entered into the Independent Contractor Operating Agreement with the ICOA Provision. [Docket Item 66-25 at 7.]
3. Plaintiff Duran's agreements contained the ICOA Provision. [Docket Items 66-26 at 7; 66-27 at 7.]
4. Plaintiff Hernandez's agreement contained the ICOA Provision. [Docket Item 66-28 at 8.]

4

5. Plaintiff Paz separately entered into a Lessor and Lease Operating Agreement with NFI Logistics in 2009 and an Independent Contractor Operating Agreement in 2013. [Docket Item 79 at 16.] The former contained the LLOA Provision [Docket Item 66-29 at 6] and the latter contained the ICOA Provision [Docket Item 66-30 at 18.]

6. Plaintiff Portillo entered into a Lessor and Lease Operating Agreement with NFI Logistics in 2009, which contained the LLOA Provision. [Docket Item 66-31 at 6.]

7. Plaintiff Suarez entered into a Lessor and Lease Operating Agreement containing the LLOA Provision. [Docket Item 66-32 at 6.]

8. Plaintiff Vargas entered into a Lessor and Lease Operating Agreement containing the LLOA Provision. [Docket Item 66-33 at 6.]

[Docket Item 79 at 9-21.]

Plaintiffs Bencosme, Duran, Hernandez, Portillo, and Vargas are Rhode Island residents. Id. at 9-20. Plaintiffs Bencosme, Portillo, and Vargas all own their own trucking companies, each incorporated in Rhode Island (although Plaintiff Portillo's company now primarily does business in North Carolina). Id. at 9-22.

Plaintiffs Castaneda, Paz, and Suarez are Pennsylvania residents, although Plaintiff Castaneda lived in Rhode Island from 2009 to 2015. Id. at 12-20. Plaintiff Suarez owns his own trucking company, which was incorporated in Pennsylvania in 2016. Id. at 19.

Each of the named Plaintiffs delivered to Trader Joe's stores in at least nine (and as many as eleven) different states (including Connecticut, Delaware, Maine, Maryland,

5

Massachusetts, New Hampshire, New Jersey, New York,
Pennsylvania, Rhode Island, and Virginia), as well as the
District of Columbia. Id. at 11-22.

Each Plaintiff made deliveries from a Trader Joe's
warehouse located in Nazareth, Pennsylvania, to the above
locations. Plaintiff Duran also made deliveries from a Trader
Joe's warehouse located in Hatfield, Pennsylvania. Id.
Defendants had office space and employees in the Nazareth
location, and several Plaintiffs noted that they would interact
with Defendants' employees at that location to discuss problems,
receive schedules, communicate with dispatchers, or pick up
documents. Id. Several Plaintiffs also noted that, after they
made their deliveries, they would return to the warehouse in
Pennsylvania. Id. at 14-22.

Plaintiffs aver that Defendants "employ[] a large number of
workers in New Jersey, having a significant number of warehouses
and facilities there, in addition to [their] corporate
headquarters. In addition, [they] maintain[] significant
operations in Pennsylvania, many near Nazareth, and employ[] a
large number of people in Pennsylvania. Finally, according to
its website, Trader Joe's has twelve stores in New Jersey,
twenty stores in Massachusetts, and ten stores in Pennsylvania."
[Docket Item 78-1 at 14-15 (internal citations omitted).]

In response to the Court's questions at oral argument,
Defendants averred (and Plaintiffs agree, for purposes of this
motion) that Plaintiffs would return a trip sheet to a Payroll
or Logistics Coordinator employed by Defendants and located in
Nazareth, PA at the conclusion of each trip; that employee would
document the receipt of the trip sheet in Defendants'
transportation management system and generate a "batch collect"
for that driver every one or two days; that employee would then
inform the Driver Payroll Department (located in Voorhees, NJ)
that the batch collect is complete; the Driver Payroll
Department would perform spot-checks for accuracy and then
inform the Accounts Payable Department (located in Cherry Hill,
NJ), who would generate paychecks for drivers and use either
direct-deposit or postal mail to transmit the paychecks to the
drivers. [Docket Item 89 ¶¶ 1-5.] Drivers with questions about
their pay would "typically" first approach a Logistics and/or
Payroll Coordinator in the Nazareth Location and (if their
questions were not answered) then would be directed to reach out
"to the My-NFI service center, a toll-free call center staffed
in Voorhees, NJ." Id. ¶ 6.

### B. Procedural Background

Plaintiffs initially filed the complaint in New Jersey
Superior Court and pled a violation of the Massachusetts Wage

Act, G.L. c. 149, § 148, as well as Massachusetts common law claims for unjust enrichment and quantum meruit. [Docket Item 1-3 at ¶¶ 40-48.] After the Court denied Plaintiffs' motion to remand [Docket Item 12], Defendants moved to dismiss on the grounds that the Federal Aviation Administration Authorization Act of 1994 preempted the Massachusetts Wage Law [Docket Item 13]; the Court denied this motion in part and granted it in part, allowing the Massachusetts law claims to proceed in large part. [Docket Items 48 & 49.]

Subsequent litigation revealed a choice-of-law question pertaining to the substantive claims in this case, and Magistrate Judge Karen M. Williams ordered Defendants to file their motion related to the choice-of-law issue. [Docket Item 65.] Defendants then filed a Motion for Summary Judgment on Choice-of-Law Issue [Docket Item 66], and an accompanying Statement of Facts [Docket Item 67].

In response, Plaintiffs filed a motion for leave to amend the complaint [Docket Item 68] to plead "violations of the New Jersey Wage Payment Law ('NJWPL'), N.J. Stat. § 34:11-4.1 et seq., as well as unjust enrichment and quantum meruit claims under New Jersey common law, in the alternative to their claims under Massachusetts law." [Docket Items 68-1 at 5.] After those motions were filed, the Court held a telephone conference to

address the posture in which the choice-of-law question was best presented. [Docket Items 74-76.]

Ultimately, the Court ordered that Defendants' Motion for Summary Judgment and Plaintiffs' motion to amend "be held in abeyance pending determination of the choice of law issues" and ordered Plaintiffs to "file a motion for determination of choice of law as to each claim plaintiffs are choosing to assert" and convening oral argument on the subject. [Docket Item 77.]

Plaintiffs then filed the instant Motion for Declaratory Relief on the choice-of-law issue [Docket Item 78]. Oral argument on the choice-of-law issue was held on October 25, 2017 [Docket Item 88]. Plaintiffs subsequently submitted additional authority to the Court's attention [Docket Items 86; 92].

## III. ANALYSIS

The Court must assess which body of law applies to the Plaintiffs' claims in this action.

### A. Contractual Choice-of-Law Provision

Plaintiffs argue that New Jersey law applies because the choice-of-law provisions in their contracts designate New Jersey law as the relevant and applicable body of law. Because the Court does not read the provisions so broadly, the Court disagrees that their contracts compel selection of New Jersey substantive law, but acknowledges that the New Jersey choice-of-

law provision will be an important factor in applying the "most significant relationship" test as required by New Jersey's choice-of-law jurisprudence.

The Court looks to New Jersey law to determine whether the contractual choice-of-law provisions apply to Plaintiffs' non-contractual claims. The Third Circuit has stated: "We . . . turn to New Jersey choice-of-law rules to determine what state's substantive contract law governs the interpretation of the Agreements' forum selection clauses, since this diversity action originated in a New Jersey federal district court." Collins v. Mary Kay, Inc., 874 F.3d 176, 183 (3d Cir. 2017).[2] The Court believes the Third Circuit would do the same to interpret a choice-of-law provision. In Collins, the court found that New Jersey choice-of-law doctrine would mandate that the choice-of-law designated in the underlying contract--there, Texas--should provide the substantive contract law for interpreting the forum selection clause. Id. at 184. Here, the Court analogously uses New Jersey's substantive principles of contract interpretation.

_____

[2] The Court has jurisdiction over this matter pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d) et seq. CAFA jurisdiction requires only minimal diversity of citizenship. See 28 U.S.C. § 1332(d)(2)(A). Nevertheless, jurisdiction pursuant to § 1332(d) is diversity jurisdiction, and a choice-of-law analysis, applying New Jersey's choice-of-law jurisprudence, is appropriate. See Landsman & Funk PC v. Skinder-Strauss Assocs., 640 F.3d 72, 92 (3d Cir. 2011)("Since plaintiffs have met § 1332(d)'s requirements, the District Courts can exercise diversity jurisdiction over their claims.")

"Ordinarily, when parties to a contract have agreed to be governed by the laws of a particular state, New Jersey courts will uphold the contractual choice if it does not violate New Jersey's public policy." Instructional Systems, Inc. v. Computer Curriculum Corp., 130 N.J. 324, 341 (1992). New Jersey applies Section 187 of the Restatement (Second) of Conflicts of Laws,

> which provides that the law of the state chosen by the parties will apply, unless either:
>
> (a)   the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>
> (b)   application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which * * * would be the state of the applicable law in the absence of an effective choice of law by the parties.

Id. at 342 (citing Restatement (Second) of Conflicts of Laws § 187).

"Procedurally, the first step is to determine whether an actual conflict exists." P.V. ex rel. T.V. v. Camp Jaycee, 197 N.J. 132, 143 (2008). Here, Plaintiffs have conceded that such a conflict may indeed exist, as New Jersey and Massachusetts use the ABC test to determine employment status, "Pennsylvania uses a 'right to control' test which looks at a variety of factors. See Sherman v. AEX, 2012 WL 748400, at *11 (E.D.Pa. 2012)." [Docket Item 78-1 at 22.]

11

Here, the parties appear to agree that the choice-of-law provisions in both the ICOA Provision and the LLOA Provision (electing for the application of New Jersey law) are enforceable pursuant to § 187 [Docket Items 66-1 at 15-17 (Defendants arguing contractual choice-of-law provisions electing New Jersey law apply to bar quasi-contract unjust enrichment and quantum meruit claims); 82 at 13 (Plaintiffs pointing out Defendants' apparent concession on this issue)]; they disagree, however, as to the scope of those provisions and whether they reach the claims pled (or seeking to be pled) by Plaintiffs.

The Court will, thus, proceed to the second step and assess the scope of the choice-of-law provisions at issue here to determine whether they apply to Plaintiffs' claims.

Again, the relevant language of the ICOA Provision states that "This Agreement shall be interpreted in accordance with, and governed by, the laws of the United States and, of the State of New Jersey, without regard to the choice-of-law rules of New Jersey or any other jurisdiction. THE PARTIES AGREE THAT ANY CLAIM OR DISPUTE ARISING FROM OR IN CONNECTION WITH THIS AGREEMENT SHALL BE BROUGHT EXCLUSIVELY IN THE STATE OR FEDERAL COURTS SERVING CUMBERLAND OR CAMDEN COUNTY, NEW JERSEY. CARRIER AND CONTRACTOR HEREBY CONSENT TO THE JURISDICTION AND VENUE OF SUCH COURTS." The LLOA Provision states: "This Agreement shall

be governed by laws of the State of New Jersey, both as to interpretation and performance."

Plaintiffs seek to hold Defendants liable for 1) a state statutory claim for, essentially, misidentifying employees as independent contractors; 2) a state common-law claim for unjust enrichment (arising out of that misidentification); and 3) state common-law quantum meruit (arising out of the same). The primary question before the Court, then, is whether the ICOA Provision and the LLOA Provision govern those claims, necessitating the application of New Jersey law to those claims.

Plaintiffs argue that "courts around the country confirm that an enforceable contractual choice of law provision may apply not just to contract claims, but to related statutory claims arising out of the contract." [Docket Item 78-1 at 15-16.] In response, Defendants argue that this is only so when the language of the choice-of-law provision is broader than the language at issue here. [Docket Item 79 at 27-31.] The Court agrees with Defendants and finds that the ICOA Provision is drafted narrowly and, by its terms, does not apply to any and all disputes arising out of the contracts, but rather only to "interpretation" of the "Agreement." The Court reads the LLOA Provision, similarly, to require the application of New Jersey law to questions of interpretation and performance of the agreement, and not to related claims that do not arise directly

13

from the interpretation or the performance (or non-performance) of the Lessor and Lease Operating Agreement. Ultimately, the Court concludes, the statutory wage claim premised on misclassification does not arise from the interpretation of the contracts, and the contractual choice-of-law provision does not control.

"New Jersey follows several general rules in the construction of contracts. The most fair and reasonable interpretation imputing the least hardship on either of the contracting parties should be adopted so that neither will have an unfair or unreasonable advantage over the other. Tessmar v. Grosner, 23 N.J. 193, 201 (1957). But the court will not make a different or better contract than the parties themselves have seen fit to enter into, and all parts of the writing will be given effect if possible. Washington Construction Co. v. Spinella, 8 N.J. 212, 217-18 (1951). Finally, where there is ambiguity, the words are construed against the drafter. Bullowa v. Thermoid Co., 114 N.J.L. 205, 215 (1935)." In re Community Med. Ctr., 623 F.2d 864, 866 (3d Cir. 1980).

While no direct controlling precedent is on all fours with the instant set of facts, the Court will analyze several analogous cases, wherein courts have addressed the scope of contractual choice-of-law provisions.

In Banek Inc. v. Yogurt Ventures U.S.A., Inc., the Sixth
Circuit assessed the scope of a choice-of-law provision in a
franchise agreement that stated, "This Agreement was made and
entered into in the State [of] Georgia and all rights and
obligations of the parties hereto shall be governed by and
construed in accordance with the laws of the State of Georgia."
6 F.3d 357, 359 (6th Cir. 1993). The court found that the
provision was "sufficiently broad so as to cover plaintiff's
claims of fraud and misrepresentation. Had these claims only
been tangentially related to the franchise relationship, we
would be much more inclined to find the choice of law provision
not applicable. The claims of fraud and misrepresentation that
plaintiff has asserted here are directly related to the
franchise agreement." Id. at 363. The relative textual breadth
of this contractual provision (covering, as it does "all rights
and obligations of the parties") varies from the provisions at
issue here, however.

In Nat'l Seating and Mobility Inc. v. Parry, a federal
district court determined that a "choice-of-law provision should
not be construed narrowly" under California choice-of-law rules.
No. C 10-02782 JSW, 2012 WL 2911923, at *4 (N.D. Cal. July 16,
2012). There, the court cited with approval a California case
holding that a "'valid choice-of-law clause, which provides that
a specified body of law "governs" the "agreement" between the

15

parties encompasses all causes of action arising from or related to that agreement, regardless of how they are characterized, including tortious breaches of duties emanating from the agreement or the legal relationship it creates.'" Id. (quoting Nedlloyd Lines B.V. v. Superior Court, 834 P.2d 1148, 1155 (Cal. Sup. Ct. 1992)). The district court concluded that a choice-of-law provision stating, "[T]his Agreement shall be governed by, and construed in accordance with, the laws . . . of the State of Tennessee" was "broad enough to encompass the breach of contract, the tort claims, and the UCL claim." Nat'l Seating, 2012 WL 2911923 at *2, *5.[3] This contractual language more closely mirrors the language of the LLOA and ICOA provisions.

---

[3] See also Zaklit v. Global Linguist Solutions, No. 1:14-cv-314(JCC/JFA), 2014 WL 3109804, at *11 (E.D.Va. July 8, 2014)("Under these circumstances, it would be unreasonable to conclude that a rational employer like GLS would intend that the laws of multiple jurisdictions would apply to a single controversy having its origin in a single, contract-based relationship. The only reasonable inference [of the larger 'Governing Law' paragraph containing a forum-selection clause designating the same jurisdiction as the choice-of-law provision] is that the parties intended to provide for an efficient and businesslike resolution of possible future disputes by choosing a single forum and a single body of law to govern all claims, irrespective of where the events giving rise to those claims occurred. Had the parties wished to exclude causes of action arising in tort or by statute from the coverage of their agreement, they may have done so, but they should have reflected that intent in their contract. There is no evidence of such intent in this case, and thus the choice-of-law provision must be found to apply not only to Plaintiffs' contract claims, but also to any tort and statutory claims that 'arise under' the parties' contractual relationship")(internal quotations and citations omitted); Risinger v. SOC LLC, 936 F. Supp. 2d 1235,

However, further research reflects that California's choice-of-law rules may reflect an approach that reads choice-of-law provisions more broadly than other jurisdictions would in like circumstances. See Dinan v. Alpha Networks, Inc., 957 F. Supp. 2d 44, 52-55 (D. Maine 2013)("One line of authority--reflected in New York and Pennsylvania law--construes choice of law provisions narrowly and limits them to claims arising out of the contract; a second line of authority--reflected in California law--extends contractual choice of law provisions to all claims arising out [of] or related to the contract"), vacated on other grounds, 764 F.3d 64 (1st Cir. 2014); Panthera Rail Car LLC v. Kasgro Rail Corp., 985 F. Supp. 2d 677, 690-96 (W.D. Pa. 2013)(describing jurisdictions' different approaches).

In contrast, the Third Circuit has stated in a non-precedential opinion that a fairly narrow choice-of-law provision stating "this agreement will be governed by, and construed and enforced in accordance with, the laws of Pennsylvania" "is narrowly drafted to encompass only the underlying merger agreement itself, and not necessarily the

---

1249 (D. Nev. 2013)(Agreement with clause stating "This Agreement shall be governed and interpreted in accordance with the laws of the State of Nevada" "contemplates that the parties expected to be 'governed by' Nevada's law. As there is no qualifying language, or apparent exceptions, to this term, disputes arising from the agreement are to be adjudicated under the guise of Nevada law").

entire relationship" between the contracting parties. Black Box
Corp. v. Markham, 127 F. App'x 22, 25 (3d Cir. 2005)(internal
alterations omitted). While Black Box is non-precedential, it is
instructive. The court noted that "several courts have construed
similarly worded choice of law provisions in a manner that
limits their application to the underlying agreement itself, and
not to related fraud or non-contractual claims." Id. at 25-26
(citing Jiffy Lube Int'l, Inc. v. Jiffy Lube of Pennsylvania,
848 F. Supp. 569 (E.D.Pa. 1994); Coram Healthcare Corp. v.
Aetna, 94 F. Supp. 2d 589 (E.D.Pa. 1999); Benchmark Elec., Inc.
v. J.M. Huber Corp., 343 F.3d 719, 726 (5th Cir. 2003); Green
Leaf Nursery v. E.I. DuPont De Nemours, 342 F.3d 1292, 1300-01
(11th Cir. 2003); Krock v. Lipsay, 97 F.3d 640, 645 (2d Cir.
1996). See also Roberts v. C.R. England, Inc., 318 F.R.D. 457,
491-92 (D. Utah 2017)(language stating "This Agreement shall be
interpreted under the laws of the United States and the State of
Utah" does "not contain broadening language such as 'arising out
of' or 'relating to' the subject matter of the agreements"  and
is properly considered "narrow"; therefore, choice-of-law
provision "appl[ies] only to issues of contractual
interpretation" and not to statutory claim under Utah Business
Opportunity Disclosure Act).

Plaintiff urges that the ICOA and LLOA Provisions should be
held to be more similar to those provisions that are construed

18

broadly, because they both state that the agreements shall be
"governed" by New Jersey law. [Docket Items 92 at 1 n.1; 78-1 at
15-22 (citing Nat'l Seating, 2012 WL 2911923 at *3-*8; Medimatch
v. Lucent Technologies, 120 F. Supp. 2d 842, 861-62 (N.D. Cal.
2000)(assertion of California's Unfair Competition Law statutory
claim precluded by contractual provision stating that
"construction, interpretation and performance of this Agreement
shall be governed by the local laws of the State of New
Jersey")).] However, the Third Circuit in Black Box held a
provision containing precisely that language (i.e., "governed
by") to be "narrowly drafted" and not to cover the entire
relationship between the parties.[4] See also Palladin Partners v.
Gaon, No. 05-cv-3305 (WJM), 2006 WL 2460650, *16-*16 n.4 (D.N.J.
Aug. 22, 2006)(provision reading "This Agreement shall be
governed by and construed in accordance with the laws of the
State of New York applicable to contracts made in New York by
persons domiciled in New York and without regard to its

---

[4] But see Sullivan v. Sovereign Bancorp, Inc., No. Civ.A. 99-
5990, 2001 WL 34883989, *5-*6 (D.N.J. Jan. 19, 2001)(choice-of-
law provision stating "This Agreement shall be governed by and
construed in accordance with the domestic internal law
(including the law of conflicts of law) of the Commonwealth of
Pennsylvania" is "sufficiently broad to encompass contract-
related tort claims such as fraudulent inducement"), aff'd, 33
F. App'x 640, 642 (3d Cir. 2002)("the district court correctly
concluded that the breadth of the choice of law provision in the
Agreement is 'broad and all-encompassing.' Accordingly, it
encompasses all tort claims that may arise from the
Agreement")(internal citations omitted).

principles of conflict of laws" is "not so broad as to cover Plaintiffs' common-law tort claims").

This can be contrasted with the Third Circuit's holding in Crescent Intern, Inc. v. Avatar Communities, Inc., where the court found that a plaintiff's "claims of RICO violation, fraud, unfair competition and tortious interference" were within the scope of a forum selection clause because, although "only one of Crescent's claims is based on a breach of contract theory, all of them involve allegations arising out of the agreement implicating its terms." 857 F.2d 943, 944 (3d Cir. 1988).[5]

This Court concludes that New Jersey principles of statutory interpretation would counsel a narrow reading of the choice-of-law provision, in keeping with the approach sanctioned by the Third Circuit in Black Box; such an approach is warranted where the claims at issue do not, in the words of Crescent, "implicat[e the] terms" of the contract.

Other courts have directly addressed the substantive question presented here, i.e., whether a statutory claim that employees were misidentified as independent contractors under

---

[5] The Court notes that the Crescent Court also stated that "[t]he narrow interpretation suggested by Crescent would permit avoiding a forum selection clause by simply pleading non-contractual claims in cases involving the terms of a contract containing the parties' choice of forum." Id. at 945. However, here, the gravamen of Plaintiffs' claims does not center on the terms of the contract, but rather on the nature and conditions of the work Plaintiffs performed for Defendants.

state labor laws is properly considered to be subject to a
contractual choice-of-law provision, and answered that question
in the negative.[6]

The Third Circuit has not definitively addressed this
issue, but the Court finds Moon v. Breathless Inc., 868 F.3d

---

[6] See Soto v. Diakon Logistics (Delware), Inc., No. 08-cv-33-
L(AJB), 2010 WL 3420779, *5 (S.D. Cal. Aug. 30, 2010)(noting
that "choice-of-law provision applies to the claims arising
under the Service Agreement. Although the agreement may be
considered, the issue whether Plaintiffs and putative class
members are independent contractors or employees is not
determined by the Service Agreement. Accordingly, the choice-of-
law clause does not apply."); Quinonez v. Empire Today, LLC, No.
C 10-02049 WHA, 2010 WL 4569873, *3 (N.D. Cal. Nov. 4,
2010)("Neither party contests that plaintiff is classified as an
independent contractor in the contract between the parties, so
the interpretation of the contract is not at issue. Rather, the
question is whether in classifying plaintiff, and others like
him, as an independent contractor defendant has violated the
law. Thus, the proper analytical exercise in resolving this
action does not turn on the Subcontractor Installation
Agreement. The forum-selection clause does not apply to this
action")(emphasis in original)(citing Narayan v. EGL, Inc., 616
F.3d 895, 899 (9th Cir. 2010)("While the contracts will likely
be used as evidence to prove or disprove the statutory claims,
the claims do not arise out of the contract, involve the
interpretation of any contract terms, or otherwise require there
to be a contract")); Ossenbruggen v. Cowan Systems, LLC, No. 15-
10529-GAO, 2016 WL 1183447, *2-*3 (D. Mass. Mar. 28,
2016)(finding that Maryland law would likely exclude wage claims
from coverage of choice-of-law provision); Reynolds v. City
Exp., Inc., No. SUCV201002655D, 2014 WL 1758301, *5 (Sup. Ct.
Mass. Jan. 8, 2014)(misclassification claims "are beyond the
scope of the agreements" and are not covered by choice-of-law
provision); . But see Continental Airlines, Inc. v. Mundo Travel
Corp., 412 F. Supp. 2d 1059, 1065 (E.D. Cal. 2006)(citing
Nedlloyd, 3 Cal. 4th at 463-470)(finding that choice-of-law
provision containing phrase "governed by" should be construed
broadly, under California choice-of-law rules, to cover all
causes of action arising from or related to the contract).

209, (3d Cir. 2017), instructive. There, the court was required
to determine the scope of an arbitration clause and naturally
looked to the language of the clause itself for guidance. Id. at
216. The court found that the provision at issue applied only to
contract-based claims and not to related statutory claims
because the provision contained limiting language that
"point[ed] to disputes related to the agreement at issue,"
citing (and analogizing to and distinguishing) Martindale v.
Sandvik, Inc., 173 N.J. 76 (2002); Garfinkel v. Morristown
Obstetrics & Gynecology Assocs., P.A., 168 N.J. 124 (2001); and
Atalese v. U.S. Legal Svcs. Grp., L.P., 219 N.J. 430 (2014).
Moon, 868 F.3d at 217. The Third Circuit noted that determining
the scope of the arbitration clause required the court to
"decide what the arbitration provision says" but resolution of
"separate wage-and-hour claims" required the court "to determine
what the Appellant does"; for that reason, the wage-and-hour
claims could not fairly be said to arise out of the agreement.
Id. at 218. The defendant argued that the plaintiff's "claim
that she should be treated as an employee actually arises 'under
the Agreement' because it refers to [her] as an 'independent
contractor[]'"; however, the court found that "[d]espite the
contract's employment provision, Moon's claims still arise under
the FLSA and New Jersey statutes, not the agreement itself." Id.
at 218 (emphasis in original; citation omitted).

Plaintiffs claim that "the interpretation of the agreement will be intrinsic to the employment status analysis . . . since a central factor in determining employment status is the employer's right to . . . direct the work of the workers. . . . Determining whether NFI has retained the right to control Plaintiffs' work will necessarily require the analysis of the terms and effects of the Independent Contractor Operating Agreements." [Docket Item 82 at 15-16 n.7.] While the Court agrees that the terms of the Agreements will be relevant to this analysis, it is not persuaded that the terms will be intrinsic, inextricable, or otherwise indispensably intertwined with the employee/independent contractor analysis. In other words, the statutory wage claims comprising the gravamen of Plaintiffs' suit may certainly involve the relationship of the parties but require neither interpretation of, nor governance by, the ICOA or the LLOA. Accordingly, the Court cannot afford the choice-of-law provisions regarding interpretation or performance of the agreement the broad and conclusive construction urged by Plaintiffs extending to statutory wage claims not addressed in or connected to the agreement.

The Court is mindful of Plaintiffs' argument that, in these other cases, courts have found the statutory or tort claims to fall outside the coverage of contractual choice-of-law provisions where it was the defendant, as drafter of the

contract, who was seeking to enforce the choice-of-law provision against a plaintiff who sought to press alternative state law claims. [Docket Item 82 at 13-14.] Plaintiffs submit that, in this more unusual circumstance, where they are simply acquiescing to a broad construction of the choice-of-law provision that was drafted by employers and presented to them for their acceptance, that choice (and the desired breadth thereof by the Plaintiffs as the non-drafters) should simply be respected by this Court. See also Taylor v. Eastern Connection Operating, Inc., 465 Mass. 191, 195 n.8 (2013)("Here, there is no concern that the choice-of-law clause was forced upon the party now resisting it, as the defendant, the party that drafted the choice-of-law clause, is now attempting to disclaim it, rather than to enforce it. . . . Any concern over unequal bargaining power in the underlying negotiation would suggest that the clause should be enforced, rather than discarded.")(citing American Ins. Co. v. Frischkorn, 173 F. Supp. 2d 415, 519 (S.D.W.Va. 2001)("inequitable" and "unjust" for defendant to "attempt to forsake their own choice-of-law clause simply because it benefits the opposing parties to the Agreement")).

The intended breadth of the parties' contractual choice-of-law provisions presents a close question. Nevertheless, Plaintiffs' analysis does not seem to be in keeping with

24

principles of contractual interpretation under New Jersey law
this Court is obliged to apply to determine the scope of the
choice-of-law provision; nor is such an approach how other
courts have, in the main, analytically addressed this issue.
Again, the Court notes the relatively unusual posture of this
motion, where Plaintiffs, despite being non-drafters, advocate
for a broad construction of the choice-of-law provision, and it
is the Defendant-drafters who would have it applied only
narrowly. But this posture is not dispositive, and the Court is
persuaded that the Third Circuit, as well as New Jersey courts,
would deem the ICOA Provision to be narrow and not apply to
wage-and-hour claims premised on misclassification, as they do
not directly arise out of, nor are inextricably intertwined
with, see Narayan v. EGL, Inc., 616 F.3d 895, 898-99 (9th Cir.
2010), the agreement containing the choice-of-law provision.

While the LLOA Provision dictates that the Agreement shall
be governed by New Jersey law not only as to interpretation but
also as to performance, the Court also finds that it cannot
fairly be said, for the reasons discussed above, that the
statutory claims (premised on the alleged misclassification)
arise from questions of the "performance" of the Lessor and
Lease Operating Agreement. Cf. D'Avignon v. Nalco Company, No.
SACV 14-834-JLS (DFMx), 2015 WL 11438553, *7 (C.D. Cal. June 30,
2015)(choice-of-law provision that "facially applie[d] only to"

25

"the validity, interpretation, construction and <u>performance</u> of the Employment Agreement" did not cover claim that employer failed to provide the plaintiff with his full personnel file, in violation of Cal. Labor Code § 1198.5, because personnel file claim did "not relate to the validity, interpretation, construction, or <u>performance</u> of the Employment Agreement and therefore does not fall within the scope of the choice-of-law provision")(emphasis added); <u>Fairmont Supply Co. v. Hooks Indus., Inc.</u>, 177 S.W.3d 529, 534-36 (Tx. Ct. App. 2005).

Accordingly, though the question is close, the Court finds that the parties' contractual choice-of-law provision is not phrased sufficiently broadly to apply to the non-contractual claims asserted here.

**B. Statutory Wage Claims and Quasi-Contract Claims**

Given the Court's finding that the contractual choice-of-law provisions do not dispositively dictate the choice of New Jersey law pertaining to Plaintiffs' statutory wage claims, the Court will continue with the choice-of-law analysis under New Jersey law.

"New Jersey has adopted 'the most significant relationship' test set out in the Restatement (Second) of Conflict of Laws. <u>P.V. ex rel. T.V. v. Camp Jaycee</u>, 197 N.J. 132 (2008). . . . With an actual conflict [between the laws of the potentially

26

relevant states], courts must . . . determine, by reference to the Restatement, which state has the most significant relationship to the case and parties. Id. at 461." Grandalski v. Quest Diagnostics, Inc., 767 F.3d 175, 180 (3d Cir. 2014). "The Second Restatement assessment takes place on an issue-by-issue basis. It is qualitative, not quantitative." Camp Jaycee, 197 N.J. at 143. "[I]n balancing the relevant elements of the most significant relationship test" courts should "apply the law of the state that has the strongest connection to the case." Id. at 155.

Statutory wage claims have been construed as tort claims. See Melia v. Zenhire, Inc., 462 Mass. 164, 176-77 (2012)(collecting cases under New York choice-of-law rules construing statutory wage claims with regard to choice-of-law principles for torts). Under such an analogy, a court therefore looks to Sections 145 and (by reference) 6 of the Restatement. Section 145 states:

> (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
> (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>     (a) the place where the injury occurred,
>     (b) the place where the conduct causing the injury occurred,

27

(c)   the domicil, residence, nationality, place of incorporation and place of business of the parties, and

(d)   the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Section 6 states that factors "relevant to the choice of the applicable rule of law include

(a)   the needs of the interstate and international systems,

(b)   the relevant policies of the forum,

(c)   the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d)   the protection of justified expectations,

(e)   the basic policies underlying the particular field of law,

(f)   certainty, predictability and uniformity of result, and

(g)   ease in the determination and application of the law to be applied.

Here, because the injury complained of by Plaintiffs was pecuniary in nature, it is best understood as having occurred where each Plaintiff resides; this is in contrast to the place where the conduct causing the injury (i.e., the misclassification of Plaintiffs as independent contractors and the attendant withholding of money that would have been owed to them had they been correctly classified as employees) can be said to have occurred, which is likely Defendants' headquarters, as the center of their business operations, in New Jersey.

Accordingly, factors (2)(a) and (2)(b) are fairly understood as being subsumed within factor (2)(c) of § 145.

The Plaintiffs live in Rhode Island and Pennsylvania. Some of the Plaintiffs have incorporated in Rhode Island and some in Pennsylvania. Both Plaintiffs and Defendants concede that Plaintiffs carried out deliveries in, inter alia, Pennsylvania, Rhode Island, New Jersey, and Massachusetts (as well as other states, and the District of Columbia). This factor, then, is variable as to each Plaintiff, who are best conceptually located (under the circumstances) within their state of residence. Defendant, by contrast, is clearly conceptually located in New Jersey (although the Court notes that it can also fairly be said to have one of its relevant "places of business" in Pennsylvania in office space within the Trader Joe's warehouse, as well).

The Court therefore turns to Section 145(2)(d), the place where the relationship between the parties is centered. Here, the relationship between the parties includes the ICOA or LLOA agreements discussed above, each drafted in New Jersey by the New Jersey corporate defendant; to the extent the parties' legal relationship springs from those New Jersey agreements, the relationships center in New Jersey. In DaSilva v. Border Transfer of MA, Inc., the district court was obliged to resolve the question of "whether the Massachusetts Wage Act would apply to a driver who signed a contract with Border Transfer (a

29

Michigan corporation headquartered in Tennessee that operates in
Massachusetts) through a Rhode Island corporate entity to
delivery goods from a Massachusetts facility to a mix of
Massachusetts and out-of-Massachusetts customers." No. 16-11205,
2017 WL 5196382, *6 (D. Mass. Nov. 9, 2017). Citing Dow v.
Casale, 989 N.E.2d 909 (Mass. 2013) for an analogous analysis,
the court found "that because the proposed class members' [i.e.,
the truck drivers who made deliveries] relationship with Border
Transfer centered on the Westwood[, Massachusetts] facility,
where they met every morning to get instructions, Massachusetts
wage law applies even to drivers from out of state who spent
much of their time delivering out of state" and found that the
MWA would apply to all members of the proposed class. Id.

Here, the Court finds that the relationship between
Plaintiffs and Defendants is of two faces: the contractual
relationship is centered in New Jersey and the physical
interface of work performance is in Pennsylvania. While
Plaintiffs made deliveries throughout several states, interacted
with Defendants while Defendants held their primary place of
business in New Jersey, and felt the effects of their work
within their own domicils, they all reported to work for
Defendants in Pennsylvania and had their primary face-to-face
interactions with Defendants through Defendants' Pennsylvania
place of business and Pennsylvania-based employees. On the other

hand, the parties' legal, contractual relationship was centered in New Jersey, as Plaintiffs (who knowingly took on the highly mobile work of truck-driving) chose to enter into contracts with a New Jersey corporation, with its principal place of business in New Jersey, and understood the Defendants to wish to apply New Jersey law to contractual disputes--regardless of their own states of residence. In short, the centers of the parties' relationship under Section 145(2)(d) are both Pennsylvania and New Jersey, and we move to consider other factors.

As Plaintiffs' remaining claims for unjust enrichment and quantum meruit are best understood as quasi-contract claims, the Court again applies New Jersey's "most significant relationship" test and finds § 221 of the Restatement instructive. It provides:

> (1)  In actions for restitution, the rights and liabilities of the parties with respect to the particular issue are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
> (2)  Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>      (a)  the place where a relationship between the parties was centered, provided that the receipt of enrichment was substantially related to the relationship,
>      (b)  the place where the benefit or enrichment was received,
>      (c)  the place where the act conferring the benefit or enrichment was done,

(d)  the domicil, residence, nationality, place
     of incorporation and place of business of
     the parties, and

(e)  the place where a physical thing, such as
     land or a chattel, which was substantially
     related to the enrichment, was situated at
     the time of the enrichment.

These contacts are to be evaluated according to their
relative importance with respect to the particular issue.
Restatement (Second), § 221.

Many of these factors echo those analyzed above. The Court
previously found that the physical relationship between the
parties was centered in Pennsylvania and the legal relationship
in New Jersey, where Plaintiffs reported for work and interacted
with Defendants' employees; the alleged unjust enrichment
relates to the work Plaintiffs performed for Defendants. The
benefit or enrichment is best understood as having been received
in New Jersey (Defendants' primary place of business and place
of incorporation), as that is where Defendants would have
withheld and retained the portion of Plaintiffs' wages at issue.
The acts conferring the benefit were Plaintiffs' making of
deliveries, which, as discussed above, took place in multiple
states as well as Washington, D.C., none of which is the
dominant state for deliveries. Each driver, however, performs
deliveries to New Jersey stores, and such work is not merely
incidental or fortuitous. The domiciles, residences, and places
of business of the parties are all the same in this analysis as

32

they were above. No physical thing (e.g., land or chattel)
appears to be directly relevant to the unjust enrichment claim
here, and so is effectively irrelevant to the Court's analysis.
Accordingly, the only additional factor from § 221 that aids in
the Court's analysis of relevant contacts is that Defendants'
place of business ought to be weighted more heavily, as that is
where the benefit was received, which again points to New
Jersey.

     Turning then, to the larger issues implicated by § 6, the
Court notes the parties' arguments.

      In general, Defendants argue that the interests of each
Plaintiff's state of residence (as the location where that
Plaintiff paid taxes and where, if that Plaintiff had a
corporation, that Plaintiff's corporation paid taxes) are
paramount, as those states meant for their wage laws to protect
members of their respective communities and those states may
also be able to collect back-taxes if Plaintiffs are ultimately
successful. [Docket Item 79 at 35-46.] In the alternative,
Defendants note that the relationship between Plaintiffs and
Defendants was centered in Pennsylvania and argue that
application of Pennsylvania law would be appropriate. Id.

     In support of their argument that New Jersey law does not
apply, Defendants analogize to Overton v. Sanofi-Aventis U.S.,
LLC, No. 13-5535 (PGS), 2014 WL 5410653, *5-*6 (D.N.J. Oct. 23,

2014). In that case, the court ruled that the New Jersey Wage Payment Law does not apply to employees who live and work outside of New Jersey, even if the employer is based in New Jersey, based on a line of cases holding that the NJWPL did not apply to plaintiffs who did not work in New Jersey. Id. at *5. The court noted that the reasoning of those cases was "in line with the governmental interest analysis governing New Jersey's choice of law determinations[,]" citing Veazey v. Doremus, 103 N.J. 244, 247-48 (1986), as "[t]he states where these plaintiffs lived and worked would have the greatest interest in their treatment as employees.

Plaintiffs argue that the fact that Defendants are headquartered in New Jersey, although perhaps not dispositive on its own, when taken into account along with "the significant amount of work that the Plaintiffs performed in New Jersey, along with the [parties' agreement to] New Jersey choice-of-law and forum selection provisions, quite clearly pushes New Jersey law over the threshold." [Docket Item 82 at 17.] Plaintiffs argue, in the alternative, that either Pennsylvania or Massachusetts law applies if New Jersey does not" but that the Court should "reject" Defendants' "unfounded argument that Rhode Island law applies to some Plaintiffs while Pennsylvania law applies to others. Such a conclusion is illogical considering that the Plaintiffs performed the exact same work, out of the

exact same location, performing deliveries in largely the same states. There is not reason Pennsylvania law would govern some of the Plaintiffs' claims but not others." Id. at 20. Treating Plaintiffs' states of residence as effectively dispositive is not warranted, Plaintiffs contend. Id. at 19.

In support of their argument that New Jersey has the most significant relationship and that its law should apply, Plaintiffs cite Flecker v. Statue Cruises, LLC, wherein the Superior Court of New Jersey, Hudson County, found that, while "all of the Class Members spend a considerable amount of their working time in New York," "New Jersey has a significant relation to the occurrence and parties involved in this matter" because "[d]espite the fact that ten of twelve vessels are registered in New York and that defendants have a guest services and ticket office within the State of New York, the defendants' primary office is located in New Jersey; defendants withhold New Jersey payroll taxes from all employees regardless of whether the employee resides in New Jersey or New York, and each employees' work does, in part, take place in New Jersey." 444 N.J. Super. 1, 21-22 (Law Div. 2013)(citing, inter alia, "Zanfardino v. E-Sys., Inc., 652 F. Supp. 637, 639-40 (S.D.N.Y. 1987)(applying law of state where . . . employment contract was negotiated, defendant's main offices were, and termination decision was made, even though employee worked elsewhere)").

35

Finally, Section 221 of the Restatement contemplates the relevance of contract choice-of-law principles for some restitution actions: "When the enrichment was received in the course of the performance of a contract between the parties, the law selected by application of the rules of §§ 187-188 will presumably govern one party's rights in restitution against the other. The applicable law will be that chosen by the parties if they have made an effective choice under the circumstances stated in § 187." Restatement (Second) of Conflict of Laws, § 221, cmt. d.

The Court does note, however, Defendants' arguments for application of New Jersey law in their previously-filed motion for summary judgment as to the Massachusetts claims [Docket Item 66-1]: distinguishing Dow v. Casale, 989 N.E.2d 909, 914 (Mass. App. Ct. 2013), Defendants stated,

> NFI entered into contracts with Plaintiffs (or Plaintiffs' companies), but not in Massachusetts. And according to those contracts, it is New Jersey law -- not Massachusetts -- that governs. . . . In determining whether a state wage statute applies to individuals who work in more than one state, other factors become more important than the situs of the work, factors including (1) the citizenship of the defendants, (2) the defendants' principal place of business, (3) contractual choice of law provisions, (4) plaintiffs' contact information and representations regarding their places of work, (5) the state from which the paychecks in dispute are issued, and (6) the location of the defendant's employees with whom the plaintiffs communicated.

[Docket Item 66-1 at 12-13 (citing Dow, 989 N.E.2d at 914).] Those latter enumerated factors point to New Jersey. Defendants also argue that § 187 applies to Plaintiffs' quasi-contract claims, and the LLOA and ICOA provisions' choice of New Jersey law accordingly applies to those claims. [Docket Item 66-1 at 15-16.] This is so because, Defendants argue, "New Jersey has a substantial relationship to the parties and the action in that both NFI Defendants are incorporated in New Jersey and headquartered there. Moreover, the parties explicitly agreed that New Jersey law governs their relationship. Accordingly, the Court should enforce New Jersey law, as the parties' contracts dictate." Id. at 16. Again, these same factors militate toward New Jersey.

The last four factors of Restatement (Second) § 6, supra-- namely, §§ 6(d), (e), (f) and (g)--all point to selection of New Jersey law. The protection of justified expectations [§ 6(d)] requires looking no further than the ICOA and LLOA agreements wherein these parties selected New Jersey law to govern the agreements; it would be difficult for anyone to suggest that the application of New Jersey law to the present non-contractual disputes was beyond the parties' expectations. The basic policies underlying the statutory wage claim field of law [§ 6(e)] is not as strong a vector toward New Jersey, but nonetheless gives New Jersey law as strong a claim as the

Plaintiffs' domicile in determining wages and hours for work performed in a multitude of states for the New Jersey contractor/employer; New Jersey's interest in fair payment of wages by a New Jersey employer, as well as regulating all New Jersey resident employers equally in their statutory wage requirements, again suggests selection of New Jersey. Certainty, predictability, and uniformity of result [§ 6(f)] suggest that, where feasible and just, the law should direct workers and their employers to a single source whereby employees can be treated equally and participants can plan accordingly, again pointing toward selection of New Jersey law rather than multiple states' laws based upon distinctions not essential to the actual work being done. Finally, ease of determination and application [§ 6(g)] of New Jersey law is supported by the parties' identification of New Jersey in their contractual choice-of-law and forum-selection clauses; it is not a major step to enlarge the parties' choice for contractual disputes to the non-contractual wage claims presented here. It should not, in the normal course of such arrangements, require over-the-road truckers and their contractor to hire talented attorneys to figure out, over the course of months, what law governs such fundamental wage-and-hour issues.

The Court is persuaded that New Jersey has the most significant relationship to the parties, the working

relationships, and the claims at issue in this case. While the question is a close one, the Court is mindful of the following factors. First, Defendants are the more sophisticated party and the drafters of the contract; they elected to be bound (with regard to contract claims) by New Jersey law and to bind the drivers to New Jersey law with regard to such claims, and Plaintiffs also seek to apply New Jersey law. This is the unusual case where Plaintiffs seek to bind the drafters of the contract to the choice-of-law stated therein. While the Court, as discussed above, does not find that the scope of that provision encompasses the Plaintiffs' claims literally and directly, the Court does note that giving effect to the reasonable expectations of the parties to a contract is one of the important factors in a choice-of-law analysis under the Restatement. Here, it appears fair to presume that Plaintiffs and Defendants reasonably expected New Jersey law to apply to the bulk of their disputes and contracted for that outcome.

Second, the nature of Plaintiffs' work was highly mobile and not based in any other state more significantly so as to grant that state the most significant interest under the Restatement's analysis. While the Plaintiffs' states of residence have an interest in the proper payment of wages to their citizens, it appears to be without question that Plaintiffs knowingly took on a business opportunity that was

39

inherently of an interstate nature, with the Rhode Island
Plaintiffs traveling, e.g., to Pennsylvania to pick up their
shipments and deliver them all over the Eastern Seaboard. No
Plaintiff's work was primarily performed in his own state of
residence.

Third, while the center of the relationship between the
parties in physical terms appears to be in Pennsylvania at the
warehouse interface, as that is where Plaintiffs interacted with
Defendants on the most regular basis, that does not lead to the
conclusion that Pennsylvania has the most significant interest
in light of all other factors. This would seem to bind
Defendants to abiding by the wage laws of any state in which it
has, effectively, a satellite office that serves as a home-base
to drivers, when Defendants' operations are primarily in New
Jersey and Plaintiffs and Defendants reasonably sought to apply
New Jersey law to their contractual claims, as discussed above.

Finally, the Court notes that Plaintiffs did perform a
significant portion of their work in New Jersey. This is not the
case where Plaintiffs seek the protection of New Jersey state
wage and employment laws for people who avowedly never worked in
New Jersey.

While this case presents complex issues, the Court is
persuaded that New Jersey has the most significant interest in
these particular circumstances. Accordingly, the Court finds,

pursuant to a choice-of-law analysis under the Restatement and Camp Jaycee, that New Jersey law applies to Plaintiffs' claims.

## IV.   CONCLUSION

For the foregoing reasons, the Court will grant Plaintiffs' motion for a declaratory judgment that New Jersey law applies. The accompanying Order will be entered.

**June 11, 2018**
DATE

**s/ Jerome B. Simandle**
JEROME B. SIMANDLE
U.S. District Judge