IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JOHN F. PORTILLO, RAFAEL SUAREZ, MARTIN DURAN, GERMAN BENCOSME, EDIN VARGAS, LUIS A. HERNANDEZ, JOSUE PAZ, and ALVARO CASTANEDA,** individually and behalf of all others similarly situated, | : Civil Action No.: 15-cv-7908-JBS-KMW : : <u>Document Electronically Filed</u> : : Jury Trial Demanded : |
| **Plaintiffs,** | : |
| v. | : : : |
| **NATIONAL FREIGHT, INC. and NFI INTERACTIVE LOGISTICS, INC.,** | : : : |
| **Defendants.** | : |

<u>**FIRST AMENDED CLASS ACTION COMPLAINT AND JURY DEMAND**</u>

**I.      INTRODUCTION**

1.      Plaintiffs John F. Portillo, Rafael Suarez, Martin Duran, German Bencosme, Edin Vargas, Luis A. Hernandez, Josue Paz, and Alavaro Castaneda (collectively, "Plaintiffs") bring this class action on behalf of themselves and a class of persons similarly situated, who have performed delivery work for Defendants National Freight, Inc. and NFI Interactive Logistics, Inc. (collectively "NFI" or "Defendants") anywhere on the Eastern Seaboard at any time during the applicable limitations period, who made deliveries to Trader Joe's stores, and who were classified as independent contractors rather than employees, and whose Independent Contractor Operating Agreements with NFI contained New Jersey choice-of-law and forum selection clauses. Plaintiffs allege that although Defendants classified them and other similarly situated delivery drivers as independent contractors, they were in fact Defendants' employees for the purposes of the New Jersey Wage Payment Law, N.J. Stat § 34:11-4.1. *et seq.* ("NJWPL"). As a

result of Defendants' practice of improperly classifying its delivery drivers as independent contractors, the delivery drivers have been subject to improper deductions from their pay, in violation of the NJWPL, and have otherwise been unjustly forced to bear the costs of NFI's business.

2. The Independent Contractor Operating Agreement, which each Plaintiff was required to sign in order to work for Defendants, includes a forum selection clause requiring all disputes to be brought in the state or federal courts serving Cumberland or Camden County, New Jersey. Additionally, the Independent Contractor Operating Agreement includes a choice of law provision stating that New Jersey law governs.

## II.     PARTIES

3. Defendant National Freight, Inc. ("National Freight") is a corporation organized under the laws of the State of New Jersey with a principal office located in Vineland, New Jersey and offices located in other New Jersey towns such as Voorhees and Cherry Hill.

4. Defendant NFI Interactive Logistics, Inc. ("NFI Logistics") is a corporation organized under the laws of New Jersey with a principal office located in Vineland, New Jersey.

5. Upon information and belief, Defendants are the same business, operating out of the same principal place of business. Defendants are operated by the same individuals and have common ownership.

6. Defendants are joint employers, and are collectively referred to as "NFI."

7. Plaintiff Rafael Suarez is an adult resident of Pennsylvania. Mr. Suarez worked for NFI from approximately 2009 to 2014 as a delivery driver delivering goods to Trader Joe's stores on behalf of NFI.

8. Plaintiff Josue Paz is an adult resident of Pennsylvania. Mr. Paz worked for NFI

from approximately 2009 to 2014 as a delivery driver delivering goods to Trader Joe's stores on behalf of NFI.

9. Plaintiff Alvaro Castaneda is an adult resident of Pennsylvania. Mr. Castaneda worked for NFI from approximately 2011 to 2013 as a delivery driver delivering goods to Trader Joe's stores on behalf of NFI.

10. Plaintiff Edin Vargas is an adult resident of Rhode Island. Mr. Vargas worked for NFI from approximately 2009 to 2014 as a delivery driver delivering goods to Trader Joe's stores on behalf of NFI.

11. Plaintiff Martin Duran is an adult resident of Rhode Island. Mr. Duran worked for NFI from approximately 2010 to 2014 as a delivery driver delivering goods to Trader Joe's stores on behalf of NFI.

12. Plaintiff John F. Portillo is an adult resident of Rhode Island. Mr. Portillo worked for NFI from approximately 2009 to 2014 as a delivery driver delivering goods to Trader Joe's stores on behalf of NFI.

13. Plaintiff German Bencosme is an adult resident of Rhode Island. Mr. Bencosme worked for NFI from approximately 2009 to 2014 as a delivery driver delivering goods to Trader Joe's stores on behalf of NFI.

14. Plaintiff Luis Hernandez is an adult resident of Rhode Island. Mr. Hernandez worked for NFI from approximately 2009 to 2013 as a delivery driver delivering goods to Trader Joe's stores on behalf of NFI.

15. Plaintiffs bring this action on their own behalf as well as on behalf of a class of similarly-situated individuals including all other persons who have worked for NFI as delivery drivers operating on the Eastern Seaboard at any time during the applicable limitations period

who performed deliveries to Trader Joe's stores, and who have been classified as independent contractors rather than employees.

### III.     JURISDICTION AND VENUE

16.     This Court has jurisdiction over the subject matter of this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1453 ("CAFA"). The putative class consists of at least 100 proposed class members. The citizenship of at least one member of the proposed Class is diverse from that of at least one Defendant, as each of the Plaintiffs are residents of different states than that of NFI. Upon information and belief, the amount in controversy in this action exceeds $5,000,000.

17.     This Court has personal jurisdiction over the parties to this action pursuant to the forum selection provision of the Independent Contractor Operator Agreement between Plaintiffs and NFI.

18.     Venue in this Court is appropriate pursuant to the forum selection provision of the Independent Contractor Operator Agreement between Plaintiffs and NFI.

### IV.     STATEMENT OF FACTS

19.     NFI is a leading provider of transportation, logistics and distribution services, providing its services to companies such as Trader Joe's Markets, a national grocery chain. NFI delivers goods from Trader Joe's warehouses to various Trader Joe's stores throughout the East Coast. In order to perform those services, NFI utilizes both employee drivers as well as drivers whom it purports to classify as independent contractors, such as Plaintiffs and Class Members. The employee drivers performed the same job duties as Plaintiffs and Class Members. The Independent Contractor Operating Agreement between Plaintiffs and NFI contains a choice of law provision stating "This Agreement shall be interpreted in accordance with, and governed by,

the laws of the United States and, of the laws of the United States and, of the State of New Jersey, without regard to the choice-of-law rules of New Jersey or any other jurisdiction."

20. Trader Joe's has two distribution center warehouses, one in Nazareth, Pennsylvania, and one in Hatfield, Pennsylvania, from which drivers working for NFI pick up and deliver merchandise to Trader Joe's stores in New Jersey, Massachusetts, Maine, New Hampshire, Rhode Island, Connecticut, Delaware, New York, Pennsylvania, Maryland, Virginia, Washington D.C., and North Carolina. NFI had office space and employees in the warehouses directing the drivers' work.

21. Plaintiffs and Class Members are required to have their own trucks to perform delivery services. NFI requires that all trucks bear the NFI logo and operate under its Department of Transportation Number.

22. The trailers which the drivers pick up at the NFI Nazareth and Hatfield distribution centers are also embossed with NFI logos.

23. Plaintiffs and Class Members were entirely dependent upon NFI for their business, as they were not permitted to perform delivery services for any other company during their time working for NFI.

24. Plaintiffs and Class Members generally worked full time, six days per week and would report to the Nazareth and/or Hatfield distribution centers each day to pick up the trailers full of merchandise. Upon information and belief, employees of NFI would load the trailers. Also present at the NFI distribution center were employee drivers of NFI who would also pick up trailers for delivery to local Trader Joe's stores.

25. Plaintiffs and Class Members were assigned a set route each day and given a schedule which indicated the "pull time," which was the time that they were supposed to depart

from the NFI distribution center in Nazareth, PA or Hatfield, PA, in order to make deliveries. Plaintiffs and Class Members were required to arrive at the NFI distribution center thirty minutes prior to their listed pull time. The schedule provided to Plaintiffs and Class Members also listed a delivery time for each stop. Plaintiffs and Class Members were not allowed to deviate from the schedule. Plaintiffs and Class Members' movements were monitored by NFI dispatch via a GPS system called Qualcomm.

26. Plaintiffs and Class Members were paid per mile and received additional compensation for fuel surcharges dependent upon the price of fuel. Plaintiffs and Class Members could not negotiate the price paid per mile or the price paid for fuel surcharges. Often times, NFI would delay increases in the fuel surcharge amounts for several weeks when the cost of fuel increased. When the cost of fuel decreased, the fuel surcharge amounts would be immediately calculated.

27. Despite executing a contract with Plaintiffs and Class Members, promising to pay drivers for all miles operated by the drivers, NFI would frequently pay Plaintiffs and Class Members for fewer miles than they had actually driven each day. More often than not, NFI would not pay drivers for *actual* miles they drove but, a pre-determined figure, determined by NFI.

28. Plaintiffs and Class Members were also responsible for returning merchandise to NFI's Nazareth and Hatfield distribution centers from Trader Joe's stores. Often times, Plaintiffs and Class Members were not paid for such work. In addition, NFI dispatchers would direct Plaintiffs and Class Members to pick up merchandise outside their set routes and would not pay them accordingly. Plaintiffs and Class Members were also required to attend safety meetings and other company meetings that did not always result in additional pay for the drivers.

6

29. Plaintiffs and Class Members were required to pay for their own workers' compensation insurance, liability insurance and other job related insurance. These amounts were deducted from Plaintiffs and Class Members' weekly settlement statements by NFI. In addition, NFI required all drivers, including Plaintiffs and Class Members, to place monies into an escrow account purportedly to cover damage claims made by third parties. NFI agreed to return these amounts to Plaintiffs and Class Members 30 days after they ceased driving for NFI.

30. Plaintiffs and Class Members were also required to use the Qualcomm GPS system that NFI used to track deliveries. Plaintiffs and Class Members were required to purchase this system and have weekly amounts deducted from their settlement statements to pay for same.

31. While NFI classified Plaintiffs and Class Members as "independent contractors," the nature of the services that Plaintiffs and Class Members performed, and the manner in which they performed these services, made it clear that they were actually employees. NFI was in complete control of the manner in which Plaintiffs and Class Members and others performed their services.

32. Plaintiffs and Class Members performed services, pickup and delivery of products and material, which was/is within the usual course of business of NFI.

33. For example, Plaintiffs were required to report to NFI's Nazareth and/or Hatfield distribution centers each day to perform deliveries for NFI.

34. Plaintiffs and Class Members were entirely dependent upon NFI for their work, as they were only allowed to perform courier/delivery services for NFI.

35. Although NFI claims that Plaintiffs and Class Members were hired as independent contractors, NFI controlled nearly every aspect of Plaintiffs and Class Members'

7

work. Such control includes, but is not limited to, the following:

    a.    NFI required Plaintiffs and Class Members to comply with the instructions dictated by written and unwritten policies, procedures and directives regarding Plaintiffs and Class Members' duties.

    b.    NFI issued delivery manifests which instruct Plaintiffs and Class Members regarding the order and manner in which deliveries are to be made. For example, Plaintiffs are required to arrive at the NFI distribution centers in Nazareth or Hatfield, Pennsylvania thirty minutes before they are scheduled to depart on their route each day. Plaintiffs and Class Members cannot deviate from the order of delivery nor do they have any say in the amount of deliveries they are to make each day.

    c.    NFI employs managers who have supervisory responsibility over Plaintiffs and Class Members and who could and did assign and direct their work. Plaintiffs and Class Members received calls on a daily basis from terminal dispatch directing their work. NFI monitored Plaintiffs' and Class Members' work via a GPS tracking system.

    d.    Plaintiffs and Class Members were required to perform delivery services during fixed hours each day that they worked.

    e.    NFI required Plaintiffs and Class Members to use NFI's scanning/radio devices so that deliveries could be tracked and downloaded to NFI's computer systems.

    f.    NFI required Plaintiffs and Class Members to obtain insurance in certain amounts such as non-trucking liability insurance, occupational accident insurance, physical damage insurance on tractor, and passenger insurance.

    g.    Plaintiffs and Class Members had no control over the amount(s) charged for their delivery services. They did not negotiate with retail customers regarding the rates

charged for their services.

36. NFI, at their sole discretion, could also make deductions from Plaintiffs and Class Members' statements for damage claims.

37. Plaintiffs and Class Members are not customarily engaged in an independently established trade, occupation, profession, or business. Plaintiffs and Class Members were entirely dependent upon NFI for their work and were not allowed to offer their services to any other company.

## VI. CLASS ALLEGATIONS

38. Plaintiffs bring this action individually and on behalf of:

All individuals who were classified as independent contractors while performing deliveries on behalf of Defendants to Trader Joe's stores anywhere on the Eastern Seaboard during the applicable limitations period, and whose contracts included New Jersey forum selection and choice of law provisions (the "Class").

39. The requirements of Fed. R. Civ. P. Rule 23 are met in that:

   a. Class Members are so numerous that joinder of all members would be impracticable. During the relevant period it is believed that there are more than 100 Class Members.

   b. NFI engages in a common course of conduct that violated the legal rights of Plaintiffs and Class Members. There are numerous material questions of law or fact common to the Class that will necessarily dominate the Court's analysis of Plaintiffs' claims, including primarily whether Plaintiffs and Class Members were Defendants' employees rather than independent contractors under the NJWPL, and whether Defendants made unlawful deductions from Plaintiffs' and Class Members' pay under the NJWPL.

   c. Plaintiffs' claims are typical of the claims belonging to absent Class Members. Plaintiffs and Class Members are similarly-situated employees who performed the

9

same work under the same conditions, were Defendants' employees under the NJWPL, had improper deductions taken out of their pay in violation of the NJWPL, and, as a result, suffered the same type of harm.

        d.      Plaintiffs and their counsel will fairly and adequately represent the interests of the Class. Plaintiffs have no interests adverse to or in conflict with those of other Class Members.

        e.      Plaintiffs have retained competent and experienced class action counsel who will vigorously prosecute this action. Plaintiffs' counsel are competent and experienced in litigating class actions and other complex litigation matters, including cases like this one, and will fairly and adequately protect the interests of the Class;

        f.      Allowing this action to proceed as a class action will provide a fair and efficient method for adjudication of the issues presented by this controversy. Common questions of law or fact predominate over any questions affecting only individual members, as Plaintiffs seek to remedy a shared legal grievance (*e.g.*, non-payment of wages, improper deductions) and shared harm (*e.g.*, unpaid wages and employment benefits) on behalf of the Class of similarly-situated employees;

        g.      A class action is superior to other available means for the fair and efficient adjudication of Plaintiffs' claims. The relief sought by individual Class Members is small given the burden and expense of individual prosecution of the potentially extensive litigation necessitated by NFI's conduct. Individual litigation of the legal and factual issues raised by NFI's conduct would cause unavoidable delay, a significant duplication of efforts, and an extreme waste of resources. Alternatively, proceeding by way of a class action would permit the efficient supervision of the Class' claims, achieve economies of scale for the Court and the

parties, and result in a binding and uniform adjudication on each issue for every party.

## COUNT I
### Violation of New Jersey Wage Payment Law (N.J. Stat § 34:11-4.2 and § 34:11-4.4)

40. Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

41. The Independent Contractor Operating Agreements between Defendants and Plaintiffs and Class Members contain a New Jersey choice of law provision stating "This Agreement shall be interpreted in accordance with, and governed by, the laws of the United States and, of the laws of the United States and, of the State of New Jersey, without regard to the choice-of-law rules of New Jersey or any other jurisdiction."

42. The Court has ruled that New Jersey law governs the claims in this case (Dkt. 94).

43. Defendants, as employers under the NJWPL, violated N.J. Stat § 34:11-4.1. *et seq.*, by requiring: (a) that Plaintiffs and Class Members be subject to deductions from their paychecks for any alleged damage or problem with any delivery; (b) that Plaintiffs and Class Members be subject to deductions from their paychecks for such costs as workers' compensation insurance, liability insurance, and fuel, among others; and (c) by regularly failing to pay Plaintiffs and Class Members for all miles driven and for all the time that they worked.

44. Plaintiffs and the Class are entitled to damages in an amount to be proven at trial.

### JURY DEMAND

**PLAINTIFFS REQUEST A TRIAL BY JURY ON ALL CLAIMS.**

WHEREFORE, Plaintiffs pray that this Court:

(1) Certify this action as a class action under Fed. R. Civ. P. 23;

(2) Grant Plaintiffs and the Class Members damages as proved at trial, including damages for the deductions taken from Plaintiffs' compensation checks;

(3) Prejudgment interest to the fullest extent permitted under law;

(4) Litigation costs, expenses and attorneys' fees to the fullest extent permitted under law; and

(5) Such other and further relief as this Court deems just and proper.

Dated: August 13, 2018

Respectfully submitted,

BERGER MONTAGUE

/s/ Camille Fundora
Camille Fundora, NJ Bar No. 017642011
Shanon J. Carson (*pro hac vice*)
Sarah Schalman-Bergen (*pro hac vice*)
Alexandra Koropey Piazza, NJ Bar No. 010922013
Berger Montague
1818 Market Street, 36th Floor
Philadelphia, PA 19103
Telephone: (215) 875-3000
cfundora@bm.net
scarson@bm.net
sschalman-bergen@bm.net
apiazza@bm.net

Harold Lichten (*pro hac vice*)
Thomas Fowler (*pro hac vice*)
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone: (617) 994-5800
hlichten@llrlaw.com
tfowler@llrlaw.com

James W. Simpson, Jr. (*pro hac vice*)
Law Offices of James W. Simpson, Jr. P.C.
100 Concord Street, Suite 3B
Framingham, MA 01702
Telephone: (508) 872-0002
jwsimpson11@verizon.net

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 13, 2018, a true and accurate copy of the foregoing document was served on all counsel of record electronically via CM/ECF.

BY: /s/ Camille Fundora
Camille Fundora
NJ Bar No. 017642011
Attorney for Plaintiffs
