**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| JOHN F. PORTILLO et al., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL FREIGHT, INC. and NFI INTERACTIVE LOGISTICS, INC.,<br><br>Defendants. | **Hon. Joseph H. Rodriguez**<br><br>Civil No. 15-7908 (JHR/KMW)<br><br>**OPINION** |

This matter is currently before the Court on three pending motions. The first is Plaintiffs' Motion to Strike, filed on November 1, 2019. [Docket No. 150.] The second is the parties' Joint Motion to Seal, filed on November 15, 2019. [Docket No. 152.] The third is Defendants' Motion to Strike, filed on November 22, 2019. [Docket No. 155.] For the reasons expressed herein, the Court will deny Plaintiffs' Motion to Strike, grant in part and deny in part Defendants' Motion to Strike, and grant the parties' Joint Motion to Seal.

## I. Background[1]

This case stems from an employee/independent contractor classification dispute between Named Plaintiffs John F. Portillo, Rafael Suarez, Martin Duran, German Bencosme, Edin Vargas, Luis A. Hernandez, Josue Paz, and Alvaro Castaneda,

[1] In the interest of clarity, the Court will provide only a brief summary of the procedural history here. In discussing each of the pending motions, the Court will provide more factual background as needed.

individually and on behalf of others similarly situated, and Defendants NFI Interactive Logistics, Inc. and National Freight, Inc. (collectively, "NFI" or "Defendants"). Discovery in this case was extended several times, but closed on September 16, 2019. [Docket No. 124.] As noted above, the Court will address three of the parties' pending motions in this Opinion, each of which relates to a fourth pending motion: Plaintiffs' Motion for Class Certification. [Docket No. 129.] Plaintiff filed the Motion for Class Certification on September 3, 2019. [Id.] Defendants timely filed their response in opposition (the "Opposition") on October 18, 2019. [Docket No. 142.] Defendants filed several declarations in support of their Opposition. [See Docket No. 143.] Plaintiffs take issue with ten of those declarations, identified in further detail below, and therefore filed their Motion to Strike on November 1, 2019. [Docket No. 150.][2]

Defendants' Opposition also included two documents that all parties agree are confidential. [See Docket No. 152.] Specifically, the two confidential documents — Docket Nos. 143-38 and 143-39 — are "two agreements signed by two named Plaintiffs and non-party entities that contain confidentiality provisions." [Id. ¶ 6.] The parties filed the Joint Motion to Seal those two documents on November 15, 2019. [Id.]

Meanwhile, Plaintiffs filed their reply in support of their Motion for Class Certification on November 1, 2019. [Docket No. 148.] Plaintiffs included in that filing a declaration from Rebecca Shuford [Docket No. 149-2]; Plaintiffs also included a separate declaration from Shuford with their original Motion for Class Certification [Docket Nos. 130-15, 131]. Furthermore, a section of Plaintiffs' reply brief made a

[2] Defendants timely responded to Plaintiffs' Motion to Strike on November 18, 2019. [Docket No. 153.] Plaintiffs timely filed their reply brief on November 25, 2019. [Docket No. 157.]

choice-of-law argument because Defendants devoted a portion of their Opposition to the choice of law. [See Docket No. 148, at 2-6.] Defendants believe that Shuford's two declarations and Plaintiffs' choice-of-law argument should be stricken, so they filed their Motion to Strike on November 22, 2019. [Docket No. 155.][3] In that Motion, Defendants argue in the alternative that they should be permitted to file a sur-reply brief, and they attach their proposed sur-reply brief. [Docket Nos. 156, 156-1.]

Having briefly summarized the bases for the parties' three pending motions, the Court will now address each.

## II. Jurisdiction

The Court exercises subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1453 ("CAFA"). As required by CAFA, the putative class in this case consists of at least 100 proposed class members, the citizenship of at least one of which being diverse from that of at least one of the Defendants. [Docket No. 102, ¶ 16.] The CAFA amount-in-controversy requirement is also met, as that figure exceeds $5,000,000 here. [Id.]

## III. Plaintiffs' Motion to Strike

As noted above, Plaintiffs have requested that the Court strike ten declarations — some in part and some in full — that Defendants filed in support of their Opposition to Plaintiffs' Motion for Class Certification. For the sake of simplicity, Plaintiffs have categorized the nine declarations into four groups, which the Court will mostly adopt: the "Happy Camper Declarations," the "Company Declarations," the "Speakman

[3] Plaintiffs timely responded to Defendants' Motion to Strike on December 13, 2019. [Docket No. 160.] Defendants timely filed their reply brief on December 30, 2019. [Docket No. 162.]

Declaration," and the "Hayden Declaration." [See Docket No. 150-1, at 1 n.1.] The Happy Camper Declarations are the declarations of Antonio Polanco, Randy Williams, Gilberto Dacosta, Rowan Montaque, Dwayne Storey, and John Fry. [Id.] The Company Declarations are the declarations of Lee Robledo and Gina Johnson. [Id.] The Speakman Declaration is the declaration of Robert B. Speakman, Jr., Ph.D. [Id.] The Hayden Declaration is the declaration of Michael Hayden. [Id.]

### A. The Happy Camper and Company Declarations

The six "Happy Campers" are potential members of the class that Plaintiffs seek to certify. [Id. at 1.] Lee Robledo and Gina Johnson — the subjects of the Company Declarations — are Defendants' Vice President of Safety Compliance, Regulatory and Investigations and the Payroll Process Manager, respectively. [Id. at 7.] Plaintiffs argue that the Happy Camper and Company Declarations should be stricken because Defendants did not properly disclose the identities of the declarants pursuant to Rule 26 of the Federal Rules of Civil Procedure. [Id. at 10-14.][4] Plaintiffs note that Rule 26 states that,

> [e]xcept as exempted by Rule 26(a)(1)(B) or as otherwise stipulated or ordered by the court, a party must, without awaiting a discovery request, provide to the other parties:
>
> (i) the name and, if known, the address and telephone number of each individual likely to have discoverable information — along with the subjects of that information — that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment.

[4] Plaintiffs alternatively argue that Defendants improperly communicated with the Happy Campers, given their status as potential class members. [Docket No. 150, at 10-14.] The Court agrees with Defendants' position that the communications were not abusive or improper. See Bobryk v. Durand Glass Mfg. Co., No. 12-CV-5360 NLH/JS, 2013 WL 5574504 (D.N.J. Oct. 9, 2013). The Court finds that Bobryk is analogous to the case at hand and that the differences noted by Plaintiffs are insufficient to lead to a different ruling.

FED. R. CIV. P. 26(a)(1)(A)(i). Plaintiffs also point out that Rule 37 addresses the ramifications of a party failing to satisfy Rule 26's requirements:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (3), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

FED. R. CIV. P. 37(c)(1). In determining whether to strike or preclude non-disclosed evidence pursuant to Rule 37(c)(1), courts will consider:

> (1) prejudice or surprise to the [opposing party]; (2) the ability of [the opposing party] to cure the prejudice; (3) the likelihood of disruption; and (4) the [non-disclosing party's] bad faith or unwillingness to comply.

Wachtel v. Health Net, Inc., 239 F.R.D. 81, 104-05 (D.N.J. 2006) (citing Newman v. GHS Osteopathic, Inc., 60 F.3d 153, 156 (3d Cir. 1995)).

Defendants, in response to Plaintiffs' argument, recount the following facts with respect to the Happy Campers: "Named Plaintiffs identified 'former and current NFI delivery drivers' in their initial disclosures." [Docket No. 153, at 4.] Meanwhile, in their initial disclosures, Defendants "identified any witnesses identified by any party." [Id.] In other words: Since Plaintiffs identified all the drivers, Defendants identified everybody Plaintiffs identified, and the Happy Campers are among all the drivers, Defendants therefore identified the Happy Campers.

Defendants also claim that they identified the Happy Campers because Defendants included "[a]ny and all witnesses . . . identified through the course of discovery" in their initial disclosures. [Id.] Defendants then point out that they produced a series of spreadsheets "containing independent contractor and driver data, . . . including independent contractors' business names or, when the independent contractor is a person, the person's initials." [Id.] Put another way, Defendants claim to

have met their Rule 26 obligations because they included the Happy Campers' initials in a series of spreadsheets.

With respect to Robledo and Johnson, Defendants make similar arguments. They support their claims of having identified Robledo with the following points: (1) "Named Plaintiffs filed a letter from Mr. Robledo in support of their Motion for Class Certification"; (2) Robledo's "name appears on a letter to drivers," which letter Plaintiffs filed "in support of their Motion"; (3) "Named Plaintiffs . . . identified 'executives' and 'employees' in their initial disclosures," and Defendants "identified any witnesses identified by any party," therefore Defendants "identified NFI executives and employees" — i.e., Robledo — "as well"; and (4) internally, Defendants "intended to designate Lee Robledo to testify about some of the topics listed in [Plaintiffs'] 30(b)(6) [deposition] notice," but Plaintiffs ultimately did follow through with that notice, so Defendants never actually communicated its alleged intent to designate Robledo. [Docket No. 153, at 6-7.]

In support of their claims of having identified Johnson, Defendants again argue that they identified her because her name appears in certain columns of spreadsheets that Defendants "produced at the very beginning of this case." [Id. at 7.] Additionally, like with the Happy Campers and Robledo, Defendants argue that the facts that they "identified any witnesses identified by any party" and "Named Plaintiffs identified NFI 'payroll agents' in their initial disclosures" mean that Defendants "identified 'payroll agents,'" — i.e., Johnson — "as well." [Id.]

The Court agrees with Plaintiffs that Defendants failed to adequately identify the Happy Camper and Company Declarants. The simple fact is that they did not disclose the names of the Happy Campers or the Company Declarants as they were required to

do by Rule 26(a)(1)(A)(i). Defendants do not cite to any authority that would suggest that their actions satisfied Rule 26's requirements. Nor do they argue that any of the exceptions to Rule 26 apply in this situation, most likely because none of them do.[5] Despite Defendants' arguments to the contrary, the Court finds that Defendants did not comply with Rule 26 with respect to the Happy Camper and Company Declarations.

However, the Court also concludes that the Rule 37(c)(1) factors do not require these Declarations to be stricken. Plaintiffs cannot reasonably assert that they were surprised that Defendants relied on these eight Declarants, six of whom being drivers and two of whom being company employees. While Plaintiffs were unable to conduct discovery around these particular individuals, the Court finds that such prejudice is slight in this instance. Additionally, the inclusion of these declarations does not disrupt the case in any considerable way; in fact, their exclusions would likely be far more disruptive to the case. Finally, while Defendants certainly could have been more forthcoming in their approach to discovery, the Court does not consider their actions to have been in bad faith.

---

[5] Defendants do argue that they did nothing wrong with respect to the Happy Campers because (1) Plaintiffs "were not entitled to putative class members' names pre-class certification," (2) Defendants "could not have produced putative class members' names pre-certification" because it "was not privy to the applicable class definition" and because "the putative class members are not ascertainable," and (3) Plaintiffs "abandoned any argument that they were entitled to putative class members' names pre-certification." [Docket No 153, at 9-11.] These arguments, too, miss the point. Whether Defendants had to provide class members' names is not relevant; rather, they had to provide "the name and, if known, the address and telephone number of each individual likely to have discoverable information — along with the subjects of that information — that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." FED. R. CIV. P. 26(a)(1)(A)(i). The Happy Campers obviously fit that definition, regardless of their status as potential class members.

The Court finds that Defendants' failure to disclose the Happy Camper and Company Declarants was "harmless." FED. R. CIV. P. 37(c)(1). As such, the Court will not strike the Happy Camper and Company Declarations.

**B. The Hayden Declaration**

Unlike the Declarants discussed above, Defendants properly identified Michael Hayden, Defendants' Vice President of Transportation, as a witness pursuant to Rule 26. Nevertheless, Plaintiffs take issue with the portion of the Declaration that states in pertinent part, "NFI currently uses the 2019 version of the Independent Contractor Operating Agreement. To date, five Contractors have signed the 2019 version of the Independent Contractor Operating Agreement." [Docket No. 143-3, ¶ 13.] The 2019 Agreement has a Texas choice-of-law clause, as opposed to New Jersey. [Docket No. 143-13, ¶ 23.] In their Opposition to Plaintiffs' Motion for Class Certification, Defendants cite Paragraph 13 of the Hayden Declaration, arguing that since five potential class members signed the 2019 Agreement, New Jersey law should not apply to the whole class, which, Defendants argue, should preclude the class from being certified. [See Docket No. 142, at 6, 12-13.]

Notably, the parties do not dispute that Defendants timely disclosed a blank copy of the 2019 Agreement. [See Docket No. 157, at 12.] Nevertheless, Plaintiffs contend that the blank version is insufficient when, in reality, Defendants rely on the five signed 2019 Agreements, which they did not provide to Plaintiffs. [Docket No. 150-1, at 7, 13-15.] They therefore argue that Paragraph 13 of the Hayden Declaration should be stricken, along with any reference to the 2019 Agreement made in Defendants' Opposition to Plaintiffs' Motion for Class Certification. [See id.]

Defendants argue that the disclosure of the unsigned copy of the 2019 Agreement is sufficient because they "had no obligation to identify contractors who signed this version of the agreement or produce the signed versions of the agreements." [Docket No. 153, at 16.] Furthermore, they assert that "Named Plaintiffs generally are not entitled to individualized discovery of putative class members pre-class certification." Once again, Defendants' arguments miss the mark. Turning back to the relevant disclosure obligations, Rule 26 states that,

> [e]xcept as exempted by Rule 26(a)(1)(B) or as otherwise stipulated or ordered by the court, a party must, without awaiting a discovery request, provide to the other parties:
> . . . .
> (ii) a copy — or a description by category and location — of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment.

FED. R. CIV. P. 26(a)(1)(A)(ii). Plaintiffs, at least with respect to this particular argument, are not seeking discovery about putative class members as Defendants seem to believe. Rather, they are merely saying that they should have been provided with the five signed 2019 Agreements prior to the closure of discovery, pursuant to Rule 26.

The Court will not admonish Defendants for disclosing the blank copy of the 2019 agreement, which they were right to do. However, the Court agrees with Plaintiffs that, with respect to the argument Defendants make in their Opposition, it is the five signed 2019 Agreements upon which they truly rely. After all, the mere existence of the 2019 Agreement does nothing to undermine the proposed class; it is only when potential class members are bound by the 2019 Agreement that Defendants' argument carries any weight.

In terms of Rule 26's language, the five signed 2019 Agreements are "documents" that Defendants have "in [their] possession, custody, or control" and that they attempt to "use to support [their] . . . defenses." See id. They did not disclose those documents to Plaintiffs. However, as above, the Court finds this transgression to be harmless and that the Rule 37(c)(1) factors do not require the signed 2019 Agreements to be stricken. See FED. R. CIV. P. 37(c)(1). As with the Happy Camper and Company Declarations, Plaintiffs cannot contend that they were taken by surprise by the existence of or reliance on these documents, since a blank copy had been provided and its relevance was obvious. Moreover, any prejudice to Plaintiffs is minimal, again since they were already aware of the most important content in the 2019 Agreement — that is, the terms of the agreement. Additionally, the Court finds that there is no threat of disruption with respect to these documents, and that Defendants did not act in bad faith here.

In sum, Defendants did not comply with Rule 26 with respect to the signed 2019 Agreements, but their failure to do so was harmless. Therefore, the Court will not strike Paragraph 13 of the Hayden Declaration or any reference in Defendants' Opposition to the signed 2019 Agreements.

**C. The Speakman Declaration**

Finally, Plaintiffs argue that the Court should strike the Declaration of Robert B. Speakman, Jr., Ph. D., "whose declaration NFI submits styled as that of an expert witness," because they failed to disclose him. [Docket No 150-1, at 15-16.] The parties disagree on whether Defendants' failure to disclose Speakman is excusable. As explained below, this argument really turns on the classification of Rebecca Shuford, a paralegal and data analyst whose Declaration (the "Shuford Declaration") provides support for Plaintiffs' Motion for Class Certification. Defendants claim that she is an expert witness,

which would mean that Plaintiffs should have disclosed her as such. See FED. R. CIV. P. 26(a)(2). Had Plaintiffs done so, Defendants would have had thirty days to disclose Speakman as their rebuttal expert. FED. R. CIV. P. 26(a)(2)(D)(ii). However, since Plaintiffs did not disclose Shuford as an expert witness,[6] Defendants claim that they did not know at any point prior to Plaintiffs filing their Motion for Class Certification that they would even need a rebuttal expert. As such, Defendants believe their failure to disclose Speakman as an expert witness should be excused.

Conversely, Plaintiffs argue that Shuford is not an expert witness, but merely a lay witness. It is undisputed that, if Shuford is a lay witness, she was properly disclosed. [Docket No. 157, at 14-15.] If that is the case, then Defendants' argument that Speakman is a rebuttal expert is baseless. However, that would not necessarily mean that the Court would have to strike the Speakman Declaration; it would consider the Rule 37(c)(1) factors in making that determination.

The Court must first determine whether or not Shuford is an expert witness. Under Federal Rule of Evidence 701, a witness not testifying as an expert may only offer testimony that is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." FED. R. EVID. 701. Under Federal Rule of Evidence 1006, a party may "use a summary, chart, or calculation to prove the content of voluminous writings [or] recordings . . . that cannot be conveniently examined in court," provided that the

---

[6] It is undisputed that Plaintiffs' disclosure of Shuford did not meet the requirements for an expert disclosure. [See Docket No. 157, at 14-15.]

originals or duplicates are available for examination by the other parties. FED. R. EVID. 1006.

According to her Declaration, Shuford "looked at data in the form of several spreadsheets produced by NFI" to determine "whether the data . . . identifies the contractors who worked full-time for NFI performing deliveries to Trader Joe's stores on the East Coast from NFI's Hatfield or Nazareth, Pennsylvania facilities since June 22, 2019, and form whose compensation NFI made deductions." [Docket No. 131, ¶ 5.] Shuford reviewed the data, which was spread across several spreadsheets, and created "a master spreadsheet" that identified 135 potential class members. [Id. ¶ 8.] She then compiled the data into a table. [Id. ¶ 9.] The Shuford Declaration also lists her credentials, which include having been a data analyst for more than four years and having taken a course on statistical analysis in 2018. [Id. ¶ 2.]

Defendants claim that Shuford is an expert because her Declaration is "based on technical or specialized knowledge." [Docket No. 153, at 16-17 (quoting FED. R. EVID. 701).] Plaintiffs contend that the Shuford Declaration merely offers summary evidence of the documents that Defendants provided in discovery and does not rely on technical or specialized knowledge. [Docket No. 157, at 14-15.] Plaintiffs point out that prior to filing their Motion for Class Certification, they disclosed Shuford in precisely that way: "Rebecca Shuford . . . is likely to testify as a summary witness . . . regarding the data that NFI has produced[ and] the composition of the class based on said data." [Docket No. 157-1, Exhibit A, at 8.] Moreover, Plaintiffs argue that Defendants' claim of surprise at Shuford's testimony is not credible, since Defendants themselves raised the issue of ascertainability — which is what Shuford's testimony addresses — months before discovery closed. [Docket No. 157, at 15 (citing Docket No. 155, at 4 n.3).]

The Court agrees with Plaintiffs with respect to the Shuford Declaration: it did not require "scientific, technical, or other specialized knowledge." Shuford merely "provided factual information and summaries of voluminous . . . records that [she] personally reviewed in [her] capacity" as a paralegal and data analyst for Lichten & Liss-Riordan, P.C., one of the firms representing Plaintiffs. See United States v. Georgiou, 777 F.3d 125, 143-44 (3d Cir. 2015) (holding that an SEC employee did not rely on "scientific, technical, or other specialized knowledge" when his testimony "provided factual information and summaries of voluminous trading records" about stock prices and trading "that he personally reviewed in his capacity as an SEC employee and as part of the SEC's investigation of" the defendant), after having reviewed "voluminous trading records" about stock prices and trading); United States v. Thompson, 393 F. App'x 852, 858 (3d Cir. 2010) (permitting a witness "trained in, experienced in, and [who] had verified the functioning of GPS devices" to testify as a lay witness about GPS technology); Depalma v. Scotts Co., LLC, Civ. No. 13-7740, 2019 WL 2417706, at *7 (D.N.J. June 10, 2019) ("The proponent . . . has gained personal familiarity with the underlying data furnished by [the defendant]; the underlying data would be admissible in evidence; and the calculations, which involve little more than arithmetic, are within the ken of a lay person."); see also, SEC v. Treadway, 430 F. Supp. 2d 293, 321-22 (S.D.N.Y. 2006) (holding that a witness's testimony was permitted under Rule 701 because the witness whose declaration "was more akin to a summary document than an expert analysis" was "simply an SEC employee providing his view of the facts as a summary of certain evidence and as an aid to the Court").

The Shuford Declaration is not an expert report but rather a summary of the evidence that Defendants provided to Plaintiffs. Shuford's efforts did not require

"scientific, technical, or other specialized knowledge." Instead, the steps she took were all "within the ken of a lay person." Depalma, 2019 WL 2417706, at *7. Shuford is not an expert witness and Plaintiffs properly disclosed her as a lay witness pursuant to Rule 26. This means that Defendants cannot excuse their own failure to disclose Speakman by arguing that he is a rebuttal expert witness; there was no initial expert to rebut.

However, the Rule 37(c)(1) factors once again instruct against striking the declaration in question. Plaintiffs cannot assert that they were caught by surprise that Defendants would want to respond to the claims made by Shuford. Nor is there any ascertainable prejudice here. To the extent that Plaintiffs argue that the Speakman Declaration was prejudicial because it was constituted "expert testimony," the Court notes that the Speakman Declaration, like the Shuford Declaration, does not constitute an expert report. The eleven-paragraph Declaration merely points to various data-based issues in the Shuford Declaration. [See Docket No. 143-46.] And to the extent that that prejudiced Plaintiffs, they were able to address it in their reply brief, which they did. Finally, the Court finds that not striking the Speakman Declaration would not disrupt the proceedings, and that Defendants did not act in bad faith by failing to disclose Speakman as a witness. Therefore, the Court finds that while Defendants improperly failed to disclose Speakman as a witness, that failure was harmless, and the Speakman Declaration need not be stricken. See FED. R. CIV. P. 37(c)(1).

## IV. Defendants' Motion to Strike

The Court will next address Defendants' Motion to Strike. [Docket No. 155.] They seek to strike two Declarations by Rebecca Shuford — the Shuford Declaration discussed above [Docket No. 131] and a second that was submitted later [Docket No. 149-2] — as well as a legal argument made by Plaintiffs in their reply brief in support of their Motion

for Class Certification [Docket No. 148]. Defendants' argument about the Shuford Declarations rely on the finding that Shuford is an expert. [Docket No. 156, at 3-8.] The above analysis about Shuford's classification as a lay witness applies equally to this Motion. Therefore, for the reasons expressed above, the Court will deny that aspect of Defendants' Motion to Strike.

The second portion of Defendants' Motion to Strike revolves around the argument put forth by Plaintiffs in their reply brief about a choice-of-law issue. [Id. at 8-10.] Defendants argue that Plaintiffs waived the relevant arguments by not including them in their original brief in support of the Motion for Class Certification. [Id. at 8-9.] Plaintiffs argue that, since Defendants "dedicated an entire section" of their Opposition "to arguing that class certification should be denied because Plaintiffs did not offer a choice of law analysis," Plaintiffs were well within their rights to respond to that argument in their reply brief. [Docket No. 160, at 13-14.] Moreover, Plaintiffs point out that, while they did not devote much of their original brief to the choice-of-law issue, they did at least address it in a footnote. [See Docket No. 129-1, at 4 n.4.]

While it is generally true that a "moving party may not raise new issues and present new factual materials in a reply brief that it should have raised in its initial brief," Ballas v. Tedesco, 41 F. Supp. 2d 531, 533 n.1 (D.N.J. 1999), the Court finds that Plaintiffs did not waive the choice-of-law argument because they did raise it, albeit briefly, in their initial brief. Additionally, the Court finds that even if Plaintiffs had not raised the argument in their initial brief, they were entitled to respond in their reply brief to Defendants' more complete argument about choice of law. See Elizabethtown Water Co. v. Hardford Cas. Ins. Co., 998 F. Supp. 447, 458 (D.N.J. 1998) (denying a motion to strike because the party "properly responded to [the opposing party's]

argument and factual recitation”). Therefore, Plaintiffs’ choice-of-law argument will not be stricken.

That being said, the Court notes that it has some latitude to permit a party to file a sur-reply brief in the event that a new argument is raised in a reply brief. See, e.g., Capital Health Sys., Inc. v. Veznedaroglu, Civil Action No. 15-8288, 2019 WL 6324006, at *1 (D.N.J. Nov. 26, 2019). In this instance, the Court finds that it is in the interest of justice to permit Defendants to file a sur-reply brief to ensure that the issue is fully addressed. This is especially true given the fact that Defendants would otherwise be unable to adequately respond to the majority of Plaintiffs’ choice-of-law argument, which is found in its reply brief.

Therefore, the Court will deny Defendants’ Motion insofar as it will not strike the Shuford Declarations and Plaintiffs’ choice-of-law arguments. However, the Court will grant Defendants’ Motion with respect to filing a sur-reply brief.

## V. The Parties’ Joint Motion to Seal

Finally, the parties filed a Joint Motion to Seal Docket Nos. 143-38 and 143-39. [Docket No. 152.] The Joint Motion also sought to unseal Docket Nos. 130-15 and 131. [Id.] Local Civil Rule 5.3(c) requires parties seeking to seal documents to describe the following:

> (a) the nature of the materials or proceedings at issue;
> (b) the legitimate private or public interest which warrant the relief sought;
> (c) the clearly defined and serious injury that would result if the relief sought is not granted; [and]
> (d) why a less restrictive alternative to the relief sought is not available.

L. Civ. R. 5.3(c)(3).

The Court finds that the parties' Joint Motion satisfied Local Rule 5.3(c)'s requirements. As such, the Court will grant the parties' Joint Motion to Seal.

## VI. Conclusion

For the reasons expressed above, the Court will deny Plaintiffs' Motion to Strike [Docket No. 150]; grant in part and deny in part Defendants' Motion to Strike [Docket No. 155]; and grant the parties' Joint Motion to Seal [Docket No. 152]. An accompanying Order shall issue.

June 30, 2020
Date

s/Joseph H. Rodriguez
JOSEPH H. RODRIGUEZ
United States District Judge