**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| **JOHN F. PORTILLO, RAFAEL SUAREZ,** | : | **Civ. Action No.: 15-cv-7908-JHR-KMW** |
| **MARTIN DURAN, GERMAN BENCOSME,** | : | |
| **EDIN VARGAS, LUIS A. HERNANDEZ,** | : | <u>**Document Electronically Filed**</u> |
| **JOSUE PAZ, and ALVARO CASTANEDA,** | : | |
| **individually and behalf of all others similarly** | : | **\*Oral Argument Requested\*** |
| **situated,** | : | |
| | : | |
| **Plaintiffs,** | : | **Motion Day:  December 7, 2020** |
| | : | |
| **v.** | : | |
| | : | |
| **NATIONAL FREIGHT, INC. and NFI** | : | |
| **INTERACTIVE LOGISTICS, INC.,** | : | |
| | : | |
| **Defendants.** | : | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO
BAR DEFENDANTS FROM ASSERTING RETALIATORY
COUNTERCLAIMS**

**Table of Contents**

I.    INTRODUCTION ...................................................................................1

II.   BACKGROUND ....................................................................................5

III.    ARGUMENT.........................................................................................8

   A.  NFI's Proposed Counterclaims for Indemnification Are Unlawful................8

      1.  Employers' Counterclaims for Indemnification Run Afoul of Established
      Wage and Hour Law and Policy ........................................................8

      2.  NFI's Proposed Counterclaims Violate the NJWPL and New Jersey's
      Policy Against Fee-Shifting .............................................................18

   B.  NFI's Proposed Counterclaims Constitute Blatant, Unlawful Retaliation ....21

IV.  CONCLUSION .....................................................................................25

# Table of Authorities

Cases

Abdul-Rasheed v. KableLink Comm., LLC,
  2013 WL 6182321 (M.D. Fla. Nov. 25, 2013).....................................................17

Beltran v. Brentwood N. Healthcare Ctr., LLC,
  426 F. Supp. 2d 827 (N.D. Ill. 2006)....................................................24

Berryman v. Newalta Environmental Services, Inc.,
  2018 WL 5631169 (W.D. Pa. Oct. 31, 2018).....................................................15

Bill Johnson's Restaurants v. NLRB,
  461 U.S. 731 (1983) .................................................................. 23, 24

Brennan v. Heard,
  491 F.2d 1 (5th Cir. 1974).....................................................14

Crespo v. Kismet Executive Limousine Service, Inc.,
  2018 WL 3599738 (D.N.J. July 27, 2018) ..........................................10

Dare v. Freefall Adventures,
  349 N.J. Super. 205 (App. Div. 2002)....................................................20

Darveau v. Detecon, Inc.,
  515 F.3d 334 (4th Cir. 2008).....................................................23

Delendra v. Marine Transport Logistics Inc.,
  2013 WL 5503305 (D.N.J. Sept. 30, 2013)..........................................10

Delta Funding Corp. v. Harris,
  189 N.J. 28 (2006) ................................................................ 3, 20

Emanuel v. Rolling the the Dough, Inc.,,
  2010 WL 4627661 (N.D. Ill. Nov. 2, 2010).......................................17

Fernandez v. Kinray, Inc.,
  2014 WL 12778829 (E.D.N.Y. Feb. 5, 2014) ............................... 10, 12

Flores v. Mamma Lombardis of Holbrook, Inc.,
  942 F. Supp 2d 274 (E.D.N.Y. 2013)........................................ 11, 24

Galicia v. Tobiko Restaurant, Inc.,
  2017 WL 2437260 (E.D.N.Y. June 3, 2017).......................................10

Garcia v. Cloister Apt Corp.,
  2018 WL 1353274 (S.D.N.Y. Mar. 15, 2018)......................................16

Goodman v. Port Authority of New York and New Jersey,
  850 F. Supp. 2d 363 (S.D.N.Y. 2012) ..................................................16

Green v. Platinum Restaurants Mid-Am., LLC,
  2017 WL 6347964 (W.D. Ky. Dec. 12, 2017) ....................................11

Gustafson v. Bell Atlantic Corp.,
    171 F. Supp. 2d 311 (S.D.N.Y. 2001) ...................................................................16

Herman v. RSR Sec. Servs. Ltd.,
    172 F.3d 132 (2d Cir. 1999) ........................................................ 2, 8, 14, 15

Jones v. JGC Dallas LLC,
    2012 WL 4119570 (N.D. Tex. Aug. 17, 2012) ............................................ 13, 14

Kaskey v. Osmose Holdings, Inc.,
    2014 WL 1096149 (E.D. Pa. Mar. 20, 2014) ......................................................15

King v. 12 Visual, Inc.,
    No. 219CV00634FTM60NPM, 2020 WL 588285 (M.D. Fla. Feb. 6, 2020)......11

LeCompte v. Chrysler Credit Corp.,
    780 F.2d 1260 (5th Cir.1986) ............................................................................15

Local 1035, Int'l Bhd. of Teamsters v. Pepsi Allied Bottlers, Inc.,
    99 F. Supp. 2d 219 (D. Conn. 2000) ................................................... 11, 16

Lyle v. Food Lion, Inc.,
    954 F.2d 984 (4th Cir.1992) ..............................................................................15

Martelet v. AVAX Technologies, Inc.,
    2012 WL 1570964 (E.D. Pa. May 3, 2012) .......................................................10

Martin v. Gingerbread House, Inc.,
    977 F.2d 1405 (10th Cir.1992) .........................................................................15

Martin v. PepsiAmericas, Inc.,
    628 F.3d 738 (5th Cir. 2010) ...................................................... 13, 14

Marx v. Friendly Ice Cream Corp.,
    380 N.J. Super. 302 (App. Div. 2005).................................................................9

McClure v. Bank of Am. Corp.,
    2006 WL 182070 n.3 (D.N.J. Jan. 24, 2006) ............................................ 3, 20

McFeeters v. Brand Plumbing, Inc.,
    2016 WL 6581515 (D. Kan. Nov. 7, 2016)........................................................11

Mitchell v. Robert DeMario Jewelry Inc.,
    361 U.S. 288 (1960) ..........................................................................................22

Mori v. El Asset Management, Inc.,
    2016 WL 859336 n.2 (S.D.N.Y. Jan. 28, 2016)................................................10

Mulford v. Computer Leasing, Inc.,
    334 N.J. Super. 385 (1999)...............................................................................2, 8

Munroe v. Parts Base, Inc.,
    2008 WL 4998777 (S.D. Fla. Nov. 20, 2008)....................................................24

New Jersey State Hotel-Motel Ass'n v. Male,
   105 N.J. Super. 174 (App. Div. 1969)......................................................9

Nicholsen v. Feeding Tree Style, Inc.,
   No. 12 CIV. 6236 JPO, 2014 WL 476355 (S.D.N.Y. Feb. 6, 2014)....................11

Nicopior v. Moshi Moshi Palm Grove, LLC,
   375 F. Supp. 3d 1278 (S.D. Fla. 2019)...................................................11

Perez v. S. Fla. Landscape Maint., Inc.,
   2014 WL 293774 (S.D. Fla. Jan. 23, 2014)...............................................13

Poku v. BeavEx, Inc.,
   2013 WL 5937414 (D.N.J. Nov. 1, 2013)...................................................23

Portillo v. National Freight, Inc.,
   2020 WL 3582514 (DN.NJ. July 1, 2020) ...................................................1

Primiani v. Vintage 185 Inc.,
   2019 WL 486087 (E.D.N.Y. Feb. 6, 2019)..................................................11

Saarela v. Union Colony Protective Servs., Inc.,
   2014 WL 3408771 (D. Colo. July 14, 2014)................................................13

Saenz v. Rod's Prod. Servs., LLC,
   2015 WL 12866986 (D.N.M. June 23, 2015) .................................................13

Singer v. City of Waco, Tex.,
   324 F.3d 813 (5th Cir. 2003) ............................................................14

Torres v. Gristede's Operating Corp.,
   628 F. Supp. 2d 447 (S.D.N.Y. 2008) .................................................. 4, 23

Varnell, Struck & Associates, Inc. v. Lowe's Companies, Inc.,
   2008 WL 1820830 (W.D.N.C. Apr. 21, 2008)................................................17

Vengurlekar v. Silverline Technologies, Ltd.,
   220 F.R.D. 222 (S.D.N.Y. Nov. 24 2003)............................................... 2, 8, 9

Villareal v. El Chile, Inc.,
   601 F.Supp.2d 1011 (N.D. Ill. Feb. 25, 2009) ..........................................17

Statutes

29 U.S.C. § 218(a) ........................................................................9
29 U.S.C. §§ 201 ..........................................................................4
29 U.S.C.A. § 215(a)(3)...................................................................22
N.J. Stat. 34:11-4.1......................................................................1
N.J. Stat. 34:11-4.7................................................................ 3, 18, 19
N.J. Stat. 34:11-4.4......................................................................9
N.J. Stat. 34:11-4.10.............................................................. 3, 4, 19, 20

Rules

Fed. R. Civ. P. 23(f) ................................................................................................5

## I.   INTRODUCTION

This New Jersey wage act case has been pending for nearly five years. Four months ago this Court granted class certification on behalf of a group of NFI delivery drivers who deliver foods and other goods from NFIs warehouses to Trader Joe's stores on the East Coast. See Portillo v. National Freight, Inc., --- F.R.D. ---, 2020 WL 3582514, at *12 (D.N.J. July 1, 2020). Plaintiffs allege that they were misclassified as independent contractors, and that as a result, NFI took deductions from their compensation in violation of the New Jersey Wage Payment Law ("NJWPL"), N.J. Stat. 34:11-4.1 *et seq.*

Now in an effort to scare off potential class members, NFI has stated its intention to assert a counterclaim against approximately forty-three (43) class members who have indemnification provisions in their so-called independent contractor agreements.[1] These provisions purport to require the drivers to indemnify NFI for the costs of any attorneys' fees or litigation expenses that NFI incurs in defending against misclassification claims brought by the drivers. (2017

---

[1]      NFI has communicated its intent to file counterclaims against drivers who signed the 2017 version of its independent contractor agreement because that was the first version that contained the indemnification provision at issue. (Exemplar 2017 Independent Contractor Agreement at ¶ 15(f), Exhibit A.) Plaintiffs note, however, that the 2019 and 2020 versions of the agreement also contain this indemnification provision, and thus Plaintiffs intend their argument to address all versions of the contract containing this provision. (Exemplar 2019 Independent Contractor Agreement at ¶ 15(f), Exhibit B; Exemplar 2020 Independent Contractor Agreement at ¶ 15(f), Exhibit C.)

Agreement ¶ 15 (f), Exhibit A.) This clause was added long after this litigation had been pending.  However the law is crystal clear that it is a serious violation of well-established wage laws for a defendant to seek indemnification from a plaintiff for attempting to vindicate his or her rights under the wage laws, because otherwise the wage statutes would be rendered meaningless. Accordingly, Plaintiffs request this Court to enjoin any attempt by NFI to file any such counterclaim.

First, such a counterclaim runs afoul of well-established wage and hour law and policy.  For example, the broad remedial "purpose of the NJWPL is primarily to protect employees." Vengurlekar v. Silverline Technologies, Ltd., 220 F.R.D. 222, 231 (S.D.N.Y. Nov. 24 2003) (citing Mulford v. Computer Leasing, Inc., 334 N.J. Super. 385, 394 (1999)).  See also, e.g., Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 144 (2d Cir. 1999) (describing FLSA's "comprehensive remedial scheme" that was "designed to regulate the conduct of employers for the benefit of employees").  Allowing NFI to pursue counterclaims to recover attorney's fees and costs from class members who have simply asserted their right to be paid proper wages here would fly in the face of this fundamental policy, because it would undercut the drivers' ability to pursue their claims at all. NFI's goal in raising such counterclaims is to intimidate its employees to ensure that they do not attempt to vindicate their rights.

Moreover, permitting NFI to assert indemnification claims seeking recovery

of attorneys' fees and costs in defending the drivers' misclassification claims would violate the language of the NJWPL and New Jersey's public policy against fee-shifting.  The NJWPL takes a strict approach to safeguard the ability of employees to advance claims against employers for unlawful deductions. The statute provides for recovery of attorneys' fees by prevailing employees **but not** by prevailing employers. See N.J. Stat. 34:11-4.10(a). Furthermore, the NJWPL explicitly prohibits attempts by employers to contract around the NJWPL's protections. See N.J. Stat. 34:11-4.7.  Additionally, NFI's counterclaim would also violate a broader New Jersey public policy against fee-shifting provisions to be wielded in cases such as this when the bargaining power between the parties to a contract are vastly unequal. As this Court has described, New Jersey has a strong "public policy against fee-shifting provisions" in "contracts used by businesses against consumers, individuals, or other weaker parties." McClure v. Bank of Am. Corp., 2006 WL 182070, at *4 n.3 (D.N.J. Jan. 24, 2006). And as the New Jersey Supreme Court has explained such "fee-shifting provisions can deter a litigant from pursuing a claim" and are thus against public policy. Delta Funding Corp. v. Harris, 189 N.J. 28, 42 (2006). NFI's indemnification provision, which puts the drivers on the hook for the attorneys' fees and costs NFI will spend defending the drivers' misclassification claims, is exactly the kind of fee-shifting provision that is prohibited by well-established public policy.

What is more, the proposed counterclaims amount to blatant, unlawful retaliation by NFI against the drivers for asserting their claim for unpaid wages. Indeed, Section 34:11-4.10(a) of the NJWPL prohibits employers from taking retaliatory actions towards workers who assert NJWPL claims, and that is exactly what NFI is doing here – if a class member opts out of the lawsuit they will not be sued but if they don't, they will face counterclaims – classic retaliation, as described below. See Section 34:11-4.10(c).  The NJWPL goes so far as to make this type of retaliation a criminal offense. N.J. Stat. 34:11-4.10(a). Courts addressing the Fair Labor Standards Act's ("FLSA"), 29 U.S.C. §§ 201 *et seq.* anti-retaliation provision have likewise routinely declined to permit such counterclaims as unlawful and retaliatory. See generally *infra*. There is no reason to think that courts interpreting the NJWPL, which was amended to add its anti-retaliation claim in August 2019, will diverge from this clear FLSA jurisprudence. As courts have explained in the context of the FLSA, employers assert counterclaims in order to create an "*in terrorem*" effect on employees that will dissuade them from pursuing their rights. See Torres v. Gristede's Operating Corp., 628 F. Supp. 2d 447, 473 (S.D.N.Y. 2008).

Therefore, the Court should declare that NFI's indemnification provision is unenforceable and thus enjoin NFI from pursuing its contemplated counterclaim.

## II.   BACKGROUND

On July 1, 2020, Judge Rodriguez certified a class in this case. See Portillo v.

National Freight, Inc., --- F.R.D. ---, 2020 WL 3582514, at *12 (D.N.J. July 1, 2020).

Judge Rodriguez defined the class as follows:

1. All individuals who: (1) entered into, either personally or through a corporate entity, an independent contractor agreement with NFI that had a New Jersey choice-of-law clause; and (2) drove a vehicle on a full-time basis to perform deliveries of goods to Trader Joe's stores anywhere on the East Coast on behalf of NFI at any time since June 22, 2009.

2. "Full-time basis" means having delivered at least 80% of the loads assigned to the contractor.

Id.

After the class was certified, Plaintiffs promptly requested that NFI produce

a class list, which Rule 23 requires it to do, but rather than doing so, NFI engaged

in a campaign to further delay this case. (Fowler Decl. ¶¶ 4-9, Exhibit D; NFI

Email Regarding 23(f) Petition, Exhibit E.) For example, NFI filed a petition

before the Third Circuit pursuant to Fed. R. Civ. P. 23(f) in order to seek

interlocutory review of the class certification decision on July 14, 2020. See

Portillo v. National Freight, Inc., No. 20-8029 (3d Cir.). The Third Circuit denied

NFI's petition on August 25, 2020. See id. at Dkt. 8.

Then, in responding to Plaintiffs' draft of their proposed class notice, NFI

sought to add several provisions that were designed to unduly chill participation in

this class action by absent class members. (Fowler Decl. ¶ 7 Exhibit D; NFI's Edits

to Proposed Class Notice ("NFI's Edits"), Exhibit F.)   For example, NFI

attempted to include a warning that class members may have to cover court costs

(despite there being no basis in the law for such a proposition). NFI also sought to

include an improper limitation on the description of the class in the notice based on

a purported release signed by some drivers that NFI did not raise in its class

certification briefing and the validity of which has not been determined. (Fowler

Decl. ¶ 7, Exhibit D; NFI's Edits, Exhibit F.)  Similarly, NFI sought to include the

contact information for NFI's counsel in the notice in an apparent effort to

encourage the class members, who are now represented by Plaintiffs' counsel, to

contact NFI's counsel instead. (Fowler Decl. ¶ 7, Exhibit D; NFI's Edits, Exhibit

F.)

It was not until September 17, 2020 that NFI finally provided a class list.

(Fowler Decl. ¶ 8, Exhibit D; NFI's Class List Email, Exhibit G.) Despite the fact

that Plaintiffs identified at least 135 contractors who met the class definition (Dkt.

148 at 7-12), and this information was relied upon by this court in granting

certification, NFI provided information for only 92 contractors. (Fowler Decl. ¶ 8

Exhibit D.)[2]

---

[2]    Plaintiffs will be moving separately to compel NFI to provide the
information for the remaining individuals so that class notice may issue to them as
well.

Then after a month of negotiating the contents of the proposed class notice, NFI informed Plaintiffs for the first time on October 7, 2020, that it intended to file a motion to amend its Answer (4 years too late) in order to assert counterclaims against approximately forty-three (43) class members who had signed the 2017 version of the independent contractor agreement, because that version of the agreement included an indemnification clause. (Fowler Decl. ¶ 9, Exhibit D; NFI's Counterclaim Email, Exhibit H.) That threat is the retaliatory conduct at issue in this motion. The text of the indemnification provision states as follows, in relevant part:

> …**CONTRACTOR agrees to indemnify and hold CARRIER harmless from all reasonable attorney's fees and litigation expenses CARRIER incurs in defending against any claims, suits, actions, or administrative proceedings brought by CONTRACTOR, CONTRACTOR's owner (if any), or any employees or other personnel engaged by CONTRACTOR to perform services under this Agreement or any third party that allege that CONTRACTOR or any of CONTRACTOR's workers is an employee of CARRIER.**

(2017 Agreement ¶ 15 (f), Exhibit A) (emphasis in original.). By 2017 this case had been pending for two years.

NFI then proposed yet another amended version of the class notice to add an explanation of these counterclaims, stating that "if you signed a 2017 Independent Contractor Operating Agreement, it includes a contractual provision that could impact your legal rights should you participate in this case," and "[i]f you are party to the 2017 Agreement, you are encouraged to read it carefully and consult with an

7

attorney regarding your legal rights before choosing to participate in this case."

(Fowler Decl. ¶ 10, Exhibit D; NFI's Amended Proposed Class Notice at 2-3,

Exhibit I.) Although Plaintiffs object strongly to NFI's right to pursue a

counterclaim in this case, Plaintiffs agreed to the form of notice that was filed at

Dkt. 175-1, which removed NFI's suggestion that the class members – whom

Plaintiffs' counsel now represent – should contact attorneys other than Plaintiffs'

counsel as a predicate to deciding whether to opt out from the class. Plaintiffs

agreed to this version out of concern that the issuance of notice to the class had

become unduly delayed, raising due process considerations for the class members,

and in doing so Plaintiffs reserved the right to raise this matter with the court.

(Fowler Decl. ¶ 11, Exhibit D).

## III.   ARGUMENT

### A. NFI's Proposed Counterclaims for Indemnification Are Unlawful

#### 1.  Employers' Counterclaims for Indemnification Run Afoul of Established Wage and Hour Law and Policy

As an initial matter, allowing NFI to pursue its counterclaims would run

afoul of the very public policies sought to be protected by established wage and

hour law, embodied in statutes such as the NJWPL and the FLSA.  See, e.g.,

Vengurlekar, 220 F.R.D. at 231 (citing Mulford, 334 N.J. Super. at 394)

(explaining that the "purpose of the NJWPL is primarily to protect employees.");

Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 144 (2d Cir. 1999) (describing FLSA's "comprehensive remedial scheme" that was "designed to regulate the conduct of employers for the benefit of employees").

For example, the NJWPL forbids employers from making deductions and withholdings from employees' wages, except under a very limited set of circumstances (not applicable here).  N.J. Stat. 34:11-4.4.  The NJWPL, along with New Jersey's other wage and hour laws, is "social legislation designed to correct abuses in employment."  New Jersey State Hotel-Motel Ass'n v. Male, 105 N.J. Super. 174, 177 (App. Div. 1969).  Due to their remedial and humanitarian purpose, the New Jersey wage laws are applied broadly and may even extend their "protection to a greater number of employees [than the FLSA] ...."  Marx v. Friendly Ice Cream Corp., 380 N.J. Super. 302, 309-10 (App. Div. 2005) (citing the FLSA, 29 U.S.C. § 218(a)).

The broad remedial purpose of this well-established law counsels in favor of a finding that NFI's purported indemnification provision is unenforceable. See Vengurlekar, 220 F.R.D. at 231. In essence, NFI attempts to insulate itself from the consequences of NJWPL claims by shifting its costs of defending itself from NJWPL claims to the very employees who would bring such a claim – an overt attempt to intimidate drivers and dissuade them from participating in this case. The legislative protections enshrined in protective wage statutes like the NJWPL would

disintegrate if an employer who were sued under the NJWPL were permitted to seek indemnification for attorney's fees and other losses arising from the litigation - requiring plaintiffs to indemnify defendants for the costs of litigating a wage claim would deter plaintiffs from bringing suit in the first place, frustrating the entire purpose of the statutes.  See, e.g., Fernandez v. Kinray, Inc., 2014 WL 12778829, at *6-8 (E.D.N.Y. Feb. 5, 2014) (holding in the context of the FLSA that an indemnification provision that would undermine the ability of plaintiffs to bring claims against the defendant contravened the policy undergirding the FLSA).[3]

Under this rationale, courts have routinely barred employers from asserting counterclaims seeking indemnification for their violations of the FLSA. See generally Fernandez, 2014 WL 12778829, at *6(dismissing counterclaim for indemnification); Mori v. El Asset Management, Inc., 2016 WL 859336, at *2 n.2 (S.D.N.Y. Jan. 28, 2016) (dismissing breach of duty counterclaim and noting that a

---

[3]     What is more, generally speaking, counterclaims are routinely dismissed in NJWPL cases. See, e.g., Crespo v. Kismet Executive Limousine Service, Inc., 2018 WL 3599738, at *6 (D.N.J. July 27, 2018) (dismissing counterclaims in NJWPL and FLSA case where the employer alleged the plaintiffs would be unjustly enriched by receiving overtime pay because the independent contractor agreement did not provide for such pay); Delendra v. Marine Transport Logistics Inc., 2013 WL 5503305, at *2-3 (D.N.J. Sept. 30, 2013) (dismissing breach of contract counterclaim in NJWPL case); Martelet v. AVAX Technologies, Inc., 2012 WL 1570964, at *10-11 (E.D. Pa. May 3, 2012) (granting summary judgment in favor of plaintiff on the employer's  counterclaims in a NJWPL case).

"setoff" was not permissible under the FLSA); <u>Galicia v. Tobiko Restaurant, Inc.</u>,

2017 WL 2437260, at *2 (E.D.N.Y. June 3, 2017) (dismissing counterclaims for

malicious prosecution in FLSA case); <u>Primiani v. Vintage 185 Inc.</u>, 2019 WL

486087, at *5 (E.D.N.Y. Feb. 6, 2019) (dismissing counterclaims for breach of the

duty of loyalty in FLSA case); <u>Flores v. Mamma Lombardis of Holbrook, Inc.</u>, 942

F. Supp. 2d 274, 275 (E.D.N.Y. 2013) (granting motion to dismiss counterclaims

against named plaintiffs in FLSA action seeking "contribution" towards potential

damages); <u>Nicholsen v. Feeding Tree Style, Inc.</u>, No. 12 CIV. 6236 JPO, 2014 WL

476355, at *5 (S.D.N.Y. Feb. 6, 2014) (dismissing "breach of fiduciary duty"

counterclaim in FLSA case for failure to state a claim); <u>Local 1035, Int'l Bhd. of

Teamsters v. Pepsi Allied Bottlers, Inc.</u>, 99 F. Supp. 2d 219, 221 (D. Conn. 2000)

(holding that indemnification clause in union contract was void in regard to

plaintiffs' FLSA action, and dismissing indemnification counterclaim under Rule

12(b)(6)).[4]

---

[4]     <u>See also</u> <u>King v. 12 Visual, Inc.</u>, No. 219CV00634FTM60NPM, 2020 WL
588285, at *2 (M.D. Fla. Feb. 6, 2020) (dismissing counterclaims in FLSA action
that would deprive Plaintiffs of "cash in hand" if they were successful in the
action); <u>Nicopior v. Moshi Moshi Palm Grove, LLC</u>, 375 F. Supp. 3d 1278, 1288
(S.D. Fla. 2019) (dismissing counterclaims in FLSA action that would "delay and
interfere with the process of bringing the employer into compliance with the
FLSA's overtime requirements"); <u>Green v. Platinum Restaurants Mid-Am., LLC</u>,
2017 WL 6347964, at *3 (W.D. Ky. Dec. 12, 2017) (dismissing unjust enrichment
counterclaim in FLSA action where "it appears that no law supports Defendant's
counterclaim"); <u>McFeeters v. Brand Plumbing, Inc.</u>, 2016 WL 6581515, at *3 (D.
Kan. Nov. 7, 2016) (dismissing unjust enrichment counterclaim in FLSA case

In Fernandez, the court explained why dismissal of counterclaims is the appropriate remedy, even where it may later be shown that plaintiffs fall outside the protections of the FLSA, either because they are independent contractors or otherwise.  In that case, the defendants argued it was "premature to dismiss the counterclaim as a violation of FLSA policy, since it has not yet been determined whether the FLSA even applies…."  Id. at *6.  The court rejected this argument and dismissed counterclaims similar to those asserted here, "since requiring plaintiffs to indemnify defendants if they lose would contravene the FLSA and NYLL's clear intent to protect plaintiffs' ability to bring suit."  Fernandez, 2014 WL 12778829, at *8.  The court observed the following:

> [I]t is clear that in enacting the FLSA, Congress intended to protect plaintiffs' ability to bring claims—a policy that applies before the parties know whether or not the claim will be successful….  The policy considerations that led Congress to enact the FLSA are implicated when plaintiffs assert claims, not only when plaintiffs are found to have meritorious claims.

Id. at *7.  Similarly, in this case Plaintiffs need not demonstrate that they will be successful on their NJWPL claims in order to invoke the public policy of the statute as grounds for a declaration that NFI's indemnification provision is

---

because "the allowance of counterclaims in a FLSA action "would delay and even subvert the whole [FLSA] process.").

unenforceable and thus that NFI is barred from asserting its threatened

counterclaim.

As courts have long held, "public policy disfavors counterclaims for setoff

and unjust enrichment in FLSA litigation." Saenz v. Rod's Prod. Servs., LLC,

2015 WL 12866986, at *8 (D.N.M. June 23, 2015); Martin v. PepsiAmericas, Inc.,

628 F.3d 738, 741 (5th Cir. 2010) (noting that the Fifth Circuit has held "that set-

offs and counterclaims are inappropriate in any case brought to enforce the FLSA's

minimum wage and overtime provisions"); Perez v. S. Fla. Landscape Maint., Inc.,

2014 WL 293774, at *3 (S.D. Fla. Jan. 23, 2014) (observing that the claim for

setoff would "invariably cause Plaintiff not to receive the overtime payments to

which he was allegedly entitled under the FLSA," and that "this type of set-off is

not an appropriate affirmative defense in a FLSA case"); Saarela v. Union Colony

Protective Servs., Inc., 2014 WL 3408771, at *5 (D. Colo. July 14, 2014)

("...[M]ost courts considering the issue have generally agreed that setoffs and

recoupments are disfavored in FLSA suits.") (internal quotation marks and citation

omitted); Jones v. JGC Dallas LLC, 2012 WL 4119570, at *4 (N.D. Tex. Aug. 17,

2012) ("breach of contract and unjust enrichment counterclaims for set-offs are not

permitted in this FLSA action"), report and recommendation adopted, 2012 WL

4169685 (N.D. Tex. Sept. 19, 2012).

The reason for this rule has been described by the Fifth Circuit:

> The FLSA decrees a minimum unconditional payment and the commands of that Act are not to be vitiated by an employer, either acting alone or through the agency of a federal court…. The only economic feud contemplated by the FLSA involves the employer's obedience to minimum wage and overtime standards. … Set-offs against back pay awards deprive the employee of the 'cash in hand' contemplated by the Act, and are therefore inappropriate in any proceeding brought to enforce the FLSA minimum wage and overtime provisions, whether the suit is initiated by individual employees or by the Secretary of Labor.

Brennan v. Heard, 491 F.2d 1, 4 (5th Cir. 1974).[5]

The Second Circuit has also explicitly held that indemnification claims are not permitted in FLSA litigation.  In Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132 (2d Cir. 1999), the Second Circuit held that there is "no right of contribution or indemnification for employers found liable under the FLSA."  Id. at 143-44.  The court cited four reasons supporting its holding that were "readily apparent":

---

[5]    The only narrow exception to the rule prohibiting set-offs in FLSA cases arises in instances where employers have erroneously paid the employees overtime compensation to which they were not entitled. See Martin v. PepsiAmericas, Inc., 628 F.3d 738, 742 (5th Cir. 2010).  For example, in Singer v. City of Waco, Tex., 324 F.3d 813 (5th Cir. 2003), the court found that because the employer had already paid the overtime the plaintiff employees were owed (albeit during previous pay periods when the plaintiffs were not entitled to the overtime pay), these surplus overtime wages could offset the value of the wages the employees were entitled to in subsequent pay periods.  Id. at 828.  This exception does not apply here because Defendants do not seek to "offset" amounts that they claim were pre-paid to Plaintiffs as overtime wages.  See Jones v. JGC Dallas LLC, 2012 WL 4119570, at *4 (N.D. Tex. Aug. 17, 2012) (declining to apply Singer where the amount "sought as a set-off do[es] not represent wages pre-paid to Plaintiffs or wage obligations already fulfilled"), report and recommendation adopted, 2012 WL 4169685 (N.D. Tex. Sept. 19, 2012).

> First, the text of the FLSA makes no provision for contribution or
> indemnification. Second, the statute was designed to regulate the conduct of
> employers for the benefit of employees, and it cannot therefore be said that
> employers are members of the class for whose benefit the FLSA was
> enacted…. Third, the FLSA has a comprehensive remedial scheme as shown
> by the "express provision for private enforcement in certain carefully
> defined circumstances." Such a comprehensive statute strongly counsels
> against judicially engrafting additional remedies. Fourth, the Act's legislative
> history is silent on a right to contribution or indemnification.

Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 144 (2d Cir. 1999) (internal

citations omitted).  Courts in the Third Circuit and around the country have

reached the same conclusion.  See Berryman v. Newalta Environmental Services,

Inc., 2018 WL 5631169, at * (W.D. Pa. Oct. 31, 2018) ("Although the Third

Circuit has not address[ed] the issue, other courts have uniformly agreed that an

employer found liable under the FLSA has no right to contribution or indemnity

from a third party.") (citing Kaskey v. Osmose Holdings, Inc., 2014 WL 1096149,

at *7 (E.D. Pa. Mar. 20, 2014) (additional citations omitted)); see also Martin v.

Gingerbread House, Inc., 977 F.2d 1405, 1408 (10th Cir.1992) ("a third party

complaint by an employer seeking indemnity from an employee is preempted" by

the FLSA); Lyle v. Food Lion, Inc., 954 F.2d 984, 987 (4th Cir.1992) (court should

not "engraft an indemnity action upon this otherwise comprehensive federal

statute," i.e., the FLSA); LeCompte v. Chrysler Credit Corp., 780 F.2d 1260, 1264

(5th Cir.1986) (same).

The rule from Herman is not limited to common law claims for indemnification; in fact, "[s]ubsequent decisions in this circuit have followed Herman and extended its reasoning to contractual indemnification claims…." Garcia v. Cloister Apt Corp., 2018 WL 1353274, at *2 (S.D.N.Y. Mar. 15, 2018).[6] These courts have noted that "allowing indemnification ... would permit employers to contract away their obligations under the FLSA, a result that flouts the purpose of the statute." Gustafson v. Bell Atlantic Corp., 171 F. Supp. 2d 311, 328 (S.D.N.Y. 2001); see also Goodman v. Port Authority of New York and New Jersey, 850 F. Supp. 2d 363, 388-89 (S.D.N.Y. 2012) ("[A] holding that the indemnification clause is enforceable would indeed mean that employers would have little reason to be concerned over ... [compliance] with the statutorily mandated and unwaivable overtime pay requirements of the FLSA, knowing full well that if they are later found to have violated such requirements, such employers would be totally compensated for any injuries resulting from such action.") (quoting Local 1035, Int'l Bd. Of Teamsters v. Pepsi Allied, 99 F. Supp. 2d 219, 221 (D. Conn. 2000)). Based on this reasoning, courts across the country have rejected indemnity counterclaims, cross claims, and third-party complaints in

---

[6] Indeed, given the reasoning of Herman and the principle that a party may not contract around its obligations imposed by the FLSA, there would be even stronger public policy reasons to bar contractual indemnification claims in FLSA actions.

FLSA cases.  See, e.g., Garcia v. Cloister Apt Corp., No. 16 CV 5542-LTS, 2018

WL 1353274, at *2 (S.D.N.Y. Mar. 15, 2018) ("under Herman and the prevailing

law in this circuit, the [ ] Defendants may not, as a matter of law, sustain an

indemnification cross-claim for liability under the FLSA"); see also Abdul-

Rasheed v. KableLink Comm., LLC, 2013 WL 6182321, at *5 (M.D. Fla. Nov. 25,

2013) (finding that allowing defendant to enforce an indemnity provision in a

misclassification case "would impose a chilling effect that would defeat the

remedial purpose of the FLSA"); Villareal v. El Chile, Inc., 601 F.Supp.2d 1011,

1014-16 (N.D. Ill. Feb. 25, 2009) (dismissing indemnity counterclaim brought by

employer against employee in an FLSA action); Varnell, Struck & Associates, Inc.

v. Lowe's Companies, Inc., 2008 WL 1820830, at *10 (W.D.N.C. Apr. 21, 2008)

("It would indeed be unconscionable for an employer to escape liability for

unlawful labor practices by having the employee agree to indemnify the employer

for FLSA violations" and "to hold otherwise would be to gut the remedial nature of

the FLSA."); Emanuel v. Rolling in the Dough, Inc, 2010 WL 4627661 at *4 (N.D.

Ill. Nov. 2, 2010) ("Every case to consider the issue of indemnification in the

FLSA context has reinforced that to allow employers to seek indemnification from

their employees for FLSA violations would frustrate the very purpose of the

statute.").

Like the FLSA, the NJWPL is remedial in nature; it specifically provides for a private right of action and prohibits agreements that would permit an employer to circumvent the laws protections.  The legislative protections enshrined in this statute would be severely undermined if NFI could simply use its independent contractor agreement to insulate itself from such claims. Plaintiffs therefore ask that this Court join the number of decisions condemning indemnity counterclaims against employees who seek unpaid wages, declare that the indemnification provision is unenforceable, and thus bar NFI from asserting its threatened counterclaims.

### 2.  NFI's Proposed Counterclaims Violate the NJWPL and New Jersey's Policy Against Fee-Shifting

In order to further its broad remedial purpose, the NJWPL contains a strict prohibition on any agreements between an employer and employee to circumvent or waive the protections of the statute, and grants an aggrieved employee a private right of action to assert his or her rights under the law.  N.J. Stat. 34:11-4.7.[7]

---

[7]    This section provides, in full:

It shall be unlawful for any employer to enter into or make any agreement with any employee for the payment of wages of any such employee otherwise than as provided in this act, except to pay wages at shorter intervals than as herein provided, or to pay wages in advance. Every agreement made in violation of this section shall be deemed to be null and void, and the penalties in this act provided may be enforced notwithstanding such agreement; and each and every employee with whom any agreement in

Moreover, as of August 6, 2019, the NJWPL also provides for attorneys' fees and costs to plaintiffs who prevail on their claims but importantly does not provide for fee shifting to prevailing employers.  <u>See</u> N.J. Stat. 34:11-4.10 (". . . . the employee may recover in a civil action the full amount of any wages due, or any wages lost because of any retaliatory action taken in violation of subsection a. of this section, plus an amount of liquidated damages equal to not more than 200 percent of the wages lost or of the wages due, **together with costs and reasonable attorney's fees as are allowed by the court**.") (emphasis added).

Here, permitting NFI to pursue its counterclaims seeking recovery of attorney's fees and costs for defending its drivers' claims would directly contravene the language of the NJWPL. The NJWPL only permits employees to recover attorneys' fees and costs and does <u>**not**</u> afford employers the same right. N.J. Stat. 34:11-4.10. Furthermore Section 34:11-4.7 explicitly prohibits contracting around the protections of the NJWPL, as NFI seeks to do here through its indemnification provision. NFI should not be permitted to violate the plain

---

violation of this section shall be made by any such employer, or the agent or agents thereof, shall have a right of civil action against any such employer for the full amount of his wages in any court of competent jurisdiction in this State.

N.J. Stat. 34:11-4.7.

language of the NJWPL in order to punish the absent class members for
participating in the class action.

Moreover, even apart from this language in the NJWPL, the New Jersey
Supreme Court has held more broadly that contractual indemnification clauses
such as NFI's violate New Jersey public policy when wielded in circumstances
such as this to shift fees and costs to a party in a weaker bargaining position.
Specifically, New Jersey has long had a "public policy against fee-shifting
provisions" in "contracts used by businesses against consumers, individuals, or
other weaker parties." <u>McClure</u>, 2006 WL 182070, at *4 n.3.  The reason for this
hostility to enforcement of fee-shifting provisions by courts is "concern for the
unequal bargaining position of the parties and the possibilities of overreaching,"
<u>id.</u>, as well as a concern that "fee-shifting provisions can deter a litigant from
pursuing a claim." <u>Delta Funding</u>, 189 N.J. at 42.

In <u>Delta Funding</u>, the New Jersey Supreme Court considered an arbitration
agreement that contained a cost-shift provision, where an individual had sued a
mortgage lender asserting violations of the Truth in Lending Act (TILA) and the
New Jersey Consumer Fraud Act (CFA). <u>See</u> <u>id.</u> at 37. The New Jersey Supreme
Court ruled that the arbitration agreement was unconscionable since it contained
the cost-shifting provision, which had the potential to act as a deterrent for
individuals to indicate their statutory rights. <u>See</u> <u>id.</u> at 43; <u>see also</u> <u>Dare v. Freefall</u>

Adventures, 349 N.J. Super. 205, 223 (App. Div. 2002) (contract with provision shifting fees to non-prevailing plaintiff was "void as against public policy" as it would deter the average similar plaintiff from bringing lawsuits "for fear that he may face the retribution of a substantial legal fee").

Allowing NFI to shift its attorneys' fees and costs to these class members would expressly contradict the terms of N.J. Stat. 34:11-4.10, which permits fee-shifting only for prevailing employees, and would violate New Jersey's public policy. As such, NFI should not be permitted to assert its proposed counterclaims.

### B.  NFI's Proposed Counterclaims Constitute Blatant, Unlawful Retaliation

In a classic example of retaliation, NFI has threatened to sue class members unless they decide to opt-out of this class action. NFI should be barred from engaging in such blatant retaliation. In 2019, Section 34:11-4.10(a) of the NJWPL was amended to expressly prohibit employers from retaliating against individuals "because the employee has caused to be instituted or is about to cause to be instituted any proceeding under or related to [the NJWPL] . . . , or because that employee has testified or is about to testify in any proceeding under or relating to the [NJWPL] . . . ." Further:

> [A]n employer taking an adverse action against an employee within ninety days of the employee filing . . . a claim or action being brought by or on behalf of the employee in a court of competent jurisdiction, for a violation of [the NJWPL] shall raise a presumption that the employer's action was taken

21

in retaliation against the employee, which presumption may be rebutted only by clear and convincing evidence that the action was taken for other, permissible, reasons.

N.J. Stat. 34:11-4.10(c). In fact, the NJWPL makes retaliation against a complaining employee a criminal offense. See N.J. Stat. 34:11-4.10(a).

Here, a class has been certified, and NFI has expressed its intention to retaliate against 43 of them by filing a counterclaim against them for indemnification. The assertion of these counterclaims will raise the NJWPL's presumption that the employer's action was taken in order to retaliate, and given the fact that the indemnity provision is **specifically targeted only against drivers who assert misclassification claims** to punish them by shifting NFI's attorneys' fees and costs, there is simply no other explanation than retaliation for asserting such wage claims.

Federal courts have frequently addressed the similar "anti-retaliation" provision of the FLSA, [8] and have routinely held that an employer's counterclaim

---

[8]  In <u>Mitchell v. Robert DeMario Jewelry, Inc.</u>, the Supreme Court explained the critical importance of the FLSA's anti-retaliation provision:

> For weighty practical and other reasons, Congress did not seek to secure compliance with prescribed standards through continuing detailed federal supervision or inspection of payrolls. Rather it chose to rely on information and complaints received from employees seeking to vindicate rights claimed to have been denied.... [I]t needs no argument to show that fear of economic retaliation might often operate to induce aggrieved employees quietly to accept substandard conditions.

361 U.S. 288, 292-93 (1960).

against the employee constitutes actionable retaliation in violation of the Act.[9]

These courts have explained that "groundless counterclaims … against employees

who assert statutory rights are actionable retaliation [ ] because of their *in terrorem*

effect." Torres, 628 F. Supp. 2d at 473 (citing Bill Johnson's Restaurants v.

NLRB, 461 U.S. 731, 740 (1983)).  In Torres, where the defendant asserted a

baseless counterclaim against the plaintiffs, the court reasoned that by

countersuing, the defendant sent the plaintiffs and potential class members "a

strong message that, by initiating and/or maintaining claims against [the

defendant], they would be subject to burdensome countersuits." Id. at 473. As

such, the court granted summary judgment in favor of the plaintiffs and held the

defendant liable for retaliation under the FLSA. See id. at 475.

Likewise, in Poku v. BeavEx, Inc., 2013 WL 5937414, at *1-4 (D.N.J. Nov.

1, 2013), a case nearly identical to this one, the plaintiffs were delivery drivers who

alleged that they were misclassified under the FLSA and sought to dismiss

counterclaims against the defendant for indemnification and to assert a claim for

retaliation. Acknowledging that courts disfavor indemnification counterclaims in

FLSA cases since they chill the ability of employees to vindicate their rights under

---

[9] The FLSA utilizes similar language to the NJWPL, stating that it is unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under [the FLSA]."  29 U.S.C.A. § 215(a)(3).

the statute, the court dismissed the defendant's counterclaim as baseless. See id. at
*2-3. Moreover, the court granted plaintiffs' motion for leave to amend the
Complaint to assert a claim of retaliation, rejecting the defendant's argument that
the filing of the counterclaim could not constitute retaliation. See id. at *4.

Other courts around the country have likewise held counterclaims in FLSA
actions to be actionable as retaliation. See, e.g., Darveau v. Detecon, Inc., 515 F.3d
334, 343 (4th Cir. 2008) (finding employer's lawsuit alleging fraud was filed with
a retaliatory motive and without a reasonable basis in fact or law, and was an
actionable adverse employment action under FLSA); Flores v. Mamma Lombardis
of Holbrook, Inc., 942 F. Supp. 2d 274, 279 (E.D.N.Y. 2013) ("The court disagrees
with Defendants and holds that the filing of a baseless pleading can, under certain
circumstances, constitute adverse employment action sufficient to state a claim for
retaliation."); Beltran v. Brentwood N. Healthcare Ctr., LLC, 426 F. Supp. 2d 827
(N.D. Ill. 2006) ("We recognize that an employer's lawsuit filed with a retaliatory
motive rather than in good faith may constitute an adverse action and provide a
basis for a retaliation claim."); Munroe v. Parts Base, Inc., 2008 WL 4998777, at
*2 (S.D. Fla. Nov. 20, 2008) ("By suing an employee who files charges . . . an
employer can place its employees on notice that anyone who engages in subjecting
himself to the possibility of a burdensome lawsuit.").

NFI's sole basis for the threatened counterclaims against the drivers is their decision to decline to opt-out of this class action alleging that they were misclassified as independent contractors and that NFI took unlawful deductions from their pay. By asserting claims of this nature, NFI no doubt intends to "place its employees on notice that anyone who engages in such conduct [i.e., asserts his or her rights to wages] is subjecting himself to the possibility of a burdensome lawsuit." Bill Johnson's Restaurants, 461 U.S. at 740.  This is precisely the type of retaliation that constitutes a crime under the NJWPL, and this Court should bar such claims from being asserted in order to demonstrate to all employees, including the absent class members, that NFI cannot discriminate against them for their participation in this type of litigation.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs' Motion should be granted. The Court should issue a declaration stating that NFI's indemnification provision is unenforceable and thus enjoin NFI from asserting counterclaims against absent class members on that basis.


Dated: October 28, 2020

                                    Respectfully submitted,
                                    /s/ Camille Fundora Rodriguez
                                    Alexandra Koropey Piazza
                                    NJ Bar No. 010922013

Shanon J. Carson (*pro hac vice*)
Sarah Schalman-Bergen (*pro hac vice*)
Camille Fundora Rodriguez
NJ Bar No. 017642011
Berger Montague PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone:  (215) 875-3000
apiazza@bm.net
crodriguez@bm.net
scarson@bm.net
sschalman-bergen@bm.net

Zachary Rubin
NJ Bar No. 179052015
Harold Lichten (*pro hac vice*)
Thomas Fowler (*pro hac vice*)
Zachary Rubin
NJ Bar No. 179052015
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone: (617) 994-5800
hlichten@llrlaw.com
tfowler@llrlaw.com
zrubin@llrlaw.com

*Attorneys for Plaintiffs*

## CERTICATE OF SERVICE

I hereby certify that on October 28, 2020, a true and correct copy of the

foregoing document was served on all counsel of record electronically via CM/ECF.

/s/ Camille Fundora Rodriguez
Camille Fundora Rodriguez