# EXHIBIT A

# NFI INTERACTIVE LOGISTICS, LLC

# INDEPENDENT CONTRACTOR OPERATING AGREEMENT

Rev. 1/1/17

***THIS AGREEMENT CONTAINS INDEMNIFICATION PROVISIONS, WHICH ARE HIGHLIGHTED IN BOLDFACED UNDERLINED TYPE.***

CONFIDENTIAL
D - 002382

## INDEPENDENT CONTRACTOR OPERATING AGREEMENT

**NFI Interactive Logistics, LLC** , an authorized for-hire interstate motor carrier registered with the Federal Motor Carrier Safety Administration ("FMCSA") of the U.S. Department of Transportation ("DOT"), USDOT No. 1486168 ("CARRIER"), and _____
("CONTRACTOR"), in consideration of the covenants and agreements herein and pursuant to the Federal Leasing Regulations, 49 C.F.R. Part 376, enter into this Independent Contractor Operating Agreement, including any Attachments and Addendums ("Agreement"), effective _____ ___, 20____ ("Effective Date").

### 1. PROVISION OF EQUIPMENT AND SERVICES.

**1(a).** Equipment. During this Agreement, CONTRACTOR shall provide CARRIER professional truck driving services and other incidental transportation related services (collectively, the "Services") and the use of the equipment set forth on the Statement of Lease attached hereto or as supplemented in an Attachment (the "Equipment"). CONTRACTOR represents and warrants that CONTRACTOR is authorized to contract the Equipment and Services to CARRIER.

CONTRACTOR shall be free to replace the vehicle constituting the Equipment with a new vehicle, if each of the CONTRACTOR requirements of this Subsection 1(a) is met and CARRIER furnishes CONTRACTOR with a new receipt covering the vehicle. The substitute vehicle shall constitute the Equipment and be covered as such by this Agreement. Upon termination of this Agreement, CONTRACTOR shall execute a similar receipt for equipment, in the form attached to this Agreement, as the written receipt for the return of the Equipment by CARRIER to CONTRACTOR.

**1(b).** Owner. CONTRACTOR warrants that he/she is the "owner" of the Equipment and has full authority to contract the Equipment and Services to CARRIER. CONTRACTOR hereby leases to CARRIER the Equipment and agrees to use the Equipment, together with drivers and all other necessary labor, which CONTRACTOR shall furnish, to transport, load, and unload freight on behalf of CARRIER, or on behalf of other authorized carriers that sublease the Equipment from CARRIER, as CARRIER shall require from time to time.

**1(c).** Extent of Use of Equipment. CARRIER does not agree to make any minimum use of the Equipment, to use the Equipment at any particular time or location, or to furnish any specified number of loads, pounds of freight, or amounts of revenue to CONTRACTOR or to guarantee any amount of revenue to CONTRACTOR. CONTRACTOR may refuse any specific shipment offered by CARRIER. CONTRACTOR is not prohibited from entering into separate agreements to provide equipment and other professional truck drivers not identified as Equipment above or in an appendix hereto and drivers not used to provide Services under this Agreement, to other motor carriers. Nor is CONTRACTOR, consistent with Attachment F to this Agreement, prohibited from using the Equipment for the pick up, transportation, or delivery of property for more than one motor carrier or any other person or entity.

### 2. DURATION AND TERMINATION OF AGREEMENT.

**2(a).** This Agreement shall be for a period of one (1) year from the date of execution, unless terminated sooner by either party. This Agreement may be terminated at any time for any reason upon thirty (30) days' prior written notice to that effect to the other party. The term of this Agreement may be extended by execution of an amendment or addendum executed by both parties hereto or by the entering into of a new agreement.

**2(b).** Notwithstanding anything to the contrary in this Agreement, in the event of (1) a party's engaging in, or attempting, conspiring, or threatening to engage in, any act or omission that would constitute a felony or intentional tort, pursuant to Section 6 of this Agreement; (2) CONTRACTOR's, or CONTRACTOR's driver's or other workers', violation of, or failure to fully adhere to and perform, the requirements of (A) any customer of CARRIER to the extent provided by Section 6(g) of this Agreement, (B) any applicable federal, state, local, and foreign authorities, including but not limited to DOT, state, provincial, or local highway safety, vehicle inspection, vehicle

D - 002383

maintenance, traffic, road, truck size-and-weight, hazardous materials transportation, cargo security, or other laws and regulations ("Applicable Law"), (C) CARRIER's operating authorities, or (D) CARRIER Policies and Procedures, all pursuant to Sections 6(b) and (f) of this Agreement; (3) CONTRACTOR's, or CONTRACTOR's driver's or other workers', involvement in an "accident," as that term is defined by FMCSA in 49 C.F.R. § 390.5, pursuant to Section 6(f)(1) of this Agreement; (4) CONTRACTOR's failure to report an accident pursuant to Section 10 of this Agreement; or (5) any other material breach of this Agreement by either party, the other party may elect to terminate this Agreement by giving immediate oral notice (but only if the other party is reachable in person or by telephone), followed by written, notice of termination to the breaching party. In addition, Section 18(f)(3) of this Agreement provides, among other things, that either party may unilaterally terminate this Agreement on one day's notice if and when an initial decision is issued by a court or administrative agency reclassifying CONTRACTOR from independent-contractor to employee status.

**3.    EXCLUSIVE USE.**  CARRIER shall have exclusive possession, control, and use of the Equipment, and shall assume complete responsibility for the operation of the Equipment, for the duration of this Agreement. CONTRACTOR may operate the Equipment for another motor carrier or entity during this Agreement only with the prior written consent of CARRIER only if done under a sublease between CARRIER and the other authorized carrier (including CONTRACTOR, if CONTRACTOR has the requisite motor carrier registration/operating authority(ies) and insurance) pursuant to 49 C.F.R. § 376.12(c)(2), as applicable and the terms of Attachment G of this Agreement. CARRIER shall not sublease the Equipment to another carrier without CONTRACTOR's prior written consent (which consent shall not be unreasonably withheld). CARRIER shall assume complete responsibility for the operation of the Equipment for the duration of this Agreement except when the Equipment is under sublease by CARRIER to another authorized carrier or used by CONTRACTOR in violation of this Agreement. Any sublease shall state that the sublessee-carrier shall have exclusive possession, control, and use of the Equipment, and shall assume complete responsibility for the operation of the Equipment, for the duration of the sublease. The foregoing declarations are made solely to conform to FMCSA regulations and shall not be used for any other purposes, including any attempt to classify CONTRACTOR as an employee of CARRIER. Nothing in the provisions required by 49 C.F.R. § 376.12(c)(1) is intended to affect whether CONTRACTOR or CONTRACTOR's drivers are an independent contractor or an employee of CARRIER. As provided by 49 C.F.R. § 376.12(c)(4), "an independent contractor relationship may exist when a carrier complies with 49 U.S.C. § 14102 and attendant administrative requirements."

**4.    EQUIPMENT RECEIPTS.**  Upon taking possession of the Equipment, CARRIER shall furnish CONTRACTOR with a receipt, in the form set forth as Appendix 1 hereto, identifying the Equipment and stating the date and time when possession is taken by CARRIER. When CARRIER surrenders possession of the Equipment, CONTRACTOR shall furnish a receipt to CARRIER in the form set forth as Appendix 1 hereto identifying the Equipment and the date and time when possession thereof was returned to CONTRACTOR. The receipts required by this Section may be transmitted to the other party by hand, mail, overnight delivery, fax, or other means of communication. CARRIER shall maintain those records regarding the Equipment required by 49 C.F.R. § 376.11(d).

**5.    IDENTIFICATION OF EQUIPMENT.**  CARRIER shall furnish CONTRACTOR all identification devices, placards, and other materials required to identify the Equipment, and CONTRACTOR agrees to affix, or permit CARRIER at CARRIER's expense to affix, such identification to the Equipment in the manner required by law.    CONTRACTOR shall first, at CONTRACTOR's sole costs and expense, remove any paint, decals, or other items that, in CARRIER's reasonable judgment, would interfere with such identification.  Upon termination of this Agreement or any other time the Equipment is being operated on behalf of any other carrier or shipper or by CONTRACTOR on his own behalf pursuant to Attachment G, CONTRACTOR shall immediately, at CONTRACTOR's sole costs and expense, remove, paint over, or, in the case of operations under Attachment G, completely cover over, all of CARRIER's identification.  At no time during this Agreement shall CONTRACTOR place any carrier identification, paint, artwork, logo, or design upon the Equipment, except that of CARRIER, without CARRIER's prior written consent pursuant to **Attachment G** or otherwise (which consent shall not be unreasonably withheld).

**6.    COMPLIANCE. WITH LEGAL AND CUSTOMER REQUIREMENTS.**  Neither CONTRACTOR nor CARRIER shall engage in, or attempt, conspire, or threaten to engage in, any act or omission that would constitute a felony or intentional tort, whether or not relating to or arising out of

CONFIDENTIAL                                                                                      D - 002384

operations under this Agreement. In addition, CONTRACTOR recognizes that CARRIER's separate and distinct business of providing motor carrier freight transportation service to the public is subject to the requirements of CARRIER's customers and to regulation by the federal government acting through DOT, and by various other federal, state, local, and foreign authorities. CONTRACTOR hereby acknowledges that he/she possesses full and complete understanding and knowledge of the applicable requirements of all these authorities, including but not limited to DOT (including FMCSA's CSA Program,), state, provincial, or local highway safety, vehicle inspection, vehicle maintenance, traffic, road, truck size-and-weight, hazardous materials transportation, cargo security, and all Applicable Laws, and of all customer requirements provided to CONTRACTOR in writing. CONTRACTOR shall adhere to the following provisions of this Agreement to aid CARRIER in discharging CARRIER's legal duties and customer-service responsibilities:

**6(a).** Maintenance and Inspection. CONTRACTOR shall equip and maintain the Equipment in accordance with all applicable government regulations, including but not limited to ensuring its systematic repair and maintenance and keeping it in compliance with all Applicable Laws, and all of CARRIER's safety and equipment maintenance policies. In order to ensure compliance with all such requirements. To facilitate CARRIER's compliance with the inspection and maintenance requirements imposed on motor carriers by the Federal Motor Carrier Safety Regulations:

**6(a)(1).** At the start of this Agreement, CONTRACTOR shall make the Equipment immediately available to CARRIER for a full DOT inspection pursuant to 49 C.F.R. § 396.17 at CARRIER'S expense, at a maintenance facility operated or approved by CARRIER and shall have any necessary maintenance or repairs done at CONTRACTOR's sole cost and expense.

**6(a)(2).** During the term of this Agreement, CONTRACTOR shall make the Equipment available to CARRIER at least every 120 days beginning with the inspection required under Section 6(a)(1) above for a full DOT inspection pursuant to 49 C.F.R. § 396.17, at CONTRACTOR's expense, at a CARRIER-operated or approved maintenance facility upon reasonable request by CARRIER.

**6(a)(3).** During the term of this Agreement, CONTRACTOR shall keep and maintain, or cause to be kept and maintained, systematic records of the repair and maintenance of the Equipment, and shall, when requested by CARRIER, promptly forward to CARRIER all inspection, repair, or maintenance records requested. CONTRACTOR shall provide CARRIER with a copy of the Annual Inspection report upon completion of such inspection.

**6(b).** Drivers.

**6(b)(1).** In General. CONTRACTOR shall provide competent professional drivers who meet CARRIER's minimum driver qualification standards (part of CARRIER Policies and Procedures), all driver standards found in the Federal Motor Carrier Safety Regulations, and any other Applicable Law. As part of the driver qualification process, CONTRACTOR and CONTRACTOR's drivers shall authorize CARRIER to access applicable driver files, Driver Safety Measurement System ("DSMS") safety scores, and any other driver data or information available as part of FMCSA's CSA Driver Information Resource System ("DIRS"), both during the qualification process and at any time thereafter. Any driver who CONTRACTOR furnishes other than CONTRACTOR shall be paid and otherwise treated by CONTRACTOR as CONTRACTOR's employee. CARRIER shall have the right to disqualify any driver provided by CONTRACTOR (including CONTRACTOR) who is found to be unsafe, unqualified, unfit, uninsurable, or marginal, pursuant to federal or state law or the criteria established by the FMCSA's CSA DIRS, in violation of CARRIER's minimum qualification standards, or in violation of any requirements of CARRIER's customers (to the extent provided in Section 6(g)), as all may be amended from time to time. It is agreed that drivers with a recent history of accidents, traffic convictions and/or serious traffic violations or offenses will not meet CARRIER's minimum qualification standards. Upon a driver's disqualification by CARRIER, CONTRACTOR shall be obligated to furnish another competent, reliable and qualified professional driver that meets the minimum qualification

standards set forth by CARRIER. Whether or not following the disqualification of a driver, CONTRACTOR shall be free, at any time during the term of this Agreement, to hire a substitute or additional driver or drivers who, upon being declared qualified by CARRIER under the above minimum driver qualification standards, may begin operating under CONTRACTOR's direction and control in performing some or all of CONTRACTOR's obligations under this Agreement.

**6(b)(2).** TWIC Requirement. CONTRACTOR shall ensure that each of CONTRACTOR's drivers obtains a Transportation Worker Identification Credential ("TWIC") from the Transportation Security Administration of the U.S. Department of Homeland Security if necessary for CONTRACTOR to access ports or other locations in connection with services under this Agreement. If a CONTRACTOR's driver lacks a TWIC when dispatched by CARRIER to make a pickup or delivery at a port and therefore needs a suitably-credentialed escort, CONTRACTOR shall pay and be solely responsible for the fee charged by the escort.

**6(c).** Medical Examinations. CONTRACTOR acknowledges that DOT requires all drivers to undergo a complete medical examination prior to being allowed to drive, in any capacity whatsoever, in CARRIER's motor carrier services. The examination shall be performed and shall include testing for use of controlled substances and alcohol. Drivers may be required to undergo follow-up examinations, from time to time, in accordance with the requirements of 49 C.F.R. §§ 391.41 et seq. Additionally, if in the judgment of CARRIER a further medical examination appears warranted, such examination shall occur. CARRIER shall bear the expense of the initial medical examinations for CONTRACTOR and CONTRACTOR's drivers; CONTRACTOR shall bear the costs of all subsequent medical examinations.

**6(d).** Drug and Alcohol Testing. CONTRACTOR and CONTRACTOR's drivers shall, as required by 49 C.F.R. § 382.103, comply with CARRIER's Drug and Alcohol Policy, including participation in CARRIER's random drug and alcohol testing program, and any addendums or revisions thereto. Any violation of CARRIER's Drug and Alcohol Policy or positive test for drugs or alcohol shall immediately disqualify CONTRACTOR's driver. CARRIER shall bear the costs of all initial physicals and drug and alcohol tests for CONTRACTOR and CONTRACTOR's drivers; CONTRACTOR shall bear the costs of all subsequent physicals and drug and alcohol tests.

**6(e).** Paperwork Requirements. CONTRACTOR shall submit to CARRIER, on a timely basis, all log sheets and supporting documents (including original toll receipts for CARRIER's reproduction), physical examination certificates, accident reports, vehicle inspection sheets, annual review, bills of lading, trip reports, overweight or other citations, and any other required data, documents, or reports, including any documentary evidence that CARRIER requests proving CONTRACTOR has paid all taxes or other similar fees legally due and owing to any governmental body. CONTRACTOR agrees that all bills of lading, waybills, freight bills, manifests, or other papers identifying the property carried on the Equipment shall be those of CARRIER, or as authorized by CARRIER, and shall indicate that the property transported is under the responsibility of CARRIER or pursuant to Attachment G, another entity.

**6(f).** **Safe and Legal Operations.**

**6(f)(1).** CONTRACTOR's Workers. CONTRACTOR shall ensure that CONTRACTOR and all of CONTRACTOR's drivers or other workers CONTRACTOR furnishes shall (A) drive or otherwise perform the Services in a safe and prudent manner at all times so as to avoid endangering the public, the driver, and/or the property being transported and other property of any customer; (B) adhere to and perform the terms of this Agreement, the requirements of all Applicable Law, CARRIER's operating authorities, and, conditioned only upon Subsection 6(f)(1)(A), all customer requirements (to the extent provided under Section 6(g)), and CARRIER Policies and Procedures; and (C) not be involved in an "accident" that, in CARRIER's reasonable judgment, was "preventable" by CONTRACTOR's driver, where "accident" and "preventable" carry the meanings assigned to those terms respectively by FMCSA.

CONFIDENTIAL

**6(f)(2).** CSA Compliance. CONTRACTOR, and any drivers of CONTRACTOR, shall at all times meet FMCSA's Compliance, Safety, Accountability ("CSA") safety standards sufficient to enable CARRIER to (a) achieve and maintain a "fit" or similar rating that enables CARRIER to operate without FMCSA intervention or restriction pertaining to any of the seven safety evaluation areas measured by CSA ("BASICs"); (b) obtain insurance coverage without increased costs associated with driver ratings or other such driver measurements or qualifications pertaining to drivers under CSA; and (c) be and remain competitive with similarly situated carriers with regard to quality of driver safety as measured under CSA. CONTRACTOR shall notify CARRIER in writing within two (2) business days of receiving notification from the FMCSA that CONTRACTOR or any of CONTRACTOR's drivers have been deemed "unfit" or "marginal" based on their safety, inspection, and compliance performance.

**6(g).** Customer Requirements. CONTRACTOR shall adhere to and perform, with respect to each shipment offered by CARRIER under this Agreement, all service standards and other requirements of CARRIER's customers that have been furnished to CONTRACTOR in writing, in hard-copy or electronic form, in advance of the shipment and that may reasonably be adhered to and performed without violating Applicable Law or other CARRIER Policies and Procedures or endangering the public, CONTRACTOR's driver, and/or the property being transported or other property of any customer. If CARRIER's customer conditions CONTRACTOR's driver's access to facilities or freight upon the driver's passing the customer's own drug or alcohol tests or upon CONTRACTOR's or CONTRACTOR's drivers' meeting other personal, operational, or vehicular standards not imposed by Applicable Law, other CARRIER Policies and Procedures, or this Agreement, CONTRACTOR shall be free (and shall incur no CARRIER sanction as a result thereof) to reject the tests and/or standards and to refuse CARRIER's offer of the customer's shipment.

**6(h).** Passenger Authorization. In accordance with 49 C.F.R. § 392.60(a), CONTRACTOR shall not allow any passengers to ride in the Equipment unless CARRIER authorizes it in writing in advance. Before CARRIER will give such authorization, CONTRACTOR, CONTRACTOR's driver, AND the passenger requesting authorization shall sign and submit to CARRIER a fully executed CARRIER Passenger Authorization & Release of Liability form. CONTRACTOR agrees not to permit any passenger to operate or be in charge of the Equipment at any time for any purpose whatsoever, or to be outside the truck cab during loading or unloading.

**7.** **CONTRACTOR'S RESPONSIBILITIES.** Subject only to regulatory mandates, related CARRIER policies and customer requirements, it shall be the sole responsibility of CONTRACTOR to determine the manner and means of performing all of CONTRACTOR's Services under this Agreement, including, but not limited to:

**7(a).** Workers. Selecting, setting the compensation, hours, and working conditions of, adjusting any grievances of, and supervising, training, disciplining, and firing all drivers (who shall be at least 23 years of age), drivers' helpers, and other workers necessary for the performance of CONTRACTOR's obligations under this Agreement; provided that CONTRACTOR shall ensure that all such drivers and other workers comply with the terms of the AGREEMENT, including the requirements of safe operations and compliance with CARRIER's safety policies and procedures while operating the Equipment on CONTRACTOR's behalf. No person who CONTRACTOR may engage shall be considered an employee of CARRIER. CONTRACTOR alone shall pay any employment expenses for CONTRACTOR's workers, including but not limited to unemployment insurance, workers' compensation insurance (or, if CONTRACTOR prefers, occupational accident insurance coverage pursuant to Section 2(b)(1) of **Attachment C** where both state law allows and CARRIER approves), federal, state and local employment taxes, and all other benefits and pensions for CONTRACTOR and CONTRACTOR's drivers, drivers' helpers, and other workers.

**7(b).** Equipment. Selecting, purchasing, and financing the Equipment and deciding when,

where, and how maintenance and repairs are to be performed on the Equipment.

**7(c).** Routes and Completion of Performance. Selecting all routes (taking into account customer or delivery requirements), refueling stops, and time and place of rest stops; provided that to meet customers' demands, CONTRACTOR agrees to make timely and safe deliveries of all loads, and also agrees to promptly notify CARRIER when delivery has been made or when delivery will be delayed for any reason.  Should CONTRACTOR, during or upon termination of this AGREEMENT, for any reason fail to complete delivery of a load CONTRACTOR accepted, CARRIER is hereby authorized to arrange for completion of such trip at CONTRACTOR's sole cost and expense. CONTRACTOR agrees to reimburse CARRIER for any expense arising out of completion of such trip and to pay CARRIER any damages for which CARRIER may be liable to the shipper or others arising out of CONTRACTOR's failure to complete such trip.

**7(d).** Loading. Loading and unloading freight onto and from the Equipment (if the shipper or consignee does not assume such responsibilities), with no additional compensation for this service, except as set forth in **Attachment A** hereto.

**7(e).** Reporting. Reporting all accidents, claims, losses, damages, shortages, over-weights, or overages to CARRIER immediately, and furnishing CARRIER with all written reports, affidavits, or other assistance as may be necessary to investigate, settle or adjudicate such matters. CARRIER shall retain the exclusive right to determine the disposition of any such proceeding by way of settlement, satisfaction of judgment, or appeal through the appropriate administrative agency and/or court.

**8.** **CONTRACTOR's EXPENSES.** CONTRACTOR shall pay, and agrees to be solely responsible for, all operating, maintenance, and other expenses in connection with the operation of the Equipment, as follows:

**8(a).** Operating Expenses. CONTRACTOR shall, at CONTRACTOR's sole cost and expense, provide the Equipment to CARRIER ready to operate and fully roadworthy, and shall furnish all lubricants, fuel, tires (including changing or repairing tires), parts, supplies, equipment, and repairs necessary for the safe and efficient operation and maintenance of the Equipment.  Except as otherwise provided hereunder, CONTRACTOR shall pay all expenses incident to the operation of the Equipment, including, but not limited to, fuel and fuel taxes; weight tickets; ferry, bridge, tunnel, and road tolls fares; unless otherwise agreed to by Contractor, registration fees and base plates (and any unused portions of such plates); detention and accessorial charges not collected by CARRIER because of CONTRACTOR's failure to provide the required documentation; maintenance and repair costs; wages and remuneration of operators, drivers, and helpers, including, but not limited to, overtime and bonuses; CONTRACTOR's drivers' or other workers' wages, workers' compensation premiums, unemployment insurance, social security payments or other similar insurance, taxes, or employee benefits; Federal Highway Heavy Vehicle Use Tax; and state or local axle, weight, mileage, property or indefinite-situs, and other taxes, licenses, permits (including International Fuel Tax Agreement ("IFTA") fuel tax permits), fees (including Unified Carrier Registration fees), charges, assessments, or exactions relating to the Equipment.

**8(b).** Fines and Penalties. Except as otherwise provided in Subsection (c), CONTRACTOR or CONTRACTOR's drivers (as professional drivers engaged in a separate and distinct profession) shall pay all fines and penalties arising out of or in connection with the use of such Equipment, that are imposed for violation of any law or regulation by any states, provinces, or localities within which CONTRACTOR operates, or by DOT or the Surface Transportation Board, and that result, at least partially, from the acts or omissions of CONTRACTOR or CONTRACTOR's drivers.  CONTRACTOR shall notify CARRIER immediately of any such violation.

**8(c).** Overweight and Overdimensional Shipments. CONTRACTOR or CONTRACTOR's drivers (as professional drivers engaged in a separate and distinct profession) shall have the duty to determine that all shipments are in compliance with the size-and-weight laws of the states within which the Equipment will travel under this Agreement and, before commencing the haul, to notify CARRIER if the Equipment is overweight or in need of permits.  Except when the violation results

CONFIDENTIAL

from the acts or omissions of CONTRACTOR, CARRIER shall assume the risks and costs of fines for overweight and oversize trailers when the trailers are preloaded, sealed, or the load is containerized, or when the trailer or lading is otherwise outside of CONTRACTOR's control, and for improperly permitted overdimensional and overweight loads, CARRIER shall reimburse CONTRACTOR for any fines paid by CONTRACTOR provided that CONTRACTOR shall be solely responsible for any costs or penalties due to CONTRACTOR's failure to weigh each shipment or to notify CARRIER that the Equipment is overweight or in need of permits.

**8(d).** Fuel Tax and Mileage Tax Reporting. If CONTRACTOR elects, by so indicating in Section 1(b)(2) of **Attachment B**, or an addendum, to this AGREEMENT, to obtain CONTRACTOR's own IFTA Fuel Tax Permit and perform CONTRACTOR's own fuel and mileage tax reporting, CONTRACTOR shall be solely responsible for calculating, reporting, and paying all fuel taxes owed for the operation of the Equipment; and shall indemnify, defend, and hold CARRIER harmless against all claims arising out of or relating to such fuel tax reporting and payment. If CONTRACTOR does not so elect, CONTRACTOR hereby agrees that:

> **8(d)(1).** To facilitate the parties' compliance with the various states' tax reporting and payment laws (which generally hold the motor carrier liable if an independent vehicle operator performing transportation services on the carrier's behalf fails to make the required tax payments), CARRIER shall be deemed the reporting entity with respect to the Equipment and the fuel consumed by the Equipment. In such event, CARRIER shall compute monthly and submit quarterly, in CONTRACTOR's name as indicated herein, all the applicable reports and payments of fuel taxes required of it by the taxing bodies and authorities of the appropriate states, provinces, and other governmental bodies with respect to the Equipment operated under the AGREEMENT. To assist in CARRIER's computing and payment of fuel taxes, it shall issue CONTRACTOR a limited-purpose credit and/or debit card issued by a third-party financial-services company and made available by CARRIER ("CARRIER Fuel Card") that CONTRACTOR may use for fuel purchases. CONTRACTOR and CONTRACTOR's drivers are free not to use CARRIER's Fuel Card but, to the extent they choose not to, CONTRACTOR shall provide CARRIER promptly with all properly completed driver logs, original fuel receipts (each to be submitted with the corresponding log indicating the fuel purchase for which the receipt was obtained), original toll receipts, and an accurate accounting of all fuel purchases and miles traveled by state.

> **8(d)(2).** CARRIER shall (1) deduct quarterly from CONTRACTOR's Settlement Compensation in accordance with **Attachment B** any net fuel use tax owed at that time with respect to CONTRACTOR's operations in all taxing jurisdictions combined or (2) credit quarterly to CONTRACTOR's Settlement Compensation any net fuel use tax credit or refund due CONTRACTOR at that time with respect to CONTRACTOR's operations in all taxing jurisdictions combined. CARRIER shall ensure that CONTRACTOR receives, at least quarterly, summaries of credits and debits for fuel taxes on a state-by-state basis either on CONTRACTOR's weekly Settlement Statements or through separate accountings, at CARRIER's option.

> **8(d)(3).** Ordinarily CARRIER shall compute CONTRACTOR's fuel use taxes based on fleet-wide data taken from the Mobile Communications System to derive an average miles-per-gallon rate for the entire fleet that will be applied to CONTRACTOR. If, however, CONTRACTOR fails to provide CARRIER complete and accurate fuel-tax-related records, as required by the second sentence of this paragraph, in time for CARRIER's computation, on the seventh (7th) day of each month, of CARRIER's fuel and mileage tax reports and payments for the preceding month, CARRIER shall compute CONTRACTOR's fuel use taxes based on total miles dispatched by CARRIER and a five (5) miles-per-gallon rate.

**8(e).** Fuel Purchases. If CONTRACTOR elects to purchase fuel from CARRIER's bulk-fuel facilities or, using a CARRIER Fuel Card, from third-party fuel vendors, CONTRACTOR hereby authorizes CARRIER to deduct such purchases from CONTRACTOR's Settlement Compensation on the terms set forth under "Fuel Purchases" in **Attachment B**.

CONFIDENTIAL

**8(f).**   Base Plate and Permits.   Responsibility for obtaining permits is set forth in **Attachment B**. CONTRACTOR shall properly display on or retain in (whichever is required by law) the Equipment, the license base plate and permits necessary to operate the Equipment lawfully on CARRIER's behalf. As an incentive for CONTRACTOR to sign on with CARRIER, CARRIER shall acquire or reimburse CONTRACTOR for the license base plate for the first twelve months CONTRACTOR performs services for CARRIER under this Agreement or predecessor agreements. If after such initial twelve-month period CONTRACTOR chooses to have CARRIER obtain the base plate and permits, and accordingly deduct the expense from CONTRACTOR's Voluntary License Plate Reserve Account established pursuant to Attachment D-1 and if necessary CONTRACTOR's Settlement Compensation, CONTRACTOR shall so indicate by so designating in Section 1 of **Attachment B**.

**8(g).**   Communications Equipment.   For safety and customer-service purposes, CONTRACTOR shall obtain, maintain in a fully-functioning condition, and carry at all times while operating the Equipment in CARRIER's service – and ensure that all of CONTRACTOR's drivers do the same – a wireless mobile telephone and maintain a corresponding contract for nationwide wireless telephone service, all at CONTRACTOR's sole cost and expense, and shall supply to CARRIER in the signature block of this Agreement the telephone number(s) by which to reach the mobile telephone. CONTRACTOR shall furnish CARRIER a list of the mobile phone numbers of all of CONTRACTOR's drivers, and immediately update the list in a written notification to CARRIER whenever the drivers or numbers change. In addition, to serve CARRIER's Customers' demands and help fulfill government highway safety requirements, including CARRIER's compliance with FMCSA hours-of-service regulations with respect to drivers of the Equipment, CONTRACTOR shall, at CONTRACTOR's sole cost and expense, obtain, install, and maintain in an operable condition in each unit of Equipment communications, tracking, and electronic logging equipment that is technically and functionally compatible with the Mobile Communications System utilized by CARRIER. Alternatively, CONTRACTOR may elect to rent such equipment from CARRIER. In any event, CONTRACTOR hereby authorizes CARRIER to deduct from his/her Settlement Compensation and/or Escrow Fund a messaging and usage charge (with no mark-up or administrative fee to CARRIER) pursuant to **Attachment E**. **CONTRACTOR shall ensure that CONTRACTOR's drivers do not operate the voice, data, texting, or other features of any mobile phone or other communications device or system while driving, except in a health, safety, or security emergency. IN ADDITION, CONTRACTOR AGREES THAT CONTRACTOR AND/OR CONTRACTOR'S DRIVERS WILL COMPLY WITH ANY AND ALL APPLICABLE LAWS REGARDING USE OF MOBILE TECHNOLOGY WHILE OPERATING THE EQUIPMENT. CONTRACTOR FURTHER ACKNOWLEDGES THAT VIOLATION OF APPLICABLE LAWS, RULES, REGULATIONS, OR ORDINANCES REGARDING USE OF MOBILE TECHNOLOGY WHILE OPERATING THE EQUIPMENT MAY TRIGGER OBLIGATIONS UNDER THIS AGREEMENT, INCLUDING, BUT NOT LIMITED TO, HOLD HARMLESS AND INDEMNITY OBLIGATIONS. IN ADDITION TO THE FOREGOING, FAILURE TO COMPLY WITH SUCH PROHIBITIONS OR LIMITATIONS MAY RESULT IN DISQUALIFICATION OF THE DRIVER INVOLVED AND/OR TERMINATION OF THIS AGREEMENT.**

**9.**   **GROSS COMPENSATION, SETTLEMENT PERIOD AND DOCUMENT REVIEW..**

**9(a).**   CONTRACTOR's gross compensation shall be as set forth in Attachment A, and this gross compensation shall constitute the total compensation for the use of the Equipment and for everything furnished, provided, done by, or required of CONTRACTOR in connection with this Agreement, including but not limited to provision of all Services, driving of the Equipment and all non-driving activities such as conducting pre- and post-trip inspections of the Equipment, waiting to load or unload (detention), loading or unloading if required, fueling, repairing and maintaining the Equipment, hooking and unhooking empty trailers, preparing logbooks and other paperwork, and other activities and services.   **As indicated in Sections 8 and 12 of this Agreement, CONTRACTOR – as an independent contractor, not an employee – agrees to pay all of CONTRACTOR's operating expenses (including but not limited to those that CARRIER initially advances and later charges back to CONTRACTOR) out of the gross compensation provided under this Section and Attachment A and any other CONTRACTOR moneys. Under no circumstances shall CARRIER be responsible for any such operating expenses.**

**9(b).**      CARRIER shall pay the required compensation to CONTRACTOR within fifteen (15) calendar days after submission to CARRIER of properly-completed driver logs required by DOT, all cash-on-delivery ("C.O.D.") payments from shippers, and those documents necessary for CARRIER to secure payment from the shipper (collectively "Trip Documents"). In addition, but not as a condition of settlement and payment, CONTRACTOR shall, after completion of each trip in the service of CARRIER, submit to CARRIER all fuel-purchase receipts; any mileage reports or damage reports; state or federal inspection reports; accident reports; driver daily vehicle condition reports; weight slips; trip manifests; toll receipts; detention documents; expense tickets, including receipts for tolls reimbursable pursuant to **Attachment A;** any other reports required by governmental regulation; and any other reports reasonably requested by CARRIER. To expedite CARRIER reimbursement, CONTRACTOR is encouraged, but not required, to include expense receipts for all expenses authorized by CARRIER in Trip Documents.

**9(c).**      At each weekly settlement, CARRIER shall pay CONTRACTOR any compensation due under **Attachment A** – less any charge-backs and other deductions under **Attachments B or C**, or other provisions or Attachments of this Agreement, plus any other amounts owed to CONTRACTOR by CARRIER (together referred to throughout this Agreement as "Settlement Compensation").

**9(d).**      CONTRACTOR shall be permitted to examine those portions of documents from which rates and charges are computed at CARRIER's main headquarters during normal business hours.

**9(e).**      Upon termination of this Agreement, as a condition precedent to CARRIER's final payment of Settlement Compensation, CONTRACTOR shall remove from the Equipment, and return to CARRIER, all Equipment identification devices of CARRIER and return all CARRIER equipment and Trailers. If the identification devices have been lost or stolen, a letter from CONTRACTOR certifying the removal of such devices from the Equipment shall satisfy this requirement.

**10.**      **CRASHES, ACCIDENTS, INCIDENTS, AND CARGO CLAIMS.** CONTRACTOR shall immediately report to CARRIER cargo claims, including all shortages, overages, or other exceptions to the cargo, any crash, accident, incident, potential or actual claim, bodily injuries, losses or damages (including to cargo and to any container, chassis, trailer, or tires provided by CARRIER or CARRIER's customers), shortages, over-weights, or overages to CARRIER involving CONTRACTOR's operations under this Agreement. If any such occurrence is not reported immediately to CARRIER, CONTRACTOR (a) shall risk disqualification of CONTRACTOR's driver (including CONTRACTOR, if a driver) and termination of this Agreement, and (b) shall reimburse CARRIER for all expense incurred as a result of the delay in reporting. CONTRACTOR and CONTRACTOR's drivers shall cooperate fully with CARRIER with respect to any claim, legal action, regulatory hearing or other similar proceeding arising from the operation of the Equipment, the relationship created by this Agreement or the Services performed hereunder. CONTRACTOR shall, upon CARRIER's request and at CONTRACTOR's sole cost and expense, provide written reports or affidavits, attend hearings and trials and assist in securing evidence or obtaining the attendance of witnesses. CONTRACTOR shall provide CARRIER with any assistance as may be necessary for CARRIER or CARRIER's representatives or insurers to investigate, settle or litigate any crash, accident, incident, claim, or potential claim by or against CARRIER.

**11.**      **PURCHASES AND RENTALS FROM CARRIER.** CONTRACTOR is not required to purchase or rent any products, equipment or services from CARRIER as a condition of entering into this Agreement. However, if CONTRACTOR is party to an equipment purchase or rental contract which authorizes CARRIER to make deductions from CONTRACTOR's Settlement Compensation, the terms of such contract shall be specified in an attachment to this Agreement.

**12.**      **ADVANCES, CHARGE-BACKS, AND OTHER DEDUCTIONS.** CONTRACTOR hereby authorizes CARRIER to deduct from CONTRACTOR's compensation at the time of settlement any expenses, advances, Escrow-Fund contributions, taxes, fees, fines, penalties, damages, losses, and other amounts paid, owed, or incurred by CARRIER, or that CONTRACTOR owes to a third party under a purchase or rental contract, that, under this Agreement, CONTRACTOR is obligated to bear. CONTRACTOR

CONFIDENTIAL                                                                                                                          D - 002391

shall never open an account in CARRIER's name, or charge any amounts to CARRIER's account, without CARRIER's express permission in advance, and CONTRACTOR and CARRIER shall not incur or authorize any other debts in the name of the other. When CONTRACTOR does charge amounts to CARRIER, whether with or without CARRIER authorization, CONTRACTOR hereby authorizes CARRIER to deduct from CONTRACTOR's Settlement Compensation amounts equal to such charges.

      **13.**    **USE OF CARRIER's TRAILER.** With respect to any trailer ("CARRIER's Trailer") provided by CARRIER for CONTRACTOR's use:

      **13(a).**    CARRIER shall be responsible for all expenses relating to regular maintenance of the axles, brakes, and other electrical and mechanical systems, repairs of damage to CARRIER's Trailer attributable to reasonable wear and tear, and purchases of replacement tires, provided that all such expenses are approved by CARRIER before the work is performed.

      **13(b).**    CONTRACTOR shall be responsible for daily pre-trip inspections; proper tire inflation; immediate notice to CARRIER of any defect or problem with the Trailer; and, at CONTRACTOR's expense, all repairs of damage to CARRIER's Trailer caused by CONTRACTOR other than ordinary wear and tear, which costs CARRIER may deduct from CONTRACTOR's Settlement Compensation. CONTRACTOR authorizes CARRIER to repair CARRIER's Trailer as needed and to charge CONTRACTOR for CONTRACTOR's portion of such repairs.

      **13(c).**    CONTRACTOR agrees to return any CARRIER's Trailer in the same good condition as received by CONTRACTOR, reasonable wear and tear excepted, along with any and all other equipment and property belonging to CARRIER immediately upon CARRIER's request or upon termination of this Agreement. If the trailer is not in as good as condition (reasonable wear and tear excepted) as when it was delivered by CARRIER, CONTRACTOR hereby authorizes CARRIER to restore the trailer to proper condition and to charge back to CONTRACTOR the costs of such repairs or reconditioning. If CONTRACTOR for any reason fails to comply with this provision, CONTRACTOR agrees to reimburse CARRIER for all reasonable expense, including attorney fees, incurred recovering or replacing CARRIER's Trailer or other property. CONTRACTOR agrees that if it is necessary for CARRIER to enter upon CONTRACTOR's private property or remove CONTRACTOR's private property in order to recover CARRIER's Trailer and other property, CONTRACTOR does hereby irrevocably grant CARRIER or CARRIER's duly authorized agents, permission to do so and **further agrees to indemnify and hold harmless CARRIER, and CARRIER's duly authorized agents, from any form of liability whatsoever in connection with the repossession.** CONTRACTOR shall be liable for, and pay, the entire amount for each incident involving damage, including but not limited to, towing charges, replacement costs for a total loss, arising out of, or in connection with, CONTRACTOR's use of CARRIER's Trailers, CARRIER's customer's trailers, other CARRIER equipment, or equipment of any other carrier. Before making any deduction for damage to CARRIER's Trailer or other property from CONTRACTOR's compensation, CARRIER shall provide CONTRACTOR with a written explanation and itemization of such deduction. CONTRACTOR agrees and warrants that any trailer provided for use by CARRIER will be used by CONTRACTOR and CONTRACTOR's drivers to transport only shipments tendered to CONTRACTOR by CARRIER, except pursuant to a Trailer Sublease Addendum entered into by CARRIER and CONTRACTOR.

      **14.**    **INSURANCE.** CONTRACTOR's and CARRIER's respective obligations as to all forms of insurance shall be as set forth in **Attachment C**. CARRIER's self-insurance or possession of legally-required insurance in no way restricts CARRIER's right of indemnification from CONTRACTOR under Section 15 of this Agreement.

      **15.**    **INDEMNIFICATION.**

      **15(a).**    **CONTRACTOR agrees to defend, indemnify and hold harmless CARRIER from any loss, damage, delay, fine, civil penalty, including reasonable attorney's fees and costs of litigation, action, claim for injury to persons, including death, damage to property, cargo loss or damage, damage to CARRIER's Trailer, or other expense (together, "Losses") that CARRIER pays or otherwise incurs arising out of or in connection with CONTRACTOR's**

(including CONTRACTOR's agents' or employees') negligence, gross negligence, willful misconduct, breach of this Agreement, or other acts or omissions. CONTRACTOR hereby authorizes CARRIER to deduct or otherwise recover pursuant to Section 12 of this Agreement any amounts due CARRIER under this Section 15. CARRIER shall furnish CONTRACTOR with a written explanation and itemization of any deduction for cargo or property damage before the deduction is made. If CONTRACTOR operates the Equipment for any purpose other than the carriage of CARRIER's lading, CONTRACTOR shall hold CARRIER harmless and indemnify CARRIER for any Losses (including attorneys' fees) arising from such use. This Section shall remain in full force and effect both during and after the termination of this Agreement.

**15(b).**   With respect to claims of personal injury (including death) or damage to the property of third-parties, cargo loss, damage, or delay, or loss of or damage to CARRIER's Trailer, Rental Trailer, or other CARRIER property, CONTRACTOR's indemnity obligation under Section 15(a) above shall, if involving CONTRACTOR's (including CONTRACTOR's agents' or employees') negligence, be limited to a maximum of one thousand five hundred dollars ($1,500) of the total amount of Losses that CARRIER paid or otherwise incurred per occurrence and per claim.

**15(c).   The dollar limits in Section 15(b) shall not apply to Damages arising out of or in connection with such claims if involving CONTRACTOR's (including CONTRACTOR's agents' or employees') gross negligence, willful misconduct or breach of the AGREEMENT.**

**15(d).**   CARRIER has secured certain insurance policies and coverage directly relevant to certain risks and liabilities for which CONTRACTOR has agreed to indemnify CARRIER under this Section (for example, automobile liability, general liability, and cargo liability arising out of or in connection with CONTRACTOR's (including CONTRACTOR's agents' or employees') negligence, gross negligence, willful misconduct, or other culpable acts or omissions). Such policies are expressly for the benefit of CARRIER and incidentally may benefit CONTRACTOR. Terms of such policies may change (for example, higher or lower deductibles, length of coverage, UM/UIM waivers or limitations, or insurance underwriters). CONTRACTOR has neither any obligations under the policies nor any right to change the terms of coverage, and CARRIER has no duty to notify CONTRACTOR prior to binding such coverage.

**15(e).   Notwithstanding Subsection (a) of this Section and not subject to the limits of Subsection (b) of this Section, CONTRACTOR agrees to defend, indemnify, and hold CARRIER harmless from any claim by CONTRACTOR of loss of or damage to CONTRACTOR's Equipment or other property (and any related fine, civil penalty, or expense, including reasonable attorneys' fees and costs of litigation) due to the negligence, gross negligence, willful misconduct, breach of this Agreement, or other acts or omissions of CONTRACTOR or any other contractor of CARRIER (including agents or employees of CONTRACTOR or any other contractor of CARRIER, respectively); and from any claim by any other contractor of CARRIER of loss of or damage to the other contractor's truck, tractor, trailer, or other property (and any related fine, civil penalty, or expense, including reasonable attorneys' fees and costs of litigation) due to the negligence, gross negligence, willful misconduct, breach of this Agreement, or other acts or omissions of CONTRACTOR (including CONTRACTOR's agents or employees).**

**15(f).   SECTION 18 AND OTHER PROVISIONS OF THIS AGREEMENT REFLECT THAT CONTRACTOR IS, AND BOTH CONTRACTOR AND CARRIER INTEND CONTRACTOR TO BE, AN INDEPENDENT CONTRACTOR, NOT AN EMPLOYEE OF CARRIER. IN LIGHT OF THIS FACT AND INTENT:   Notwithstanding Subsection (a) of this Section and not subject to the limits of Subsection (b) of this Section, CONTRACTOR agrees to indemnify and hold CARRIER harmless from all reasonable attorney's fees and litigation expenses CARRIER incurs in defending against any claims, suits, actions, or administrative proceedings brought by CONTRACTOR, CONTRACTOR's owner (if any), or any employees or other personnel engaged by CONTRACTOR to perform services under this Agreement or any third party that allege that CONTRACTOR or any of CONTRACTOR's workers is an employee of CARRIER.**

**15(g). INDEMNIFICATION BY CARRIER. CARRIER agrees to defend, indemnify, and hold CONTRACTOR harmless from any claim (including any for which CONTRACTOR is not indemnified by CARRIER's insurance) of loss, damage, delay, fine, civil penalty, or expense, including reasonable attorneys' fees and costs of litigation (together "Damages") that CONTRACTOR pays or otherwise incurs arising out of or in connection with CARRIER's (including CARRIER's agents' or employees') negligence, gross negligence, willful misconduct, breach of this Agreement, or other acts or omissions. This indemnification shall not apply to any claim of loss or damage to the Equipment or to CONTRACTOR's other property or to any claim arising out of or in connection with CONTRACTOR's operation of the Equipment for any purpose other than the performance of CONTRACTOR's obligations under this Agreement. This Section shall remain in full force and effect both during and after the termination of this Agreement.**

**CARRIER's indemnity obligation under Subsection (g) of this Section shall, if involving CARRIER's (including CARRIER's agents' or employees') negligence, be limited to a maximum of five hundred thousand dollars ($500,000) of the total amount in Damages that CONTRACTOR paid or otherwise incurred per occurrence. This dollar limit shall not apply to Damages arising out of or in connection with the claims if involving CARRIER's (including CARRIER's agents' or employees') gross negligence, willful misconduct or breach of this Agreement. CARRIER shall credit to CONTRACTOR's next Settlement Compensation any amounts due CONTRACTOR under this Section from CARRIER.**

**16.** **ADDITIONAL SETTLEMENT DEDUCTIONS.** From time to time, CONTRACTOR may be permitted to purchase fuel, products or services, including repairs, which are charged to CARRIER. When CONTRACTOR does so, CONTRACTOR hereby authorizes CARRIER to deduct from CONTRACTOR's Settlement amounts equal to such charges.

**17.** **CONTRACTOR's OBLIGATIONS UPON TERMINATION.** Upon termination of this Agreement:

**17(a).** CONTRACTOR shall, unless otherwise instructed by CARRIER, complete performance of all transportation and other services required by CARRIER or any bills of lading pertaining to any shipment or shipments that CONTRACTOR may be engaged in hauling at the time of termination. CONTRACTOR shall receive no compensation for any shipment with respect to which CONTRACTOR has failed to complete all required transportation and other services. In the event CARRIER instructs CONTRACTOR not to complete performance of transportation or other services that CONTRACTOR is willing and able to perform, CARRIER shall pay CONTRACTOR compensation determined in accordance with **Attachment A** for the portion of such services that CONTRACTOR performed prior to termination. CARRIER is hereby authorized to arrange for completion of performance at CONTRACTOR's sole cost and expense. CONTRACTOR agrees to reimburse CARRIER for any expense arising out of completion of a trip and to pay CARRIER any damages for which CARRIER may be liable to the shipper or others arising out of CONTRACTOR's failure to complete the trip. CONTRACTOR hereby authorizes CARRIER to deduct any such expense or damages from CONTRACTOR's Settlement Compensation or from any other amounts due CONTRACTOR from CARRIER.

**17(b).** CONTRACTOR shall, at CONTRACTOR'S sole cost and expense, immediately upon termination of the Agreement or the completion of the transportation or other services provided for herein, whichever occurs later, both remove all of CARRIER's identification devices from the Equipment and, except in the case of identification painted directly on the Equipment, return them to CARRIER via prepaid hand-delivery, overnight delivery, or certified mail (provided that if the identification device has been lost or stolen, a written notice (letter) certifying its removal shall satisfy this requirement); return all of CARRIER's property, including Trailer, base plates, permits, communication equipment and other paperwork, freight, and property to any of CARRIER's facilities; and pay CARRIER all amounts CONTRACTOR owes CARRIER at that time under the Agreement.

**17(c).** If, upon termination of the Agreement, CONTRACTOR fails to return CARRIER's

property or freight to CARRIER, and/or to remove and return all of CARRIER's identification from the Equipment and/or to pay all advances and other amounts owed to CARRIER pursuant to Section 12 above and **Attachment B** of this Agreement, CONTRACTOR shall pay CARRIER all expenses (including reasonable attorneys' fees) CARRIER incurs in seeking the return of such items, and CARRIER may pursue all other remedies allowed by law or authorized in the Agreement against CONTRACTOR. Such remedies include withholding CONTRACTOR's last payment of Settlement Compensation until CONTRACTOR removes and, except in the case of identification painted directly on the Equipment, returns all of CARRIER's identification devices or delivers to CARRIER a letter certifying that such devices have been removed;  making deductions from any such remaining Settlement Compensation and/or Escrow Fund for the replacement value of CARRIER's unreturned property and for other amounts CONTRACTOR owes CARRIER, as provided by **Attachment D**; and setting off all advances and other amounts owed to CARRIER against any other moneys CARRIER owes, or later comes to owe, CONTRACTOR.

## 18.    CONTRACTOR NOT EMPLOYEE OF CARRIER.

**18(a).  In General.**  It is expressly understood and agreed that CONTRACTOR is an independent contractor for the Equipment and driver services provided pursuant to this Agreement.

**18(b).  Certification of Status.**  CONTRACTOR shall provide necessary documentation and apply for certification of CONTRACTOR's independent-contractor status where mandated by applicable state law, including but not limited to, the State of South Dakota.

**18(c).  Selection of Equipment, Maintenance, and Routes.**  Subject to all Applicable Law and safety considerations, it shall be the sole responsibility of CONTRACTOR to select, purchase or lease, and finance the Equipment; to decide when, where, and how maintenance and repairs are to be performed on the Equipment; and to select all routes and decide all meal, rest, and refueling stops, provided that to meet CARRIER's customers' demands, CONTRACTOR agrees to make timely and safe deliveries of all loads, and also agrees to notify CARRIER when delivery has been made or when delivery will be delayed for any reason.

**18(d).  CONTRACTOR's Workers.**  Subject to all Applicable Law and safety considerations, CONTRACTOR hereby assumes full control and responsibility for the selection, training, hiring, setting of grooming and dress standards, disciplining, discharging, setting of hours, meal and rest breaks, wages, and salaries, providing for unemployment insurance, state and federal taxes, fringe benefits, workers' compensation insurance (or, if CONTRACTOR prefers, occupational accident insurance where both state law allows and CARRIER approves), adjudgment of grievances, all acts and omissions, and all other matters relating to or arising out of CONTRACTOR's use or employment of drivers, drivers' helpers, and other personnel to perform any aspect of this Agreement.  No person CONTRACTOR may engage shall be considered CARRIER's employee. CONTRACTOR shall be solely responsible for complying with any and all state, federal, local, and foreign laws applicable to the terms and conditions of employment of CONTRACTOR's employees or applicants for employment, including, without limitation, compliance with the Federal Fair Credit Reporting Act; verification of immigration and naturalization status; proof of proper taxpayer identification number; proof of highway use tax being currently paid when the CONTRACTOR purchases a license; proof of payment of income; unemployment; Medicare and other state and federal payroll taxes; and, other required withholdings for CONTRACTOR's employees. CONTRACTOR's performance of these responsibilities shall be considered proof of CONTRACTOR's status as an independent contractor in fact.

**18(e).  Taxes.**

**18(e)(1).        CONTRACTOR's Form of Business and Agreement to File Returns and Pay Taxes.**  As an independent contractor, CONTRACTOR is free to choose the form in which to operate CONTRACTOR's business.  CONTRACTOR shall file all federal, state, local, and foreign income, withholding, employment, and federal heavy vehicle use tax forms and returns that CONTRACTOR may be required by law to file, on account of CONTRACTOR and all drivers, drivers' helpers, and other workers used by CONTRACTOR

Independent Contractor Operating Agreement – Page 14

D - 002395

in the performance of this Agreement at the time and place that may be specified in the applicable federal, state, local, and foreign laws, and to pay when due all taxes and contributions reported in the forms and returns. In that regard, CONTRACTOR knows:

**18(e)(1)(A).** **Of CONTRACTOR's responsibilities to pay estimated social security taxes and state and federal income taxes with respect to remuneration received from CARRIER;**

**18(e)(1)(B).** **That the social security tax CONTRACTOR must pay is higher than the social security tax the individual would pay if he or she were an employee; and**

**18(e)(1)(C).** **That the service provided by CONTRACTOR to CARRIER pursuant to this Agreement is not work covered by the unemployment compensation laws of any state, including Georgia; provided, however, that should CONTRACTOR employ or use drivers, helpers, or other workers to fulfill CONTRACTOR's obligations under this Agreement, and the drivers, helpers, or other workers are covered by the unemployment laws of any state, including Georgia, CONTRACTOR is solely responsible for providing unemployment insurance for the drivers, helpers, or other workers.**

**18(e)(2).** **Access to CONTRACTOR's Tax Records.** CONTRACTOR agrees to furnish CARRIER the evidence of compliance with the foregoing as CARRIER shall reasonably require, including but not limited to proof of income and payroll taxes currently paid by CONTRACTOR (including as provided in Subsection (f) below) or withheld by CONTRACTOR from the wages of CONTRACTOR's drivers and other workers.

**18(e)(3).** **CONTRACTOR's Required Submission of IRS Form 4669 to CARRIER.** CARRIER shall, itself or through an agent, file federal income tax IRS Form 1099s with the Internal Revenue Service with respect to CONTRACTOR if the amount of compensation CARRIER pays CONTRACTOR during a calendar year reaches the level at which federal law requires such forms to be filed. For each Form 1099 filed, CARRIER shall, itself or through an agent, furnish CONTRACTOR with both a copy of the completed Form 1099 and a copy of IRS Form 4669, entitled "Statement of Payments Received" on which CARRIER shall have filled in CONTRACTOR's name and address as "Payee" (Line 1), CONTRACTOR's Social Security Number or Federal Taxpayer ID Number (Line 2), CARRIER's name and address as "Payor" (Line 3), the Calendar Year for which the Form 1099 was filed (Line 4), and the "Amount of Payments [to CONTRACTOR] on Which Income Tax and Social Security Tax Were Not Withheld" by CARRIER [the amount reported on the Form 1099] (Line 5). **CONTRACTOR shall fill out the remaining Lines 6, 7 (if applicable), 8, 9, and 10, sign (Line 11), and date (Line 12) of the Form 4669, and mail or otherwise deliver the original signed form to CARRIER or CARRIER's designated agent within thirty (30) days of filing, with the IRS, an income tax return or employment tax return relating to the income reported on the Form 1099.**

**18(f).** **The Parties' Financial Obligations If CONTRACTOR Is Determined to Be an Employee.** **If, whether on CONTRACTOR's initiative or not, CONTRACTOR is declared to be an employee of CARRIER by any federal, state, local, or foreign court, administrative agency, or other governmental body (a "Reclassification Decision"), CONTRACTOR and CARRIER hereby agree that this Agreement shall be rescinded back to the time of its formation and that both parties shall be returned to their respective positions before this Agreement was signed. Specifically, CONTRACTOR and CARRIER agree that notwithstanding any other provision of this Agreement:**

**18(f)(1).** **CONTRACTOR shall, upon the Reclassification Decision becoming final and no longer appealable, immediately (A) owe CARRIER, for each week or other period this Agreement was in effect, all gross compensation under Section 9 and Attachment A, less any charge-backs under Section 12 of this**

CONFIDENTIAL

Agreement, previously paid to CONTRACTOR by CARRIER; (B) shall relinquish all rights in any balances in required or voluntary escrow funds then under CARRIER administration that are traceable to compensation previously paid to CONTRACTOR by CARRIER; and (C) shall owe CARRIER any cash advances provided by CARRIER to CONTRACTOR that CONTRACTOR used for personal, household, or other expenses not in performance of CONTRACTOR's obligations under this Agreement or that CONTRACTOR retained unspent.  CONTRACTOR shall be entitled to deduct from these amounts any expenses (including, for Equipment, other equipment, or tools used in performing work for CARRIER, any actual rent or installment-purchase payments made by CONTRACTOR or, if none, payments that would equal fair-market rent for items of similar kind, age, and condition) CONTRACTOR incurred in performance of CONTRACTOR's obligations under this Agreement that were not covered by charge-backs or paid by CARRIER;

      **18(f)(2).**      **CARRIER shall, upon the Reclassification Decision becoming final and no longer appealable,   immediately owe CONTRACTOR, for all work activities during each week or other period this Agreement was in effect (including any activities for which CARRIER has not yet paid CONTRACTOR), only the then-applicable federal minimum hourly wage or, if higher, a State's then-applicable minimum hourly wage but only to the extent CONTRACTOR's wage-earning activities occurred in that State, multiplied by CONTRACTOR's total hours actually performing on-duty work for CARRIER, consisting of both driving and non-driving time, under the FMCSA Hours of Service Regulations, 49 C.F.R. Part 395, or under a State's hours of service regulations to the extent applicable.     The total hours worked shall be computed based on any relevant, reliable evidence, which may include estimates or projections based on CONTRACTOR Settlement Statements, driver logs, shipment and/or vehicle tracking data, bills of lading, fuel receipts, toll receipts, and testimony; and**

      **18(f)(3).**      **Because reclassification of CONTRACTOR's status from independent contractor to employee would fundamentally change the parties' contracting assumptions and expectations, either party may, immediately upon initial issuance (even if appealed or appealable) of a Reclassification Decision, terminate this Agreement on one day's notice to the other. The provisions of this Subsection shall be deemed to survive any termination of this Agreement.**

      **19.**    **ESCROW FUND.**  CONTRACTOR authorizes CARRIER, and CARRIER agrees, to establish and administer a required escrow fund (referred to throughout this Agreement as "Escrow Fund") in accordance with the provisions of **Attachment D**. CONTRACTOR may further elect to authorize CARRIER, and CARRIER may agree, to establish and administer a separate Voluntary Maintenance Reserve Account ("Reserve Account") in accordance with the provisions of **Attachment D-1.**

      **20.**    **NOTICES.**  All notices and notifications required or permitted by this Agreement shall be in writing (unless permitted elsewhere in this Agreement to be oral) and shall be deemed to have been fully given (a) upon delivery if delivered in person, by facsimile transmission, or, if both parties have signed Attachment F, by the electronic means specified in that appendix; (b) on the next business day after being deposited with an overnight delivery company with the express charges prepaid; or (c) on the date indicated on the return receipt, or if there is no receipt, on the third business day after being deposited in the United States Mail with first-class postage prepaid.  In each event, the notice shall be properly addressed to the other party at the address or fax number shown at the end of this Agreement or in the manner indicated in Attachment F.  CARRIER and CONTRACTOR shall be under a continuing duty to provide a correct address and telephone number to the other party, and CARRIER and CONTRACTOR (if the latter has a fax machine) to provide a correct fax number to the other.  Notice of an address, telephone-number, or fax-number change shall be given in writing.

      **21.**    **CONFIDENTIALITY.**  CONTRACTOR hereby recognizes and acknowledges that any list of CARRIER's customers, as it may exist now or from time to time, is a valuable, special and unique asset of the business of CARRIER.  CONTRACTOR agrees, during and after the term of this Agreement, not to

disclose the list of CARRIER's customers or any part thereof to any other person or entity for any reason or purpose whatsoever without CARRIER's prior written consent. CONTRACTOR agrees to preserve as "Confidential Information" all trade secrets, know how and information relating to CARRIER's business, forms, processes, developments, sales and promotional systems, prices and operations, no matter how obtained. CONTRACTOR agrees that the Confidential Information is the sole property of CARRIER, and shall not publish, disclose or disseminate the same to others without the written consent of CARRIER. CONTRACTOR agrees that CARRIER will be irreparably damaged in the event of any breach of this provision by CONTRACTOR. Accordingly, in addition to any other legal or equitable remedies that may be available to CARRIER, CONTRACTOR agrees that CARRIER will be able to seek and obtain immediate injunctive relief in the form of a temporary restraining order against CONTRACTOR to enforce this confidentiality provision. CARRIER shall not be required to post any bond or other security and shall not be required to demonstrate any actual injury or damage to obtain injunctive relief from the courts. Nothing hereunder shall be construed as prohibiting CARRIER from pursuing any remedies available to CARRIER at law or in equity for the breach of this provision, including the recovery of monetary damages from CONTRACTOR.

**22.    BENEFIT AND ASSIGNMENT.** This Agreement shall be binding upon and inure to the benefit of the parties to this Agreement and their respective successors. CONTRACTOR shall not assign or subcontract this Agreement or any rights or obligations hereunder to anyone without the prior written consent of CARRIER.

**23.    GOVERNING LAW AND FORUM.** This Agreement shall be interpreted in accordance with, and governed by the laws of the United States and of the State of New Jersey, without regard to the choice-of-law rules of New Jersey or any other jurisdiction. THE PARTIES **FURTHER** AGREE THAT ANY CLAIM OR DISPUTE ARISING FROM OR IN CONNECTION WITH THIS AGREEMENT **OR OTHERWISE WITH RESPECT TO THE OVERALL RELATIONSHIP BETWEEN THE PARTIES, WHETHER UNDER FEDERAL, STATE, LOCAL, OR FOREIGN LAW (INCLUDING BUT NOT LIMITED TO 49 C.F.R. PART 376),** SHALL BE BROUGHT EXCLUSIVELY IN THE STATE OR FEDERAL COURTS IN CAMDEN COUNTY, NEW JERSEY. CARRIER AND CONTRACTOR HEREBY CONSENT TO THE JURISDICTION AND VENUE OF SUCH COURTS.

**24.    FORM OF AGREEMENT.**

**24(a).** Severability. If any provision (including any sentence or part of a sentence) of this Agreement (including its attachments and addendums) is deemed invalid for any reason whatsoever, the Agreement shall be void only as to such specific provision, and this Agreement shall remain otherwise binding between the parties. Any provision voided by operation of the foregoing shall be replaced with provisions that shall be as close to the parties' original intent as permitted under applicable law.

**24(b).** Waiver. No waiver of any of the provisions of this Agreement shall constitute a waiver of any other provisions whether or not similar, nor shall any waiver constitute a continuing waiver. No waiver shall be deemed effective or binding upon either party unless executed in writing by the party making the waiver. The failure or refusal of either party to insist upon the strict performance of any provision of this Agreement or to exercise any right in any one or more instances or circumstances shall not be construed as a waiver or relinquishment of such provision or right, nor shall such failure or refusal be deemed a customary practice contrary to such provision or right.

**24(c).** Complete Agreement; Amendment. This Agreement (including the Attachments and any Addenda) constitute the entire Agreement between CARRIER and CONTRACTOR pertaining to the subject matter contained herein and fully replaces and supersedes all prior and contemporaneous agreements, representations, and understandings. No supplement, modification, or amendment to this Agreement shall be binding unless in writing and signed by both CARRIER and CONTRACTOR, except as otherwise provided with respect to deductions in Section 4 of Attachment B and insurance deductions in Section 6 of Attachment C.

**24(d).** Survival of Liabilities and Entitlements. If, up to and including the date of termination, one or more events occur that give rise, before or after that date, to a liability or

CONFIDENTIAL

entitlement of CONTRACTOR or CARRIER under this Agreement, the liability or entitlement shall continue, notwithstanding the termination of this Agreement, until the liability or entitlement is satisfied in full.

**24(e).** Credits and Debits Under Previous Agreement Between Parties. Any CONTRACTOR escrow fund balances under any written agreement between the Parties that this Agreement replaces shall be credited to CONTRACTOR's Escrow Fund under this Agreement. All compensation and other amounts due CONTRACTOR from CARRIER, and all advances and other amounts due CARRIER from CONTRACTOR, pursuant to the predecessor agreement, shall remain due and payable. The amounts of compensation for trips started, and the amounts of advances and other amounts due CARRIER, before the effective date of this Agreement shall be determined under the predecessor agreement; the payment procedures shall be determined under this Agreement; and the payment timing shall be determined under the predecessor agreement or this Agreement, whichever requires payment earlier.

**24(f).** Copies of This Agreement and Statement of Lease. Pursuant to 49 C.F.R. § 376.11(c)(2), a "Statement of Lease" shall be carried on the Equipment for those periods that the Equipment is operated by or for CARRIER under this Agreement.

*[Signature page follows]*

CONFIDENTIAL

*By signing below, CONTRACTOR acknowledges that, as reflected in the terms of this Agreement:*

- *CONTRACTOR is NOT an employee of CARRIER, and all aspects of the relationship between CONTRACTOR and CARRIER are based on CONTRACTOR's status as an independent contractor;*

- *CONTRACTOR has agreed to be responsible for the operating expenses incurred in connection with his/her business operations;*

- *CONTRACTOR's agreement to take responsibility for his/her expenses is an indispensable term of this Agreement but for which CARRIER would not have agreed to pay the gross compensation stated above or entered into this Agreement;*

- *The gross compensation CARRIER agrees to pay is not intended to ensure that CONTRACTOR covers his/her operating expenses, but instead to provide the amount of revenue sufficient, in the relevant market for such services, to convince a contractor-business both to provide, maintain, fuel, legally-credential, and otherwise operate suitable and dependable Equipment and to provide and pay a qualified professional driver or drivers to drive that Equipment; and*

*The gross compensation paid to CONTRACTOR is MORE than CARRIER would pay an employee to perform professional driving services, which reflects the reality of the marketplace, in that CARRIER cannot attract contractors willing to take the entrepreneurial risk of funding and running their own businesses by paying merely the personal-services wage that they could get as employees.*

---

## WE HAVE READ THE MAIN TEXT OF THE AGREEMENT (Sections 1 through 24) AND AGREE TO IT:

| **CARRIER: NFI Interactive Logistics, LLC** | **CONTRACTOR:** _____ |
|---|---|
| | Social Security or Taxpayer ID No.: _____ |
| By: _____ | By: _____ |
|     Signature |     Signature |
| Authorized Rep.'s Name (Typed or Printed) | Authorized Rep.'s Name (Typed or Printed) |
| Title | Title |
| 1515 Burnt Mill Road<br>Cherry Hill, NJ 08003<br>Tel. 856-_____<br>Fax 856-_____<br>_____@nfiindustries.com | Address (Street, P.O. Box) |
| | City, State & Zip Code |
| | Mobile Telephone Number     Fax Number |
| | Email Address |
| Date | Date |

D - 002400

## APPENDIX 1

## RECEIPT FOR POSSESSION OF CONTRACTED EQUIPMENT

Received from _____ ("CONTRACTOR")
                              Printed Name of CONTRACTOR
the following Equipment:

| Year | Make | Serial No. | Unit # |
|------|------|-----------|--------|
|      |      |           |        |
|      |      |           |        |
|      |      |           |        |

Equipment received at _____, in _____, _____ on

_____, 20_____ at _____:_____ o'clock _____.M. _____ Time.

**NFI Interactive Logistics, LLC**  ("CARRIER")

By:_____
        CARRIER representative's signature

_____
            Printed Name

## RECEIPT FOR RETURN OF CONTRACTED EQUIPMENT

Received from CARRIER the Equipment described above.

Equipment received at _____, in _____, _____ on

_____, 20_____ at _____:_____ o'clock _____.M. _____ Time.

By:_____
        CONTRACTOR representative's signature

_____
            Printed Name

## ATTACHMENT A

### CONTRACTOR COMPENSATION

As the total gross compensation, pursuant to Section 9 of this Agreement, for all of the Equipment and services furnished, provided, done by, or required of CONTRACTOR in connection with this Agreement, CARRIER shall pay CONTRACTOR Base Compensation plus Additional Compensation as follows (unless otherwise agreed to under Section 4 below):

1.    **BASE COMPENSATION.**

**1(a). Base Compensation Amount.** For all miles operated under CARRIER dispatch (as specifically authorized by CARRIER), based on the version of the computerized mileage guide used by CARRIER, which CARRIER shall make available for viewing and printing of particular CONTRACTOR-requested point-to-point mileage calculations at any CARRIER terminal during normal business hours, CARRIER shall pay CONTRACTOR as follows: _____

dollars (\$_____) per _____ **Applicable to Project Cost Center**    #_____    in    [city]____    [state]_____

**1(b). Pick-up and Delivery Deductions.** When a CONTRACTOR does not pick up a load at the point of the load's origination or deliver the load to the point of the load's destination, CONTRACTOR's Base Compensation shall be reduced by the cost incurred by CARRIER to undertake or complete such delivery.

2.    **ADDITIONAL COMPENSATION.** In addition to Base Compensation under Section 1(b) above, CONTRACTOR may receive:

**2(a).    Loading/Unloading.**    Actual amounts CONTRACTOR paid to lumpers for loading or unloading when (1) CONTRACTOR is required by shipper or consignee to partially or completely load/unload shipment; (2) CARRIER approved the payment in advance; and (3) CARRIER has not paid the lumpers directly.

**2(b).    Spotting.**    CARRIER shall compensate CONTRACTOR for spotting (repositioning trailers or ancillary yard services) at the rate of \$__ per hour when authorized by CARRIER's dispatch.

**2(c).    Detention and Layover Pay.** When a scheduled load is unavailable for pick-up or delivery by CONTRACTOR, CONTRACTOR waits for availability at CARRIER's request, and the waiting period is identified by CARRIER to CONTRACTOR through the Mobile Communications System, as a Detention or Layover (or both), CARRIER shall compensate CONTRACTOR as follows:

**2(c)(1).** In the case of a waiting period defined by CARRIER as Detention, CONTRACTOR shall be paid, after the first three hours of waiting, \$__ per hour for each hour CONTRACTOR waits for availability, up to a maximum of 5 paid hours.

**2(c)(2).** In the case of a waiting period defined by CARRIER as a Layover, CONTRACTOR shall be paid \$__ for the period of the wait.

**2(d).    Stop Pay.** When an order/load requires an additional intermediary stop, CARRIER shall pay CONTRACTOR an additional \$__ for that stop. This additional payment only applies when the additional stop is part of the individual load/order.

3.    **REIMBURSEMENT.**

Independent Contractor Operating Agreement – Page A-1

**3(a).    Scale Tickets.** CARRIER shall reimburse CONTRACTOR for scale tickets.

**3(b).    Tolls.** CARRIER shall reimburse CONTRACTOR for CONTRACTOR-paid ferry, bridge, tunnel, and road tolls fares under dispatch.

## 4.    CHANGES IN COMPENSATION.

**4(a).    Temporary Change.** CARRIER and CONTRACTOR may make a temporary change in CONTRACTOR's compensation to be paid for one or more services relating to a shipment or shipments under this Agreement by both parties' signing (either manually or, as indicated in Subsection (b) of this Section, electronically) an addendum, setting forth the change in advance of any hauling assignments to which the change will apply.  CONTRACTOR shall be under no obligation to accept the change in compensation by signing such an addendum, and CARRIER shall not terminate this Agreement for CONTRACTOR's failure to do so (except to the extent the procedure below for an "Ongoing Change" is followed), although, in this event, CARRIER is hereby authorized not to assign CONTRACTOR loads covered by the change in the meantime.  The temporary change shall not be effective for more than fifteen (15) days.

**4(b).    Ongoing Change.** If any aspect of CONTRACTOR's compensation will be changing on an ongoing basis, CARRIER shall provide CONTRACTOR a proposed addendum containing the change at least fifteen (15) days in advance.  If CONTRACTOR wishes to continue operating on CARRIER's behalf, CONTRACTOR shall, by the effective date and time shown on the addendum, consent to the change by either manually signing the addendum and delivering it to CARRIER by hand, fax, overnight delivery, OR, if both parties have signed Attachment F of, or a similar addendum to, this Agreement, by signing the addendum by the electronic means specified in that Attachment.  If CONTRACTOR does not take one of these actions consenting to the change within the time indicated on the addendum, the addendum shall operate as a notice of termination under Section 2 of this Agreement, and this Agreement shall terminate as of the date and time set forth on the addendum, provided that, in such event, CONTRACTOR shall not be subject, either before or after termination, to the change(s) proposed in the addendum.

**4(c).    Addendums.** CARRIER shall promptly deliver to CONTRACTOR a paper copy of each executed addendum, which, if CONTRACTOR signed electronically, shall show the fact and date of CONTRACTOR's electronic approval.  CONTRACTOR shall then attach the executed addendum to this Agreement.

| WE HAVE READ ATTACHMENT A AND AGREE TO IT: | |
| --- | --- |
| **CARRIER: NFI Interactive Logistics, LLC** | **CONTRACTOR:** |
| By: _____<br>Signature | By: _____<br>Signature |
| Date | Date |

### METHOD OF PAYMENT OF SETTLEMENT COMPENSATION.

CARRIER shall pay CONTRACTOR any Settlement Compensation due less any charge backs or deductions set forth in this Agreement – through the **OPTION** specified by CONTRACTOR below (with no administrative fee charged by CARRIER).

Independent Contractor Operating Agreement – Page A-2

 D - 002403

**CONTRACTOR MUST INITIAL <u>ONLY ONE</u> OF THESE TWO OPTIONS (on the line to the left)**:

_____ **OPTION 1 (Weekly Payments via CARRIER Bank Check):** CARRIER shall pay Settlement Compensation by sending a bank check by U.S. First Class Mail to the address required by Section 23 (Notices) of this Agreement or, if CONTRACTOR chooses the following different address, to:

_____
Address (Street, P.O. Box)

_____
City, State & Zip Code

_____ **OPTION 2 (Weekly Payments via Direct Deposit to CONTRACTOR's Bank Account):** CARRIER shall pay Settlement Compensation by making an electronic direct-deposit into CONTRACTOR's bank account as specified below: For OPTION 2 only, CONTRACTOR must submit a voided bank check to CARRIER.

_____
CONTRACTOR name(s) exactly as they appear in bank account registration

_____
Bank Account No.

_____
ABA Bank Routing No.

_____
Name of Bank

_____
Bank's City, State, Zip Code

CONFIDENTIAL                                            D - 002404

## ATTACHMENT B

### CONTRACTOR ELECTIONS, CHARGE-BACKS AND OTHER DEDUCTIONS

#### 1.  BASE PLATES, PERMITS, AND FUEL AND MILEAGE TAX REPORTING

**1(a).  Base Plates.** CARRIER shall acquire or reimburse CONTRACTOR for the license base plate for the first twelve months CONTRACTOR performs services for CARRIER under this Agreement or predecessor agreements. At its option, CARRIER may obtain the plate or reimburse CONTRACTOR once per month for the pro-rated monthly cost of the plate for that initial twelve-month period. CONTRACTOR may elect to obtain the base plate required by Section 8(f) of this Agreement for CONTRACTOR's Equipment tractor after such initial twelve-month period by initialing **OPTION 1**, "CONTRACTOR shall obtain own plate...," below. Alternatively, CONTRACTOR may initial **OPTION 2**, "CARRIER shall obtain plate...," below. Under **OPTION 2**, CARRIER shall initially pay the amount owed to the issuing jurisdiction for the plate, and deduct or otherwise recover that expense, plus the administrative fee indicated below to CARRIER, pursuant to Section 12 of this Agreement. If this Agreement is terminated prior to CONTRACTOR's complete reimbursement of CARRIER's expense, CARRIER is hereby authorized to deduct any remaining amount from CONTRACTOR's final settlement and/or Escrow Fund. If CONTRACTOR removes and returns the plate to CARRIER upon the termination of this Agreement and if CARRIER then receives a refund or credit for the plate or resells the plate to another contractor, CARRIER shall refund to CONTRACTOR a prorated share of the amount received by CARRIER, less any transfer or replacement fees owed to the plating jurisdiction**: *CONTRACTOR SHOULD INITIAL ONE OPTION:***

_____  **OPTION 1:**   CONTRACTOR shall obtain own plate for CONTRACTOR's Equipment tractor; **OR**

_____  **OPTION 2:**   CARRIER shall obtain an apportioned plate under the International Registration Plan for CONTRACTOR's Equipment tractor. CONTRACTOR agrees to establish a Voluntary License Plate Reserve Account governed by the terms of Attachment D-2 and deduct in advance the estimated cost of the plate in equal weekly installments **plus an administrative fee of $____ per week,** beginning twelve months before the plate is to be acquired. When acquired, the cost of the plate shall be deducted by CARRIER from CONTRACTOR's Voluntary License Plate Reserve Account until exhausted and then from CONTRACTOR's Settlement Compensation.

**1(b).  Permits and Fuel and Mileage Tax Reporting**.  Certain governmental permits and licenses must be maintained to permit CONTRACTOR to provide services to CARRIER legally and fuel and mileage tax reporting must be performed under Section 8(d) of this Agreement.

**1(b)(1).  Unified Carrier Registration Fee.** The Unified Carrier Registration ("UCR") fee amount that is assessed by the States to CARRIER each year shall be deducted or otherwise recovered pursuant to Section 12 of this Agreement in an annual pro rata lump sum to CONTRACTOR (and all other CARRIER contractors) at the rate of the full annual fee divided by the number of trucks in CARRIER's fleet as of the preceding December 31, at CONTRACTOR's first settlement of the new year.

**1(b)(2).  CONTRACTOR-Eligible Permits and Fuel Tax Reporting.**  Under the International Fuel Tax Agreement ("IFTA"), an annual fuel tax permit must be obtained, and quarterly fuel taxes must be reported and paid to the IFTA base state for the Equipment's operations nationwide.    CONTRACTOR may, by initialing the line to the left of **OPTION 1** below, elect to obtain the IFTA permit. Alternatively, CONTRACTOR may, by initialing the line to the left of **OPTION 2** below, elect to have CARRIER perform all fuel and mileage tax reporting with respect to the Equipment, in accordance with Section 8(d) of this Agreement, for the flat charge indicated.

*CONTRACTOR SHOULD INITIAL ONE OF THE FOLLOWING TWO OPTIONS:*

_____**OPTION 1:** CONTRACTOR shall obtain IFTA permits required for operations under this Agreement, and CONTRACTOR shall perform all fuel and mileage tax reporting, with respect to the Equipment at CONTRACTOR's expense; **OR**

_____**OPTION 2:** CARRIER shall obtain the IFTA permit and perform all fuel and mileage tax reporting services, with respect to the Equipment and charge back to CONTRACTOR the fuel and mileage taxes associated with the Equipment in accordance with Section 8(d)(2) of this Agreement.

In addition, certain other permits issued by States are required for CONTRACTOR to operate lawfully in and through their territory. CARRIER shall obtain such required permits.

**1(c). Other Services/Fees.** If CONTRACTOR asks CARRIER to perform changes in plates and/or the IFTA permit during the issuance-year (for example, increase or decrease in vehicle weight bracket, name-change, and transfer of plate), CARRIER shall deduct or otherwise recover pursuant to Section 12 of this Agreement the amount CARRIER paid to the issuing jurisdiction plus a **$_____ administrative fee per change**.

**1(d). Itemization Available for Fees.** CONTRACTOR may, upon request, obtain an itemization of the fees CARRIER has advanced for CONTRACTOR pursuant to this Section of this Attachment, the portion of the total already paid by CONTRACTOR, and the portion remaining. This itemization shall separately identify each plate amount paid to the issuing jurisdiction, plus CARRIER's administrative fee and any fee to a third-party service, under Section 1(a) above; the UCR fee under Section 1(b)(1) above; CARRIER fuel-reporting charge, CARRIER's administrative fee; and the cost, plus CARRIER's administrative fee, for Other Services/Fees under Subsection 1(c) above.

**2.** **DEDUCTIONS TABLE.** CONTRACTOR hereby authorizes CARRIER to deduct the items in the table below from CONTRACTOR's Settlement Compensation, from other amounts CARRIER owes CONTRACTOR, or from CONTRACTOR's Escrow Fund at CONTRACTOR's next settlement. Where no dollar figure is listed in the table below, the deductions will vary in amount and will be computed as indicated in the column titled "Amount, or Method of Computation, of Deduction." Except as otherwise indicated in that column or in another portion of this Agreement, (a) CARRIER shall charge CONTRACTOR no administrative ("admin.") fee or markup, and (b) CARRIER shall credit CONTRACTOR with all rebates, discounts, credits, or refunds that correspond to particular deductions and that CARRIER receives while the Agreement is in effect or, in the case of taxes and fees, even after the Agreement is terminated.

| CHARGE-BACK OR OTHER DEDUCTION ITEM | AMOUNT, OR METHOD OF COMPUTATION, OF DEDUCTION |
|---|---|
| **Advances** of CONTRACTOR's not-yet-paid compensation that CONTRACTOR elects to have CARRIER issue | 1. **Advance via CARRIER Fuel Card.** Amount of CONTRACTOR's not-yet-paid compensation that, with CARRIER's consent, CARRIER advanced through CONTRACTOR's CARRIER Fuel Card to spend on cash or other purchases, plus any per-transaction fees charged by the Fuel Card issuer. These calculations do not include any volume discounts or rebates received by CARRIER from the Fuel Card issuer, and any such payments will NOT be paid or credited to CONTRACTOR. For additional information regarding such Card-issuer fees, CONTRACTOR may contact the Card issuer at the telephone number listed on the Card. |
| | 2. **Advance via CARRIER Check.** Amount of CONTRACTOR's not-yet-paid compensation that, at CONTRACTOR's request and with CARRIER's consent, CARRIER advanced by issuing a CARRIER check to CONTRACTOR. |
| **Alternative Use of Equipment payment to CARRIER** if OWNER-OPERATOR fails to make | $ _____ per trip |

| CHARGE-BACK OR OTHER DEDUCTION ITEM | AMOUNT, OR METHOD OF COMPUTATION, OF DEDUCTION |
|---|---|
| such payment to CARRIER within twenty (20) calendar days of completion of a trip pursuant to **Attachment G** | |
| **C.O.D. Charges** | Amount of freight revenue from shippers, sublease carriers, or others not collected, or collected but not remitted, by CONTRACTOR to CARRIER when such actions were required by the AGREEMENT |
| **Claims** for damages, losses, court costs, fines, penalties, attorneys' fees, and other expenses (together "Damages") CARRIER incurs arising out of CONTRACTOR's negligence, acts or omissions | Amount CARRIER paid or otherwise incurred, subject to indemnity limits set forth in Sections 15(b)-(e) |
| **Communications and tracking** – Charges for rent and message usage, re-installation, and for loss of or damage to or failure to return CONTRACTOR's communications/tracking equipment, pursuant to **Attachment E** | Amount CARRIER paid outside vendor or otherwise incurred. See **Attachment E** |
| **Drive Cam** – Charges for installation of and rent for, and loss of or damage to or failure to return CONTRACTOR's event recorder system (i.e., drive cam) equipment, pursuant to **Attachment H** | See **Attachment H** |
| **Escrow Fund (Performance Bond)** contributions by CONTRACTOR | See **Attachment D** |
| **Fines, penalties,** and related court costs, attorneys' fees, and other legal expenses | Amount CARRIER paid or otherwise incurred in connection with fines or penalties that Section 8 of this Agreement makes CONTRACTOR responsible for |
| **Freight charges** not fully collected or remitted by CONTRACTOR to CARRIER as required by this Agreement | See Section 10 of this Agreement |
| **Fuel and mileage taxes and fuel tax reporting** | See Section 8 of this Agreement and Section 1 of this Attachment B. |
| **Fuel purchases** that CONTRACTOR elects to make at CARRIER's bulk-fueling facilities or, using CONTRACTOR's CARRIER Fuel Card, at third-party fuel retailers | 1. **Purchases Using CARRIER's Bulk-Fueling Facilities.** Amount CARRIER posts as the per gallon rate at the CARRIER's bulk fueling facility where CONTRACTOR purchases the fuel. <br><br> 2. **Purchases Using CONTRACTOR's CARRIER Fuel Card.** For purchases that CONTRACTOR elects to make using CARRIER's Fuel Card, the amount of the fuel purchase at the price posted at the pump. If CARRIER receives rebates or discounts from fuel vendors or the Fuel Card issuer, CARRIER shall retain the rebates or discounts and NOT share them with CONTRACTOR (i.e., CONTRACTOR shall have no right to any such rebate or discount). <br><br> 3. CONTRACTOR is under no obligation to use CARRIER's bulk-fueling facilities or the CARRIER Fuel Card for fuel purchases. |
| **Garnishment orders** (including but not limited to child-support orders) by courts and tax liens against CONTRACTOR compensation | Amount CARRIER paid in compliance with any lawfully-issued order or lien. An administrative charge of $2.00 per payment shall be charged. |
| **Insurance coverages** that CONTRACTOR elects, via **Attachment C**, to or that CARRIER maintains because CONTRACTOR failed to provide required coverages under **Attachment C.** | The costs identified in Attachment C for the required and optional coverages CONTRACTOR selected or for the coverage which CONTRACTOR fails to provide as required. |
| **Licensing (Base Plate)** fees if CONTRACTOR elected, by so indicating in Section 1(a) of this Attachment, to have CARRIER pay the fees in advance | See Section 8(f) of this Agreement and Section 1(a) of this Attachment |
| **Maintenance, repairs, tires, and other parts** that | Amount CARRIER paid third-party maintenance vendor. |

Independent Contractor Operating Agreement – Page B-3
CONFIDENTIAL

| CHARGE-BACK OR OTHER DEDUCTION ITEM | AMOUNT, OR METHOD OF COMPUTATION, OF DEDUCTION |
|---|---|
| CONTRACTOR elects to purchase from approved third-party maintenance vendors | |
| **Medical, dental, and/or other benefit plans** if CONTRACTOR elected to receive such benefits pursuant to Attachment E | See **Attachment E** |
| **Operating expenses not otherwise listed** in this table for which CONTRACTOR is responsible under this Agreement | Amount CARRIER paid or otherwise incurred. |
| **Performance completion charges** for completing an assignment CONTRACTOR undertakes but does not complete | Amount CARRIER incurred to complete CONTRACTOR's required performance under this Agreement. |
| **Termination-related expenses** pursuant to Section 17 of this Agreement, including reasonable attorneys' fees, involved in seeking the return of, replacing, or having to forego refunds, credits, or sale proceeds relating to CARRIER's base plate, permits, identification, and other property, including CARRIER's Trailer, communications/ tracking equipment, paperwork, and freight | Amount CARRIER paid or otherwise incurred |
| **Voluntary License Plate Reserve Account** contribution if CONTRACTOR elects, by signing **Attachment D-2**, to have CARRIER establish and administer such an Account | *See* **Attachment D-2** |
| **Voluntary Maintenance Reserve Account** contribution if CONTRACTOR elects, by signing **Attachment D-1**, to have CARRIER establish and administer such an Account | *See* **Attachment D-1** |

     **3.**    **INFORMATION REGARDING DEDUCTIONS.** CARRIER shall provide CONTRACTOR with a written explanation and itemization of any deductions for cargo or property damage before making them. With respect to all charge-backs and deductions, CARRIER shall make available to CONTRACTOR, upon request, copies of those documents that are necessary to determine the validity of the charge-back or deduction.

     **4.**    **CHANGES IN EXISTING DEDUCTION ITEMS.** If an item in any of the above columns will be changing, CONTRACTOR shall be so notified by written notice as set forth in this Agreement. In any event, CONTRACTOR shall not be subject to any such change until thirty (30) calendar days after such notice or such later time as is set forth in the notice. **CONTRACTOR's failure, by the end of thirty calendar days after such notice, to notify CARRIER of any objection to the change shall constitute CONTRACTOR's express consent and authorization to CARRIER to implement the change and modify accordingly the deductions from CONTRACTOR's Settlement Compensation and/or Escrow Fund, beginning immediately after the thirty-day period.** The modified amounts shall replace and supersede those shown in the Deductions Table. If CONTRACTOR fails to notify CARRIER of CONTRACTOR's objection within the 30-day period – or if CONTRACTOR notifies CARRIER of CONTRACTOR's objection within the 30-day period and the parties are then unable to resolve the matter, the parties shall each have the right to terminate this Agreement immediately thereafter. Once the change becomes effective, CONTRACTOR shall retain the right to terminate this Agreement in accordance with the procedures set forth in Section 2 of this Agreement (although CONTRACTOR shall remain subject to the change until the effective date and time of CONTRACTOR's termination).

**WE HAVE READ ATTACHMENT B (CHARGE-BACKS AND OTHER DEDUCTIONS) AND AGREE TO IT:**

| CARRIER:  NFI Interactive Logistics, LLC | CONTRACTOR: |
|---|---|
| By: _____<br>　　　Signature | By: _____<br>　　　Signature |
| Date | Date |

## ATTACHMENT C

### INSURANCE

#### 1.   CARRIER'S INSURANCE OBLIGATIONS.

**1(a).**   Pursuant to FMCSA regulations (49 C.F.R. Part 387) promulgated under 49 U.S.C. § 13906 and applicable state laws, CARRIER shall maintain, at CARRIER's expense public liability insurance (personal-injury/property-damage coverage, environmental restoration coverage, and cargo loss-and-damage coverage), in at least such amounts as are required by FMCSA regulations and pursuant to applicable state laws, covering the Equipment (as well as any trailers owned by CONTRACTOR or CARRIER) at all times it is being operated on behalf of CARRIER.

**1(b).**   CARRIER shall provide CONTRACTOR with a certificate of insurance for CARRIER's bodily injury/property damage insurance policy and cargo insurance policy. CARRIER's personal injury/property damage insurance policy and cargo insurance policy may list CONTRACTOR, either by class or individually, as an additional insured. CARRIER's possession of such insurance, however, shall in no way affect its rights of indemnification against CONTRACTOR as provided for in this Agreement.

**2.   CONTRACTOR'S INSURANCE OBLIGATIONS.**   CONTRACTOR shall maintain, at CONTRACTOR's expense, the following minimum insurance coverages during this Agreement:

**2(a).   Non-Trucking Liability Insurance.**   CONTRACTOR shall procure, carry, and maintain public liability and property damage insurance which shall provide coverage to CONTRACTOR whenever the Equipment (as well as any CARRIER's Trailer) is not being operated on behalf of CARRIER(including, but not limited to, whenever the Equipment is being operated on behalf of others pursuant to an alternative use of Equipment pursuant to Attachment G of this Agreement or whenever the Equipment is being operated on behalf of CONTRACTOR alone) in a combined single limit of not less than one million dollars ($1,000,000), with a deductible no greater than one thousand dollars ($1,000) for injury or death to any person or for damage to property in any one occurrence.  Such coverage shall be no less comprehensive than the coverage CARRIER may facilitate on CONTRACTOR's behalf if CONTRACTOR so chooses, as provided in Section 5 of this Attachment.  In addition, such coverage shall be primary and non-contributory, as between CARRIER and CONTRACTOR, to any other insurance that may be available from CARRIER.  CONTRACTOR shall be responsible for all deductible amounts and for any loss or damage in excess of the policy limit.

#### 2(b).   Workers' Compensation/Occupational Accident Insurance.

**2(b)(1). Workers' Compensation Coverage.**   CONTRACTOR shall, to the extent required or permitted by law, provide workers' compensation insurance coverage (or, if CONTRACTOR prefers, occupational accident insurance coverage where both state law allows and CARRIER approves) for CONTRACTOR (if a natural person) and those of CONTRACTOR's drivers, helpers, employees, agents, and any other persons required to be principally covered under the workers' compensation law of the state in which CONTRACTOR is domiciled and in amounts not less than the statutory limits required by such state's law.  The workers' compensation insurance policy shall provide principal coverage in the state in which CONTRACTOR is domiciled and shall provide "other states coverage" that excludes only North Dakota, Ohio, Washington, and Wyoming; and shall provide, if available, Extended Protection to cover CONTRACTOR and CARRIER for any claim or expenses incurred as a result of a claim made by CONTRACTOR, CONTRACTOR's drivers, employees, agents, and other persons utilized by CONTRACTOR in any of the monopolistic states.  If CONTRACTOR is domiciled in any of the four foregoing states, CONTRACTOR shall have state-fund coverage.  As evidence of the coverage, CONTRACTOR shall provide CARRIER with a copy of the insurance policy declarations page for CARRIER's verification before operating the Equipment under this Agreement (or other document issued by the

appropriate state fund including, where applicable, current certificates of premium payment).

**2(b)(1)(A).** **Occupational Accident Coverage.** CONTRACTOR may, as an alternative to obtaining workers' compensation coverage, obtain an occupational accident insurance policy that includes either an endorsement or a separate policy provision whereby an admitted insurer provides, or agrees to provide, workers' compensation coverage that becomes effective for a claim by CONTRACTOR alleging employee status, but CONTRACTOR may elect this alternative ONLY IF:

**2(b)(1)(A)(1)** CONTRACTOR either:

Is the sole owner (as that term is defined in 49 C.F.R. § 376.2(d)), and the sole operator, of the Equipment, or

Has workers and the State in which CONTRACTOR is domiciled both exempts CONTRACTOR from maintaining workers' compensation coverage of CONTRACTOR (if a natural person) and CONTRACTOR's employees and protects CARRIER from being considered the employer of either CONTRACTOR or CONTRACTOR's workers;

**2(b)(1)(A)(2)** The state in which the work is principally localized is not Colorado, Massachusetts, Nevada, New Hampshire, New Jersey, New York, or North Carolina. CONTRACTOR is required to maintain statutory workers' compensation insurance coverage for all of CONTRACTOR's workers, including CONTRACTOR, that are domiciled in any of these states;

**2(b)(1)(A)(3)** The occupational accident insurance coverage is no less comprehensive than the coverage CARRIER may facilitate on CONTRACTOR's behalf if CONTRACTOR so chooses, as provided in the "CERTIFICATE OF INSURANCE" in this Attachment; and

**2(b)(1)(A)(4)** CARRIER approves the coverage.

**2(b)(1)(B).** Certain Kansas-, Mississippi-, and Utah-Domiciled Contractors. If domiciled in Kansas, Mississippi, Texas, or Utah, CONTRACTOR must provide evidence of:

**2(b)(1)(B)(1)** Kansas and Mississippi. Either workers' compensation insurance coverage or occupational accident insurance coverage (in Mississippi of at least $1 million) if CONTRACTOR is the sole owner (as that term is defined in 49 C.F.R. § 376.2(d)) and exclusive driver of the Equipment; or Workers' compensation insurance coverage if CONTRACTOR is not the sole owner and exclusive driver of the Equipment.

**2(b)(1)(B)(2)** Utah. If CONTRACTOR is domiciled in Utah and is the sole owner and exclusive driver of the Equipment, CONTRACTOR shall provide Carrier with evidence of occupational accident insurance coverage and a copy of a valid Workers' Compensation Coverage Waiver ("WCCW") issued by the Industrial Accidents Division of the Utah Labor Commission (through CONTRACTOR's application online at

CONFIDENTIAL D - 002411

https://webaccess.laborcommission.utah.gov/wccoveragewaivers).        If CONTRACTOR is domiciled in Utah and is not the sole owner and exclusive driver of the Equipment, CONTRACTOR shall provide evidence, in the form required by Section 3 of this Attachment, of workers' compensation insurance coverage on both CONTRACTOR (unless CONTRACTOR has provided CARRIER with a copy of a valid WCCW) and those of CONTRACTOR's drivers, employees, agents, and other persons required to be principally covered under the worker's compensation law of Utah.

     **2(c).    PASSENGER INSURANCE.**  CONTRACTOR shall procure, carry, and maintain passenger liability insurance that shall provide medical benefit coverage of at least $100,000 per occurrence and accidental death and dismemberment insurance of at least $200,000 per occurrence whenever the Equipment is being operated (whether or not on behalf of CARRIER). Such coverage shall be no less comprehensive than the coverage CARRIER may facilitate on CONTRACTOR's behalf if CONTRACTOR so chooses, as provided in Section 4 of this Attachment.  In addition, such coverage shall be primary to any other insurance that may be available from CARRIER.  CONTRACTOR shall be responsible for all deductible amounts and for any loss or damage in excess of the policy limit.

     **2(d).    OTHER INSURANCE.**  In addition to the insurance coverages required under this Agreement, it is CONTRACTOR's responsibility to procure, carry, and maintain any fire, theft, uninsured and/or underinsured motorist, physical damage (collision), and any other insurance coverage that CONTRACTOR may desire for the Equipment or for CONTRACTOR's life, health care, dental care, vision care, or other needs. **As provided in this Agreement, CONTRACTOR holds CARRIER harmless with respect to loss of or damage to CONTRACTOR's Equipment, trailer, or other property, and CARRIER has no responsibility to procure, carry, or maintain any insurance covering loss of or damage to CONTRACTOR's Equipment, trailer, or other property.  .  CONTRACTOR acknowledges that CARRIER may and CONTRACTOR hereby authorizes CARRIER to, waive, reject, or reduce no-fault, uninsured, and underinsured motorist coverage from CARRIER's insurance policies to the extent allowed under the law of the State in which CARRIER's insurance policies are delivered, and CONTRACTOR shall cooperate in the completion of all necessary documentation for the waiver, election, rejection, or reduction..**

    **3.    REQUIREMENTS APPLICABLE TO ALL OF CONTRACTOR'S INSURANCE COVERAGES.**  CONTRACTOR shall procure insurance policies providing the above-described coverages solely from insurance carriers that are rated at least "B+VII" by A.M. Best (or of equivalent financial strength in the commercially-reasonable judgment of CARRIER), and CONTRACTOR shall not operate the Equipment under this Agreement unless and until CARRIER has determined that the policies are acceptable (CARRIER's approval shall not be unreasonably withheld).  CONTRACTOR shall furnish to CARRIER written certificates (or in the case of workers' compensation coverage, the insurance policy declarations page) obtained from CONTRACTOR's insurance carriers showing that all insurance coverages required above have been procured from insurance carriers rated at least "B+VII" by A.M. Best (or of equivalent financial strength in the commercially-reasonable judgment of CARRIER),.that the coverages are being properly maintained, and that the premiums thereof are paid.  Each insurance certificate shall specify the name of the insurance carrier, the policy number, and the expiration date; and list CARRIER as an additional insured with primary and non-contributory coverage (except that any workers' compensation policy shall contain an alternate employer endorsement in favor of CARRIER).  If a certificate of insurance provided to CARRIER under this Subsection does not show that written notice of cancellation or modification of the policy shall be given to CARRIER at least thirty (30) days prior to such cancellation or modification CONTRACTOR shall provide, or cause its insurance carrier to provide, this notice to CARRIER.

    **4.    CONTRACTOR'S LIABILITY IF REQUIRED COVERAGES ARE NOT MAINTAINED. In addition to CONTRACTOR's hold harmless/indemnity obligations to CARRIER under this Agreement, CONTRACTOR agrees to defend, indemnify, and hold CARRIER harmless from any direct, indirect, or consequential loss, damage, fine, expense, including reasonable attorney fees, actions, claim for injury to persons, including death, and damage to property that CARRIER may**

**incur arising out of or in connection with CONTRACTOR'S failure to maintain the insurance coverages required by this Agreement. In addition, CONTRACTOR, on behalf of his/her insurer, expressly waives all subrogation rights against CARRIER, and, in the event of a subrogation action brought by CONTRACTOR's insurer, CONTRACTOR agrees to defend, indemnify, and hold CARRIER harmless from such claim.**

### 5.    AVAILABILITY OF INSURANCE FACILITATED BY CARRIER.

**5(a).**    CONTRACTOR may, if CONTRACTOR so chooses by initialing one or more boxes in the right-hand column of the attached "CERTIFICATE OF INSURANCE," authorize CARRIER to facilitate, on CONTRACTOR's behalf, the insurance coverages required or made optional by this Agreement. In any such case, CARRIER shall deduct, from CONTRACTOR Settlement Compensation and/or Escrow Fund or otherwise recover pursuant to Section 12 of this Agreement, amounts reflecting all of CARRIER's expense and cost in obtaining and administering such coverage, as indicated in **Attachment B** to this Agreement (and under any notice and revised CERTIFICATE OF INSURANCE pursuant to Section 6 of this **Attachment C**).

**5(b).**    If CONTRACTOR fails to provide proper evidence of the purchase or maintenance of the insurance required above, then CARRIER is authorized but not required to obtain such insurance at CONTRACTOR's expense and deduct, from CONTRACTOR's Settlement Compensation, amounts reflecting all of CARRIER's expense in obtaining and administering such coverage, as indicated in the attached CERTIFICATE OF INSURANCE and **Attachment B**.

**5(c).**    CONTRACTOR recognizes that CARRIER is not in the business of selling insurance, and any insurance coverage requested by CONTRACTOR from CARRIER is subject to all of the terms, conditions, and exclusions of the actual policy issued by the insurance underwriter.

**5(d).**    CARRIER shall ensure that CONTRACTOR is provided with a certificate of insurance (as required by 49 C.F.R. § 376.12(j)(2)) for each insurance policy under which the CONTRACTOR has authorized CARRIER to facilitate insurance coverage from the insurance underwriter (each certificate to include the name of the insurer, the policy number, the effective dates of the policy, the amounts and types of coverage, the cost to CONTRACTOR for each type of coverage, and the deductible amount for each type of coverage for which CONTRACTOR may be liable), and CARRIER shall provide CONTRACTOR with a copy of each policy upon request.

**6.    CHANGES IN COST OR OTHER DETAILS OF COVERAGES.** If CARRIER is facilitating any insurance coverages for CONTRACTOR pursuant to Section 5 of this **Attachment C** and the cost to CONTRACTOR for, or other details of, a direct or underlying coverage changes materially from the information listed in the attached "CERTIFICATE OF INSURANCE" or **Attachment B** of this Agreement, CONTRACTOR shall be so notified in writing. In any event, CONTRACTOR shall not be subject to any such change until thirty (30) calendar days after such notice or such later time as is set forth in the notice. CONTRACTOR's failure, by the end of thirty (30) calendar days after such notice, to notify CARRIER of any objection to the change shall constitute CONTRACTOR's express consent and authorization to CARRIER to implement the change and modify the deductions from CONTRACTOR's Settlement Compensation, beginning immediately after the 30-day period. Such modified amounts shall replace and supersede those shown in the table in **Attachment B** and CARRIER shall provide a revised **Attachment B** reflecting the change and, upon request, a copy of the corresponding insurance policy. If CONTRACTOR notifies CARRIER of CONTRACTOR's objection within the 30-day period and CONTRACTOR and CARRIER are then unable to resolve the matter to their mutual satisfaction, CONTRACTOR and CARRIER shall each have the right to terminate this Agreement effective immediately upon the change becoming effective (although CONTRACTOR shall remain subject to the change until CONTRACTOR's termination's effective date and time).

| WE HAVE READ ATTACHMENT C (INSURANCE) AND AGREE TO IT: | |
|---|---|
| **CARRIER:  NFI Interactive Logistics, LLC** | **CONTRACTOR:** |
| By: _____<br>    Signature | By: _____<br>    Signature |
| _____<br>Date | _____<br>Date |

### CERTIFICATE OF INSURANCE

CONTRACTOR hereby requests CARRIER, through CARRIER's insurer, to facilitate on CONTRACTOR's behalf (if they are available) the insurance coverages that CONTRACTOR has selected by placing CONTRACTOR's initials in the right-hand column below:

| TYPE OF COVERAGE | INITIAL "YES" TO REQUEST COVERAGE |
|---|---|
| 1. **Non-Trucking Liability Insurance:** | |
| Name of Insurer: _____ | _____ YES |
| Policy No: _____ | _____ NO |
| *Effective Date(s) of Coverage:* From the Certificate Effective Date (below) until the coverage is canceled, subject to CONTRACTOR's payment of insurance cost and other policy terms and conditions | |
| *Amount of Coverage:* $_____ combined single limit | |
| *Current Cost to CONTRACTOR:* $_____ per unit of Equipment per week | |
| Deductible for Which CONTRACTOR Is Liable: $_____ per occurrence | |
| 2. **Occupational Accident Insurance:** | |
| Name of Insurer: _____ | _____ YES |
| Policy No: _____ | _____ NO |
| *Effective Date(s) of Coverage:* From the Certificate Effective Date until the coverage is canceled, subject to CONTRACTOR's payment of insurance cost and other policy terms and conditions | |
| *Amount of Coverage:* $_____ per occurrence ($_____ on death) | |
| *Current Cost to CONTRACTOR:* $__/week | |
| *Deductible for Which CONTRACTOR Is Liable:* $_____ | |
| 3. **Physical Damage Insurance on Tractor:** | |
| Name of Insurer: _____ | _____ YES |
| Policy No: _____ | _____ NO |
| *Effective Date(s) of Coverage:* From the Certificate Effective Date until the coverage is canceled, subject to CONTRACTOR's payment of insurance cost and other policy terms and conditions | |
| *Amount of Coverage:* CONTRACTOR-specified value of Unit of power-unit Equipment of $_____ (any Tractor Equipment claims, however, shall be paid at only the fair market value of insured Tractor Equipment at time of occurrence, in accordance with insurance policy). | |
| *Current Cost to CONTRACTOR:* __% of CONTRACTOR-specified value of tractor or straight truck, and selected deductible, billed weekly | |

CONFIDENTIAL

| TYPE OF COVERAGE | INITIAL "YES" TO REQUEST COVERAGE |
|---|---|
| *Deductible for Which CONTRACTOR Is Liable:* $_____ per occurrence | |
| 4.   **Passenger Insurance:** | |
| *Name of Insurer:* _____ | _____ YES |
| *Policy No:* _____ | _____ NO |
| *Effective Date(s) of Coverage:* From the Certificate Effective Date until the coverage is canceled, subject to CONTRACTOR's payment of insurance cost and other policy terms and conditions | |
| *Amount of Coverage:* $_____ per occurrence ($_____ on death) | |
| *Current Cost to CONTRACTOR:* $__/week | |
| *Deductible for Which CONTRACTOR Is Liable:* $_____ | |

**THIS CERTIFICATE OF INSURANCE, which completely replaces and supersedes any earlier Certificate, is agreed to by the undersigned parties and CARRIER hereby provides it to CONTRACTOR on the following Certificate Effective Date *[CHECK ONLY ONE BOX]*:**

☐ **At the date and time set forth on page 1 of this Agreement.**

☐ **At _____ __ m., _____ Time, _____, _____, 20___.**

| **CARRIER: NFI Interactive Logistics, LLC** | **CONTRACTOR:** _____<br>Social Security or Taxpayer ID No.: _____ |
|---|---|
| By: _____<br>       Signature | By: _____<br>       Signature |
| Authorized Rep.'s Name (Typed or Printed) | Authorized Rep.'s Name (Typed or Printed) |
| Title | Title |
| Date | Date |

CONFIDENTIAL

## ATTACHMENT D

### ESCROW FUND

As authorized by Section 19 of this Agreement, CARRIER shall establish and administer an Escrow Fund, which CONTRACTOR and CARRIER agree shall be governed by the following terms and conditions:

**1.      PRINCIPAL.** The amount of principal to be held in the Escrow Fund shall be a minimum of one thousand-five hundred dollars ($1,500.00), which amount is to be deducted from CONTRACTOR's compensation at seventy-five dollars ($75.00) per weekly settlement, beginning the first week of services provided by CONTRACTOR under this Agreement. If, at any time, the principal amount in escrow falls below $1,500.00, CONTRACTOR authorizes CARRIER to deduct from CONTRACTOR's compensation at the same rate until the full principal amount is replenished.

**2.      SPECIFIC ITEMS TO WHICH ESCROW FUND MAY BE APPLIED.** The Escrow Fund shall be held by CARRIER for the purpose of ensuring compliance with the provisions of the Agreement. The specific items to which the Escrow Fund shall apply are all charge-back and deduction items set forth in the Deductions Table in Section 2 of Attachment B and appendices and addendums to this Agreement (hereafter "Escrow Items"), including in connection with the return of equipment, devices and other materials provided or leased by CARRIER to CONTRACTOR under this Agreement– to the extent that the amounts owed by CONTRACTOR for such Escrow Items exceed CONTRACTOR's earned and payable compensation at the time of any settlement or final accounting.

**3.      ACCOUNTINGS.** While the Escrow Fund is under CARRIER's control, CARRIER shall provide an accounting to CONTRACTOR, no less frequently than monthly, of all transactions involving such funds by clearly indicating on individual Settlement Statements the amount and description of any deduction or addition made to the Escrow Fund.  In addition, upon CONTRACTOR's request, CARRIER shall provide CONTRACTOR with an accounting of any transactions involving CONTRACTOR's Escrow Fund.

**4.      INTEREST.** CARRIER shall pay interest to CONTRACTOR on the Escrow Fund on at least a quarterly basis ("interest period") beginning with receipt of the first CONTRACTOR contribution of principal.  The interest rate shall be established on the date the interest period begins and shall be the greater of one percent (1.0%) per year and the average yield of 91-day, 13-week U.S. Treasury bills, as established in the weekly auction by the Department of Treasury.  For purposes of calculating the balance of the Escrow Fund on which interest is paid, CARRIER may deduct a sum equal to the average advance (including all charge-backs and other deductions) made to CONTRACTOR during the period of time for which interest is paid.

**5.      FINAL SETTLEMENT.**      At the time of the return of any remaining balance in the Escrow Fund, under this Agreement, CARRIER may deduct monies for all Escrow Items first from the Escrow Fund under this Agreement.  The deductions shall be limited to amounts CARRIER actually spends, incurs, or owes to a third party, or that CONTRACTOR owes to CARRIER or a third party under a purchase or rental contract, before termination of this Agreement or, with respect to any CONTRACTOR obligation triggered by termination, including any expenses (including reasonable attorneys' fees) incurred by CARRIER in seeking the return of CARRIER's identification devices and other property, all amounts CARRIER actually spends, incurs, or owes to a third party upon termination or within forty-five (45) days thereafter. CARRIER shall not make deductions from the Escrow Fund for items for which, by the end of forty-five (45) days after termination, neither CONTRACTOR nor CARRIER has yet made expenditure or incurred a quantified, legally binding obligation to pay.  CARRIER shall provide a final accounting to CONTRACTOR of all final deductions made from the Escrow Fund within forty-five (45) days from the date of termination of this Agreement.

**6.      RETURN OF ESCROW FUND BALANCE.** In no event shall the Escrow Fund, less any final deductions pursuant to the above provision, be returned to CONTRACTOR later than forty-five (45) days from the date of termination of this Agreement.  CARRIER's use, or post-termination return to CONTRACTOR, of any balance in the Escrow Fund shall not constitute a waiver of CARRIER's right to

recover, through collection agencies, litigation, the right of offset, and all other available legal means, any additional amounts CONTRACTOR owes, or comes to owe, CARRIER under this Agreement.

| WE HAVE READ ATTACHMENT D AND AGREE TO IT: | |
|---|---|
| **CARRIER: NFI Interactive Logistics, LLC** | **CONTRACTOR:** |
| By: _____<br>    Signature | By: _____<br>    Signature |
| Date | Date |

## ATTACHMENT D-1

### VOLUNTARY MAINTENANCE RESERVE ACCOUNT

**CONTRACTOR is NOT required to sign this VOLUNTARY MAINTENANCE RESERVE ACCOUNT authorization.** If CONTRACTOR nonetheless elects to sign this authorization and CARRIER approves, CARRIER shall establish and administer a Voluntary Maintenance Reserve Account not to exceed three thousand five hundred dollars ($3,500.00) (the "Reserve Account") in CONTRACTOR's name under the terms and conditions that follow. The parties agree that because it is not a "required" escrow fund under 49 C.F.R. § 376.12(k), the Voluntary Base Plate Reserve Account is not covered by such regulation.

1.    **Principal.** From the balance in CONTRACTOR's Settlement Compensation remaining after subtracting all other charge-backs and other deductions under this Agreement, including **Attachment B**, at each Settlement CONTRACTOR directs CARRIER to deduct, and CARRIER shall deduct, and deposit in CONTRACTOR's Reserve Account, the sum of seventy-five dollars ($75.00) per week (or the portion of such amount that is available in CONTRACTOR's Settlement Compensation at the time) until CONTRACTOR notifies CARRIER in writing to stop the deductions/deposits.

2.    **Specific Items To Which Reserve Account May Be Applied.** The principal in the Reserve Account shall be applied only to maintenance, service or repair work, including all parts and labor as well as tires, performed with respect to the Equipment, provided that CONTRACTOR may direct CARRIER, in writing, at any time, to close the Account. In the latter event, CARRIER shall credit the balance to CONTRACTOR's Settlement Compensation within five (5) business days (or, if CONTRACTOR so requests in a signed writing, CARRIER shall electronically transfer such balance, less any third-party electronic funds transfer charges, to whatever bank account CONTRACTOR designates). If this Agreement has been terminated, CARRIER shall return such amount to CONTRACTOR, without interest, pursuant to Section 5 of this **Attachment.**

3.    **Accountings.** While the Reserve Account is under CARRIER's control, CARRIER shall provide an accounting to CONTRACTOR, no less frequently than monthly, of all transactions involving the Reserve Account by clearly indicating on individual settlement sheets the amount and description of any deduction or addition made to the Reserve Account.  In addition, upon CONTRACTOR's request, CARRIER shall provide CONTRACTOR with an accounting of any transactions involving CONTRACTOR's Reserve Account.

4.    **Interest.**  This Reserve Account is maintained voluntarily by CONTRACTOR and CARRIER shall NOT pay interest to CONTRACTOR on the Reserve Account

5.    **Return of Reserve Account Balance Upon Termination Of Agreement.** By the fifth business day after termination of this Agreement, CARRIER shall deliver to CONTRACTOR, by First Class U.S. Mail, or, if CONTRACTOR so requests, by overnight delivery to the CONTRACTOR's address as set forth below CONTRACTOR's signature following Section 24 of this Agreement, or such other address as CONTRACTOR shall, in a signed writing, direct CARRIER to use, a final accounting of Reserve Account transactions since the previous Settlement Statement. The CARRIER accounting shall be accompanied by a CARRIER check payable to CONTRACTOR for any balance in the Reserve Account or, if CONTRACTOR so requests in a signed writing, CARRIER shall electronically transfer such balance, less any third-party electronic fund transfer charges, to whatever bank account CONTRACTOR designates.

| | |
|---|---|
| *WE HAVE READ ATTACHMENT D-1 AND AGREE TO IT:* | |
| **CARRIER:  NFI Interactive Logistics, LLC** | **CONTRACTOR:** |
| By: _____<br>Signature | By: _____<br>Signature |
| _____<br>Date | _____<br>Date |

## Attachment D-2

### VOLUNTARY LICENSE PLATE RESERVE ACCOUNT

**CONTRACTOR is NOT required to sign this VOLUNTARY LICENSE PLATE RESERVE ACCOUNT authorization.** If CONTRACTOR nonetheless elects to sign this authorization below and CARRIER approves, CARRIER shall establish and administer a Voluntary Base Plate Reserve Account in CONTRACTOR's name under the terms and conditions that follow. The parties agree that because it is not a "required" escrow fund under 49 C.F.R. § 376.12(k), the Voluntary Base Plate Reserve Account is not covered by such regulation.

1.     **PRINCIPAL.** From the balance in CONTRACTOR's Settlement Compensation remaining after subtracting all other charge-backs and other deductions under this Agreement, including **Attachment B** , at each Settlement CARRIER shall deduct and deposit in CONTRACTOR's Voluntary License Plate Reserve Account the sum of seventy-five dollars ($75.00) per week (or the portion of such amount that is available in CONTRACTOR's Settlement Compensation at the time) until CONTRACTOR notifies CARRIER in writing to stop the deductions/deposits.

2.     **SPECIFIC ITEMS TO WHICH VOLUNTARY LICENSE PLATE RESERVE ACCOUNT MAY BE APPLIED.** The principal in the Voluntary License Plate Reserve Account shall be applied only to annual base plate fees for the Equipment pursuant to the "Licensing (base plate) fees" line item of **Attachment B**, provided that CONTRACTOR may direct CARRIER, in writing, at any time prior to CONTRACTOR placing its order for an annual base plate from CARRIER, to close the Account. In the latter event, CARRIER shall credit the balance remaining after deducting the cost of an annual base plate already ordered but not yet received by CONTRACTOR in the Voluntary License Plate Reserve Account to CONTRACTOR's Settlement Compensation within five (5) business days (or, if CONTRACTOR so requests in a signed writing, CARRIER shall electronically transfer such balance, without interest, less any third-party electronic funds transfer charges, to whatever bank account CONTRACTOR designates). If this Agreement has been terminated prior to CONTRACTOR placing his order with CARRIER for his annual base plate, CARRIER shall return such amount to CONTRACTOR pursuant to Section 5 of this **Attachment**.

3.     **ACCOUNTINGS.**     While the Voluntary License Plate Reserve Account is under CARRIER's control, CARRIER shall provide an accounting to CONTRACTOR, on CONTRACTOR's Settlement Statement, of all transactions involving the Voluntary License Plate Reserve Account, including the amount and description of any deduction from or addition to it.     In addition, upon CONTRACTOR's request at any time, CARRIER shall provide CONTRACTOR with an accounting of any Voluntary License Plate Reserve Account transaction.

4.     **INTEREST.** This Reserve Account is maintained voluntarily by CONTRACTOR and CARRIER shall NOT pay interest to CONTRACTOR on the Voluntary License Plate Reserve Account.

5.     **RETURN OF VOLUNTARY LICENSE PLATE RESERVE ACCOUNT BALANCE UPON TERMINATION OF AGREEMENT.** By the fifth business day after termination of this Agreement, CARRIER shall deliver to CONTRACTOR, by First Class U.S. Mail, or, if CONTRACTOR so requests, by overnight delivery to the CONTRACTOR's address required by Section 20 (Notices) of this Agreement, or such other address as CONTRACTOR shall, in a signed writing, direct CARRIER to use, a final accounting of Voluntary License Plate Reserve Account transactions since the previous Settlement Statement. If the Voluntary License Plate Reserve Account has a positive balance following deduction of the cost of the annual base plate which CONTRACTOR has received, or has ordered and is waiting to receive, from CARRIER at the end of the date of termination, the CARRIER accounting shall be accompanied by a CARRIER check payable to CONTRACTOR for any balance in the Voluntary License Plate Reserve Account or, if CONTRACTOR so requests in a signed writing, CARRIER shall electronically transfer such balance, less any third-party electronic fund transfer charges, to whatever bank account CONTRACTOR designates.

## WE HAVE READ ATTACHMENT D-2 AND AGREE TO IT:

| **CARRIER: NFI Interactive Logistics, LLC** | **CONTRACTOR:** |
|---|---|
| By: _____<br>      Signature | By: _____<br>      Signature |
| _____<br>Date | _____<br>Date |

## ATTACHMENT E

### SERVICE PLANS, COMMUNICATION EQUIPMENT, AND CARRIER POLICIES & PROCEDURES

**1.** By signing the SIGNATURE PAGES at the end of this **Attachment E**, CONTRACTOR elects to obtain medical, dental, and/or other services in accordance with the contract(s) between CONTRACTOR and the third-party providers of such services.

**2.** CONTRACTOR hereby authorizes and directs CARRIER to deduct from CONTRACTOR's weekly Settlement Compensation, and to remit the amounts to the provider(s) as indicated in this **Attachment E**.

**3.** **FURNISHING OF COMMUNICATIONS EQUIPMENT.** In fulfillment of CONTRACTOR's obligation under Section 8(g) of this Agreement, CONTRACTOR is free to obtain, install in the Equipment, and maintain in an operable and functioning condition, at CONTRACTOR's expense, a communications, tracking, and electronic logging system that constitutes, or in CARRIER's reasonable judgment is technically and functionally compatible with, the Mobile Communication System and other systems utilized by CARRIER. In the alternative, CONTRACTOR may elect to have CARRIER arrange to have installed in the Equipment, at CARRIER's expense, a Mobile Communication System or other system utilized by CARRIER. In the latter event, CONTRACTOR hereby agrees to have CARRIER deduct from his/her Settlement Compensation and/or Escrow Fund rent  and usage fees for such System of (a) seven dollars and fifty cents ($7.50) per week during the first two (2) years of CONTRACTOR's engagement with CARRIER and (b) five dollars ($5.00) per week thereafter. CONTRACTOR agrees to keep the CARRIER-furnished communications, tracking and electronic logging  system, which shall remain CARRIER's property, in an operable and functioning condition at all times that the Equipment is being operated in CARRIER's service.

**4.** **RE-INSTALLATION OF CARRIER-FURNISHED SYSTEM.** In the event CONTRACTOR shall replace the Equipment (power unit(s)), CONTRACTOR shall bear the expense of removal and re-installation of any CARRIER-furnished communications/tracking system in his/her replacement Equipment and hereby authorizes CARRIER to deduct all such expense from CONTRACTOR's Settlement Compensation and/or Escrow Fund.

**5.** **RETURN OF CARRIER-FURNISHED SYSTEM.** CONTRACTOR shall be responsible for the return of each CARRIER-furnished communications, tracking and/or electronic logging system to CARRIER immediately upon any request from CARRIER or the termination of this Agreement but a qualified technician selected by CARRIER shall remove the system.  If the system is lost or damaged or not returned, CARRIER may deduct from CONTRACTOR's Settlement Compensation and/or Escrow Fund or, if necessary, to collect additional payments from CONTRACTOR for, the entire expense incurred by CARRIER in repairing or replacing the system, together with all collection costs. CARRIER shall not be responsible for any loss or damage to CONTRACTOR's Equipment arising or resulting from the installation, use, or removal of the CARRIER-furnished communications system.

### 6.     CARRIER POLICIES AND PROCEDURES
*(a)* Driver Qualification Standards;
(b) Driver Handbook
*(c)* Safety Policies
(d) *Federal Motor Carrier Safety Administration Regulations* (see "Rules & Regulations" at www.fmcsa.dot.gov)
(e) Computerized mileage guide used by CARRIER.

Independent Contractor Operating Agreement–Att E  Page 1

CARRIER shall furnish to CONTRACTOR, at no charge, at the start of this Agreement a paper copy of Item a, b and c. Throughout the duration of the Agreement, CARRIER shall make available Items a, b and c to CONTRACTOR on request, in hard-copy or, at CARRIER's discretion, electronic form, for CONTRACTOR's inspection and copying at CARRIER's expense at any CARRIER terminal during normal business hours. CONTRACTOR may, at CONTRACTOR's expense, inspect, download, and/or print Items d by accessing the Federal Motor Carrier Safety Administration's "Rules & Regulations" web page indicated above. With respect to Item e, a third-party copyrighted mileage guide will be made available to CONTRACTOR for review at CARRIER's headquarters during normal business hours..

*IN CONNECTION WITH ATTACHMENT E, CONTRACTOR MUST INITIAL ONE OF THE FOLLOWING TWO OPTIONS AND, IF OPTION 2 IS SELECTED, MUST SIGN THE <u>MOBILE COMMUNICATIONS SYSTEM</u> RECEIPT BELOW:*

**OPTION 1:** _____ CONTRACTOR shall furnish and install his/her own compatible communications/tracking system in the Equipment.

**OPTION 2:** _____ CARRIER shall arrange to have a communications/tracking system installed in the Equipment and shall deduct the above rent from CONTRACTOR's Settlement Compensation and/or Escrow Fund.

**MOBILE SYSTEM RECEIPT**

CONTRACTOR hereby acknowledges that the following items of Mobile Communications System communications, tracking and/or electronic logging equipment, owned by CARRIER, are installed in CONTRACTOR's power-unit Equipment:

**<u>Each Mobile Communications System Unit</u>:**

| | |
|---|---|
| 1 | Outdoor Unit (Antenna) |
| 1 | Communications Unit (Black Box) |
| 1 | Display Unit (Keyboard and Screen) |

**Equipment (Tractor) #** _____       **System Unit #** _____

**CONTRACTOR:** _____       **Date:** _____

| *WE HAVE READ ATTACHMENT E AND AGREE TO IT:* | |
|---|---|
| **CARRIER: NFI Interactive Logistics, LLC** | **CONTRACTOR:** |
| By: _____<br>Signature | By: _____<br>Signature |
| Date | Date |

Independent Contractor Operating Agreement–Att E  Page 2

## Attachment E-1

### ELECTRONIC TOLL TRANSPONDER

**1.** CONTRACTOR hereby voluntarily requests CARRIER to arrange for an electronic toll transponder ("Transponder") for use exclusively in the Equipment as required by the toll authority or other issuer of the Transponder ("Issuer"). CONTRACTOR shall be charged for all tolls incurred through the Transponder and for any fines or other charges in connection with the unauthorized removal or use of the Transponder from the Equipment or violations incurred in connection with the Transponder. CONTRACTOR shall immediately notify CARRIER of any notice received from the Issuer or any other source relating to the Transponder, including without limitation any notices of toll violations.

**2.** CONTRACTOR agrees never to remove Transponder from the Equipment without the prior authorization of CARRIER. In the event a Transponder is removed from the Equipment without prior authorization of CARRIER, CARRIER will cause the Transponder to be deactivated, and CONTRACTOR will be charged any deactivation fees or other costs incurred. If a Transponder is lost or stolen, CONTRACTOR will be charged the corresponding deactivation fee and any other replacement fees or charges assessed by the Issuer.

**3.** CONTRACTOR shall return the Transponder to CARRIER at its main location or other location designated by CARRIER no later than seven (7) days following termination of this **Attachment E-1** or the Agreement. In the event that CONTRACTOR fails or refuses to return such Transponder upon termination of the Agreement, CONTRACTOR shall be charged the deactivation fee and any other charges assessed by the Issuer.

---

## WE HAVE READ ATTACHMENT E-1 AND AGREE TO IT:

| **CARRIER: NFI Interactive Logistics, LLC** | **CONTRACTOR:** |
|---|---|
| By: _____<br>Signature | By: _____<br>Signature |
| _____<br>Date | _____<br>Date |

---

Independent Contractor Operating Agreement–Att E-1  Page 1

D - 002425

## ATTACHMENT F

### CONSENT TO CONDUCT BUSINESS USING ELECTRONIC METHODS

**1.** Pursuant to Regulatory Guidance Concerning Electronic Signatures and Documents, 74 Fed. Reg. 411 (Jan. 4, 2011), issued by the Federal Motor Carrier Safety Administration ("FMCSA"), **NFI Interactive Logistics, LLC** ("CARRIER") and the undersigned contractor ("CONTRACTOR") hereby consent and agree to conduct business using, to the extent either party elects to do so in a particular instance, the following electronic method: email (including .pdf).

**2.** This consent encompasses the use of electronic methods to transmit and effect the signature of any document, including, without limitation, any supplement, modification, addendum, amendment, notice, consent and/or waiver, required by this Agreement or required by FMCSA regulations to be generated and maintained (or exchanged by private parties), including, without limitation, driver applications, driver histories, and other qualification records, leases formed under 49 C.F.R. Part 376, driver-vehicle inspection reports, and records of duty status.

**3.** The parties agree that when CONTRACTOR uses the above electronic method to effect electronic signatures, the method: (1) identifies and authenticates CONTRACTOR as the source of the electronic communication; (2) indicates CONTRACTOR's approval of the information contained in the electronic communication; and (3) produces an electronic document with the same integrity, accuracy, and accessibility as a paper document or handwritten signature.

**4.** The parties agree that when CARRIER uses the above electronic method to effect electronic signatures, the method: (1) identifies and authenticates CARRIER as the source of the electronic communication; (2) indicates CARRIER's approval of the information contained in the electronic communication; and (3) produces an electronic document with the same integrity, accuracy, and accessibility as a paper document or handwritten signature.

**5.** Either party may elect, with respect to any document, to use a manual/hardcopy signature, provided that the election shall not preclude the other party from applying an electronic signature to the same document.

**THIS ATTACHMENT F is agreed to by the undersigned parties as of the latest date set forth below.**

| _WE HAVE READ ATTACHMENT F AND AGREE TO IT:_ | |
|---|---|
| **CARRIER: NFI Interactive Logistics, LLC** | **CONTRACTOR:** |
| By: _____<br>Signature | By: _____<br>Signature |
| _____<br>Date | _____<br>Date |

Independent Contractor Operating Agreement–Att F  Page 1

CONFIDENTIAL                                                                                          D - 002426

**ATTACHMENT G**

**Alternative Uses of Equipment.**

**Alternative Uses of Equipment.**  The Equipment may be trip-leased to other authorized carriers by CONTRACTOR during the term of this Agreement **ONLY** upon CARRIER's prior written approval. Upon such approval, CONTRACTOR will be required to execute and deliver to CARRIER an Alternative Uses of Equipment Agreement, to be provided by CARRIER to CONTRACTOR, and the CONTRACTOR will be required to have the sublease carrier execute and deliver to CARRIER a Sublease Agreement, to be provided by CARRIER to CONTRACTOR.  As provided in the Alternative Uses of Equipment Agreement, CONTRACTOR will be required to remove or cover up all CARRIER identification on the Equipment and display instead the sublease carrier's identification devices or placards.  Should CONTRACTOR or its personnel breach or otherwise fail to comply with this provision or enter into an unauthorized trip lease, or otherwise use the Equipment in any way inconsistent with this Agreement, CONTRACTOR will be deemed to have immediately and unilaterally terminated this Agreement simultaneous with such use and to have relieved CARRIER of all of CARRIER's obligations under this Agreement.  Liability for all claims and damages arising from any breach or unauthorized use is the sole and exclusive responsibility of CONTRACTOR.

**THIS ATTACHMENT G is agreed to by the undersigned parties as of the latest date set forth below.**

| *WE HAVE READ ATTACHMENT G AND AGREE TO IT:* | |
|---|---|
| **CARRIER: NFI Interactive Logistics, LLC** | **CONTRACTOR:** |
| By: _____ <br> Signature | By: _____ <br> Signature |
| Date | Date |

Independent Contractor Operating Agreement–Att G  Page 1

## ATTACHMENT H

### EVENT RECORDER SYSTEM

**1.** By signing the SIGNATURE PAGE at the end of this Attachment H, CONTRACTOR elects to have an event recorder system ("Drive Cam") installed in its vehicle by CARRIER or a contracted third-party provider that specializes in the installation of such equipment.

**2.** CONTRACTOR hereby authorizes and directs CARRIER to deduct from CONTRACTOR's weekly Settlement Compensation, and to remit the amounts to the provider(s) as indicated in this **Attachment H**, $20.00 per month in connection with CONTRACTOR's rental and use of the Drive Cam. All charges for use of the Drive Cam shall begin as of the first of the month after the device has been fully installed and becomes operable. Any increase in the subscription cost will be subject to sixty (60) day notice and written approval from CONTRACTOR of such increased cost.

**3.** **FURNISHING OF DRIVE CAM EQUIPMENT.** The charge to be paid by CONTRACTOR for the installation of the Drive Cam is $60.00. The installation charge will be deducted from CONTRACTOR's second weekly Settlement Compensation for the month after installation of the Drive Cam. CONTRACTOR agrees to keep the CARRIER-furnished Drive Cam, which shall remain CARRIER's property, in an operable and functioning condition at all times that the Drive Cam is being operated in CARRIER's service.

**4.** **RE-INSTALLATION OF CARRIER-FURNISHED SYSTEM.** In the event CONTRACTOR shall replace the Equipment (power unit(s)), CONTRACTOR shall bear the expense of removal and re-installation of any CARRIER-furnished Drive Cam in his/her replacement Equipment and hereby authorizes CARRIER to deduct all such expense from CONTRACTOR's Settlement Compensation and/or Escrow Fund.

**5.** **RETURN OF CARRIER-FURNISHED SYSTEM.** CONTRACTOR shall be responsible for the return of each CARRIER-furnished Drive Cam to CARRIER immediately upon any request from CARRIER or the termination of this Agreement, but a qualified technician selected by CARRIER shall remove the system at no cost to CONTRACTOR. If the Drive Cam is lost or damaged or not returned, CARRIER may deduct from CONTRACTOR's Settlement Compensation and/or Escrow Fund, or if necessary, collect additional payments from CONTRACTOR for, the entire expense incurred by CARRIER in repairing or replacing the Drive Cam, together with all collection costs. CARRIER shall not be responsible for any loss or damage to CONTRACTOR's Equipment arising or resulting from the installation, use, or removal of the CARRIER-furnished Drive Cam.

**6.** **CARRIER POLICIES AND PROCEDURES**
   a. CARRIER will have access to video from triggered events;
   b. CONTRACTOR will receive training on how to operate the Drive Cam;
   c. CONTRACTOR will receive a "Light Pattern Cab Card";
   d. CONTRACTOR can opt to receive e-mailed video from triggered events daily;
   e. CONTRACTOR will have full access and their own personal log-in credentials to access any video that is event triggered in a 90 day period;
   f. Operator has the option to elect whether the Drive Cam has an internal lens view ONLY or BOTH an external and internal view.

Independent Contractor Operating Agreement

CONFIDENTIAL

*INSTALLATION AND USE OF A DRIVE CAM IS VOLUNTARY IN THE SOLE DISCRETION OF CONTRACTOR. IN CONNECTION WITH THIS ATTACHMENT H, CONTRACTOR MUST INITIAL ONE OF THE FOLLOWING TWO OPTIONS AND, IF OPTION 1 IS SELECTED, MUST SIGN THE DRIVE CAM RECEIPT BELOW:*

**OPTION 1:** _____ CONTRACTOR desires to have CARRIER arrange for the installation of a Drive Cam in the Equipment and shall deduct the above amounts from CONTRACTOR's Settlement Compensation and/or Escrow Fund.

**OPTION 2:** _____ CONTRACTOR does not desire to have a Drive Cam installed in the Equipment.

**DRIVE CAM RECEIPT**
CONTRACTOR hereby acknowledges that the following items of Drive Cam equipment, owned by CARRIER, are installed in CONTRACTOR's power-unit Equipment:

**Each Drive Cam Unit includes:**

One (1) 20 Foot Power Harness (PER CAT-0020)
One (1) Power Connection Harness (Part 030-00018-000)
One (1) Event Recorder DC 3P00-006-C
One (1) Event Recorder Bracket
One (1) Fuse Connector
Two (2) Lytx Security Screws

**Equipment (Tractor) #** _____     **System Unit #** _____

**CONTRACTOR:** _____     Date: _____

| *WE HAVE READ ATTACHMENT H AND AGREE TO IT:* | |
| --- | --- |
| **CARRIER: NFI Interactive Logistics, LLC** | **CONTRACTOR:** |
| By: _____<br>Signature | By: _____<br>Signature |
| Date | Date |

Independent Contractor Operating Agreement

CONFIDENTIAL

## STATEMENT OF LEASE
### (Must Be Carried in Cab of Any Below-Listed Equipment)

To the extent provided by the Independent Contractor Operating Agreement entered into between the undersigned CONTRACTOR and **NFI Interactive Logistics, LLC**, USDOT No. 1486168 ("CARRIER"), on _____ ____, 20__ ("ICOA" or "lease"), the following Equipment is being operated by the undersigned CARRIER:

| Year | Make | Model | Serial (VIN) # | CARRIER Unit # |
|------|------|-------|----------------|----------------|
|      |      |       |                |                |
|      |      |       |                |                |
|      |      |       |                |                |

CONTRACTOR is the Equipment's "owner," as that term is defined by 49 C.F.R. § 376.2(d). The ICOA is for a term commencing at __.m. Eastern Time on _____ ____, 20__, and ending at 11:59 p.m. Eastern Time on the next succeeding December 31, to be renewed automatically from year to year after that period, unless sooner terminated by either party pursuant to Section 2 of the Agreement and includes no restrictions relative to the commodities to be transported. The original of the ICOA is kept by CARRIER at the address shown below.

The undersigned parties to the ICOA agree that, pursuant to 49 C.F.R. § 376.11(c)(2), A COPY OF THIS "STATEMENT OF LEASE" IS TO BE CARRIED ON THE EQUIPMENT DURING ALL PERIODS THAT, PURSUANT TO THE ICOA, THE EQUIPMENT IS BEING OPERATED BY OR ON BEHALF OF CARRIER.

**CARRIER:  NFI Interactive Logistics, LLC**

By: _____
        Signature

Authorized Rep.'s Name (Typed or Printed)

Title
1515 Burnt Mill Road
Cherry Hill, NJ  08003
Tel. 856-857-1324
Fax 856-_____
_____@nfiindustries.com

_____
Date

**CONTRACTOR:** _____
Social Security or Taxpayer ID No.: _____

By: _____
        Signature

Authorized Rep.'s Name (Typed or Printed)

Title

Address (Street, P.O. Box)

City, State & Zip Code

Mobile Telephone Number          Fax Number

Email Address

Date

4839-7907-9222, v. 2

Independent Contractor Operating Agreement

# AMENDMENT TO
## INDEPENDENT CONTRACTOR OPERATING AGREEMENT

This Amendment (this "Amendment") to Independent Contractor Operating Agreement is entered into as of February ____, 2018 by and between NFI INTERACTIVE LOGISTICS, LLC ("Carrier") and _____ ("Contractor").

## BACKGROUND

WHEREAS, NFI and Contractor are parties to that certain Independent Contractor Operating Agreement pursuant to which Contractor provides professional truck driving and related transportation services to NFI (the "Agreement");

WHEREAS, the term of the Agreement is one (1) year from the date of execution and, as provided in Section 2(a) of the Agreement, the term may be extended by an amendment executed by NFI and Contractor; and

WHEREAS, NFI and Contractor desire to extend the term of the Agreement as provided hereunder.

NOW, THEREFORE, in consideration of the mutual promises and covenants hereinafter set forth, the parties to this Amendment, intending to be legally bound, hereby agree as follows:

1. Duration of Agreement.  Section 2(a) of the Agreement is hereby amended by extending the term of the Agreement until January 31, 2019, which term may be further extended by execution of an amendment or addendum executed by both parties hereto or by the entering into of a new agreement.

2. Confirmation of Agreement.  Except as amended by this Amendment, the Agreement is hereby ratified and confirmed in all respects.  The Agreement and this Amendment shall be read, taken and construed as one and the same instrument.

3. Counterparts.  This Amendment may be executed in one or more counterparts (whether facsimile or original), each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

IN WITNESS WHEREOF, the undersigned have caused this Amendment to be executed as of the day and year first above written.

NFI INTERACTIVE LOGISTICS, LLC


By:_____     _____
Name:                                                                  [INSERT NAME OF CONTACTOR]
Title:

CONFIDENTIAL                                                                                               D - 002431