# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN F. PORTILLO, RAFAEL SUAREZ, MARTIN DURAN, GERMAN BENCOSME, EDIN VARGAS, LUIS A. HERNANDEZ, JOSUE PAZ, and ALAVARO CASTANEDA, individually and on behalf of all others similarly situated,<br><br>                              Plaintiffs,<br><br>*vs.*<br><br>NATIONAL FREIGHT, INC. and NFI INTERACTIVE LOGISTICS, INC.,<br><br>                              Defendants. | CIVIL ACTION NO. 15-cv-7908-JHR-KMW<br><br>**OPINION** |

This matter is before the Court on Plaintiffs' Motion to Compel Compliance with the Court's Class Certification Decision and Issue Notice to All Class Members ("Motion to Compel") [Dkt. 201] and Defendants National Freight, Inc. and NFI Interactive Logistics, Inc.'s [collectively "NFI"] response thereto [Dkt. 212].  For the reasons discussed below, the Court will grant Plaintiffs' motion in part and deny the motion in part.

## I.    Overview

The named Plaintiffs in this case represent a class of truck drivers who contracted with NFI—a provider of logistics, transportation, and distribution services—to deliver food and other goods from NFI warehouses to Trader Joe's retail stores on the East coast.  *Portillo v. Nat'l Freight, Inc.*, 336 F.R.D. 85, 87 (D.N.J. 2020).  Plaintiffs initiated this lawsuit in 2015 alleging that NFI misclassified them as independent contractors and, as a result, that certain deductions that NFI withdrew from Plaintiffs' compensation violated the New Jersey Wage Payment Law

1

("NJWPL"), N.J. Stat. 34:11-4.1 *et seq.* [Dkt 1, Compl.; *see also* Dkt. 102, Am. Compl]. On

July 1, 2020, the Court certified the plaintiff class under Federal Rule of Civil Procedure

23(b)(3) to include

1. All individuals who: (1) entered into, either personally or through a corporate entity, an independent contractor agreement with NFI that had a New Jersey choice-of-law clause; and (2) drove a vehicle on a full-time basis to perform deliveries of goods to Trader Joe's stores anywhere on the East Coast on behalf of NFI at any time since June 22, 2009.

2. "Full-time basis" means having delivered at least 80% of the loads assigned to the contractor.

[Dkt. 170, 171]. The Court refers to these criteria as "the Class Definition" throughout this

opinion.

The parties now disagree on Class Definition's interpretation and whether it includes or

excludes certain putative class members who have not yet received notice of this lawsuit.

Plaintiffs' Motion to Compel alleges that NFI improperly refused to send class notices to

approximately fifty NFI drivers who fit the Class Definition. [Dkt. 201-2 at 9–10]. Plaintiffs

also argue that, even if they are wrong, these individuals are entitled to notice that they are *not*

class members. NFI responds that these individuals do not qualify as "class members" under the

Class Definition and that individuals outside of the class are not entitled to receive notice. [Dkt.

212 at 5–6].

The Court heard oral argument on these issues on June 29, 2021. [Dkt. 230]. The Court

then asked for supplemental briefing on issues raised during oral argument. [Dkt. 232].

## II.   Analysis

### a.  Individuals with Disputed Class Status

The parties dispute Class Definition's application to four discrete groups of drivers.  The Court will discuss each group separately.

#### i.  Parties' Concessions

Plaintiffs concede that, for different reasons, three NFI contractors—identified as VH; YR; and Itzel, Inc.—do not meet the Class Definition.  [*See* Dkt. 201-2 at nn.8, 9].  These individuals are therefore not class members.

Although the parties previously disputed Plaintiff Alvaro Castaneda's class membership, NFI now concedes that Castaneda "is … part of this case because he is a Named Plaintiff."  [Dkt. 212 at 17 n.12].  Thus, Castaneda is a class member and is entitled to notice.

#### ii.  Independent Contractor Agreements and Applicable State Law

All named Plaintiffs and putative absent class members signed Independent Contractor Agreements ("ICOAs") with NFI that nominally classify drivers as independent contractors rather than employees.  *Portillo*, 336 F.R.D. at 87.  NFI has used five different ICOAs since 2009.  The first three ICOAs included New Jersey choice-of-law clauses (collectively the "New Jersey ICOAs").[1,2]  The most recent ICOAs, which NFI distributed to drivers in 2019 (the "2019

---

[1] The second and third ICOAs contained New Jersey forum selection clauses, while the first did not include a forum selection clause.

[2]  Plaintiffs point out, and NFI tacitly agrees, that

> [t]he pre-2019 contracts included start dates and an expiration date one year later, and a provision stating that the contract could be automatically renewed for one-year periods, or cancelled by either party.  Stated differently, for years, these drivers worked under one-year contracts, which were fully vested, expired and then renewed, and contained a New Jersey choice of law provision and a New Jersey forum selection clause.

3

ICOA") and 2020 (the "2020 ICOA"), contain Texas choice-of-law and forum-selection clauses (collectively the "Texas ICOAs").[3,4,5]

The parties first dispute the class membership of approximately thirty-six drivers who first signed a New Jersey ICOA and later signed a Texas ICOA. To resolve this dispute the Court must revisit prior decisions in this case.

---

[Dkt. 233 at 6].

[3]   The choice-of-law and forum-selection clauses read, in pertinent part:

> This Agreement or any claim or dispute arising from or in connection with this Agreement shall be interpreted in accordance with, and governed by the laws of the United States and the State of Texas, without regard to the choice-of-law rules of Texas or any other jurisdiction. THE PARTIES **FURTHER** AGREE THAT ANY CLAIM OR DISPUTE ARISING FROM OR IN CONNECTION WITH THIS AGREEMENT **OR OTHERWISE WITH RESPECT TO THE OVERALL RELATIONSHIP BETWEEN THE PARTIES** … SHALL BE BROUGHT EXCLUSIVELY IN THE STATE OR FEDERAL COURTS IN DALLAS COUNTY, TEXAS. CARRIER AND CONTRACTOR HEREBY CONSENT TO THE JURISDICTION AND VENUE OF SUCH COURTS.

[Dkt. 143-13 ¶ 23] (emphasis in original).

[4] The 2019 ICOA also includes the following clause:

> This Agreement ... constitute[s] the entire Agreement between CARRIER and CONTRACTOR pertaining to the subject matter contained herein and fully replaces and supersedes all prior and contemporaneous agreements, representations, and understandings.

[Dkt. 143-13 ¶ 24(c)].

[5]   Like the New Jersey ICOAs, the 2019 ICOA states that "[t]his Agreement shall be for a period of one (1) year from the date of execution." [Dkt. 143-3 ¶ 2(a)].

### 1. Review of 2018 and 2020 Opinions

On June 11, 2018, the late Judge Jerome Simandle issued an opinion in response to Plaintiffs' motion for declaratory relief to determine which state's law would apply to the named Plaintiffs' class claims.  [*See* Dkt. 94].  Judge Simandle conducted a choice-of-law analysis that relied heavily on the New Jersey choice-of-law clauses in the New Jersey ICOAs that existed at the time.  Judge Simandle found that the New Jersey choice-of-law provision in the named Plaintiffs' ICOAs tilted the analysis in favor of applying New Jersey law, and concluded that New Jersey law would apply to the named Plaintiffs' claims.  [Dkt. 94 at 38–39].[6]

In the wake of Judge Simandle's opinion—and while this litigation was still pending—NFI disseminated the 2019 ICOA to its drivers, including putative class members in this case who drive for NFI on the east coast.  As mentioned above, the 2019 ICOA contains Texas choice-of-law and forum-selection clauses even though NFI is incorporated in New Jersey and has its principal places of business in New Jersey.  [Dkt. 94 at 3].  By October 18, 2019, when NFI submitted its briefing on the issue of class certification, at least five putative class members had signed the 2019 ICOA.  [Dkt. 142 at 11].[7]

This Court revisited Judge Simandle's 2018 opinion in its July 1, 2020 class certification opinion.  Among the issues that the Court considered when certifying and defining the class was the state law that would apply to absent class members' class claims.  The Court found that

---

[6] [*See* Dkt. 94 at 39] ("The Court is persuaded that New Jersey has the most significant relationship to the parties, the working relationships, and the claims at issue in this case. Defendants are the more sophisticated party and the drafters of the contract; they elected to be bound (with regard to contract claims) by New Jersey law and to bind the drivers to New Jersey law with regard to such claims….").

[7] According to NFI, thirty-six putative class members have now signed a 2019 or 2020 ICOA. [*See* Dkt. 212 at 10 n.7].

Judge Simandle's choice-of-law analysis regarding named class members extended to absent class members who signed ICOAs containing a New Jersey choice-of-law clause. *Portillo*, 336 F.R.D. at 91.  The Court recognized, however, that "the lack of a New Jersey choice-of-law clause in the 2019 ICOA would change the outcome of the Court's previous [choice-of-law] decision." *Id.*  The Court found that Judge Simandle's choice-of-law analysis "appl[ies] to the putative class members, except for those who only signed the 2019 ICOA." *Id.*  The Court did not extensively analyze or determine which state's law would apply to drivers who signed the 2019 ICOA but concluded that "New Jersey law would not apply to those drivers." *Id.*  This choice-of-law analysis informed the Class Definition, which requires class members to have signed a New Jersey ICOA. *See id.* at 98.

## 2.  The Present Dispute

As indicated above, NFI has refused to provide contact information necessary to provide notice to thirty-six individuals who signed a Texas ICOA.  Plaintiffs believe that most or all of these thirty-six individuals previously signed a New Jersey ICOA because thirty-three of these individuals delivered for NFI before NFI introduced the 2019 and 2020 ICOA's.  [Dkt. 201-2 at 12].  Plaintiffs argue that any individuals who signed both a Texas ICOA and a New Jersey ICOA are class members because the Class Definition includes "[a]ll individuals who … entered into … an independent contractor agreement with NFI that had a New Jersey choice-of-law clause."  [Dkt. 201-2 at 11]; *Portillo*, 336 F.R.D. at 98.  Plaintiffs also rely on the Court's finding that Judge Simandle's choice-of-law analysis "does apply to the putative class members, except for those who **only** signed the 2019 ICOA."  [Dkt. 201-2 at 8–9].

NFI does not dispute that certain individuals signed both a Texas ICOA and a New Jersey ICOA but argues that those individuals are not class members.  NFI points to the Court's

conclusion that "New Jersey law would not apply" to individuals who signed the 2019 ICOA and argues under the "law of the case" doctrine[8] that these individuals cannot be class members even if they previously signed a New Jersey ICOA.  [Dkt. 212 at 9–10].  NFI further argues that the Texas ICOAs superseded any prior ICOAs between NFI and the putative class members.  [*Id.* at 11–12].  During oral argument and in its supplemental briefing, NFI argued that Texas courts must decide any dispute about the effect of the Texas ICOAs.

Plaintiffs have properly interpreted the Court's class definition.  The Court understands that some language in its class certification opinion may permit conflicting interpretations as to class membership for drivers who signed both New Jersey and Texas ICOAs.  But the Court never intended to exclude these drivers from the class entirely, which is why the Court found that "**[a]ll individuals** who … entered into … an independent contractor agreement with NFI that had a New Jersey choice-of-law clause" are class members and that Judge Simandle's choice-of-law conclusions "apply to the putative class members, except for those who **only** signed the 2019 ICOA."  *Portillo*, 336 F.R.D. at 91, 98 (emphasis added).  The Court confirms that drivers who signed one or more New Jersey ICOAs and one or more Texas ICOAs—and who otherwise satisfy the criteria for class membership—are class members eligible to recover for injuries

---

[8] The law-of-the-case doctrine generally provides that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Musacchio v. United States*, 577 U.S. 237, 244–45, 136 S. Ct. 709, 716, 193 L. Ed. 2d 639 (2016) (citations and quotations omitted).  "In that respect, the doctrine endeavors 'to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit.'"  *Krys v. Aaron*, 106 F. Supp. 3d 472, 480 (D.N.J. 2015) (quoting *In re Pharmacy Benefit Mgrs. Antitrust Litig.*, 582 F.3d 432, 439 (3d Cir. 2009).

sustained under New Jersey law[9] *before* the drivers signed a Texas ICOA.[10]  *See Gibbs v. Frank*,

500 F.3d 202, 206 (3d Cir. 2007) (observing that district courts have discretion to interpret their

own orders).

   Two legal principles support the Court's interpretation of its class certification opinion

and order.  First, as a matter of contract law, the Texas ICOAs do not divest putative class

members of the right to pursue claims in New Jersey courts that may have accrued under New

Jersey law *before* these drivers signed a Texas ICOA.[11]  The Class Definition includes

individuals who drove for NFI under New Jersey ICOA's as long ago as June 22, 2009.  Nothing

in the 2019 ICOA facially suggests that the parties intended[12] the 2019 ICOA to "reach[] back in

time to require" these drivers to litigate "a claim which had accrued before the [2019 ICOA] was

signed or before the [2019 ICOA] even took effect" in Texas courts under Texas law.  *Hendrick*

*v. Brown & Root, Inc.*, 50 F. Supp. 2d 527, 535 (E.D. Va. 1999); *see also Ariba, Inc. v. Faulks*,

No. CIV.A. 3:03-CV-0093-, 2003 WL 21414769, at *3 (N.D. Tex. June 13, 2003) ("Indeed, the

2002 policy contains no language that indicates the parties intended to retroactively renegotiate

the arbitration provisions of the prior policies and, absent clear intent to the contrary, an

---

[9] To be clear, the Court does not reach any decision as to whether drivers who signed New Jersey ICOAs and Texas ICOAs suffered any injuries for which NFI is liable. This finding only confirms that such drivers satisfy the criteria for class membership.

[10]  During oral argument, Plaintiffs conceded that drivers who signed Texas ICOAs are not entitled to recover under New Jersey law for injuries suffered *after* signing the Texas ICOA.

[11] Nor do the Texas ICOAs divest this Court of jurisdiction to determine that the Texas ICOAs do not apply in this case.  *See Flahavin v. Fairway & Greene, Ltd.*, No. 3:11-CV-1458-F, 2012 WL 13026639, at *3–4 (N.D. Tex. Feb. 23, 2012) (denying motion to dismiss for improper venue based on forum-selection clause in later-signed contract).

[12] As with any contract interpretation issue, the Court must look to the parties' intent as embodied in the 2019 ICOA.  *Williams v. Metzler*, 132 F.3d 937, 947 (3d Cir. 1997).

integration clause does not extinguish 'a party's right to litigate under prior contracts.'" (quoting *Coffman v. Provost * Umphrey Law Firm, LLP*, 161 F. Supp. 2d 720, 728 (E.D. Tex. 2001))). Instead, and as Plaintiffs point out, the 2019 ICOA's plain language demonstrates that the parties only intended for it to operate prospectively.  [Dkt. 233 at 6].

The Court rejects NFI's argument that the 2019 ICOA's integration clause compels a different result [Dkt. 212 at 11] because the Texas ICOAs do not concern the same subject matter as the earlier ICOAs.[13]  The 2019 ICOA states that it "constitute[s] the entire Agreement between CARRIER and CONTRACTOR pertaining to the subject matter contained herein." [Dkt. 143-13 ¶ 23].  As noted above, each ICOA facially governs NFI's relationship with its drivers for a one-year period.  [Dkt. 233 at 6].  In other words, the "subject matter" of each ICOA consists of the parties' respective rights and obligations for that year only.  The "subject matter" of the 2019 ICOA therefore consists only of the parties' rights and obligations for one year following its execution and, therefore, does not include rights and obligations that predate its execution.

Further, "the run-of-the-mill integration clause" in the Texas ICOA was "designed to do nothing more than prevent any unincorporated side agreements previously negotiated by the parties during the pre-contract negotiation stage from becoming enforceable provisions" in the Texas ICOAs.  *Choice Sec. Sys., Inc. v. AT&T Corp.*, 141 F.3d 1149 (1st Cir. 1998).  The integration clause does not function as a "radical … retroactive renegotiation of … earlier agreements" between NFI and its drivers.  *Id.* (citing *Kentucky Fried Chicken Corp. v.*

---

[13] "[A]s a general matter, integration clauses are meant to act as 'conclusive evidence that the parties intended to supersede any prior contract on the same subject matter.'"  *Skold v. Galderma Lab'ys L.P.*, 917 F.3d 186, 194 (3d Cir. 2019) (quoting *ADR N. Am., L.L.C. v. Agway, Inc.*, 303 F.3d 653, 658 (6th Cir. 2002)).

*Collectramatic, Inc.*, 130 N.H. 680, 547 A.2d 245, 248 (N.H.1988)); *see also Flahavin*, 2012 WL 13026639, at *3–4 (enforcing a forum selection clause in an earlier agreement after finding that forum selection and integration clauses in a subsequent contract did not extinguish rights under the earlier agreement).

Adopting NFI's view would transform the Texas ICOAs into "implied releases" or waivers of any rights that putative class members may have accrued while performing under contracts governed by New Jersey law. *Trico Elec. Coop., Inc. v. Sensus USA, Inc.*, 2011 WL 13233552, at *4 (D. Ariz. Nov. 8, 2011) (citing *Standard Oil Co. Of California v. Perkins*, 347 F.2d 379, 384 (9th Cir. 1965)); *see also Petrillo v. Bachenberg*, 263 N.J. Super. 472, 479–80, 623 A.2d 272, 276 (App. Div. 1993), *aff'd*, 139 N.J. 472, 655 A.2d 1354 (1995) ("Waiver must be evidenced by a clear, unequivocal and decisive act from which an intention to relinquish the right can be based." (citations omitted)). Without clear evidence that the parties sought to invalidate all pre-2019 agreements when they entered into a Texas ICOA, the Court declines to enforce the Texas ICOAs as releases. *See Trico Elec. Coop., Inc.*, 2011 WL 13233552, at 4. ("Here, the general integration clause in the 2010 Support Agreement does not invalidate the 2006/2007 Settlement Agreements because it appears to the Court that the parties would have explicitly referenced the Settlement Agreements if they had intended to invalidate them.").

To the extent there is any doubt as to whether the Texas ICOAs can be interpreted to extinguish Plaintiffs' rights under prior contracts or require them to bring their claims in Texas courts, the Court must resolve those doubts against NFI who drafted the 2019 ICOA. *Corp. Synergies Grp., LLC v. Andrews*, 775 F. App'x 54, 56 n.1 (3d Cir. 2019) (citing *In re Miller's Estate*, 90 N.J. 210, 447 A.2d 549, 555 (1982)).

Second, the Court has authority under the Federal Rules of Civil Procedure to decline to enforce the Texas ICOAs and extinguish the rights of putative class members.  Rule 23(d), which "is concerned with the fair and efficient conduct of the action," Notes of Advisory Committee, Fed. R. Civ. P. 23(d), grants district courts the "broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties."  *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99–100, 101 S. Ct. 2193, 2199–200, 68 L. Ed. 2d 693 (1981).  "Courts have found a need to limit communications with absent class members where the communications were misleading, coercive, or an improper attempt to undermine Rule 23 by encouraging class members not to join the suit."  *Belt v. Emcare, Inc.*, 299 F. Supp. 2d 664, 667 (E.D. Tex. 2003).

The Court finds that NFI's conduct was misleading and coercive and threatened the fairness of this litigation, even if this was not NFI's intention.[14]  *O'Connor v. Uber Techs., Inc.*, No. C-13-3826 EMC, 2013 WL 6407583, at *5 (N.D. Cal. Dec. 6, 2013) ("Wilful misconduct on the defendant's part is not required so long as the effect is to interfere with class members'

---

[14]  During oral argument, NFI represented that it included the Texas choice-of-law and forum-selection clauses as part of a routine update to its ICOAs nationwide for broader business reasons, and that it has logistics, operations, and warehouses in Texas.  NFI also argued that there was no record evidence showing that NFI issued the Texas ICOAs to intentionally preclude drivers from the class.  The Court is skeptical for several reasons.  First, NFI began to use Texas choice-of-law and forum-selection clauses in its ICOAs—apparently for the first time—just months after Judge Simandle determined that New Jersey law would govern the named Plaintiffs' claims.  Even though Judge Simandle's opinion did not certify or define the class, NFI certainly understood based on this opinion that Plaintiffs' class claims would arise under New Jersey law due in large part to the New Jersey ICOAs.  Second, NFI is incorporated in New Jersey, operates principally out of New Jersey, and distributed Texas ICOAs to drivers in the mid-Atlantic and northeast with no apparent connection to Texas.  Third, the Court understands that the 2019 ICOA also includes an indemnification clause that facially requires drivers to indemnify NFI if the drivers challenge their status as an independent contractor.  [Dkt. 143-13 at 13].  These facts, coupled with NFI's argument here that the Texas ICOAs exclude putative class members from this lawsuit, permit a strong inference that NFI implemented the Texas ICOAs to disrupt this litigation.

rights."). NFI's conduct was misleading because NFI never attempted to notify putative class members that the Texas ICOAs could or would affect their rights in this litigation. *Williams v. Sake Hibachi Sushi & Bar, Inc.*, No. 3:18-CV-0517-D, 2018 WL 4539114, at *3 (N.D. Tex. Sept. 21, 2018) (finding settlement agreements misleading because they "neglect to mention the instant case by name or to give the putative class members any other information that would allow them to make an informed decision to waive their rights."); *Balasanyan v. Nordstrom, Inc.*, Case No. 11-cv-2609, 10-cv-2671, 2012 WL 760566, at *3 (S.D. Cal. Mar. 8, 2012). NFI has not offered evidence or convincingly argued otherwise. The fact that NFI required putative class members to sign Texas ICOAs during an "'ongoing business relationship'" suggests that NFI's practices were coercive. *Ralph Oldsmobile, Inc. v. Gen. Motors Corp.*, No. 99 CIV. 4567 (AGS), 2001 WL 1035132, at *3 (S.D.N.Y. Sept. 7, 2001) (quoting *Kleiner v. First Nat'l Bank*, 751 F.2d 1193, 1202 (11th Cir. 1985)); *see also Williams*, 2018 WL 4539114, at *4 ("The employer-employee relationship and failure to give the potential class members accurate, impartial information regarding their rights in this case … leads the court to find that the settlement agreements are coercive."). Finally, if NFI was correct that the Texas ICOAs would extinguish putative class members' rights under New Jersey law or defeat class membership by forcing class members to litigate claims in Texas courts, then the Texas ICOAs would "affect participation in the lawsuit" and thereby "threaten the fairness of the litigation." *Doe 1 v. Swift Transportation Co.*, No. 2:10-CV-00899 JWS, 2017 WL 735376, at *1–2 (D. Ariz. Feb. 24, 2017) (citing *Balasanyan*, 2012 WL 760566, at * 3).

Since NFI's administration of the ICOA's "threatens the fairness of the litigation," the Court has the authority to take the "'minimum steps necessary to correct the effects of the improper conduct.'" *Becker v. Bank of New York Mellon Tr. Co.*, N.A., No. 2:11-CV-6460,

2012 WL 13018242, at *2 (E.D. Pa. Dec. 18, 2012) (quoting *In re Cmty. Bank of N. Virginia*,

418 F.3d 277, 310 (3d Cir. 2005.  In cases like this—where defendants have successfully

solicited putative class members to enter agreements during litigation that might frustrate the

ability to participate in class litigation but did not notify the class members that they might forfeit

class litigation rights—courts have refused to enforce the contract provisions that would exclude

the putative class members from the class.  *See, e.g.*, *Jimenez v. Menzies Aviation Inc.*, No. 15-

CV-02392-WHO, 2015 WL 4914727, at *5 (N.D. Cal. Aug. 17, 2015) ("Because it did not

inform the putative members of the effect of the ADR Policy on those claims and give them a

reasonable opportunity to opt out, the issuance of the ADR Policy to putative class members

constituted improper class communication and the policy is unenforceable."); *Balasanyan*, 2012

WL 760566, at *4 ("In sum, because Nordstrom's communication constituted an improper

attempt to alter the pre-existing arbitration agreement with putative class members during

litigation, this court invalidates the 'rolled out' 2011 agreement as to putative class

members…."); *In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 254

(S.D.N.Y. 2005) ("In sum, defendants' unsupervised communications were improper because

they sought to eliminate putative class members' rights in this litigation.  Thus, this Court holds

that those arbitration clauses may not be enforced because Chase and Citibank added them,

without notice, after this litigation commenced." (citing *Long v. Fid. Water Sys., Inc.*, No. C–97–

20118 RMW, 2000 WL 989914, at *3 (N.D. Cal. May 26, 2000))); *Georgine v. Amchem Prod.,

Inc.*, 160 F.R.D. 478, 502 (E.D. Pa. 1995).

Following these cases, the Court's interpretation of the Class Definition is consistent with

its authority under Rule 23.  Rule 23 permits the Court to decline to enforce the Texas choice-of-

law and forum-selection clauses in a manner that would exclude drivers who signed a New

Jersey ICOA and a Texas ICOA from the class or extinguish their right to sue under the New

Jersey ICOA for conduct that occurred before they signed a Texas ICOA.

In sum, the Court confirms that Plaintiffs' interpretation of the Class Definition is correct

and that drivers who signed one or more New Jersey ICOAs and later signed a Texas ICOA are

class members. These class members may recover for injuries that they may have suffered under

New Jersey law between June 22, 2009 and the date when they first signed a Texas ICOA. As

such, these drivers are entitled to notice of their class membership as provided in Rule 23.

### iii.  Jointly Owned Entities

Next, the parties dispute the class status of three entities that delivered for NFI—HARP

TRANSPORT, LSR TRUCKING LLC, AND TD—each of which had two owners. There is no

dispute that one owner for each entity delivered more than 80% of the loads that NFI assigned to

each entity. [*See* Dkt. 201-2 at 21–22; Dkt. 212 at 16–17]. Plaintiffs argue that the owner/driver

who delivered the loads for each entity fits the Class Definition. [Dkt. 201-2 at 21–22].

Plaintiffs rely on Class Definition language stating that the class includes "[a]ll individuals who

… entered into, either personally or **through a corporate entity**, an independent contractor

agreement with NFI…." [Dkt. 215 at 15] (emphasis added); *Portillo*, 336 F.R.D. at 98. But

according to NFI, "[t]he class definition logically does not contemplate contractors with more

than one owner." [Dkt. 212 at 16]. NFI points out that if Plaintiffs are correct, one owner for

each entity would not be a class member, even though the entity—and not the owners as

individuals—contracted with NFI. [Dkt. 16–17].

The Court agrees with Plaintiffs. An individual driver for each of these entities signed an

ICOA with NFI and drove 80% of the loads assigned to that entity, as the Class Definition

requires. Moreover, Plaintiffs do not argue that the owners who did not deliver the assigned

14

loads are entitled to recover separately from or in addition to the drivers that delivered the

assigned loads.  HARP TRANSPORT, LSR TRUCKING LLC, and TD are class members and

are entitled to receive notice.

### iv.  Non-Owner Operators

The parties next dispute the status of three entities—Cascada Trucking Inc., CNM

Trucking Inc., and SKS LLC—where available data purportedly does not indicate whether the

individual who delivered loads for each entity owned the entity.[15]  The available data shows the

entity name and, for each load delivered by that entity, the truck number, driver identification

number, and an initial.  [Dkt. 201-3 ¶ 8].  For CNM Trucking Inc. and SKS, "there is only one

Truck Number/Driver ID/Name, which is responsible for every dispatch performed by that

entity.  CASCADA TRUCKING INC has a second Truck Number/Driver ID which performed

only 1 out of a total 1070 dispatches performed by CASCADA TRUCKING INC…."  [*Id.*].

However, the data does not specify that each entity's driver owns that entity.  [*Id.*].

NFI argues that those drivers "may have driven for people other than themselves and/or

companies owned by" other people.  [Dkt. 212 at 17].  NFI argues that Plaintiffs have not offered

proof of ownership and that the Court cannot include these individuals in the class on mere

assumption.  [Dkt. 212 at 17–18].

Plaintiffs argue that NFI has improperly withheld ICOAs which contain information that

would identify each entity's owner.  [Dkt. 201-2 at 20].  According to Plaintiffs, "NFI either has

data demonstrating that these three individuals were (or were not) owners … or NFI lacks that

---

[15] The parties do not explicitly explain why they believe that ownership would affect class
membership.  The Court assumes the issue to be that, if the drivers were not "owners," then they
would not have "entered into … an independent contractor agreement with NFI" as the class
definition requires.

information." [Dkt. 215 at 17]. Alternatively, Plaintiffs argue that the drivers are class members because they otherwise satisfy the class definition and are "presumably part of the class." [Dkt. 201-2 at 20].

During oral argument, NFI denied that ownership information is available on the ICOAs. NFI also argues that review of the ICOA for ownership information would require an "individualized" analysis that undermines Rule 23. [Dkt. 212 at 18].

The Court does not find NFI's Rule 23 argument convincing where, as discussed above, NFI seeks to exclude thirty-six individuals based on choice-of-law provisions in the ICOA(s) that each driver signed. The Court does not see how reviewing another field on the same ICOA would amount to "extensive individualized fact-finding" that Rule 23 prohibits. *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 356 (3d Cir. 2013).

Still, the Court agrees with NFI that Plaintiffs have failed to carry their burden of demonstrating that these drivers are class members. *Hayes*, 725 F.3d at 354 ("Factual determinations supporting Rule 23 findings must be made by a preponderance of the evidence, and the burden of proof rests on the movant….") (citations and quotations omitted). The Court accepts NFI's representation that ownership information is simply not available on the ICOAs in question, declines to include these individuals in the class based on a mere presumption.[16] Cascada Trucking Inc., CNM Trucking Inc., and SKS LLC are not class members.

---

[16] Plaintiffs cite *Hargrove v. Sleepy's LLC*, 974 F.3d 467 (3d Cir. 2020) to argue that NFI's failure to keep complete records cannot defeat class membership for these drivers. [Dkt. 201-2 at 5]. This argument fails for two reasons. First, *Hargrove* contemplated failure to maintain records which the employer "was required to keep by law." *Hargrove*, 974 F.3d at 482. Plaintiffs have not identified any law that requires NFI to maintain the ownership information they seek. Second, Plaintiffs only identify the ICOAs as the sources of the ownership information that they seek, and do not argue that NFI has—or ever had—complete records for these drivers elsewhere. In other words, Plaintiffs appear to complain that NFI failed to properly obtain ownership information in the first instance, and not that NFI failed to maintain complete

**v.  RRL JR.**

The final dispute concerns a contractor RRL JR.  NFI's brief summarizes the facts

surrounding RRL JR as follows:

> The data reveals RRL JR started out driving for NFI as an
> individual owner-operator (and performing at least 80% of the
> loads assigned to him). Around June 2015, however, RRL JR
> contracted with NFI through a company (that he presumably
> owned, "Lamberson Logistics") and began hiring out work to other
> drivers. The data shows three unique drivers for Lamberson
> Logistics (two in addition to RRL JR himself). Looking at this
> bigger picture reveals RRL JR did not deliver at least 80% of the
> loads assigned to him over the course of his entire relationship
> with NFI.

[Dkt. 212 at 20].  NFI concludes that RRL JR is not a class member because "[t]he class

definition does not contemplate including people who meet the 80% threshold only for some

period of their relationship with NFI."  [*Id.*].  Plaintiffs disagree with this conclusion and argue

that RRL JR "should be considered a class member from the time that he operated as an

individual owner operator (up and until June 2015), as he falls within the class definition during

this timeframe."  [Dkt. 215 at 19].

Plaintiffs are correct.  NFI concedes that RRL JR performed at least 80% of the loads

assigned until June 2015.  [Dkt. 212 at 20].  In other words, RRL JR drove on a full-time basis as

provided in the Class Definition "at some time."  The Class Definition includes NFI contractors

who "drove a vehicle on a full-time basis … **at any time since June 22, 2009**."  *Portillo*, 336

---

records.  *Hargrove* is therefore inapposite, particularly because Plaintiffs have not cited any
authority stating that NFI was legally required to affirmatively seek out ownership information
from these drivers.

F.R.D. at 98.  This broadly worded provision cannot be interpreted to exclude individuals who drove on a full-time basis at one time but not at another.[17]

### b.  One-Way Intervention

NFI argues that if the Court determines that any of the individuals discussed above are in fact class members, the rule against one-way intervention[18] prohibits the Court from ruling Plaintiffs' pending motion for partial summary judgment until the "new" class members have received their class notices and the opportunity to opt out of the class.  [Dkt. 212].  Plaintiffs respond that NFI's argument is "wholly misplaced" because NFI has long known that the class status of these individuals was disputed.  [Dkt. 215 at 19 n.4].

However valid NFI's concern was when it submitted its brief on February 25, 2021, it is no longer valid following the Court's March 18, 2021 order.  [Dkt. 220].  This order suspended NFI's deadline to respond to Plaintiffs' summary judgment motion until after this Court and Judge Williams resolved other pending motions and discovery disputes between the parties.  Thus, Plaintiffs' summary judgment motion is not ripe for consideration and likely will not be ripe when the opt-out period has expired for the drivers determined above to be class members.

---

[17] The Court recognizes that, taken to is extreme, the dispute here tests the boundaries of when an individual drove on a "full-time basis."  Socratic hypotheticals illuminate the issue.  What if, for example, a driver delivered 80% of the loads assigned one day, but 0% the next?  What if a driver delivered 80% of loads one month but 0% the next?  Under both examples, the driver drove on a "full-time basis" at one time but not another but, on average, delivered less than 80% of the loads assigned.  The facts before the Court do not present such an extreme example. RRL JR delivered at least 80% of loads assigned for several years until 2015.  The Court is satisfied that RRL JR drove on a "full-time basis" for this discrete time period.

[18] The rule against one-way intervention aims to prevent "members of a class [from] benefit[ting] from a favorable judgment without subjecting themselves to the binding effect of an unfavorable one."  *Taha v. Cty. of Bucks*, 862 F.3d 292, 299 (3d Cir. 2017) (quoting *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 545–47, 94 S. Ct. 756, 762–63, 38 L. Ed.2d 713 (1974)).

### c. Notice to Non-Class Members

Plaintiffs argue that, even if any of the above drivers are not class members, the Court should "direct that appropriate notice be issued to all previously-contemplated class members so that those individuals are properly informed of their rights." [Dkt. 201-2 at 16].  The Court declines to do so.

Plaintiffs argue that Rule 23(d)(1)(B) provides Courts discretion to order notice "to some or all class members" to "protect class members." [Dkt. 201-2 at 14].  Nothing in Rule 23 grants Courts this discretion with respect to non-class-members, and Plaintiffs have not cited any binding authority to suggest otherwise.[19]  The Advisory Committee Notes to Rule 23 indicate that the discretion which subsection (d) provides "is designed to fulfill requirements of due process to which the class action procedure is of course subject." *Id.* (citations omitted). Plaintiffs have not cited any authority stating that failure to inform these individuals that they are not class members will deprive them of their due process rights.  Moreover, these individuals have not received notice that they were included in the class, so further notice is not required to advise them of their revised status.  *Cf. Culver*, 277 F.3d at 914 (holding that district court was required to notify former class members that the class had been decertified).

According to Plaintiffs, notice is necessary to inform these excluded individuals of their rights before applicable statutes of limitations foreclose potential claims against NFI.  [201-2 at 15].  However, the Rule 23 Advisory Committee Notes explicitly caution against using Rule

---

[19] Plaintiffs cite several out-of-circuit opinions interpreting the term "class" in Rule 23 to include putative class members where a court decertifies or refuses to certify a class.  *See Culver v. City of Milwaukee*, 277 F.3d 908, 914 (7th Cir. 2002) (decertification); *Puffer v. Allstate Ins. Co.*, 614 F. Supp. 2d 905, 909–11 (N.D. Ill. 2009) (refusal to certify).  For reasons discussed below, these cases are distinguishable.

23(d) "as a device for the undesirable solicitation of claims."  *See also Wotus v. GenCorp, Inc.*,

No. 5:00 CV 2604, 2004 WL 7333100, at *3 (N.D. Ohio May 17, 2004) ("[C]ourts have

recognized that court-ordered notice of the denial of class certification could be regarded as a

solicitation of claims.").  Plaintiffs also argue that notice is necessary to prevent these excluded

individuals from believing that they are included in the class like their colleagues who only

signed a New Jersey ICOA.  [*Id.* at 16].  Plaintiffs have not offered any evidence that these

individuals knew of this lawsuit or their status as putative class members, or relied on Plaintiffs'

representation in this case.[20]  In other words, Plaintiffs have not provided evidence that these

individuals would suffer prejudice without receiving notice that they are not class members.  *See*

*Puffer*, 614 F. Supp. 2d at 912 (finding that prejudice requires plaintiffs to show, at a minimum,

that putative class members knew of the litigation (discussing *Culver*, 277 F.3d at 914)).

     In sum, the Court finds that it lacks discretion under Rule 23 to order notice to drivers

determined here not to be class members, and that Plaintiffs have failed to show that notice is

necessary to avoid prejudice to these non-class members.  Thus, the Court will deny Plaintiffs'

motion to order class notices to these non-class-members.

---

[20] These omissions distinguish this case from the cases upon which Plaintiffs rely.  *See Gardner v. W. Beef Properties, Inc.*, No. 07-CV-2345 RJD JMA, 2012 WL 526424, at *2 (E.D.N.Y. Feb. 16, 2012) (approving notice to putative class members who knew of the ongoing litigation, but noting that notice would be inappropriate where "the putative class members likely have not yet learned of the putative class action and, therefore, cannot have relied on it to their detriment"); *Puffer*, 614 F. Supp. 2d at 912 (finding that notice is proper where "putative class members were aware of this lawsuit, as that awareness gives rise to the risk … that some of them may lose any right to pursue individual claims without knowing it").

**III.    Conclusion**

For the reasons discussed above, the Court will grant Plaintiffs' motion in part and deny the motion in part.  By **August 30, 2021**, NFI shall provide contact information for the drivers determined to be class members above to facilitate notice to these drivers.


August 9, 2021                                     /s/ Joseph H. Rodriguez_____

                                                    Joseph H. Rodriguez, USDJ

21