## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN F. PORTILLO, RAFAEL SUAREZ, MARTIN DURAN, GERMAN BENCOSME, EDIN VARGAS, LUIS A. HERNANDEZ, JOSUE PAZ, and ALAVARO CASTANEDA, individually and on behalf of all others similarly situated, | No. 15-cv-7908-JHR-MJS<br><br>Judge Joseph H. Rodriguez<br>Magistrate Judge Elizabeth A. Pascal |

**OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE SUPPLEMENTAL REPORT OF NFI'S EXPERT WITNESS**

Plaintiffs,

*vs.*

NATIONAL FREIGHT, INC. and NFI INTERACTIVE LOGISTICS, INC.,

Defendants.

Motion Date: April 17, 2023

# **TABLE OF CONTENTS**

II.   INTRODUCTION ...................................................................................1

III.  RELEVANT FACTUAL AND PROCEDURAL BACKGROUND..............3

    A.   The Parties' Claims and Defenses..............................................3
    B.   The Court Certifies a Class of 93 ...............................................4
    C.   NFI's Expert Report ...................................................................5
    D.   39 Additional People Are Identified as Class Members ......................6
    E.   The Court Enters Summary Judgment in NFI's Favor on 20 Class
        Members' Claims. ........................................................................7
    F.   Plaintiffs Provide a Damages Computation ........................................7
    G.   NFI's Supplemental Expert Report ........................................8

IV.   THE COURT SHOULD DENY PLAINTIFFS' MOTION TO STRIKE
    .......................................................................................................12

    A.   NFI's Supplemental Expert Report Is Timely ...................................12

        1.   NFI Supplemented Before the Pretrial Disclosure
            Deadline .........................................................................12
        2.   NFI Supplemented; It Did Not Serve a New Report ...............13
        3.   Under No Scenario Should the Court Strike the
            Supplemental Report......................................................14

    B.   Dr. Speakman's Testimony is Relevant ...........................................17

        1.   The "Financial Obligations" Provision Is Enforceable ...........17
        2.   NFI's Expert Testimony Will Help the Trier of Fact ..............21

V.   CONCLUSION.........................................................................................24

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Brennan's Inc. v. Dickie Brennan & Co. Inc.*,
  376 F.3d 356 (5th Cir. 2004) ...............................................................16

*Carrow v. FedEx Ground Package Sys., Inc.*,
  No. CV 16-3026 (RBK/JS), 2019 WL 7184548 (D.N.J. Dec. 26,
  2019) ......................................................................................................22

*Crespo v. Kismet Exec. Limousine Serv., Inc.*,
  No. CV 15-5706, 2018 WL 3599738 (D.N.J. July 27, 2018) ...........................21

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993) ................................17

*De Angelis v. Nat'l Ent. Grp., LLC*,
  No. 2:17-CV-924, 2018 WL 4334553 (S.D. Ohio Sept. 11, 2018)..................20

*Deere & Co. v. FIMCO Inc.*,
  260 F. Supp. 3d 830 (W.D. Ky. 2017)..................................................13

*Desio v. Russell Rd. Food & Beverage, LLC*,
  No. 215CV01440GMNCWH, 2016 WL 4721099 (D. Nev. Sept. 9,
  2016) .................................................................................................20, 21

*Dzielak v. Whirlpool Corp.*,
  No. CV2120089KMJBC, 2017 WL 1034197 (D.N.J. Mar. 17,
  2017) ......................................................................................................13

*Frank Briscoe Co. v. Travelers Indem. Co.*,
  65 F. Supp. 2d 285 (D.N.J. 1999)......................................................19

*Paris v. R.P. Scherer Corp.*,
  No. CV 02-1044 (AET), 2006 WL 8458797 (D.N.J. Mar. 8, 2006),
  *aff'd*, No. 02-1044 AET, 2006 WL 2177253 (D.N.J. July 31, 2006)...............13

*Portillo v. Nat'l Freight, Inc.*,
  336 F.R.D. 85 (D.N.J. 2020)..........................................................4, 5

*Portillo v. Nat'l Freight, Inc.*,
  606 F. Supp. 3d 72 (D.N.J. 2022)..........................................................4, 7, 18

*Portillo v. Nat'l Freight, Inc.*,
  No. 15-CV-7908-JHR-KMW, 2021 WL 1884892 (D.N.J. May 11,
  2021) ......................................................................................................19

*Portillo v. Nat'l Freight, Inc.*,
    No. 15-CV-7908-JHR-KMW, 2021 WL 3486894 (D.N.J. Aug. 9,
    2021) ................................................................................................................6

*Punter v. Jasmin Int'l Corp.*,
    No. CIV.A. 12-7828 SRC, 2014 WL 4854446 (D.N.J. Sept. 30,
    2014) ..............................................................................................................23

*Somers v. Converged Access, Inc.*,
    911 N.E.2d 739 (Mass. 2009) .......................................................................22

*Transamerica Life Ins. Co. v. Daibes Gas Holdings Atlanta, L.L.C.*,
    No. CV 18-10869 (SRC), 2021 WL 1541150 (D.N.J. Apr. 20,
    2021) ..............................................................................................................18

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021) ..................................................................................23

*Wagoner v. N.Y.N.Y., Inc.*,
    No. 1:14-CV-480, 2015 WL 1468526 (S.D. Ohio Mar. 30, 2015) ...................20

*ZF Meritor, LLC v. Eaton Corp.*,
    696 F.3d 254 (3d Cir. 2012) ....................................................................15, 16

## Statutes

FLSA ..................................................................................................................20

N.J. Stat. Ann. § 34:11-4.10........................................................................................21

## Other Authorities

Fed. R. Civ. P. 26(a)(3)(B) ...............................................................................12

Fed. R. Civ. P. 26(e)(2).........................................................................1, 12, 13

Fed. R. Civ. P. 37 ..............................................................................................14

Fed. R. Civ. P. 37(b)(2) and 37(c) ....................................................................14

Fed. R. Evid. 702 ..............................................................................................17

iii

## I.   INTRODUCTION

On February 22, 2023, NFI supplemented its expert report. Supplementation was necessary because, since NFI served its original report, 39 additional class members were identified; the Court entered summary judgment against 20 class members; and Plaintiffs finally, after more than seven years, gave NFI a computation of claimed damages. Almost four weeks later, on March 20, 2023, Plaintiffs moved to strike the supplemental expert report.

First, Plaintiffs posit NFI's supplemental report is untimely. This argument ignores that the deadline for supplemental expert reports is the deadline for pretrial disclosures, Fed. R. Civ. P. 26(e)(2), a deadline the Court has yet to set. So, NFI's supplemental expert report is by no means untimely.

Second, Plaintiffs argue the supplemental report is not "supplemental." They contend it raises a whole new defense in this independent contractor misclassification case. This is simply not true. In his original report, NFI's economics expert applied a standard but-for methodology to discern economic damages. He compared the amount class members earned as independent contractors to the amount they would have earned as NFI employees. The original and supplemental reports conceptualize what class members would have earned as

employees by looking at what NFI actually paid its employee drivers during the relevant period.[1]

The supplemental report also recognizes and quantifies an alternative, contractual method for calculating damages. Some class members' independent contractor operating agreements ("ICOAs") state that if the class member is later deemed an employee, the class member will return the profits made as an independent contractor and NFI will pay the class member minimum wage for all hours worked. The contractual method uses the same but-for methodology to determine economic damages, but it conceptualizes what class members would have made as employees at the minimum wage (rather than what NFI actually paid employee drivers). That the methodology of the original and supplemental reports is the same manifests that the supplemental report merely updates the original. There is no valid basis for this Court to exclude the supplemental report.

Third, Plaintiffs' make a legal argument: that the portion of the supplemental report related to the ICOA contractual damages provision is not relevant because that provision is allegedly unenforceable. This argument hinges partly on Plaintiffs' belief that employees cannot waive NJWPL claims (a belief this Court already

---

[1] It is undisputed both independent contractors and NFI employees performed deliveries to Trader Joe's stores on the East Coast. ECF 276, PageID 6767-68, Undisputed Fact # 13 and response thereto.

2

rejected), and partly on the mistaken conclusion that the ICOA's damages provision is a waiver. The ICOA provision is not a waiver; in fact, the provision expressly contemplates a successful claim.

Fourth, Plaintiffs re-up their argument that economic damages are not relevant, and NFI's expert testimony is thus neither helpful nor admissible. Plaintiffs suggest the only evidence relevant to damages is that which shows the dollar amounts NFI deducted from class members' pay (not wages). Plaintiffs' own damages computation and rebuttal expert, however, reveal this novel theory of damages cannot carry the day in a NJWPL deduction case based on a misclassification theory. Even Plaintiffs' own expert seems to agree that what Plaintiffs earned as independent contractors and what they would have earned as NFI employees is relevant to damages. At the very least, it is relevant to whether Plaintiffs have in fact suffered any injury, a necessary predicate for constitutional standing, which must always exist for each class member through trial.

For all of these reasons, the Court should deny Plaintiffs' motion to strike, ECF 324.

## II.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A.    <u>The Parties' Claims and Defenses</u>

As this Court well knows, a class of owner-operators who delivered goods to and from Trader Joe's stores on the East Coast claim NFI violated the NJWPL.

*Portillo v. Nat'l Freight, Inc.*, 606 F. Supp. 3d 72, 77 (D.N.J. 2022). Specifically, Plaintiffs claim that, because NFI classified them as independent contractors when they were in fact employees, NFI violated the NJWPL when it deducted money from Plaintiffs' pay for the costs of insurance, communication and tracking equipment, and fuel, among other things. *Id.* at 81-82.

NFI denies Plaintiffs were employees. Answer, ECF 103, PageID 2066 (Sixth Separate Defense). Regardless, NFI contends, *inter alia*, it already paid Plaintiffs all monies they were legally due (Seventh Separate Defense), the damages Plaintiffs claim are speculative and remote (Thirteenth Separate Defense), and Plaintiffs lack standing (Fifteenth Separate Defense). *Id.* at PageID 2067-68.

**B.    The Court Certifies a Class of 93**

On July 1, 2020, this Court certified a class of all individuals who, either personally or through a corporate entity, entered into an ICOA with NFI with a New Jersey choice-of-law clause, and who drove a vehicle on a full-time basis to deliver goods to Trader Joe's stores on the East Coast at any time since June 22, 2009 (with "full-time" meaning the person delivered at least 80% of the loads assigned pursuant to the agreement). *Portillo v. Nat'l Freight, Inc.*, 336 F.R.D. 85, 98 (D.N.J. 2020).

From the start, the parties disputed who fell within the class definition. ECF 175, PageID 4497, n.1. Eventually, NFI produced a class list of 92 people, and the parties submitted a stipulated form of class notice for the Court's approval. *Id.* On

4

November 12, 2020, Plaintiffs sent notice to these 92 class members, subject to Plaintiffs' counsel supposedly reserving the right to add others they believed were properly class members later. *Id.* Putative class members had until December 27, 2020 to exclude themselves from the class. ECF 195, PageID 5760, ¶¶ 5-6.

### C.    NFI's Expert Report

About a month after the close of the class notice period, on January 29, 2021, NFI served an expert report. ECF 283-1 (email enclosing report). NFI's economic expert, Dr. Robert Speakman, employed the "standard methodology for computing damages" by comparing "the amount that class members would have earned had they been employee drivers to the amount they earned as independent contractor owner operators." ECF 270-1, PageID 6649. Specifically, Dr. Speakman compared the pay data of class members to data reflecting what NFI paid employee drivers during the relevant period. *Id.* at PageID 6651-54. He concluded NFI paid class members $1,867 more per week on average than it paid employee drivers. *Id.* at PageID 6650. In total, NFI paid class members $19,781,177 more than it paid employee drivers. *Id.* Dr. Speakman thus opined: "Unless expenses/deductions are more than this amount, there are no economic damages and the class members have not been economically disadvantaged by being classified and treated as independent contractors." *Id.*

### D.   39 Additional People Are Identified as Class Members

One week before NFI served its expert report, on January 22, 2021, Plaintiffs moved to include 46 additional people who they argued met the class definition. ECF 201. On August 9, 2021, the Court granted Plaintiffs' motion in part and denied it in part. *Portillo v. Nat'l Freight, Inc.*, No. 15-CV-7908-JHR-KMW, 2021 WL 3486894, at *1 (D.N.J. Aug. 9, 2021). It denied Plaintiffs' motion with respect to the following six contractors, finding they are **not** class members: VH; YR; Itzel, Inc., Cascada Trucking Inc., CNM Trucking Inc., and SKS LLC. *Id.* at *1, *7.[2] It granted Plaintiffs' motion with respect to the remaining 40 contractors. *Id.* at *3-6, *7-8.

In response to the Court's August 9, 2021 Order, NFI produced a supplemental class list as directed. ECF 239. On August 30, 2021, Plaintiffs mailed class notice to the 40 additional putative class members. *Id.* On October 14, 2021, the class notice period concluded, with one putative class member excluding himself. 39 additional people thus became class members. *Id.*

---

[2] Plaintiffs nonetheless continue to claim some of these contractors are class members. *See* ECF 325-2, PageID 8162 (explaining Plaintiffs contend eight more people are properly class members and stating Plaintiffs "intend to move in the near future for a declaration" on this issue).

E.     **The Court Enters Summary Judgment in NFI's Favor on 20 Class Members' Claims.**

On January 6, 2022, the Court set a summary judgment briefing schedule. ECF 266. Plaintiffs moved for summary judgment on the issue of whether they were employees or independent contractors, ECF 187, and NFI cross-moved on the same issue and others, including whether 20 class members who had signed release agreements in NFI's favor had released their NJWPL claims, ECF 277.

In the midst of summary judgment briefing, on January 25, 2022, Plaintiffs moved to strike NFI's expert report. ECF 269. On February 22, 2022, NFI cross-moved to strike a rebuttal expert report Plaintiffs belatedly filed with their motion to strike. ECF 282.

On June 9, 2022, the Court resolved the parties' cross-motions for summary judgment. *Portillo v. Nat'l Freight, Inc.*, 606 F. Supp. 3d 72 (D.N.J. 2022). It held Plaintiffs were employees and entered judgment in NFI's favor as to the 20 Plaintiffs who signed release agreements releasing any NJWPL claims. *Id.* at 102, 106.

F.     **Plaintiffs Provide a Damages Computation**

On August 19, 2022, Plaintiffs served NFI with fourth amended initial disclosures. ECF 307-2. For the first time since filing this case in 2015, Plaintiffs' disclosures included the required calculation of damages *Id*.

Plaintiffs' Motion to Strike downplays the impact of their late damages disclosure. They argue they have sought "to recover the deductions taken from their

7

pay in violation of the NJWPL" "[f]rom the start." ECF 325, PageID 8051. Ironically, as support for this claim, they cite paragraphs in their First Amended Complaint that include claims that have nothing to do with deductions and which they since appear to have abandoned—claims that NFI paid Plaintiffs for fewer miles than it promised and failed to pay Plaintiffs for all work they performed. First Am. Compl., ECF 102, ¶¶ 26-28.

Worse, Plaintiffs' alleged damages computation is neither coherent nor cohesive. Even though their August 19, 2022 computation makes clear they intend to sum up certain deductions, it does not describe which data sources they relied on to discern those deductions or which deductions (by date, pay code, amount and/or class member) Plaintiffs are considering "unlawful" deductions. Instead, Plaintiffs appear to categorize the 104 pay codes in class members' pay data into 20 general categories, without describing how they did so, and then just provide an unexplained lump sum by category. *See* ECF 323-1, PageID 8008.

### G.   NFI's Supplemental Expert Report

On February 22, 2023, NFI served a supplemental expert report. *See* Supplemental Report, ECF 323-1. Like the initial report, the supplemental report employs the "standard methodology for computing damages" by comparing "the amount that class members would have earned had they been employee drivers to

8

the amount they earned as independent contractor owner operators." Supplemental Report, ECF 323-1 (citing and quoting original expert report).

Supplementing Dr. Speakman's original report was necessary due to several case developments that had occurred since the original report. First, the number of class members had changed (39 people were added as class members due to Plaintiffs' motion to compel while 20 fell out of the class due to summary judgment in NFI's favor). *See* ECF 323-1, PageID 8006-07. Second, Plaintiffs' new and belatedly provided damages computation necessitated a response. It caused Dr. Speakman to change how he treated NFI's payments to class members for fuel reimbursements (he treated fuel reimbursements as earnings in his initial report and not in his supplemental report). *Id.* at PageID 8011. As Dr. Speakman explains it: "Although unstated and undocumented, it appears from [Plaintiffs' August 19, 2022] calculation that [Plaintiffs] are including fuel reimbursements **as an offset** to fuel and oil deduction expenses." *Id.* at PageID 8011 (emphasis added). In his supplement report, Dr. Speakman thus removed the fuel reimbursement payments from his calculation of class members' earnings to make his calculations "compatible with [Plaintiffs'] calculation." *Id.* at 8012. Before Plaintiffs' supplemental initial disclosures, Dr. Speakman had no way of knowing this and felt the need to address it.

Ultimately, Dr. Speakman concludes, comparing what NFI paid class members to what it paid employee drivers during the relevant period, NFI paid class members $1,610 more per week on average, and $23,478,729 more total. *Id.* at 8012. Thus, unless class members' expenses and deductions exceed $23,478,729 (as compared to the $19,781,177 in his initial report), "class members have not been economically disadvantaged by being classified and treated as independent contractors." *Id.* at PageID 8013.

The supplemental report also recognizes a provision in ICOAs signed by just under one-half of all class members. This provision specifically provides for "the parties' financial obligations if [a class member] is determined to be an employee." *Id.* at PageID 8013. Pursuant to this ICOA provision, if a court decides a class member is an employee, the class member must repay NFI all money NFI paid to him, less expenses, and NFI must then pay the class member what he would have earned as an employee at minimum wage. *See id.*; *see also* ECF 323. In effect, this version of the ICOA provides its own contractual remedial scheme for independent contractor misclassification, yet Plaintiffs would have the Court simply ignore it.

But Dr. Speakman did not to ignore it. He calculated that, if class members worked 62 hours per week (the average of the weekly hours named plaintiffs testified they worked at deposition), Plaintiffs made $32,776,969 more during the relevant period than they would have if NFI paid them the minimum wage. ECF 323-1,

10

PageID 8014. If class members worked 55 hours per week (the lowest average weekly hours to which a named plaintiff testified), class members made $33,887,100 more, and if they worked 70 hours per week (the highest average number of weekly hours to which a named plaintiff testified), they made $31,508,248 more. *Id.* Thus, unless class members' expenses and deductions exceed between $31,508,248 and $33,887,100 (depending on the number of weekly hours actually worked), "class members would not have been economically disadvantaged by being classified and treated as independent contractors." *Id.* at 8015.[3]

On March 20, 2023, almost one month after NFI served its supplemental report, Plaintiffs moved to strike it. ECF 324-25. Plaintiffs argue the report is untimely and the ICOA provision for determining damages in the event of misclassification is unlawful. ECF 325.

--------

[3] Contrary to Plaintiffs' claim, ECF 325, PageID 8054, Dr. Speakman does not opine on the ultimate issue and conclude Plaintiffs owe NFI money. He states that, if the deductions are reflected in Plaintiffs' damages computation (totaling $10,112,817), then applying the contractual damages provision, Plaintiffs as a class owe an amount in the range of $21,395,431 ($31,508,248 - $10,112,817) to $27,034,627 ($33,887,100 - $10,112,817) **less any charge backs and personal advances** they may prove at trial. ECF 323-1, PageID 8015, n.20. If Plaintiffs show chargebacks and personal advances in excess of the amount they owe NFI, then, per the ICOA provision, they are entitled to money from NFI. *Id.*

11

## III.   THE COURT SHOULD DENY PLAINTIFFS' MOTION TO STRIKE

### A.   NFI's Supplemental Expert Report Is Timely

#### 1.   NFI Supplemented Before the Pretrial Disclosure Deadline

Plaintiffs' first argument contends that NFI's supplemental report is untimely because NFI served it "more than two years after the close of pretrial discovery." ECF 325, PageID 8055. They argue NFI "delayed significantly," suggesting NFI should have supplemented immediately after the Court's August 9, 2021 decision and immediately again after Plaintiffs' belated disclosure of their damages' calculations. *Id.* at PageID 8057-58.

Plaintiffs' position is both illogical and unfounded. For example, had NFI supplemented immediately after the Court's August 9, 2021 opinion identifying an additional 40 people as putative class members, NFI would also have had to supplement 45 days later after putative class members opted out. Similarly, although Plaintiffs completely ignore the entry of summary judgment in NFI's favor on 20 class members' claims, a logical extension of their position is NFI should also have supplemented immediately after summary judgment. The law does not require parties to waste resources, constantly preparing likely-to-be-outdated expert material contemporaneously with every case development.

Rather, the deadline to supplement expert information is: "by the time the party's pretrial disclosures under Rule 26(a)(3) are due." Fed. R. Civ. P. 26(e)(2). Pre-trial disclosures are, by default, due 30 days before trial, Fed. R. Civ. P.

26(a)(3)(B), and no trial date has been set in this case. Thus, NFI timely supplemented its initial report. *See Dzielak v. Whirlpool Corp.*, No. CV2120089KMJBC, 2017 WL 1034197, at *33 (D.N.J. Mar. 17, 2017) (accepting supplemental report as proper and timely where expert received newly produced data after providing original report); *Deere & Co. v. FIMCO Inc.*, 260 F. Supp. 3d 830, 836-37 (W.D. Ky. 2017) (holding 700-page supplemental report was timely where plaintiff disclosed it the night before pretrial disclosures were due); *Redmond-Nieves Okuma Am. Corp.*, 332 F.R.D. 418, 420 (D. Mass. 2019) (supplemental report based on developments during expert's deposition timely under Fed. R. Civ. P. 26(e)(2)).

## 2.   NFI Supplemented; It Did Not Serve a New Report

Plaintiffs also argue the supplemental report is not in fact "supplemental" and is untimely for that reason. ECF 325, PageID 8060 ("it introduces a new defense to damages").[4] But Dr. Speakman's original report clearly sets out his opinion that class members earned more as independent contractors than they would have as

---

[4] This argument is directed only toward that portion of the supplemental report that quantifies the effect of the ICOA provision addressing the parties' financial obligations if a contractor is deemed an employee. *See* Supplemental Report, ECF 323-1, PageID 8013-15; Pl.'s Mot., ECF 325, PageID 8048. Such provides no basis for striking the supplemental report in its entirety. *See Paris v. R.P. Scherer Corp.*, No. CV 02-1044 (AET), 2006 WL 8458797, at *1 (D.N.J. Mar. 8, 2006), *aff'd*, No. 02-1044 AET, 2006 WL 2177253 (D.N.J. July 31, 2006) (granting motion to strike "those portions of the Report that relate to 'new' testing that was not included in Plaintiffs' initial report," and declining to strike remaining portions of report).

13

employees, and that, as a result, Plaintiffs must prove expenses and deductions exceeded a certain amount to prove any economic damages. ECF 270-1, PageID 6649-50. Only the numbers have changed—*how much* more class members made as compared to employees, and *how much* Plaintiffs will have to prove in expenses and deductions.

Plaintiffs complain the ICOA provision regarding the parties' financial obligations is a "new issue[] that NFI has never raised to this point." ECF 325, PageID 8048. But NFI's Answer clearly states NFI's position that it has already paid Plaintiffs all amounts they are legally due (Seventh Separate Defense), and Plaintiffs' damages are speculative and remote (Thirteenth Separate Defense). ECF 103, PageID 2067-68. Moreover, at Plaintiffs' insistence, NFI produced all ICOAs signed by each class member during post-certification discovery in January 2021. Plaintiffs have had the relevant information in-hand for years, choosing to deny its applicability.

### 3. Under No Scenario Should the Court Strike the Supplemental Report

Plaintiffs next ask the Court to strike NFI's supplemental report pursuant to Fed. R. Civ. P. 37(b)(2) and 37(c), ECF 325, PageID 8046, which authorize a court to exclude evidence as a discovery sanction. The "exclusion of critical evidence is an 'extreme' sanction," and whether considered pursuant to Fed. R. Civ. P. 37 or in the context of a district court's "discretion to control the discovery process," courts

in the Third Circuit consider five factors: (1) the prejudice or surprise of the party against whom the evidence is offered, (2) "the ability of that party to cure the prejudice," (3) the extent to which allowing the evidence would disrupt an otherwise "orderly and efficient trial," (4) any "bad faith or willfulness," and (5) "the importance of the excluded evidence." *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 297 (3d Cir. 2012). "The importance of the evidence is often the most significant factor." *Id.*; *see also id.* at 297-300 (holding district court abused discretion by now allowing plaintiff to submit alternative damages calculations through supplemental expert report).

As to the first and second factors, Plaintiffs claim NFI "submitted a new expert report on the eve of a damages trial," a report that "includes an entirely new theory of defense," and this prejudice cannot be cured. ECF 325, PageID 8058. Their conclusory argument is specious. Plaintiffs have known since January 2021 that Dr. Speakman intends to employ the "standard methodology for computing damages" by comparing "the amount that class members would have earned had they been employee drivers to the amount they earned as independent contractor owner operators." ECF 270-1, PageID 6649.

As explained, above Dr. Speakman's supplemental report conceptualizes how much class members would have earned as employee drivers by looking at how NFI paid employee drivers in fact, and also (alternatively) by evaluating how much

15

certain ICOAs obligate NFI to pay if class members are deemed employees (*i.e.*, the minimum wage). This is a substitution of inputs, not a change in methodology. As a result, Plaintiffs will not suffer a substantial or uncurable prejudice if the Court permits the supplemental report. *See ZF Meritor*, 696 F.3d 254, 298 (finding where "the only change involved the substitution of inputs," and the methodology remained the same, the district court abused its discretion by excluding an expert's alternative damages calculations); *Brennan's Inc. v. Dickie Brennan & Co. Inc.*, 376 F.3d 356, 375 (5th Cir. 2004) (holding defendants were not prejudiced by disclosure of new data underlying supplemental report at trial because expert's "methodology had not changed").

As to the third factor, Plaintiffs argue permitting the supplemental report "will be disruptive" without any further explanation. ECF 325, PageID 8058. The reality is Plaintiffs never deposed Dr. Speakman. To date, they have only contested his original report through a motion to strike, which remains pending.

Moreover, and this goes to the fourth factor as well (Plaintiffs argue NFI's "extreme delay" suggests bad faith, ECF 325, PageID 8060), there is no trial date yet scheduled. As discussed in Section II, *supra*, the contours of this case have changed substantially over time. NFI's updating its expert report well before trial—before any pretrial conference has even occurred, and well before any pretrial

16

disclosure deadlines have been set—suggests good-faith compliance with its duty to supplement its expert report.

Finally, as to the fifth factor, Dr. Speakman's testimony is critical. It elucidates what Plaintiffs must prove at trial if they hope to prove any economic damages. It thus goes not only to damages themselves, but also to Plaintiffs' standing to maintain their claims. Plaintiffs argue (tellingly, in both motions to strike) this is not true. ECF 325, PageID 8061. But, as discussed below, their arguments are not persuasive. In sum, the relevant factors show the Court should not strike any portion of NFI's supplemental expert report.

**B.**   **Dr. Speakman's Testimony is Relevant**

**1.**   **The "Financial Obligations" Provision Is Enforceable**

Plaintiffs' primary argument is that a comparison of what class members and employee drivers earned is irrelevant.[5] They argue Dr. Speakman's testimony regarding the ICOA provision laying out the parties' financial obligations in the

---

[5] An expert witness may only testify if, *inter alia*, his "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. "This condition goes primarily to relevance. 'Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.'" *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591, 113 S. Ct. 2786, 2795, 125 L. Ed. 2d 469 (1993) (internal citations omitted).

event of misclassification is not relevant because the provision is unenforceable.
ECF 325, PageID 8063.

Plaintiffs argue the provision is unenforceable because class members and
NFI agreed to it "in the middle of a putative class action" and it would "extinguish"
class members' claims. ECF 325, PageID 8068. Clarifying the parties' financial
obligations if a contractor is later deemed an employee does not, however, extinguish
a contractor's NJWPL (or other misclassification) claim. It expressly contemplates
a contractor's success on such a claim.

The reality is that the law generally permits parties to contract for damages in
the event one prevails on a particular legal claim. *See, e.g.*, *Transamerica Life Ins.
Co. v. Daibes Gas Holdings Atlanta, L.L.C.*, No. CV 18-10869 (SRC), 2021 WL
1541150, at *16 (D.N.J. Apr. 20, 2021) (discussing analysis of enforceability of
stipulated damages clauses under New Jersey law). Plaintiffs argue this does not
hold true with respect to the NJWPL, because "New Jersey has an explicit
prohibition against the waiver of wage rights." ECF 325, PageID 8068. But this
Court has already rejected that argument, holding the NJWPL "does not prevent an
employer from providing consideration in exchange for a general release from
liability, even if that release eventually prevents a 'dispute over wages.'" *Portillo v.
Nat'l Freight, Inc.*, 606 F. Supp. 3d 72, 102 (D.N.J. 2022).

Next, Plaintiffs contend the "financial obligations" provision is unenforceable because of the NJWPL's "employee-friendly" public policy. ECF 325, PageID 8070-72. The "financial obligations" provision, however, does not disfavor employees. It explicitly allocates all the money they are due under the law (minimum wages) to them, in addition to any expenses incurred in performing work under the ICOA. Plaintiffs do not explain how this is "contrary to the public good" or to the NJWPL. Their public policy arguments are simply not persuasive. *See, e.g.*, *Frank Briscoe Co. v. Travelers Indem. Co.*, 65 F. Supp. 2d 285, 312 (D.N.J. 1999) (rejecting argument that provision was void as against public policy simply because one party to contract did not like it).

Plaintiffs also characterize the "financial obligations" provision as an indemnification provision, regurgitating prior briefing on whether NFI could assert an indemnification counterclaim. *Compare* ECF 177-1, PageID 4523 ("The broad remedial purpose . . ."), *with* ECF 325, PageID 8073 ("The broad remedial purpose . . ."). The "financial obligations" provision is not an indemnification provision. It does not require class members to indemnify or hold NFI harmless vis-à-vis misclassification claims.[6] Rather, the "financial obligations" provision specifies the parties' financial obligations if a class member succeeds on a misclassification

---

[6] An entirely separate provision of the contract does. *See Portillo v. Nat'l Freight, Inc.*, No. 15-CV-7908-JHR-KMW, 2021 WL 1884892, at *1 (D.N.J. May 11, 2021).

claim. It specifically guarantees the class member the applicable minimum wage. Plaintiffs' arguments regarding courts finding indemnification provisions unenforceable in FLSA cases make little sense in this context.

Plaintiffs further analogize the "financial obligations" provision to "contractual provisions stating that if [strip club] dancers ever assert they were misclassified, they will be required to return all earnings they made under their independent contractor agreements," citing opinions refusing to enforce such provisions. ECF 325, PageID 8074. All three of the cited opinions are unpublished and out-of-circuit. *See id.* Two are from the Southern District of Ohio, one of which relies almost exclusively on the other. *See De Angelis v. Nat'l Ent. Grp., LLC*, No. 2:17-CV-924, 2018 WL 4334553, at *5 (S.D. Ohio Sept. 11, 2018) ("This Court sees no reason to depart from the holding in *Wagoner*").

Perhaps most importantly, all three involve FLSA and minimum wage claims and turn on findings that "FLSA rights cannot be abridged by contract or otherwise waived." *See, e.g.*, *Wagoner v. N.Y.N.Y., Inc.*, No. 1:14-CV-480, 2015 WL 1468526, at *6 (S.D. Ohio Mar. 30, 2015) (internal citations omitted); *Desio v. Russell Rd. Food & Beverage, LLC*, No. 215CV01440GMNCWH, 2016 WL 4721099, at *3 (D. Nev. Sept. 9, 2016). This case, by contrast, involves NJWPL rights, which this Court has already held may be contractually waived, and the provision at issue specifically entitles class members to "the then applicable federal minimum hourly wage or, if

20

higher, a State's then-applicable minimum hourly wage." *E.g.*, ECF 325, PageID 8066. In other words, the provision at issue here does the exact opposite of attempting to abridge minimum wage rights.

In sum, the "financial obligations" provision is enforceable, and Plaintiffs offer no persuasive argument to the contrary. Because the provision is enforceable, Dr. Speakman's testimony related to it is helpful and relevant. The Court should not strike the supplemental expert report.

### 2.     NFI's Expert Testimony Will Help the Trier of Fact

Finally, Plaintiffs "briefly reiterate" the argument they made in moving to strike NFI's original expert report. ECF 325, PageID 8080-81. Plaintiffs' argument is, "damages under the NJWPL are purely the amount of deductions that NFI unlawfully withheld from its drivers." *Id.* at 8080. What Plaintiffs would have earned "but for" the wrong they alleged (*i.e.*, the standard methodology for computing economic damages employed by Dr. Speakman) is, according to Plaintiffs, irrelevant. *Id.*

As an initial matter, there is no clear methodology for calculating damages in a NJWPL deduction case like this one, based on a defendant's alleged misclassification. The NJWPL says employees may recover "the full amount of any wages due." N.J. Stat. Ann. § 34:11-4.10. None of the opinions Plaintiffs cite decides how to calculate what wages are "due." *See Crespo v. Kismet Exec. Limousine Serv.,*

*Inc.*, No. CV 15-5706, 2018 WL 3599738, at *5–6 (D.N.J. July 27, 2018) (finding plaintiffs were employees for purposes of NJWPL but leaving issue of damages for trial); *Carrow v. FedEx Ground Package Sys., Inc.*, No. CV 16-3026 (RBK/JS), 2019 WL 7184548, at *12 (D.N.J. Dec. 26, 2019) (granting motion for class certification in NJWPL misclassification case, finding only "Plaintiffs have met their burden on damages for purposes of the predominance inquiry" and reserving possibility of, among other things, decertifying after liability phase); *Somers v. Converged Access, Inc.*, 911 N.E.2d 739, 744 (Mass. 2009) (addressing damages under Massachusetts statute providing for "criminal and civil remedies" in the event of misclassification).

In any event, Plaintiffs' own damages computation undermines their arguments. Their own damages computation is not based "purely" on a sum of deductions. Plaintiffs total certain unidentified deductions and then offset that sum by fuel surcharge payments NFI made to class members. ECF 323-1, PageID 8011. Furthermore, as NFI previously explained, the but-for methodology of calculating damages is widely accepted and reliable, so much so that even Plaintiffs' rebuttal expert implicitly endorses it. ECF 283, PageID 7382-83.

Indeed, at times, the parties seem to agree on damages. In moving to strike the supplemental report, Plaintiffs explain class members' costs (such as for fuel, truck maintenance, tires, etc.) "significantly reduced" class members' take-home pay, and

22

these costs must be considered." ECF 325, PageID 8081. **NFI agrees.** "[E]conomic damages need to include both the difference in gross earnings and costs between owner operators and employee drivers. . . . This is how [Dr. Speakman] structured his analysis." ECF 323-1, PageID 8009, n.11. What is more, this seemingly undisputed fact "undermines" Plaintiffs' "purely" sum-of-deductions damages model and, in the words of Plaintiffs' expert, renders it "economically unsound." *Id.*

As a class, Plaintiffs made $23,478,729 more than they would have as NFI employees, and between $31,508,248 and $33,887,100 more than if NFI paid them the applicable minimum wage. If that surplus **less their "costs"** (or as Dr. Speakman calls them, "expenses and deductions") is positive, then class members' classification as independent contractors versus employees did not economically harm them. If, on the other hand, the surplus amount less "costs" is negative, then class members were harmed. ECF 323-1, PageID 8013.

At trial, it is up to Plaintiffs to prove their "costs" and thus to prove damages. *Punter v. Jasmin Int'l Corp.*, No. CIV.A. 12-7828 SRC, 2014 WL 4854446, at *3 (D.N.J. Sept. 30, 2014) ("plaintiffs bear the burden of proving that they are entitled to recover damages"). At the very least, Plaintiffs must prove the violation of the NJWPL alleged in fact caused each class member to suffer a concrete injury. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021) ("Every class member

must have Article III standing in order to recover individual damages."). Dr.

Speakman's testimony will help the trier of fact in deciding these issues.

## IV.    CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion to Strike

the Supplemental Expert Report of NFI's Expert Witness, ECF 324.


Dated: April 3, 2023                                   **GREENBERG TRAURIG, LLP**

                                   **By:** _s/ Christiana L. Signs_
                                          James N. Boudreau (*pro hac vice*)
                                          Christiana L. Signs (099012014)
                                          1717 Arch Street, Suite 400
                                          Philadelphia, PA 19103
                                          Telephone: (215) 988-7833/7868
                                          Facsimile: (215) 988-7801
                                          boudreauj@gtlaw.com
                                          signsc@gtlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 3, 2023, I caused the foregoing Opposition to Plaintiffs' Motion to Strike Supplemental Report of NFI's Expert Witness to be served on all counsel of record through the Court's Electronic Case Filing (ECF) system.

*s/ Christiana L. Signs*
Christiana L. Signs