UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JOHN F. PORTILLO, RAFAEL SUAREZ,
MARTIN DURAN, GERMAN BENCOMSE,
EDIN VARGAS, LUIS A. HERNANDEZ,
JOSUE PAZ, and ALVARO CASTANEDA,
Individually and on behalf of all others
similarly situated,

    *Plaintiffs*,

v.

NATIONAL FREIGHT, INC. and NFI
INTERACTIVE LOGISTICS, INC.,

    *Defendants*.

Hon. Joseph H. Rodriguez

Civil No. 15-cv-07908

**OPINION**

This matter is before the Court on plaintiffs' motion to strike defendants' expert witness, Dr. Robert B. Speakman, Jr. [Dkt. 269], and defendants' cross-motion to strike plaintiff's rebuttal expert report and for attorneys' fees and costs [Dkt. 282]. The Court is in receipt of and has considered defendants' opposition [Dkt. 282], plaintiffs' reply in support of the motion [Dkt. 291], and plaintiffs' opposition to the cross-motion [Dkt. 291]. The Court has further considered the positions of the parties articulated at the hearing convened on April 6, 2023. For the reasons stated on the record at the time of the hearing and set forth herein, the Court will deny the motions.

### I. Background

The present action is an employee misclassification class action case in which plaintiff truck drivers ("Plaintiffs") allege that defendants National Freight, Inc. and NFI Interactive Logistics, LLC (collectively "NFI") erroneously classified them as

1

independent contractors and resultingly made unlawful deductions from their pay in violation of the New Jersey Wage Payment Law, N.J.S.A. § 34:11-4.1 et. seq ("NJWPL"). On June 9, 2022, this Court found that Plaintiffs were misclassified as independent contractors applying the ABC test under New Jersey law. *See Portillo v. Nat'l Freight, Inc.*, No. 15-CV-07908, 2022 WL 2078276 (D.N.J. June 9, 2022). Prior to the Court's decision, on January 29, 2021, NFI served Plaintiffs with the report of its damages expert, Robert B. Speakman. Jr., P.h.D. ("Speakman"), pursuant to its disclosure obligations under Fed. R. Civ. P. 26.

Speakman is an economist. In his report, Speakman proposes employing the "standard economic model" for measuring Plaintiffs' damages resulting from misclassification. As Speakman explains, the standard economic model compares the amount Plaintiffs would have earned had they been employee drivers with the amount they actually earned as independent contractors. Speakman Report at *3 [Dkt. 270-1]. This "but for" framework assumes that NFI would be entitled to credit the amount of the monetary difference against any unlawful deductions stemming from violations under the NJWPL. By way of example, Speakman supposes that if a misclassified independent contractor is paid $3,000 per week and has expenses/deductions of $1,000, and an employee is paid $1,500 per week, then the independent contractor earned $500 more than the employee. Under Speakman's model, no actual economic damages would result from misclassification if the difference between independent contractor wages and employee wages exceeded expenses/deductions. Speakman's report is now the subject of Plaintiffs' motion to strike.

2

Plaintiffs move to strike Speakman's report on two principal grounds. First, Plaintiffs argue that Speakman's model is flawed because it fails to account for the thousands of dollars in costs, deductions, and expenses paid by Plaintiffs out of their weekly gross earnings. Second, Plaintiffs contend that Speakman's report then inappropriately compares that gross figure with the earnings of employee drivers who incur no such expenses. According to Plaintiffs, the conclusions in the report are not based on any accepted scientific or economic principles, and the practice of calculating damages by applying a credit in the amount of the difference between what the independent contractors made and what they would have made had they been classified as employees is not permitted as a matter of law based on the plain language of the NJWPL, which provides that "employee(s) may recover the full amount of any wages due[.]" Instead, Plaintiffs submit that the "sum of deductions" model represents the appropriate measure for analyzing damages under the NJWPL. Under this methodology, the "wages due" to Plaintiffs as damages are the total amount of improper deductions. Plaintiffs contend that Speakman's alternative view of how damages may be calculated amounts to inadmissible legal opinion with no basis in the NJWPL.

In response to Plaintiffs' first argument, NFI maintains that the fact that Speakman's report offers opinion on only the *earnings* aspect of damages without addressing the *costs* component does not render it inadmissible under Fed. R. Civ. P. 702. Regarding Plaintiffs' second argument, NFI avers that the "standard economic model" or "but for" methodology that compares the amount Plaintiffs would have earned as employees to the amount they actually earned as independent contractors represents a well-accepted approach for determining damages. According to NFI, this

3

approach comports with the basic principle set forth by the United States Supreme Court that a damages model must "translat[e] the legal theory of the harmful event into an analysis of the economic impact of that event." *Comcast Corp. v. Behrend*, 569 U.S. 27, 37-38 (quoting Federal Judicial Center, Reference Manual on Scientific Evidence 432 (3d ed. 2011)). NFI contends that Plaintiffs are simply wrong that the NJWPL dictates that damages equal the sum of any unlawful deductions because although the NJWPL provides a private right of action for employees to recover "the full amount of any wages due[,]" it does not specify how to calculate those wages. Opp. at *11 (quoting N.J.S.A. § 34:11-4.1 et. seq). NFI further claims that calculating the difference between employee and independent contractor pay is relevant to Plaintiffs' need to prove they were actually damaged. *See* Opp. at *12. On this point, NFI appears to postulate that even if NFI cannot set off higher pay rates for independent contractors when analyzing damage awards under the statute, the calculations of Speakman could conceivably be relevant if Plaintiffs are still required to prove they were actually damaged due to misclassification.

## II.  Discussion

As to Plaintiffs' first basis for striking, the Court observes that NFI and Speakman expressly disclaim that the calculations set forth in the report represent a complete damages calculation. *See* Opp. at *7-8; Speakman Report at *4 ("I have been asked to consider only the earnings components of pay, i.e., I am not examining pay net of deductions."). As Speakman acknowledges, at the time he prepared his report "Plaintiffs ha[d] yet to produce any estimate of damages and, as such, it [was] unclear what they believe their damages might be." Speakman Report at *3. Accordingly, Speakman did

4

not produce a detailed damages model incorporating deductions calculations. Nor is it apparent that he was necessarily required to do so, especially considering that questions loomed at that time regarding which deductions constituted losses that Plaintiffs suffered and were therefore entitled to recover as damages. Given NFI's representations about the narrow scope of Speakman's opinions and its clarification that it does not intend to preclude consideration of costs, deductions, and expenses from ultimate damages, the Court does not find that the discreet nature of Speakman's calculation on earnings necessitates striking his report at this stage. The Court therefore declines to do so on this basis.

However, if Speakman's proposed "standard economic model" is fundamentally at odds with damages allowable under the NJWPL, as Plaintiffs contend in their second point of argument, then Speakman's report may be devoid of any probative information and thus unhelpful to the jury. To resolve the parties' dispute on how to properly calculate damages in this context, the Court must decide whether the "wages due" to an employee under N.J. Stat. Ann. § 34:11-4.10 (c) for misclassification can be measured by subtracting the compensation Plaintiffs received as independent contractors from the compensation the Plaintiffs would have received had they been hired as an employee. This question implicates consequential questions of law and statutory interpretation. While Plaintiffs' understanding of damages may ultimately be the correct one, Plaintiffs have not pointed to any binding or conclusive authority that would squarely foreclose the use of the "standard economic model" or otherwise demonstrate that it would be obviously erroneous for Plaintiffs to present expert opinion on evidence that might bear

out its theory of damages.[1] And although NFI has not identified caselaw employing the "standard economic model" in the specific context of a NJWPL employee misclassification action, this methodology appears fairly generic and enjoys a certain level of acceptance and credibility among courts. *See Comcast Corp.*, 569 U.S. at 37-38 (quoting Federal Judicial Center, Reference Manual on Scientific Evidence 432 (3d ed. 2011)). Moreover, the current record is not sufficiently developed to judge whether Speakman was offering legal conclusions or explicitly attempting to interpret "wages due" as a legal term of art when he employed the "standard economic model" to calculate one component of damages, and perhaps Speakman's statements on deposition would shed light on this question. Therefore, at this juncture and on the current record, the Court is not able to hold that Speakman's calculations do not fit within the allowable damages framework under the NJWPL or find that the calculations

---

[1] Plaintiffs cite two cases involving independent contractor misclassification claims, but neither conclusively establish that Speakman's opinions should be stricken as inadmissible. The first is *Somers v. Converged Access, Inc.*, 454 Mass. 582, 594 (2009). While analogous in that it involved the question of whether damages incurred by misclassified independent contractors can be offset against employee wages, the *Somers* decision was made on a motion for summary judgment and interpreted different language ("damages incurred") contained in a different statute of a different state: the Massachusetts Wage Act, G.L. c. 149, § 150. The second is *Carrow v. FedEx Ground Package Sys., Inc.*, No. 16-3026 2019 WL 7184548 (D.N.J. Dec. 26, 2019). In *Carrow*, Judge Kugler considered whether plaintiff had sufficiently alleged that he and class members had suffered damages on a common basis as part of a renewed motion for class certification. Plaintiffs argue Judge Kugler described NJWPL damages in *Carrow* as "the 'improper deductions from the settlement payments for 157 class members.'" Br. in Supp. at *13 (citing *Carrow*, 2019 WL 7184548, at *11. But Judge Kugler was not, in fact, opining directly on how to calculate damages. Rather, he was explaining that Plaintiffs had articulated a measure of calculating damages that was susceptible to common proofs and consistent with its theory of liability such that individual issues would not defeat class certification. Though the Court declines to rule on the basis of *Somers* or *Carrow* at this time, these decisions may add value to the Court's analysis in arriving at a final determination.

are not relevant to proving or disproving the existence of damages. Plaintiffs certainly make persuasive argument. But considering the novelty and lack of guidance regarding this issue, the Court declines to rule on this procedural posture where Plaintiffs have effectively sought to make its motion to strike a part of the summary judgment process by using it to adjudicate an important question implicating the interpretation of a state statute. For these reasons, the Court finds that Plaintiffs' motion to strike is not the proper vehicle for attacking an expert report where a ruling on this substantive issue has not been presented and fully briefed as a motion for judgment on damages.

### III. Conclusion

For the reasons stated on the record at the time of the hearing and set forth herein, Plaintiffs' motion to strike defendants' expert witness, Dr. Robert B. Speakman, Jr. [Dkt. 269], and NFI's cross-motion to strike Plaintiff's rebuttal expert report and for attorneys' fees and costs [Dkt. 282] will be denied without prejudice.

April 6, 2022

_____
Hon. Joseph H. Rodriguez,
UNITED STATES DISTRICT JUDGE