## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JOHN F. PORTILLO, RAFAEL SUAREZ, MARTIN DURAN, GERMAN BENCOSME, EDIN VARGAS, LUIS A. HERNANDEZ, JOSUE PAZ,** and **ALVARO CASTANEDA, individually and on behalf of all others similarly situated,** | : C.A. No.: 15-cv-7908-JHR-KMW : : : <u>**Document Electronically Filed**</u> : : : : **\*Oral Argument Requested\*** |
| **Plaintiffs,** | : : |
| **v.** | : : : |
| **NATIONAL FREIGHT, INC. and NFI INTERACTIVE LOGISTICS, INC.,** | : : : |
| **Defendants.** | : : |

<u>**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING THE DAMAGES AVAILABLE UNDER THE NJWPL**</u>

## TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................1

II.     STATEMENT OF FACTS ...........................................................2

III.    ARGUMENT..............................................................................4

        A.      Legal Standard...............................................................4

        B.      The Damages for an Unlawful Deductions Claims Under
                the NJWPL are Simply the Amount of Deductions
                Unlawfully Withheld.........................................................5

        C.      NFI's Position Is Unfounded And Should Be Rejected.......................9

IV.     CONCLUSION.........................................................................19

# TABLE OF AUTHORITIES

**Cases**

Anderson v. Homedeliveryamerica.com, Inc.
  2013 WL 6860745 (D. Mass. Dec. 30, 2013) ...............................................18

Arrellano v. XPO Logistics Port Services, LLC
  2019 WL 141459 (C.D. Cal. Jan. 9, 2019)....................................................18

Barrentine v. Arkansas-Best Freight Sys., Inc.
  450 U.S. 728 (1981).............................................................................. 15, 17

Bradley v. School Bd. of City of Richmond
  416 U.S. 696 (1974)...............................................................................7

Brandon v. 3PD, Inc.
  2014 WL 11348998 (N.D. Ill. Aug. 6, 2014)...............................................18

Camp v. Bimbo Bakeries USA, Inc.
  2018 WL 6606243 (D.N.H. Dec. 17, 2018) ...............................................18

Carr v. Flowers Foods, Inc.
  2019 WL 2027299 (E.D. Pa. May 7, 2019).....................................................3

Carrow v. FedEx Ground Package Sys., Inc.
  2019 WL 7184548 (D.N.J. Dec. 26, 2019) .................................... 5, 9, 16, 17

Castro v. Linden Bulk Transportation LLC, a/k/a/ Odyssey LBT LLC
  Civ. Act. No. ESX L 006141-19 (N.J. Super. Ct. Law Div. Jan 4,
  2021) ...........................................................................................1, 7

DaSilva v. Border Transfer of MA, Inc.
  377 F. Supp. 3d 74 (D. Mass. 2019)...........................................................17

De Angelis v. Nat'l. Ent. Group, LLC
  2018 WL 4334553 (S.D. Ohio Sept. 11, 2018)............................................14

Derieux v. FedEx Ground Package Sys., Inc.
  2023 WL 349495 (D.N.J. Jan. 20, 2023)......................................................6

Desio v. Russell Rd. Food and Bev., LLC
    2016 WL 4721099 (D. Nev. Sept. 9, 2016).....................................................14

Hargrove v. Sleepy's LLC
    220 N.J. 289  (2015) ......................................................................................5, 8

Hargrove v. Sleepy's LLC
    974 F.3d 467 (3d Cir. 2020) ...........................................................................17

Henry v. Central Freight Lines, Inc.
    2019 WL 2465330 (E.D. Cal. June 13, 2019)................................................17

Herman v. DePaul & Associates
    2000 WL 34011893 (W.D. Pa. Nov. 15, 2000)..............................................14

Johnson v. Diakon Logistics
    2020 WL 405636 (N.D. Ill. Jan. 23, 2020)....................................................17

Kas Oriental Rugs, Inc. v. Ellman
    407 N.J. Super. 538 (App. Div. 2009).............................................................8

Ladegaard v. Hard Rock Concrete Cutters, Inc.
    2001 WL 1403007 (N.D. Ill. Nov. 9, 2001) ...................................................18

Landgraf v. USI Film Products
    511 U.S. 244 (1994)..........................................................................................7

Lupian v. Joseph Cory Holdings LLC
    905 F.3d 127 (3d Cir. 2018) ...........................................................................17

Maia v. IEW Construction Group
    --- A.3d ---, 2023 WL 2290202 (N.J. Super. Ct.  App. Div. March
    1, 2023) ........................................................................................ 2, 6, 7, 8

Martins v. 3PD, Inc.
    2013 WL 1320454 (D. Mass. Mar. 28, 2013) ................................................18

McMaster v. E. Armored Servs., Inc.
    780 F.3d 167 (3d Cir. 2015) ...........................................................................17

Morales v. Aqua Pazza LLC
    2022 WL 1718050 (D.N.J. May 27, 2022) ...................................................... 8

Morales v. V.M. Trucking, LLC
    2019 WL 2932649 (N.J. Super. Ct. App. Div. July 9, 2019) ................ 5, 6, 8

Morrison v. Ocean State Jobbers, Inc.
    2016 WL 10412791 (D. Conn. Sept. 26, 2016) ........................................... 13

Mozingo v. Oil States Energy Services, L.L.C.
    341 F. Supp. 3d 534 (W.D. Pa. Aug. 10, 2018) .......................................... 14

Mullally v. Waste Mgt. of Mass., Inc.
    452 Mass. 526 (2008) .................................................................................. 13

Neff v. Flowers Foods, Inc.
    2019 WL 10750005 (D. Vt. May 16, 2019) ................................................ 17

Phelps v. 3PD, Inc.
    261 F.R.D. 548 (D. Or. 2009) ..................................................................... 18

Portillo v. National Freight, Inc.
    606 F. Supp. 3d 72 (D.N.J. June 9, 2022) ................................................ 6, 8

Prokhorov et al v. Kazniyenko et al
    Civ. Act. No. 20-6807 (N.D. Ill. Mar. 30, 2023) ....................................... 17

Punter v. Jasmin Intern. Corp.
    2014 WL 4854446 (D.N.J. Sept. 30, 2014) .................................................. 8

Rosen v. Smith Barney, Inc.
    393 N.J. Super. 578 (App. Div. 2007) .......................................................... 8

Somers v. Converged Access, Inc.
    454 Mass. 582 (2009) .................................................................................. 12

Spates v. Roadrunner Transportation Sys., Inc.
    2016 WL 7426134 (N.D. Ill. Dec. 23, 2016) ............................................. 18

Thomas v. Matrix Corp. Servs., Inc.
    2012 WL 3581298 (N.D. Ill. Aug. 17, 2012) ............................................. 18

Tsybikov v. Dovgal
    2022 WL 1238853 (N.D. Ill. April 27, 2022) ................................................17

Wagoner v. N.Y.N.Y., Inc.
    2015 WL 1468526 (S.D. Ohio Mar. 30, 2015) ............................................15

Wheeler v. Hampton Tp.
    399 F.3d 238 (3d Cir. 2005) .........................................................................14

White v. New Hampshire Dept. of Employment Security
    455 U.S. 445 (1982)........................................................................................7

Winslow v. Corp. Exp., Inc.
    364 N.J. Super. 128 (App. Div. 2003)...........................................................7

**Statutes**

Fair Labor Standards Act ("FLSA")
    29 U.S.C. §§ 201 *et seq.* ........................................................... 13, 16

Massachusetts Wage Act
    G.L. c. 149, § 148 .........................................................................................12

New Jersey Wage Payment Law ("NJWPL")
    N.J. Stat. § 34:11–4.1 *et seq.* ............................................................ passim

**Other Authorities**

10A Wright & Miller
    Federal Practice & Procedure § 2725 (4th ed.) ................................................4

David Weil
    *Lots of Employees Get Misclassified as Contractors. Here's Why*
    *It Matters*, Harv. Bus. Rev., (July 5, 2017) ...................................................11

David Weil
    THE FISSURED WORKPLACE (2017).......................................................11

Lalith de Silva *et al.*
>    Independent Contractors: Prevalence and Implications for
>    Unemployment Insurance Programs, PLANMATICS, INC. (2000) ............12

Leticia Chavez
>    The *Dynamex* Dichotomy and the Path Forward, 50 Golden Gate
>    U. L. Rev. 147, (August 2020) .......................................................................12

Scott L. Cummings and Emma Curran Donnelly Hulse
>    Preemption as a Tool of Misclassification, 66 UCLA Law Rev.
>    1872, 1879-80 (Dec. 2019) ..........................................................................11

**Rules**

Fed. R. Civ. P. 56 ...........................................................................................................4

## I.   INTRODUCTION

Before this Court is the straightforward question of how to measure damages under the New Jersey Wage Payment Law ("NJWPL"), N.J. Stat. § 34:11-4.1 *et seq.*, where Plaintiffs have proven that they were misclassified as independent contractors and were subjected to deductions from their pay which are violative of the NJWPL.[1] As demonstrated below, this is not a close question at all, as virtually every court decision and the statute itself make clear that the deductions themselves constitute their own measure of damages. Indeed, it requires no advanced law degree to comprehend the simple common-sense proposition that now that this Court has established that Plaintiffs were NFI's employees rather than independent contractors, they are entitled to the recoupment of the deductions unlawfully taken from their pay, along with any statutory penalties.[2] See N.J. Stat. §§ 34:11-4.10(c); 34:11-4.7; Maia v. IEW Construction Group, --- A.3d ---, 2023

---

[1]      During the hearing of April 6, 2023, the Court requested that Plaintiffs submit a table stating the categories of unlawful deductions for which they believe NFI is liable, the amounts of those deductions, and the pay codes from the data that NFI produced in discovery that make up each category of deductions. Plaintiffs attach this table as Exhibit A.

[2]      As will be explained below, in 2019, the NJWPL was amended to also provide for liquidated damages in the amount of 200% of the wages owed, as well as attorneys' fees and costs. Plaintiffs assert that this amendment applies retroactively in this matter, see Castro v. Linden Bulk Transportation LLC, a/k/a/ Odyssey LBT LLC, Civ. Act. No. ESX L 006141-19, Order at 10-11 (N.J. Super. Ct. Law Div. Jan 4, 2021), but the Court need not decide that issue at this stage.

WL 2290202, at *2-3 (N.J. Super. Ct.  App. Div. March 1, 2023).

NFI's "alternate universe" argument that the proper method of calculation involves some theoretical comparison of what Plaintiffs and the Class made as independent contractors and what they would have made as employee drivers borders on the absurd. Such a method has never been adopted by any court in any such misclassification litigation anywhere in the country.

Moreover, the NJWPL itself clearly specifies that the measure of damages for improper deductions is repayment of the "full amount of wages" wrongly withheld, see N.J. Stat. §§ 34:11-4.10(c); 34:11-4.7, and the statute does not allow for the theoretical construct invented by NFI. NFI has simply invented a theory of damages that has never been adopted, and then hired an expert to support the questionable math undergirding it. The Court should not be fooled. To put it simply, the remedy for an improper deduction is the return of the deduction; it is not a convoluted analysis of what Plaintiffs would have been paid if NFI had hired them as employees.

## II.    STATEMENT OF FACTS

This matter has been pending since June 22, 2015. See Plaintiffs' Statement of Undisputed Facts ("P's SOF") ¶ 1; Notice of Removal, Dkt.1.[3] At this stage, the

---

[3]    Plaintiffs filed this matter before the Superior Court of New Jersey. NFI removed the case to this Court on November 5, 2015. See Notice of Removal, Dkt. 1.

Court has certified the class in this matter, see P's SOF ¶ 4; Opinion, Dkt. 171, and

has granted Plaintiffs' Motion for Partial Summary Judgment, holding that

Plaintiffs and the class were misclassified as independent contractors under the

NJWPL, see P's SOF ¶ 5; Opinion, Dkt. 300. The Court has also denied NFI's

Motion to Decertify the class. See Opinion, Dkt. 318. This case is now ready for

trial to determine the damages that Plaintiffs suffered. From the start, Plaintiffs

have sought to recover the deductions taken from their pay in violation of the

NJWPL. (First Am. Compl. ¶¶ 26-37, Count I, Dkt. 102.). The NJWPL prohibits

wage deductions not specifically authorized by the statute. See N.J. Stat. § 34:11-

4.4; Carr v. Flowers Foods, Inc., 2019 WL 2027299, at *20 (E.D. Pa. May 7,

2019).

On June 9, 2022, the Court granted Plaintiffs' Motion for Partial Summary

Judgment, holding that NFI misclassified Plaintiffs and the Class as independent

contractors under the New Jersey Wage Payment Law ("NJWPL"), N.J. Stat. §

34:11–4.1 et seq. (Dkt. 300).

On April 6, 2023, the Court held a hearing on Plaintiffs' Motion to Strike

NFI's Expert Report (Dkt. 270). (P's SOF ¶ 6.) In that Motion, Plaintiffs argued

that NFI was incorrect to assert that the damages for the unlawful deductions NFI

made in violation of the NJWPL had to be calculated by comparing what the

drivers earned as independent contractors to what the drivers theoretically would

have earned as employees. (P's SOF ¶ 6; P's Motion to Strike NFI's Expert Report

at 9-18, Dkt. 270.) That same day, the Court issued an Opinion denying Plaintiffs'

Motion to Strike without prejudice (Dkt. 233). (P's SOF ¶ 7.) The Court held that

while "Plaintiffs certainly make persuasive argument," the Court would not decide

the issue on a motion to strike an expert report. (P's SOF ¶ 7; Opinion at 7, Dkt.

233.) Instead, the Court directed Plaintiffs to file a motion for summary judgment

on this issue. (P's SOF ¶ 7; Opinion at 7, Dkt. 233.)

## III.    ARGUMENT

### A.    Legal Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that a party is

entitled to summary judgment "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of

law."  Fed. R. Civ. P. 56(a). And it is axiomatic that "when the only issues to be

decided in the case are issues of law, summary judgment may be granted." 10A

Wright & Miller, Federal Practice & Procedure § 2725 (4th ed.).

Here, Plaintiffs seek summary judgment on the legal question of how to

measure damages under the New Jersey Wage Payment Law ("NJWPL"), N.J.

Stat. § 34:11-4.1 *et seq.*, where Plaintiffs have proven that they were misclassified

as independent contractors and were subjected to deductions from their pay which

are violative of the NJWPL.  For the reasons that follow, the Court should grant

summary judgment in Plaintiffs' favor.

**B.     The Damages for an Unlawful Deductions Claims Under the NJWPL are Simply the Amount of Deductions Unlawfully Withheld**

As this Court already knows, New Jersey has no cause of action for "independent contractor misclassification." To the contrary, as the New Jersey Supreme Court made clear in Hargrove v. Sleepy's LLC, 220 N.J. 289, 301-06 (2015), the ABC test which this court applied here in determining that the plaintiffs were employees, constitutes the definition of the term "employee" contained in both the NJWPL and the New Jersey Wage and Hour Law ("NJWHL"). See N.J. Stat. § 34:11-4.1; N.J. Stat. § 34:11-56a1(f), (h); see also Hargrove, 220 N.J. at 301-05; Morales v. V.M. Trucking, LLC, 2019 WL 2932649, at *5 (N.J. Super. Ct. App. Div. July 9, 2019).

As such, in this case, as in almost identical misclassification cases brought in this state (such as Carrow v. FedEx Ground Package Sys., Inc., 2019 WL 7184548, at *4-12 (D.N.J. Dec. 26, 2019), and Morales, 2019 WL 2932649, at *4-10), the claim Plaintiffs assert here is that as employees, NFI made deductions from their pay that directly violated the NJWPL. That statute specifically states that "'[n]o employer may withhold or divert any portion of an employee's wages unless . . . required or empowered to do so by . . . law,'" or if "such deductions falls within one of the eleven exemptions found in N.J.S.A. 34:11-4.4." Morales, 2019 WL

2932649, at *7 (quoting N.J. Stat. 34:11-4.4).[4]

Thus, the NJWPL itself establishes the first part of the damages analysis; *i.e.* was there an unlawful deduction? The statute then goes on to explicitly delineate the damages recoverable. Prior to the 2019 amendment to the NJWPL that added a 200% liquidated damages penalty provision, "an aggrieved employee could bring a claim under the WPL limited to recovery of the full amount of wages improperly withheld by the employer" Maia, 2023 WL 2290202, at *2. In the pre-2019 iteration of the NJWPL, the courts looked to N.J. Stat. § 34:11-4.7 for the remedy for NJWPL violations, "which permitted an employee to bring a civil action to bring a civil action against his or her employer 'for the full amount of . . . wages' if the employer 'enter[ed] into or ma[de] any agreement . . . for the payment of wages . . . otherwise than as provided in' the WPL." Maia, 2023 WL 2290202, at *2 (quoting N.J. Stat. § 34:11-4.7); see also Derieux v. FedEx Ground Package Sys., Inc., 2023 WL 349495, at *3 (D.N.J. Jan. 20, 2023) ("If an employer violates the statute, the NJWPL permits an employee to sue to recover the 'full amount of his wages'") (citing Portillo v. National Freight, Inc., 606 F. Supp. 3d 72, 83 (D.N.J. June 9, 2022); Winslow v. Corp. Exp., Inc., 364 N.J. Super. 128, 137-38

---

[4]     In Morales, 2019 WL 2932649, at *5-8, the Appellate Court analyzed in detail why the same types of deductions that NFI made in this case are unlawful under the NJWPL.

(App. Div. 2003).

The 2019 amendment to the NJWPL then added a new section, N.J. Stat. §

34:11-4.10(c), which states that the NJWPL now gives an aggrieved employee the

right to "recover in a civil action the full amount of wages due . . . ." Maia, 2023

WL 2290202, at *3. The 2019 amendment also added a liquidated damages

provision in the amount of 200% "of the wages due." Id.[5] Given this express

statutory language, as well as the above cited case law interpreting these sections,

it becomes easy to see that NFI's attempt to create an alternate theoretical construct

to measure damages, is not only implausible, unrealistic, and created out of whole

cloth, but is directly contradicted by the express language and policies embodied

---

[5]    While it most certainly need not be decided in this motion, Plaintiffs
take the position that the penalty provision added by the legislature in 2019 applies
to all pending cases. The only New Jersey state court to opine on the issue has held
that this amendment applies retroactively. See Castro v. Linden Bulk
Transportation LLC, a/k/a/ Odyssey LBT LLC, Civ. Act. No. ESX L 006141-19,
Order at 10-11 (N.J. Super. Ct. Law Div. Jan 4, 2021). It is especially clear that the
Wage Theft Act's provision for attorneys' fees under the NJWPL will apply
retroactively. See Landgraf v. USI Film Products, 511 U.S. 244, 276-78 (1994)
(explaining that where a statute is amended to provide for the award of attorneys'
fees, the amendment is retroactive because "Attorney's fee determinations, . . . are
'collateral to the main cause of action' and 'uniquely separable from the cause of
action to be proved at trial.'") (quoting White v. New Hampshire Dept. of
Employment Security, 455 U.S. 445, 451-52 (1982)); Bradley v. School Bd. of
City of Richmond, 416 U.S. 696, 719-21 (1974) (holding that an amendment to
Title II of the Civil Rights Act of 1964 providing attorneys' fees to prevailing
plaintiffs applied retroactively, based "on the principle that a court is to apply the
law in effect at the time it renders its decision, unless doing so would result in
manifest injustice or there is statutory direction or legislative history to the
contrary"). But that issue is not before the court now.

by the NJWPL. Indeed, the NJWPL is a "remedial statute" that "should be construed liberally, <u>Hargrove</u>, 220 N.J. at 303, and is "designed to protect employees' wages and to guarantee receipt of the fruits of their labor." <u>Maia</u>, 2023 WL 2290202, at *2 (quoting <u>Rosen v. Smith Barney, Inc.</u>, 393 N.J. Super. 578, 585 (App. Div. 2007)); <u>Kas Oriental Rugs, Inc. v. Ellman</u>, 407 N.J. Super. 538, 564 (App. Div. 2009) (noting that the NJWPL has "been liberally construed in order to fulfill [its] 'humanitarian and remedial' purposes") (internal citation omitted).

Accordingly, the simple and obvious answer to the Court's inquiry as to how damages are to be measured in this case is as follows: Having already determined that Plaintiffs were misclassified and are actually employees under the NJWPL, <u>see</u> <u>Portillo</u>, 606 F. Supp. 3d at 90-94, the Court must (1) determine which deductions that NFI made were in violation of the statute following the analysis in <u>Morales</u>, 2019 WL 2932649, at *5-8, N.J. Stat § 34:11-4.4, and the Regulations of the New Jersey Department of Labor and Workforce Development and (2) determine the amount of those deductions. NFI is then liable to Plaintiffs for that amount. <u>See</u> <u>Morales v. Aqua Pazza LLC</u>, 2022 WL 1718050, at *7 (D.N.J. May 27, 2022) ("The NJWPL permits Plaintiffs to recover all weekly wages that the . . . Defendants owed to them but did not pay."); <u>Punter v. Jasmin Intern. Corp.</u>, 2014 WL 4854446, at *2 (D.N.J. Sept. 30, 2014) (granting judgment on an NJWPL claim for deductions in the amount of the deductions unlawfully made); <u>see also</u>

Carrow, 2019 WL 7184548, at *11-12 describing NJWPL damages as being the "improper deductions from the settlement payments for 157 class members."). In addition, if the Court later determines that the 2019 amendment to the NJWPL applies, then NFI would be liable for liquidated damages in the amount of 200% of the deductions owed, plus attorneys' fees and costs. See N.J. Stat. § 34:11-4.10(c).

### C.   NFI's Position Is Unfounded And Should Be Rejected

NFI seeks to muddy the otherwise straightforward damages inquiry in this case by positing that damages are assessed not by a plain reading of the statute and recent case law, but instead by a theoretical analysis of what individuals hypothetically would have been owed had they been treated as employees by the employer.  This position is baseless.

Contrary to NFI's argument, damages for the unlawful deductions at issue in this case does *not* involve the creation of some theoretical construct that asks what Plaintiffs and the Class might have earned if NFI had classified them as employees by comparing them to NFI's employee drivers. Such an analysis is farfetched in that an employee receives multiple benefits contractors do not (such as pension, health care, vacation, paid time off etc.), and, as here, a misclassified contractor endures thousands of dollars in expenses and deductions (such as truck payments, maintenance, wear and tear mileage, etc.) that employees do not, making a comparison infeasible. And in most cases, such a comparison would be impossible

because there may well be no comparable employees for whom the comparison could be made.  Indeed, this theory of damages would not be available if NFI did not also use employee drivers (in addition to the drivers it misclassified as independent contractors). And as a matter of common sense, the method of calculating deductions damages under the NJWPL cannot differ based merely on the fact of whether the employer classified some of its drivers as employees.

In asking the Court to make this theoretical comparison, NFI relies on the Federal Judicial Center's Reference Manual on Scientific Evidence (3d ed. 2011). As this Court aptly noted in its recent Opinion of April 6, 2023 (Dkt. 333), "NFI has not identified caselaw employing the 'standard economic' model in the specific context of a NJWPL employee misclassification action . . . ." Indeed, no such caselaw exists, because to apply such a model would contradict the plain language and purpose of the statute.

The absurdity of NFI's argument can also be gleaned by examining other provisions of the NJWPL and the NJWHL. For example, the NJWPL requires employers to promptly pay all wages due an employee, see N.J. Stat. § 34:11-4.2, and the NJWHL requires overtime for all hours worked over 40 and minimum wage for all hours worked, see N.J. Stat. § 34:11-56a4. Under those statutory provisions, if an employer misclassified workers as independent contractors to avoid paying the workers for all work performed, or to avoid paying minimum

wage and overtime, the damages would obviously be the amount of wages not paid
(plus penalties), or payment of overtime for the overtime hours worked. But under
NFI's argument, there would be no damages if the employer could show that the
workers made more than they would have made if they had been classified as
employees. This would make a mockery of New Jersey's wage laws as applied to
the serious problem of employers' misclassification of workers in New Jersey.[6]

---

[6]      In 2018, New Jersey Governor Phil Murphy commissioned a Task Force on
Employee Misclassification, which issued a report in 2019. *See* Report of Gov.
Murphy's Task Force on Employee Misclassification, (July 2019), available at
https://www.nj.gov/labor/assets/PDFs/Misclassification%20Report%202019.pdf.
Governor Murphy's Task Force began by noting that misclassification "has
increased by approximately 40% in the last ten years and is a growing problem in
New Jersey (and other states)." *Id.* at 1 (citing David Weil, *Lots of Employees Get
Misclassified as Contractors. Here's Why It Matters*, Harv. Bus. Rev., (July 5,
2017), available at https://hbr.org/2017/07/lots-of-employees-get-misclassified-as-
contractors-heres-why-it-matters). Troublingly, the rampant misclassification of
workers in New Jersey has resulted in "declining wages, eroding benefits,
inadequate health and safety conditions, and ever-widening income inequality." *Id.*
(citing David Weil, THE FISSURED WORKPLACE (2017)).
         Governor Murphy's Task Force has identified the trucking industry as being
particularly rife with misclassification:
         Despite the broad legal requirement to properly classify workers,
         misclassification is widespread and especially prevalent in construction,
         janitorial services, home care, **transportation, trucking, and delivery
         services**, and other labor-intensive low-wage sectors, where employers can
         gain a competitive advantage by driving down payroll costs.
Id. at 6 (emphasis added). Indeed, since the late 1970s, as the American trucking
industry began to be deregulated, there has been a "tectonic market shift in the
trucking industry," which has resulted in a shift toward trucking companies using
purportedly "independent-owner drivers," while at the same time, "trucking firms
exert near total control over every aspect of their work." Scott L. Cummings and
Emma Curran Donnelly Hulse, Preemption as a Tool of Misclassification, 66
UCLA Law Rev. 1872, 1879-80 (Dec. 2019); see also Leticia Chavez, The

Boiled down to its essence, NFI is making the same old universally rejected

argument, that if it had known that the workers were really employees, NFI would

not have paid them as much as they did, and therefore they should receive a credit

for their illegality. Yet this argument has been uniformly rejected. For example, in

Somers v. Converged Access, Inc., 454 Mass. 582, 589-91 (2009), the

Massachusetts Supreme Judicial Court ("SJC") rejected an argument virtually

identical to NFI's. There, the defendant argued that the plaintiff (who had been

misclassified as an independent contractor) would have been paid less as an

employee, and therefore there was no violation of the Massachusetts Wage Act,

G.L. c. 149, § 148:

> CAI's essential position is that, had it realized that it would be violating [the
> Massachusetts Wage Act, M.G.L. c. 149, § 148 and the Massachusetts
> Independent Contractor Statute, M.G.L. c. 149, § 148B] by hiring the
> plaintiff as an independent contractor, it instead would have hired him as an
> employee and paid him a lower hourly wage than the hourly rate it paid him
> as an independent contractor. Because the plaintiff earned more as an
> independent contractor than he would have earned as an employee, CAI
> argues that it should owe no damages.

Id. at 591. The SJC rejected this argument:

> They contend, however, that dismissal of the plaintiff's claim was proper,

---

Dynamex Dichotomy and the Path Forward, 50 Golden Gate U. L. Rev. 147,
(August 2020) ("Misclassification is highly prevalent in trucking, construction, and
janitorial services.") (citing Dr. Lalith de Silva et al., Independent Contractors:
Prevalence and Implications for Unemployment Insurance Programs,
PLANMATICS, INC. at iii (2000), available at http://wdr.doleta.gov/owsdrr/00-
5/00-5.pdf).

because the judge correctly concluded that the plaintiff was paid more as an independent contractor than he would have been paid had CAI hired him as an employee, and therefore he suffered no damages. We disagree.

Id. at 590. Further, the SJC explained that:

A legislative purpose behind the independent contractor statute is to protect employees from being deprived of the benefits enjoyed by employees through their misclassification as independent contractors . . . . Were employers who violated the statute permitted a "safe harbor" that allowed them to demonstrate that they would have paid the employee less had they known he or she was not an independent contractor, there would be no financial incentive to ensure employer compliance, and employees would be left with no meaningful protection from misclassification.

Id. at 591 (citing Mullally v. Waste Mgt. of Mass., Inc., 452 Mass. 526, 531

(2008)). Moreover, in rejecting the defendant's concern that this interpretation

would provide a windfall to the employer, the Supreme Judicial Court noted that

"[h]ad the Legislature been concerned with this risk, it would not have written the

independent contractor statute or the wage act to impose strict liability on

employers," or it "could have included language . . . permitting such setoff in the

calculation of 'damages incurred.'" Id. (internal citation omitted).

Other courts have reached similar conclusions in the context of claims

brought under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq. In

Morrison v. Ocean State Jobbers, Inc., 2016 WL 10412791, at *1-2 (D. Conn.

Sept. 26, 2016), in the context of an overtime exemption misclassification case

under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., quoting

from Somers, the court rejected the defendant's argument that because the

13

plaintiffs earned more as independent contractors than they would have owed as employees, the defendants should have no damages. Similarly in Herman v. DePaul & Associates, 2000 WL 34011893, at *3-5 (W.D. Pa. Nov. 15, 2000), the court held that that where an employer declined to pay overtime but paid a salary higher than normal to account for overtime, allowing the employer to escape FLSA liability "would be contrary to the spirit and purpose of the act." Indeed, as one court acknowledged, the Third Circuit is clear that "[w]here a credit is allowed, the statute says so." Mozingo v. Oil States Energy Services, L.L.C., 341 F. Supp. 3d 534, 562 (W.D. Pa. Aug. 10, 2018) (quoting Wheeler v. Hampton Tp., 399 F.3d 238, 245 (3d Cir. 2005)).

Perhaps most on point are the exotic dancer FLSA misclassification cases, where courts rejected defendants' arguments that their minimum wage and overtime damages should be offset given provisions in their contracts stating that if they were employees, the clubs would be entitled to the dance fees that the dancers had received from customers. See De Angelis v. Nat'l. Ent. Group, LLC, 2018 WL 4334553, at *5 (S.D. Ohio Sept. 11, 2018) (holding that such an offset "would thwart the legislative purposes of the FLSA"); Desio v. Russell Rd. Food and Bev., LLC, 2016 WL 4721099, at *3 (D. Nev. Sept. 9, 2016) (dismissing a counterclaim against a dancer because "an employee's FLSA rights to minimum wage and overtime pay cannot be abridged by contract or otherwise waived because this

14

would nullify the purposes of the statute and thwart the legislative policies it was designed to effectuate.'") (quoting <u>Barrentine v. Arkansas-Best Freight Sys., Inc.,</u> 450 U.S. 728, 740 (1981)); <u>Wagoner v. N.Y.N.Y., Inc.,</u> 2015 WL 1468526, at *6 (S.D. Ohio Mar. 30, 2015) (dismissing counterclaims because "the breach of contract claim is focused entirely on the recovery of dance fees as a result of bringing this lawsuit, which is a creative attempt to circumvent the protection of the FLSA and the [Ohio Minimum Fair Wage Standards Act]").

At bottom, Courts have routinely rejected NFI's argument, and under the NJWPL, which is one of the most worker-friendly remedial statutes in the country, the Court should reject it here.

Another equally troubling argument which NFI seems to be making, is that the payments that NFI was making to its driver class members were not "wages." This argument is not only directly contradicted by the definition of wages in the NJWPL, but if true, would mean that NFI is conceding that although the Court has found that the drivers were employees, they received no wages for their work, in which case NFI would be liable to the plaintiffs for millions of dollars in minimum wage damages.

The NJWPL defines "wages" as "the direct monetary compensation for *labor or services rendered* by an employee, where the amount is determined on a time, task, piece, or commission basis excluding any form of supplementary

15

incentives and bonuses which are calculated independently of regular wages and paid in addition thereto." N.J. Stat. § 34:11-4.1. One is left to wonder what the drivers' weekly compensation checks *were* if not wages. The drivers performed work for NFI and got paid for it. Notably in Carrow, NJWPL misclassification case similarly involving a claim that weekly "settlement payments themselves were Plaintiffs' rightful wages," Judge Kugler explained that "Plaintiffs need only establish that they were Defendant's employees and that Defendant took deductions from settlement payments . . .." Carrow, 2019 WL 7184548, at *3.

Furthermore, NFI appears to have overlooked the ironically pyrrhic nature of its argument with respect to the definition of "wages," which is that if the compensation that it paid the drivers was not wages, then NFI is liable for tens of millions *more* dollars under the New Jersey Wage and Hour Law, N.J. Stat. § 34:11-56(a)(4), by failing to play the drivers minimum wage. NFI's argument with respect to wages is completely incoherent and must be rejected.

To put this all in perspective, it is helpful for the Court to understand that the NFI case is but one of hundreds of truck driver misclassification cases around the country and in New Jersey. Moreover, in virtually all of these cases, since truck drivers are primarily overtime exempt under federal and state law,[7] the driver

---

[7]    Under the Motor Carrier Act Exemption to the FLSA (as well as analogous laws of many states), see 29 U.S.C. § 213(b)(1), employee truck drivers are exempt from the FLSA's overtime requirement if their job is to operate vehicles greater

plaintiffs are seeking recovery of deductions taken from their pay, and in a few states (such as California and Illinois), expenses. See, e.g., Hargrove v. Sleepy's LLC, 974 F.3d 467, 480-81 (3d Cir. 2020) (deductions claims by truck drivers under NJWPL); Lupian v. Joseph Cory Holdings LLC, 905 F.3d 127, 133 (3d Cir. 2018) (deductions claims by truck drivers under Illinois law); Prokhorov et al v. Kazniyenko et al., Civ. Act. No. 20-6807, Dkt. 81 (N.D. Ill. Mar. 30, 2023) (deductions claims by truck drivers under Illinois law); Tsybikov v. Dovgal, 2022 WL 1238853, at *2-4 (N.D. Ill. April 27, 2022) (deductions claims by truck drivers under Illinois law); Johnson v. Diakon Logistics, 2020 WL 405636, at *2 (N.D. Ill. Jan. 23, 2020) (deductions claims by truck drivers under Illinois law); DaSilva v. Border Transfer of MA, Inc., 377 F. Supp. 3d 74, 87-89 (D. Mass. 2019) (deductions claims by truck drivers under Massachusetts law); Carr, 2019 WL 2027299, at *15-20 (deductions claims by truck drivers under Pennsylvania, New Jersey, and Maryland law); Henry v. Central Freight Lines, Inc., 2019 WL 2465330, at *2 (E.D. Cal. June 13, 2019) (deductions claims by truck drivers under California law); Neff v. Flowers Foods, Inc., 2019 WL 10750005, at *1 (D. Vt. May 16, 2019) (deductions claims by truck drivers under Vermont law); Carrow, 2019 WL 7184548, at *4-12 (deductions claim by truck drivers under the NJWPL);

---

than 10,000 lbs. See McMaster v. E. Armored Servs., Inc., 780 F.3d 167, 169 (3d Cir. 2015).

Arrellano v. XPO Logistics Port Services, LLC, 2019 WL 141459, at *5 (C.D. Cal. Jan. 9, 2019) (deductions claims by truck drivers under California law); Camp v. Bimbo Bakeries USA, Inc., 2018 WL 6606243, at *4 (D.N.H. Dec. 17, 2018) (deductions claims by truck drivers under New Hampshire law); Spates v. Roadrunner Transportation Sys., Inc., 2016 WL 7426134, at *3 (N.D. Ill. Dec. 23, 2016) (deductions claims by truck drivers under Illinois law); Brandon v. 3PD, Inc., 2014 WL 11348998, at *5-16 (N.D. Ill. Aug. 6, 2014) (deductions claims by truck drivers under Illinois law); Anderson v. Homedeliveryamerica.com, Inc., 2013 WL 6860745, at *2 (D. Mass. Dec. 30, 2013) (deductions claims by truck drivers under Massachusetts law); Martins v. 3PD, Inc., 2013 WL 1320454, at *13 (D. Mass. Mar. 28, 2013) (deductions claims by truck drivers under Massachusetts law); Thomas v. Matrix Corp. Servs., Inc., 2012 WL 3581298, at *3 (N.D. Ill. Aug. 17, 2012) (deductions claim by truck drivers under Illinois law); Phelps v. 3PD, Inc., 261 F.R.D. 548, 552 (D. Or. 2009) (deductions claims by truck drivers under Oregon law); Ladegaard v. Hard Rock Concrete Cutters, Inc., 2001 WL 1403007, at *9 (N.D. Ill. Nov. 9, 2001) (deductions claims by truck drivers under Illinois law).

To Plaintiffs' knowledge, not a single court considering these claims has EVER endorsed or even recognized the damages theory espoused by NFI.

18

## IV.   CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' Motion for

Partial Summary Judgment and hold that the damages available under the NJWPL

are the amount of deductions that NFI unlawfully made from the drivers'

compensation.

Dated: April 13, 2023                    Respectfully submitted,


/s/ Zachary Rubin
Zachary Rubin
NJ Bar No. 179052015
Harold Lichten (*pro hac vice*)
Sarah Schalman-Bergen (*pro hac vice*)
Thomas Fowler (*pro hac vice*)
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone: (617) 994-5800
zrubin@llrlaw.com
hlichten@llrlaw.com
ssb@llrlaw.com
tfowler@llrlaw.com

Alexandra Koropey Piazza
NJ Bar No. 010922013
Shanon J. Carson (*pro hac vice*)
Camille Fundora Rodriguez,
NJ Bar No. 017642011
Berger Montague PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000
apiazza@bm.net
crodriguez@bm.net
scarson@bm.net

*Attorneys for Plaintiffs*

**CERTICATE OF SERVICE**

I hereby certify that on April 13, 2023, a true and correct copy of the

foregoing document was served on all counsel of record electronically via

CM/ECF.

/s/ Zachary Rubin
Zachary Rubin