## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JOHN F. PORTILLO, RAFAEL SUAREZ, MARTIN DURAN, GERMAN BENCOMSE, EDIN VARGAS, LUIS A. HERNANDEZ, JOSUE PAZ, and ALVARO CASTANEDA, individually and on behalf of all others similarly situated,<br><br>     *Plaintiffs*,<br><br>     v.<br><br>NATIONAL FREIGHT, INC. and NFI INTERACTIVE LOGISTICS, INC.,<br><br>     *Defendants*. | Civil Action<br>No. 15-07908 (CPO)<br><br>**OPINION** |

**APPEARANCES**:

Alexandra Koropey Piazza
BERGER MONTAGUE PC
8241 La Mesa Blvd.
Suite A
La Mesa, CA 91942

Camille Fundora Rodriguez
BERGER MONTAGUE PC
1818 Market Street
Suite 3600
Philadelphia, PA 19103

Jeremy Edward Abay
LICHTEN & LISS-RIORDAN, P.C.
30 Washington Avenue
Suite D-3
Haddonfield, NJ 08033

     *On behalf of Plaintiffs*.

Caroline Riley Robb
MORGAN LEWIS & BOCKIUS, LLP
2222 Market Street
Philadelphia, PA 19103

Robert H. Bernstein
GREENBERG TRAURIG LLP
500 Campus Drive
Suite 400
P.O. Box 677
Florham Park, NJ 07932-0677

Zachary M. Kimmel
Adam Roseman
Christina Lynn Signs
GREENBERG TRAURIG LLP
1717 Arch Street
Suite 400
Philadelphia, PA 19103

> *On behalf of Defendants.*

**O'HEARN, District Judge.**

This matter comes before the Court on Plaintiffs', John F. Portillo, Rafael Suarez, Martin Duran, German Bencosme, Edin Vargas, Luis A. Hernandez, Josue Paz, and Alvaro Castaneda, individually and on behalf of all others similarly situated (collectively, "Plaintiffs"), Motion for Partial Summary Judgment, (ECF No. 338), and Defendants', National Freight, Inc. and NFI Interactive Logistics, LLC (collectively, "NFI" or "Defendants"), Cross-Motion for Partial Summary Judgment, (ECF No. 344), seeking a determination as to the appropriate method for calculating damages under the New Jersey Wage Payment Law ("NJWPL"), N.J.S.A. § 34:11-4.1, *et seq*. This is a misclassification case in which the Court has already determined that Plaintiffs were employees, not independent contractors, under New Jersey law. *See Portillo v. Nat'l Freight,*

*Inc.*, 606 F. Supp. 3d 72 (D.N.J. 2022).[1] For the reasons that follow, Plaintiffs' Motion is **GRANTED** and Defendants' Cross-Motion is **DENIED**.

## I.    <u>BACKGROUND</u>[2]

Plaintiffs are truck drivers who entered into Independent Contractor Operating Agreements ("ICOAs") with NFI. (Defs.' SOMF, ECF No. 344-3 at ¶¶ 1–3). The Court's prior opinion set forth in detail the factual background concerning the employment relationship between Plaintiffs and NFI, including the terms of their agreements, the nature of the services performed, and the operational control exerted by NFI. *See Portillo*, 606 F. Supp. 3d at 77–81. Therefore, the Court will set forth herein only the additional factual background relevant to the pending motions.

The ICOAs defined how NFI would compensate Plaintiffs. Pursuant to the ICOAs, Plaintiffs provided delivery services primarily for Trader Joe's and were paid weekly settlement compensation. (Pls.' SOMF, ECF No. 340 at ¶ 2; Defs.' SOMF, ECF No. 344-3 at ¶¶ 1–3); *see also Portillo v. Nat'l Freight, Inc.*, 336 F.R.D. 85, 87–88 (D.N.J. 2020). Specifically, the ICOAs provided that NFI would pay Plaintiffs a flat per-mile rate. (2009 ICOA Exhibit A, ECF No. 143-11 at ¶ 1; 2017 ICOA Attachment A, ECF No. 190-15 at 22, ¶ 1); *see also Portillo*, 606 F. Supp.

---

[1] This case has since been reassigned to the undersigned.

[2] The parties submitted statements of material facts and corresponding responses in accordance with Local Civil Rule 56.1. *See* Plaintiffs' Statement of Undisputed Material Facts in Support of Plaintiffs' Motion for Partial Summary Judgment Regarding the Damages Available under the NJWPL, ("Pls.' SOMF") (ECF No. 340); Defendants' Response to Plaintiffs' Statement of Undisputed Material Facts in Support of Plaintiffs' Motion for Partial Summary Judgment Regarding Damages Available under the NJWPL ("Defs.' Resp. to Pls.' SOMF") (ECF No. 344-2); Defendants' Counterstatement of Undisputed Material Facts Regarding Damages, ("Defs.' SOMF") (ECF No. 344-3). The categories and nature of deductions made by NFI—such as for fuel, insurance, escrow, and communication equipment—are not in dispute. Rather, the parties' disagreement centers on the legal significance of the deductions under the NJWPL; specifically, whether they constitute deductions from wages and how damages should be calculated. Thus, this matter is appropriate for resolution on summary judgment.

3d at 78. From this weekly settlement compensation, NFI made a wide range of deductions, including:

- Fuel purchases, often through NFI-facilitated bulk or card programs, (Defs.' SOMF, ECF No. 344-3 at ¶ 17; 2011 ICOA Attachment B, ECF No. 190-14 at 14 (noting that "Bulk-Fueling Facilities" belonged to NFI)).

- Lease and rental payments for tractors and trailers, (2011 ICOA, ECF No. 143-5 at 2, ¶ 1; 2017 ICOA, ECF No. 190-15 at 3, ¶ 1).

- Insurance premiums, including for occupational accident coverage, non-trucking liability, and physical damage, (Defs.' SOMF, ECF No. 344-3 at ¶ 14; 2017 ICOA Attachment C, ECF No. 190-15 at 30–33, ¶ 2).

- Communication equipment costs, (2011 ICOA, ECF No. 143-5 at 6, ¶ 8(g); 2017 ICOA Attachment E, ECF No. 190-15 at 10, ¶ 8(g)).

- Escrow withholdings for vehicle maintenance and contract compliance, (Defs.' SOMF, ECF No. 344-3 at ¶¶ 11–13; 2009 ICOA, ECF No. 190-13 at 4, ¶ 5(O); 2017 ICOA, ECF No. 190-15 at 17, ¶ 19).

- Tire, repair, and maintenance expenses, processed through NFI's preferred vendors, (2011 ICOA Attachment B, ECF No. 190-14 at 14–15, ¶ 1; 2017 ICOA Attachment B, ECF No. 190-15 at 26–28, ¶ 2).

- Base plate and permit fees, deducted on a weekly or periodic basis, (2009 ICOA, ECF No. 190-13 at 4, ¶ 5(D); 2011 ICOA, ECF No. 190-14 at 5, ¶ 8(f); 2017 ICOA, ECF No. 190-15 at 10, ¶ 8(f)).

These are generalized categories of deductions. The total amount of deductions taken from class members' compensation is itemized and calculated in Exhibit A to Plaintiffs' motion. *See* (Ex. A,

Pls.' Br., ECF No. 339-1). Plaintiffs contend that the aggregate total of such deductions exceeds $10 million over the class period. (*Id.*). According to Plaintiffs, all of these deductions were unlawfully taken from compensation that, by law, constituted wages under the NJWPL now that the Court has determined that the drivers are properly classified as employees. (Pls.' Br., ECF No. 339 at *6–9; Pls.' Reply Br., ECF No. 341 at *3–5).

The Court's June 9, 2022 ruling decided the threshold question of whether Plaintiffs were misclassified as independent contractors. *See Portillo*, 606 F. Supp. 3d at 106. With this issue having resolved in Plaintiffs' favor, the Court now turns to the distinct and subsequent question concerning how to properly measure damages under the NJWPL. Plaintiffs argue that damages for Defendants' unlawful misclassification should be calculated based on the total value of the deductions unlawfully taken from their compensation in violation of the NJWPL. (Pls.' Br., ECF No. 339 at *8–9). Defendants disagree and instead argue that Plaintiffs must show damages that reflect actual economic harm, using a "but-for" model comparing what Plaintiffs earned as independent contractors to what they would have earned had they been properly classified as employees. (Defs.' Opp'n Br., ECF No. 344-1 at *17–22). Defendants further argue that the deductions were not taken from "wages" as defined by N.J.S.A. § 34:11-4.1 and, as such, the corresponding amounts were not unlawfully withheld or diverted. (*Id*. at *11–15).

No reported New Jersey decision has directly addressed whether employers may offset liability for unlawful deductions under the NJWPL based on a comparative earnings model as urged by Defendants. Thus, whether the NJWPL contemplates requiring a plaintiff to show damages by comparing the difference between what independent contractors actually earned and what they would have earned had they been properly classified as employees appears to present a novel question of statutory interpretation yet to be resolved. Considering the NJWPL's plain

language and its protective and remedial purposes, and the relevant case law, the Court resolves this question in favor of Plaintiffs. Specifically, the Court holds that upon a finding of misclassification, the Court must determine the total amount of wages, and then examine each deduction taken therefrom to ascertain whether the employer has met its burden of showing the deduction was authorized under N.J.S.A. § 34:11-4.4. This approach yields the proper measure of damages by calculating the sum of unlawful deductions without resorting to any "but for" comparator model or hypothetical earnings analysis.

## II.    <u>PROCEDURAL HISTORY</u>

Plaintiffs filed this action on June 22, 2015, in the Superior Court of New Jersey. (ECF No. 1). Defendants removed the case to this Court on November 5, 2015. (*Id*.). The Court maintains subject matter jurisdiction over this matter pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1453. *Portillo v. Nat'l Freight, Inc.*, No. 15-7908, 2020 WL 3542335, at *2 (D.N.J. June 30, 2020). As required by CAFA, the certified class in this case consists of at least 100 class members, the citizenship of at least one of which being diverse from that of at least one of the Defendants. (Am. Compl., ECF No. 102 at ¶ 16). The CAFA amount-in-controversy requirement is also met here. (*Id*.).

On July 1, 2020, the Court certified a Rule 23 class of truck drivers who contracted with NFI and performed deliveries for Trader Joe's stores while operating under agreements containing New Jersey choice-of-law provisions. (ECF Nos. 170, 171). On June 9, 2022, the Court granted Plaintiffs' Motion for Partial Summary Judgment as to misclassification, holding that class

member drivers were employees under the NJWPL, not independent contractors. *See Portillo*, 606 F. Supp. 3d at 99, 106.[3]

### III.    LEGAL STANDARDS

Summary judgment is appropriate where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable factfinder could return a verdict for the non-moving party, and a fact is "material" if it could affect the outcome of the suit under governing law. *See Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)).

The party moving for summary judgment has the initial burden of showing the basis for its motion and identifying evidence that demonstrates the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met that burden, the non-moving party must present specific facts demonstrating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). The Court views the facts and draws all reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

As a federal court sitting in diversity, this Court is "required to apply the substantive law of the state whose laws govern the action[.]" *Robertson v. Allied Signal*, 914 F.2d 360, 378 (3d

---

[3]  On February 7, 2023, the Court denied Defendants' Motion Seeking Decertification of the Class on grounds that damages are not calculable on a class-wide basis. (ECF Nos. 318, 319). On April 6, 2023, the Court denied without prejudice Plaintiffs' Motion to Strike Defendants' Expert Witness, Dr. Robert B. Speakman, Jr., and Defendants' Cross-Motion to Strike Plaintiffs' Rebuttal Expert Report. (ECF Nos. 333, 334). The Court reasoned that because each of these motions implicated threshold and novel questions of law concerning the proper measure of damages under the NJWPL, these issues were more appropriately decided in the context of fully briefed motions for summary judgment. (ECF No. 333 at 5–7).

Cir. 1990). "In the absence of guidance from a state's highest court, a district court analyzing state law must look to decisions of state intermediate appellate courts, of federal courts interpreting that state's law, and of other state supreme courts that have addressed the issue," as well as to "analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would determine the issue at hand." *Norfolk S. Ry. Co. v. Basell USA Inc.*, 512 F.3d 86, 92 (3d Cir. 2008) (internal quotations omitted) (quoting *Koppers Co., Inc. v. Aetna Cas. & Sur. Co.*, 98 F.3d 1440, 1445 (3d Cir. 1996)); *see also Zydus Worldwide DMCC v. Teva API Inc.*, 461 F. Supp. 3d 119, 133 (D.N.J. 2020).

## IV.    **DISCUSSION**

### A.  **Plaintiffs' Damages are the Total Amount of Unlawful Deductions Taken**

Defendants urge the Court to adopt an economic comparison model under which damages are calculated by comparing what Plaintiffs earned as independent contractors to what they would have earned as employees. (Defs.' Opp'n Br., ECF No. 344-1 at *17–22). Defendants submit expert testimony purporting to show that the class, on average, earned more as independent contractors than they would have as employees. (*Id*. at 19–20). Thus, Defendants argue that Plaintiffs suffered no economic harm from their misclassification and that any award of damages would constitute an unjustified windfall. (*Id*. at 15–16). This argument fundamentally misapprehends the structure and purpose of the NJWPL. Beyond the plain language of the statute, there is also persuasive authority and policy reasons for rejecting Defendants' proposed methodology for calculating damages.

The NJWPL provides that "[n]o employer may withhold or divert any portion of an employee's wages unless: (a) The employer is required or empowered to do so by New Jersey or United States law; or" such deduction falls within one of the eleven exemptions specified in

N.J.S.A. § 34:11-4.4. *See also Sands v. Bd. of Rev., Dep't of Lab. & Workforce Dev.*, No. 0413-22, 2024 WL 1477415, at *3 (N.J. App. Div. Apr. 5, 2024). Under N.J.S.A. § 34:11-4.1, "wages" are defined as:

> the direct monetary compensation for labor or services rendered by an employee, where the amount is determined on a time, task, piece, or commission basis excluding any form of supplementary incentives and bonuses which are calculated independently of regular wages and paid in addition thereto.

N.J.S.A. § 34:11-4.7 permits an employee to bring an action to recover wages due, and N.J.S.A. § 34:11-4.10(c) further authorizes recovery of "the full amount of any wages due" as well as liquidated damages of up to 200% and reasonable attorneys' fees and costs.

Notably, the statute is silent as to any requirement that the employee demonstrate actual net economic harm beyond the fact of misclassification and an unauthorized deduction. Thus, the plain language of the statute supports Plaintiffs' contention that damages are to be measured by the total value of the amounts unlawfully withheld.

At least one court in this district has assumed, without delving into the issue, that the proper measure of damages in a misclassification case is the total of all unlawful deductions. Specifically, in *Carrow v. FedEx Ground Package Systems, Inc*., the court seemingly endorsed a similar measure of damages, though it did not ultimately reach the question. No. 16-3026, 2019 WL 7184548, *11 (D.N.J. Dec. 26, 2019). In granting the plaintiff truck drivers' renewed motion for class certification and considering the required Rule 23 factors, the court noted that if the plaintiffs were misclassified as employees and the settlement payments were wages, "then the damages calculation would be easy—damages would be the full amount of any improper deductions [d]efendant took from the settlement payments." *Id*.

In addition, Defendants' proposal is contrary to public policy. Adopting a model that conditions liability on whether an employee can prove net economic loss or permits an employer to immunize itself from liability for misclassification and unlawful deductions by a *post-hoc* showing that the worker's overall earnings exceeded a hypothetical benchmark would nullify the statute's protections and render its enforcement effectively discretionary—contrary to the clear remedial purpose of the NJWPL. Further, the statute provides no exception for deductions made in exchange for goods or services allegedly received by the employee. Defendants' attempt to justify deductions on the basis that Plaintiffs obtained fuel, insurance, or other benefits in return has no support within the statute's text.

The NJWPL requires not only that a deduction be for a permissible purpose, but also that it be specifically authorized in writing by the employee. *See* N.J.S.A. § 34:11-4.4. Absent authorization, allowing potential value received to justify the deduction would effectively rewrite the statute to give employers an unwarranted escape from liability for unlawful misclassification. There is simply nothing in the text or history of the NJWPL to suggest this is what the legislature intended. And other courts applying the NJWPL have implicitly rejected Defendants' theory. *See, e.g.*, *Punter v. Jasmin Intern. Corp.*, No. 12-7828, 2014 WL 4854446, at *2, *6 (D.N.J. Sept. 30, 2014) (adopting R&R finding that diversions into escrow and onto "MS Card" for potential damage to vehicles, gas, and tolls—services the drivers arguably benefited from— were nonetheless unlawful  and including deductions in their entirety in damages award); *Morales v. V.M. Trucking, LLC*, No. 2898-16, 2019 WL 2932649, at *9 (N.J. App. Div. July 9, 2019) (finding that deductions for fuel and insurance were nonetheless unlawful). In short, whether Plaintiffs received something of value in return for the deductions does not transform them into lawful

withholdings, and the NJWPL mandates full repayment for all unlawful deductions. *See* N.J.S.A. § 34:11-4.10.

Second, accepting Defendants' argument would allow employers to violate the NJWPL with impunity, so long as they could show that workers were not economically disadvantaged. The NJWPL was enacted to ensure that employees receive the full amount of their earned wages and to prevent employers from unilaterally imposing financial obligations on employees absent statutory or written authorization. *See* N.J.S.A. § 34:11-4.4. The New Jersey Supreme Court has repeatedly emphasized the protective purpose of the state's wage laws. *See, e.g., Hargrove v. Sleepy's, LLC*, 106 A.3d 449, 458–59 (N.J. 2015) (recognizing the NJWPL and related statutes are remedial and must be interpreted broadly to effectuate their protective goals); *see also Rosen v. Smith Barney, Inc*., 925 A.2d 32, 37 (N.J. App. Div. 2007) (underscoring the NJWPL's aim of safeguarding the right of employees to receive their earned wages in full and without improper reduction). Allowing employers to defend unlawful deductions on the basis of some economic benefit would undermine the statute's deterrent function and actually encourage employers to not comply with wage laws instead of promoting careful and deliberate decisions as to proper classifications.

For all these reasons, the Court rejects Defendants' argument that the NJWPL requires some economic comparison model to determine damages.

### B. Plaintiffs' Gross Weekly Settlement Amounts Are The Wages From Which The Court Should Consider Whether Any Deductions Were Lawful

Having determined the methodology for computing damages, the Court must next determine the amount of wages. Here, the Court finds that the total gross amounts reflected in Plaintiffs' weekly settlement statements, from which NFI deducted various charges labeled as

equipment costs, insurance, fuel, maintenance, and other operational expenses, constitute "wages" within the meaning of N.J.S.A. § 34:11-4.1(c).

The Court rejects Defendants' argument that not all of the gross settlement pay should be deemed "wages" because the ICOAs define the compensation as encompassing both payment for labor and reimbursement for equipment and business-related expenses.[4] (Defs.' Opp'n Br., ECF No. 344-1 at *11–15). Specifically, the ICOAs[5] state that "gross compensation shall constitute the total compensation for the use of the Equipment and for everything furnished, provided, done by, or required of CONTRACTOR in connection with this Agreement," and further provide that "at each weekly settlement, CARRIER shall pay CONTRACTOR any compensation due under Attachment A—less any charge-backs and other deductions. . . . " (Defs.' SOMF, ECF No. 344-3 at ¶ 3). But while NFI argues that the ICOAs allocate the gross settlement compensation between labor and non-labor components, nowhere in the ICOA or any of its schedules does the ICOA identify a standard for apportioning or calculating the amounts between those components. Rather, NFI simply claims that "wages" is only that amount of compensation which is left after all of the deductions are made. (Defs.' Opp'n Br., ECF No. 344-1 at *14). This reasoning is, of course, illogical and leads to the evasion of the entire statutory scheme of the NJWPL. And such

---

[4] As discussed, *infra*, courts have repeatedly held that private agreements cannot override the express statutory protections conferred by the NJWPL. Consequently, even if an employer drafts agreements to re-cast certain compensation under the banner of "reimbursements" or "non-labor," that label is not dispositive under the statute. Indeed, New Jersey courts typically look past contractual terms to the reality of the relationship and the nature of the compensation. *See, e.g., Provident Inst. for Sav. in Jersey City v. Div. of Employment Sec.*, 161 A.2d 497, 591 (N.J. 1960) (explaining in unemployment compensation case that "no matter what the relationship may be called or how careful the parties to it may be in their attempt to create the impression" that an employment relationship did not exist, the court must "look through the form to the substance.").

[5] Any variations in the terms of the ICOAs are immaterial to the ultimate issue before the Court as to the methodology for calculating damages.

contractual language cannot override the statutory definition of wages or the remedial purpose of the NJWPL. The NJWPL does not authorize employers to redefine or apportion employee compensation in a way that permits deductions otherwise expressly prohibited by the statute. As the Third Circuit confirmed in *Hargrove v. Sleepy's LLC*, arguments that delivery drivers were paid "lump-sum payments" rather than "wages" is unavailing once the drivers are found to be employees. No. 22-2040, 2023 WL 3943738, at *3 (3d Cir. 2023). The Court noted that, "[o]f course, if the drivers are Sleepy's employees, then it may be problematic that Sleepy's has apparently not paid them any wages[,]" and rejected the employer's argument that the compensation structure was consistent with the protections of the wage statutes. *Id*. at *4 n.4.

In *Johnson v. Diakon Logistics*, the court considered a similar compensation structure involving delivery drivers paid gross amounts from which expenses such as insurance and vehicle costs were deducted. No. 16-6776, 2025 WL 964939, at *9 (N.D. Ill. Mar. 31, 2025). Applying the Illinois' statute, which defines "wages" in terms materially similar to the NJWPL, the court held that the entirety of the gross payments constituted wages. *Id*. at *9. The court found that the employer could not deduct business-related expenses from drivers' compensation merely because the service agreement characterized those amounts as "non-wage" components. *Id*.

Defendants cite *Green v. RXO Last Mile, Inc.*, in which the court declined to award damages under Connecticut's wage statute where deductions were built into a service-based compensation formula. No. 19-1896, 2023 WL 5486250 (D. Conn. Aug. 24, 2023), *aff'd*, No. 23-1239, 2024 WL 4315032 (2d Cir. Sept. 27, 2024). But *Green* is readily distinguishable and does not support Defendants' position here because Connecticut allows parties to define what constitutes "wages" contractually. *Id*. at *7 ("[E]mployees and independent contractors alike . . . can enter into a contractual agreement that defines wages to include deductions for certain items.").

That view is patently inconsistent with New Jersey's framework, which specifically defines wages by statute and prohibits unauthorized deductions.[6]

In sum, that some portion of the gross payment was supposedly contractually labelled to cover truck-related expenses does not transform it into non-wages for purposes of the NJWPL. To allow employers to contractually designate a portion of an employee's compensation as something other than wages would allow circumvention of the NJWPL. It is the fact of payment made—not its contractual label—that controls. Accordingly, the full gross compensation reflected on Plaintiffs' settlement statements constitutes "wages" under the NJWPL, and any deductions from those amounts must be analyzed to determine if it was in compliance with N.J.S.A. § 34:11-4.4. This specific issue has not yet been briefed by the parties and, if necessary, will be the subject of additional motion practice.

### C. The ICOA Cannot Constitute Authorization for Deductions From Wages as Doing so Would Nullify the NJPWL

Defendants attempt to rely on the ICOAs to justify the wage deductions at issue, arguing that the deductions were taken in accordance with those agreements. (Defs.' Opp'n Br., ECF No. 344-1 at 11–15). This argument fails for multiple reasons. First, the ICOAs are not valid wage deduction authorizations under the NJWPL. The agreements were premised on the misclassification of Plaintiffs as independent contractors, not employees. But once misclassification is determined, the court necessarily treats the workers as employees. As such, an

---

[6] Defendants rely heavily on *Wells v. FedEx Ground Package Systems, Inc.*, which adopted the benefit of the bargain theory. 979 F. Supp. 2d 1006 (E.D. Mo. 2013). However, that decision was later reversed. *See Gray v. FedEx Ground Package Sys., Inc.*, 799 F.3d 995, 1003 (8th Cir. 2015) (reversing grant of summary judgment and finding that a genuine dispute remained as to the question of agency under Missouri law where the evidence, particularly as to the control factor, was mixed). And more importantly, the claim analyzed by the *Wells* court was one for fraudulent misrepresentation, a tort requiring a plaintiff show damages were proximately caused. Here, Plaintiffs claims are based upon the NJWPL.

agreement that was intended to apply only to independent contractors cannot be used to establish compliance with a statute that protects employees. The ICOAs thus lack a valid meeting of the minds regarding the parties' employment status, and their terms are not dispositive under N.J.S.A. § 34:11-4.4. *See DiValerio v. Best Care Lab'y, LLC*, No. 20-17268, 2021 WL 4704963, at *9 (D.N.J. Oct. 8, 2021) ("Under New Jersey law, '[a]n enforceable agreement requires mutual assent, a meeting of the minds based on a common understanding of the contract terms.'") (citing *Bacon v. Avis Budget Group, Inc.*, 959 F.3d 590, 600 (3d Cir. 2020)); *Cont'l Warranty, Inc. v. Warner*, 108 F. Supp. 3d 250, 254 (D. Del. 2015) (no meeting of the minds where there was disagreement as to whether plaintiff was employee or independent contractor).

Second, even assuming arguendo that the ICOAs remained somehow valid after a finding of misclassification, the Court rejects Defendants' efforts to invoke an unlawful or otherwise defective agreement to evade the NJWPL's mandates. As other courts have noted in the context of collective bargaining agreements, "[t]he right to be paid the wages earned, without deductions for unauthorized purposes, exists independently of [any agreement] and cannot be eviscerated" by contract. *Snyder v. Dietz & Watson, Inc.*, 837 F. Supp. 2d 428, 448 (D.N.J. 2011); *see also Male v. Acme Markets, Inc.*, 264 A.2d 245, 246 (N.J. App. Div. 1970) ("For example, if the union agreement authorized a deduction of shortages from wages, such a provision would contravene the law, would violate public policy and be invalid."). This Court similarly finds that the deductions here were not based on lawful written authorizations but on the uniform and automatic application of the ICOAs, which was void both for lack of mutual assent and for illegality stemming from the

unlawful misclassification upon which it was based.[7] Accordingly, Defendants cannot rely on the ICOAs to mitigate their damages.

## **CONCLUSION**

In summary, having already made a determination of misclassification, the Court now determines as a general rule that damages shall be measured by first determining wages and then analyzing each deduction taken therefrom to determine whether it was lawful under the NJWPL. Here, the Court finds that the weekly settlement amounts paid to Plaintiffs are wages and that Plaintiffs are entitled to damages equal to the full amount of all deductions taken therefrom determined to be unlawful. The statute does not require Plaintiffs to establish damages based on economic net loss or hypothetical comparisons. Nor does it authorize offset based on retaliatory contract provisions. Thus, the only remaining questions are what deductions were taken, and in what amounts, and whether they were lawful under the NJWPL.[8]

Accordingly, Plaintiffs' Motion for Partial Summary Judgment, (ECF No. 338), is **GRANTED**; Defendants' Cross-Motion for Summary Judgment, (ECF No. 344), is **DENIED**;

---

[7] Additionally, the Court rejects Defendants' reliance on a clause appearing in some ICOAs—Paragraph 18(f)—providing that if a contractor is later determined to be an employee, they must repay all prior compensation in excess of the minimum wage, thus guaranteeing the misclassified contractor nothing more than payment of the minimum wage for all hours worked. *See* (2017 ICOA, ECF No. 190-15, at 16, ¶ 18(f)). The Courts finds Paragraph 18(f) to be void because (1) it is undeniably retaliatory in nature and as such, runs afoul of the NJWPL's anti-retaliation provision, N.J.S.A. § 34:11-4.10(a), which prohibits any adverse action, including changes in terms and conditions of employment, taken in retaliation for an employee's assertion of rights under the Act and (2) courts have held that employers may not enforce contractual provisions that seek to shift liability for wage violations onto employees. *See Fernandez v. Kinray, Inc.*, No. 13-4938, 2014 WL 12778829, at *6 (E.D.N.Y. Feb. 5, 2014) (noting that "employers found liable under the FLSA cannot rely on contractual indemnification provisions to shift their losses to their employees").

[8] Upon giving a tentative decision after argument, the Court directed the parties to meet and confer as to these remaining issues and determine what if any legal and/or factual disputes remain so as to determine how this matter shall now proceed.

and Plaintiffs' Motion to Strike the Report of NFI's Expert Witness, Dr. Robert B Speakman, Jr.,

(ECF No. 269), is **DENIED** as moot.

CHRISTINE P. O'HEARN
United States District Judge