# EXHIBIT 1

## JOINT STIPULATION OF CLASS SETTLEMENT AND RELEASE

This Joint Stipulation of Class Settlement and Release (the "Agreement") is made and entered into by John Portillo, Rafael Suarez, Martin Duran, German Bencosme, Edin Vargas, Luis Hernandez, Josue Paz, and Alvaro Castaneda ("Named Plaintiffs"), individually and on behalf of Class Members as defined in this Agreement (together with Named Plaintiffs, "Plaintiffs"), and National Freight, Inc. and NFI Interactive Logistics, LLC, improperly named as NFI Interactive Logistics, Inc. ("NFI") (together, Plaintiffs and NFI are referred to herein as the "Parties").

WHEREAS, on June 22, 2015, Named Plaintiffs filed a putative class action in the Superior Court of New Jersey, alleging they were misclassified as independent contractors and asserting claims against NFI for wages under Massachusetts law (the "Action");

WHEREAS, on November 5, 2015, NFI removed the Action to the United States District Court for the District of New Jersey (the "Court"), Case No. 15-cv-07908;

WHEREAS, on August 13, 2018, Named Plaintiffs filed a First Amended Class Action Complaint and Jury Demand in the Action dismissing their claims under Massachusetts law in favor of asserting claims against NFI for wages under the New Jersey Wage Payment Law ("NJWPL");

WHEREAS, on June 30, 2020, the Court entered an order granting Plaintiffs' Motion for Class Certification and, via an amended opinion filed July 1, 2020, certified a class pursuant to Fed. R. Civ. P. 23(b)(3) consisting of: "All individuals who: (1) entered into, either personally or through a corporate entity, an independent contractor agreement with NFI that had a New Jersey choice-of-law clause; and (2) drove a vehicle on a full-time basis to perform deliveries for Trader Joe's stores anywhere on the East Coast on behalf of NFI at any time since June 22, 2009," where "'Full-time basis' means having delivered at least 80% of the loads assigned to the contractor;"

WHEREAS, on November 12, 2020, counsel for Named Plaintiffs sent Rule 23 notice to individuals in the putative class (ECF 195);

WHEREAS, following a Court order clarifying which owner operators fell within the class definition (ECF 234), on August 24, 2021, counsel for Named Plaintiffs sent notice to additional putative class members identified on a supplemental class list (ECF 239);

WHEREAS, one putative class member requested to be excluded from the class (ECF 239);

WHEREAS, on June 9, 2022, the Court entered an order granting summary judgment in Plaintiffs' favor on whether they were misclassified as independent contractors and granting summary judgment in NFI's favor on the claims of 20 class members who signed release agreements with NFI (ECF 300);

WHEREAS, on May 2, 2025, the Court granted summary judgment in Plaintiffs' favor on the issue of how to determine damages in the case (ECF 373);

1

WHEREAS, on May 28, 2025, the Court scheduled a settlement conference for the case (ECF 379);

WHEREAS, on July 11, 2025, the Parties and their counsel appeared for an in-person settlement conference before Magistrate Judge Elizabeth A. Pascal, during which conference the Parties reached a settlement of the Action in principle; and

WHEREAS, NFI maintains it properly treated and paid Plaintiffs as independent contractors and owes Plaintiffs nothing, contests any and all findings of liability, disputes that Named Plaintiffs may properly maintain the Action as a class action, contents all findings related to the proper method of calculating damages, and maintains it has meritorious defenses and could have prevailed in the Action on appeal, but recognizes the advantages of resolving the Action at this point and foregoing further litigation costs and expenses.

NOW, THEREFORE, in consideration of the foregoing and the promises contained herein, as well as the good and valuable consideration provided for herein, it is hereby stipulated and agreed to by the Parties that, subject to the approval of the Court, the Action shall be finally and fully settled, compromised, and dismissed on the merits and with prejudice, on the terms and conditions set forth below.

1. **Definitions.**

1.1    "Administration Costs" means the costs of printing, distributing, and tracking the Notice of Class Settlement, distributing and tracking settlement payments to Participating Class Members, and setting up and monitoring the Qualified Settlement Fund and performing related tax reporting and other support.

1.2    "Class" means "All individuals who: (1) entered into, either personally or through a corporate entity, an independent contractor agreement with NFI that had a New Jersey choice-of-law clause; and (2) drove a vehicle on a full-time basis to perform deliveries for Trader Joe's stores anywhere on the East Coast on behalf of NFI at any time since June 22, 2009," where "'Full-time basis' means having delivered at least 80% of the loads offered to the contractor," and who received notice of the Action and the Court's opinion and order certifying the Class.

1.3    "Class Counsel" means Plaintiffs' counsel Lichten & Liss-Riordan, P.C.

1.4    "Defense Counsel" means NFI's counsel Reed Smith LLP.

1.5    "Effective Date" means the date after which the Final Approval Order will be final and no longer subject to appeal. Specifically:

a.    If no appeal is taken, the date on which the time to appeal (including any possible extension of time to appeal) has expired (sixty-one days from the entry of the Final Approval Order absent a longer extension), or

b.    If an appeal is taken, the date on which all appeals, including petitions for rehearing or re-argument, petitions for rehearing en banc and petitions for certiorari or any other form of review, have been finally disposed of, such that the time to appeal (including any potential extension of time) has expired.

1.6    "Fee Award" means the award of attorneys' fees and incurred litigation costs (which are separate from the costs incurred for settlement administration) that the Court authorizes to be paid to Class Counsel for the services rendered to Class Members in the Action.

1.7    "Final Approval" or "Final Approval Order" means the Court's order fully and finally approving the Settlement and entering judgment on Participating Class Members' claims.

1.8    "Final Approval Hearing" means the hearing to be held by the Court to consider the final approval of the Settlement.

1.9    "Gross Settlement Amount" means the maximum total amount of Five Million Seven Hundred and Fifty Thousand U.S. Dollars and No Cents ($5,750,000.00 U.S.D.) that NFI has agreed to pay to resolve the Action pursuant to the terms of this Agreement, and includes all amounts payable to Class Members, Incentive Award payments to Named Plaintiffs, Class Counsel's Fee Award, and Administration Costs. The Parties agree NFI will not pay any other amount in connection with this Settlement.

1.10    "Incentive Awards" means the payments to the Named Plaintiffs for their efforts in bringing and prosecuting the Action.

1.11    "Net Settlement Amount" means the remainder of the Gross Settlement Amount after any deductions approved by the Court, including deductions for Administration Costs, Fee Awards, and Incentive Awards.

1.12    "Notice of Class Settlement" or "Notice" means the Court-approved document provided to Settlement Class Members to notify them of the Settlement.

1.13    "Participating Class Members" means those Class Members who do not timely submit a valid written requesting to be excluded from the Settlement consistent with the terms of this Agreement.

1.14    "Preliminary Approval" or "Preliminary Approval Order" means the order entered by the Court preliminarily approving the terms and conditions of this Agreement and directing the manner and timing of providing Notice to Class Members.

1.15    "Qualified Settlement Fund" or "QSF" means the account established by the QSF Administrator under Section 468B of the Internal Revenue Code for purposes of administering this settlement. Interest, if any, earned on the QSF shall become part of the Gross Settlement Amount.

3

1.16    "QSF Administrator" means Analytics Consulting LLC or another third-party settlement administrator agreed to by the Parties and approved by the Court for the purposes of administering the Settlement.

1.17    "Released Claims" means those claims described in Section 9 of this Agreement.

1.18    "Released Parties" means National Freight, Inc., NFI Interactive Logistics, LLC, and each of their present and former direct and indirect owners, parents, subsidiaries and affiliates, and each of their present and former officers, directors, employees, partners, shareholders and agents, and any other successors, assigns, or legal representatives.

1.19    "Response Deadline" means the date that is 60 calendar days after Notice is initially sent to Class Members.

1.20    "Request for Exclusion" is a written, signed statement that an individual Class Member has decided to opt out of, and therefore not participate in, the Settlement.

1.21    "Settlement" means the settlement contemplated by and described in this Agreement.

1.22    "Settlement Award" means the portion of the Net Settlement Amount attributable to each Class Member based on the allocation formula described in this Agreement.

1.23    "Settlement Class Members" or "Class Members" means those members of the Class certified pursuant to Fed. R. Civ. P. 23(b)(3) whose claims were not decided by the Court's June 9, 2022 opinion and order granting summary judgment in NFI's favor (ECF 300) and who have not opted out of the Action, who, for purposes of this settlement and Agreement only, the Parties agree are those identified on the list produced at D-032180 and ~~Freddie Arreola.~~Fredy Arriola.

**2.    No Admission of Liability.** This Agreement and all related documents are not and shall not be construed as an admission by NFI or any of the Released Parties of any fault or liability or wrongdoing, or as an admission that a class should be certified for any purpose other than settlement purposes. As set forth above, NFI maintains it properly treated and paid Plaintiffs as independent contractors and owes Plaintiffs nothing, contests any and all findings of liability, disputes that Named Plaintiffs may properly maintain the Action as a class action, contents all findings related to the proper method of calculating damages, and maintains it has meritorious defenses and could have prevailed in the Action on appeal.

**3.    Preliminary Approval Notice and Order.**

3.1    By August 15, 2025, Plaintiffs will file a Motion for Preliminary Approval of the Settlement requesting that the Court: maintain certification of the Class solely for purposes of settlement; approve the proposed form of Notice of Class Settlement and find that the proposed method of disseminating the Notice meets the requirements of due process and is the best

practicable under the circumstances; set a date for Plaintiffs' Motion for Final Approval of the Settlement and approval of the requested Incentive Awards, Fee Award, and Administration Costs; and set a date for the Final Approval Hearing.

3.2     In connection with the Motion for Preliminary Approval, Plaintiffs will submit to the Court the proposed form of Notice attached as Exhibit A, a proposed method of disseminating the Notice, a proposed distribution method for the Settlement Awards, and a proposed Preliminary Approval Order. The proposed Preliminary Approval Order will include the findings required by Fed. R. Civ. P. 23(a), (b)(3), and (e)(2). The Preliminary Approval Motion also will seek the setting of date(s) for individuals to opt out of this Agreement or provide objections to this Agreement, as set forth in Sections 6 and 7 herein, and request a Final Approval Hearing.

3.3     NFI shall have the right to review and comment on the content of the Motion for Preliminary Approval, the proposed Preliminary Approval Order, and the Notice. Class Counsel will provide Defense Counsel with copies of the Motion for Preliminary Approval and proposed Preliminary Approval Order by August 11, 2025. The parties will agree on the form of the preliminary approval papers.

3.4     If the Court denies the Motion for Preliminary Approval, the Parties will work together, diligently and in good faith, to remedy any issue(s) leading to such denial and to seek reconsideration of the ruling or order denying approval and/or Court approval of a renegotiated settlement. If, despite the Parties' efforts, the Court continues to deny the Motion for Preliminary Approval, the Action will resume as if no settlement had been attempted, the Settlement shall become null and void, and the Parties will have no further obligations hereunder, provided, however, that failure to approve the amounts requested for the Incentive Awards, Class Counsel's Fee Award, and/or the Administration Costs will not be considered a failure to approve the Settlement.

## 4.  Settlement Administration.

4.1     The Parties will ask the Court to appoint an agreed upon, qualified settlement administrator for the purpose of establishing and managing the Qualified Settlement Fund and providing related tax reporting and other services.

4.2     Class Counsel shall be responsible for all other aspects of the settlement administration process other than those services the QSF Administrator will provide as outlined above, including: locating Class Members, determining Participating Class Members' Settlement Awards based on NFI's business records, responding to Class Member inquiries, promptly reporting to Defense Counsel the substance of any challenges or disputes raised by Class Members, mailing Notices to Class Members in accordance with the Preliminary Approval Order, distributing Service Awards to Named Plaintiffs, and distributing Settlement Awards to Class Members.

4.3     All Administration Costs, including those incurred by the QSF Administrator and those incurred by Class Counsel, shall be paid from the Gross Settlement Amount.

4.4     The Parties will require the QSF Administrator to indemnify and hold harmless the Parties for and against any claims or liabilities resulting from errors or omissions in its administration of the QSF.

4.5     Class Counsel will indemnify and hold harmless NFI for and against any claims or liabilities resulting from errors or omissions in Class Counsel's administration of the Settlement.

## 5.  Notice to Class Members.

5.1     Within five (5) business days of Preliminary Approval, NFI shall provide to Class Counsel Class Members' last known addresses, email addresses, and telephone numbers.

5.2     Before distributing Notice, Class Counsel shall make reasonable efforts to identify current physical mailing addresses through public and proprietary systems, update them accordingly, and email and physical mail the Notice to each Class Member as set forth herein.

5.3     Within ten (10) business days of Preliminary Approval, Class Counsel shall email and mail the Notice to each Class Member. Class Counsel shall notify Defense Counsel and the QSF Administrator of the date the Notice was mailed on the date of mailing.

5.4     Any Notice returned with a forwarding address shall be promptly re-mailed or resent via email. If no forwarding address is provided, Class Counsel shall promptly attempt to determine a correct address using a skip-trace, or other similar search, and shall re-mail the Notice. In no circumstances shall re-mailing extend the Response Deadline.

5.5     From Preliminary Approval through the date five (5) business days after the Response Deadline, Class Counsel shall provide Defense Counsel a weekly status report informing them of the number of Notices sent via email and mail, the number of Notices returned undeliverable, the number of Notices re-mailed, and the number of timely and valid requests for exclusion or notices of objection received by Class Counsel.

5.6     Notices shall provide the number of weeks NFI's records show a Class Member drove for NFI during the period relevant to the Action, and to the extent any Class Member disputes such number, the Class Member may produce evidence to Class Counsel of the number of weeks they contend they drove for NFI during the period relevant to the Action. Any such evidence must be sent to Class Counsel, postmarked or emailed no fewer than fifteen (15) calendar days before the Response Deadline. Class Counsel will provide Defense Counsel with notice of any such dispute and consult Defense Counsel with respect to the proposed resolution of such dispute, but Class Counsel may decide any such dispute, and their decision shall be final.

## 6.  Objections.

6.1     Class Members who wish to object to the proposed Settlement must file a written objection with the Court by the Response Deadline. The written objection must state the case name and number, state the grounds for the objection with specificity, and be filed on or before the Response Deadline. No Class Member may present an objection at the Final Approval Hearing on grounds not stated in their written objection. An objector may withdraw their objection at any time without Court approval. The Parties may file with the Court written responses to any filed objections no later than the date Plaintiffs file a Motion for Final Approval of the Settlement.

6.2     No Class Member may participate in the Final Approval Hearing unless they have filed a timely objection that complies with all procedures provided for in this Agreement. Class Members who fail to make timely written objections in the manner specified herein shall be deemed to have waived any objections to the Settlement's fairness, reasonableness, and adequacy, and shall be foreclosed from making any objection (whether by appeal or otherwise) to the Settlement.

6.3     A Class Member who submitted a Request for Exclusion cannot object to the Settlement. Any Class Member who submits both a Request for Exclusion and an objection shall be excluded from the settlement and their objections shall be deemed waived.

6.4     Neither the Parties nor their respective counsel, nor anyone on their behalf, will seek, solicit, or otherwise encourage, directly or indirectly, any Class Member to object.

## 7.   Requests for Exclusion.

7.1     Class Members who wish to exclude themselves from the Settlement must mail Class Counsel a written Request for Exclusion. To be valid, a Request for Exclusion must: (1) be mailed to Class Counsel no later than the Response Deadline, (2) contain the Class Member's full name, address, telephone number, email address (to the extent they have an email account) and the last four digits of their Social Security or taxpayer identification number, (3) indicate that the Class Member does not wish to participate in or be bound by the Settlement, and (4) be signed individually by the Class Member. No Request for Exclusion may be made on behalf of a group.

7.2     If a Class Member submits a deficient Request for Exclusion, Class Counsel shall notify the Class Member of the deficiency within five (5) business days of receipt. Class Members who submit a deficient Request for Exclusion shall have ten (10) business days from the date the deficiency notice is sent to cure any deficiencies, at which point the Request for Exclusion will be rejected if not cured.

7.3     Any Class Member who timely submits a valid Request for Exclusion will no longer be a Participating Class Member, will be barred from objecting to the Settlement, and will not receive any payment pursuant to the Settlement.

7.4     Neither the Parties nor their respective counsel, nor anyone on their behalf, will seek, solicit, or otherwise encourage, directly or indirectly, any Class Member to exclude themselves from the Settlement.

## 8.   Final Approval Motion and Hearing.

8.1     No later than fifteen (15) business days before the Final Approval Hearing, Plaintiffs will file a Motion for Final Approval and proposed Final Approval Order with the Court.

8.2     NFI shall have the right to review and comment on the content of the Motion for Final Approval and proposed Final Approval Order. Class Counsel will provide Defense Counsel with copies of the Motion for Final Approval and proposed Final Approval Order no later than five (5) business days before filing. The Parties will agree on the form of the final approval papers.

8.3     Class Counsel shall also be responsible for drafting the application for Incentive Awards, Class Counsel's Fee Awards and the request for approval of Administration Costs, which shall be filed at least ten (10) calendar days before the Response Deadline, and which shall also be heard at the Final Approval Hearing.

8.4     Plaintiffs shall request that the Court schedule a Final Approval Hearing no earlier than thirty-five (35) calendar days after the Response Deadline, to consider final approval of the Settlement and entry of a Final Approval Order: (a) maintaining certification of the Class for settlement purposes, (b) approving the Settlement and Agreement as final, fair, reasonable, adequate and binding on all Named Plaintiffs and Participating Class Members, (c) entering Judgment in accordance with this Agreement; and (d) directing that the Action be dismissed with prejudice and in full and final discharge of any and all Named Plaintiffs' and Participating Class Members' Released Claims, as set forth in Section 9 below.

8.5     If the Court denies the Motion for Final Approval, the Parties will work together, diligently and in good faith, to remedy any issue(s) leading to such denial and to seek reconsideration of the ruling or order denying approval and/or Court approval of a renegotiated settlement. If, despite the Parties' efforts, the Court continues to deny the Motion for Final Approval, the Action will resume as if no settlement had been attempted, the Settlement shall become null and void, and the Parties will have no further obligations hereunder, provided, however, that failure to approve the amounts requested for the Incentive Awards, Class Counsel's Fee Award, and/or the Administration Costs will not be considered a failure to approve the Settlement.

## 9.   Released Claims.

9.1     **Participating Class Member Release**. Upon the Effective Date, all Participating Class Members, on behalf of themselves and any business entities owned by them and through which they contracted with NFI, release and discharge all Released Parties from of all known

and unknown claims, demands, and causes of action, arising at any time through the Effective Date, that were asserted, or that could have been asserted in the Action, arising out of the same factual predicate as the claims asserted in the Action. These claims include, but are not limited to, claims for overtime compensation, straight time and minimum wages, unauthorized deductions of any kind, liquidated damages, penalties, interest, fees/costs, and any other relief whatsoever, including but not limited to claims under any federal, state or local wage and hour laws and regulations, including but not limited to the NJWPL, and any common law claims, contract claims, quasi-contract claims, and any other claims that were asserted or that could have been asserted based on the facts alleged in the Action.

9.2    **Named Plaintiff Release**. In exchange for any Incentive Award, and in addition to the Participating Class Member Release above, upon the Effective Date, Named Plaintiffs release and discharge Released Parties finally, forever and with prejudice, from any causes of action, claims, rights, damages of any nature, penalties, liabilities, expenses, losses, and issues of any kind or nature, whether known or unknown, that Named Plaintiffs have or may have had against the Released Parties that arose before the date on which Named Plaintiffs executed this Agreement ("General Release"). This General Release includes without limitation any claims that were or could have been asserted in the Action, based on the facts alleged, for alleged violations of the NJWPL, as well as any claims for unpaid wages, overtime compensation, liquidated or other damages, retaliation, compensatory damages, unpaid costs, restitution or other compensation or relief arising under applicable wage and hour laws, as well as any claims, whether in law or equity, known or unknown, against Released Parties relating to Named Plaintiffs' employment (or alleged employment or joint employment) or termination of employment, including but not limited to claims arising under the Americans with Disabilities Act, National Labor Relations Act, Equal Pay Act, Employee Retirement Income Security Act of 1974, the Worker Adjustment and Retraining Notification Act and its state counterparts, Title VII of the Civil Rights Act of 1964, the Vocational Rehabilitation Act of 1973, the Civil Rights Act of 1866, 1871, and 1991, including Section 1981 of the Civil Rights Act, the Family and Medical Leave Act, Coronavirus Aid, Relief, and Economic Security Act, and/or any other federal, state, or local law, statute, regulation, constitution, ordinance, and/or public policy, contract, or tort law, or any claim of retaliation under such laws, or any claim of breach of any contract (whether express, oral, written, or implied from any source), or any claim of unjust enrichment, or intentional or negligent infliction of emotional distress.

9.3    Named Plaintiffs acknowledge they may have claims presently unknown based on actions that took place before the date they execute this Agreement and that the release of claims in this Agreement is intended to and will fully, finally, and forever discharge all claims against the Released Parties, whether now asserted or not asserted, known or unknown, suspected or unsuspected, which now exist, or heretofore existed, which if known, might have affected their decision to enter this release. Named Plaintiffs agree that, although they may discover facts in addition to or different from those that are known or believed to be true with respect to their Released Claims, they intend to fully, finally, and forever settle and release any Released Claims, without regard to the subsequent discovery or existence of such additional or different facts.

9

9.4     Participating Class Members, to the fullest extent allowed by law, are prohibited from asserting any claims released by them in this Settlement, and from commencing, joining in, prosecuting, or voluntarily assisting in a lawsuit or adversarial proceeding against the Released Parties, based on claims released by them in this Settlement, including as a class member. Notwithstanding the foregoing, Participating Class Members do not release or waive: (i) claims arising under the Age Discrimination in Employment Act; (ii) any claim they could make for unemployment compensation or workers' compensation benefits; or (iii) any claim or right that cannot be waived as a matter of law under this Agreement and/or the Approval Order. Additionally, nothing prohibits Plaintiffs or the Participating Class members from (1) filing a claim or charge with a federal, state or local administrative agency; (2) reporting, communicating directly with or providing information, including documents, not otherwise protected from disclosure by any applicable law or privilege, to the National Labor Relations Board ("NLRB"), Securities and Exchange Commission ("SEC"), the Occupational Safety and Health Administration ("OSHA"), the Equal Employment Opportunity Commission ("EEOC"), or any other federal, state or local governmental agency or commission regarding possible legal violations, without disclosure to the Defendant, subject to the condition that once this Agreement becomes effective, Plaintiffs and the Participating Class members may not receive a monetary award in connection with any such charge or complaint that is filed on Plaintiffs' or the Participating Class members' behalf with the EEOC or state or local fair employment agency; or (3) testifying through service of a subpoena or other process.

## 10. Settlement Funds and Awards.

10.1     **Gross Settlement Amount.** NFI will pay the Gross Settlement Amount, which shall fully and finally resolve the Action and settle and satisfy the Released Claims. The Gross Settlement Amount is inclusive of all amounts to be paid to Participating Class Members, Class Counsel's Fee Award, Incentive Award payments, and Administration Costs. NFI shall not be required to pay one penny more than the gross total of $5,750,000.00 U.S.D. pursuant to this Agreement. This Settlement is non-reversionary; no amount of the Gross Settlement Amount will revert to NFI. Remaining amounts will be redistributed to Participating Class Members and/or go to a *cy pres* recipient as described in Section 11.3 below.

10.2     **Settlement Payments.** As a condition precedent to any payment of the Gross Settlement Amount, no less than ten (10) business days before the Effective Date, the QSF Administrator and/or Class Counsel shall provide Defense Counsel with complete and executed copies of all IRS and/or government tax forms necessary to process payment of the Gross Settlement Amount. Provided this condition precedent is satisfied, and NFI also receives the requisite wiring instructions from the QSF Administrator no less than ten (10) business days before the Effective Date, NFI shall transfer the Gross Settlement Amount to the QSF in accordance with this Agreement and the Court's Final Approval Order. The QSF Administrator shall distribute the Gross Settlement Amount from the QSF as follows, consistent with the Final Approval Order:

a.        Incentive Awards to Named Plaintiffs. In return for services rendered to the Class Members, Named Plaintiffs Portillo, Duran, Bencosme, Castaneda, Paz, Hernandez, and Vargas will each apply to the Court to receive up to $10,000 as an Incentive Award. Plaintiff Suarez will apply to the Court to receive up to $15,000 as an Incentive Award. The application for Incentive Awards is to be considered separately from the Court's consideration of the fairness, reasonableness, and adequacy of the settlement of the Action. The outcome of the Court's ruling on the application for Incentive Awards will not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Final Approval or for final judgment and dismissal of the Action. Incentive Awards shall be made as payments for liquidated damages, penalties, and/or pre-judgment interest. Incentive Awards shall be reported to the IRS on an IRS Form 1099 to the extent required by law as determined by NFI in its sole discretion.

b.        Class Counsel's Fee Award. Class Counsel will petition the Court for an award of attorneys' fees of no more than one-third (1/3) of the Gross Settlement Amount, and in addition, for reimbursement of their actual litigation costs and expenses, as well as for Administration Costs incurred by Class Counsel in performing their duties under this Agreement. After transferring the Gross Settlement Amount to the QSF, NFI shall have no additional liability for Class Counsel's attorneys' fees and costs. The substance of Class Counsel's Fee Award application is to be considered separately from the Court's consideration of the fairness, reasonableness, and adequacy of the settlement of the Action. The outcome of any proceeding related to Class Counsel's Fee Award application shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Final Approval. Class Counsel's Fee Award shall be treated as payment for class counsel attorneys' fees and costs.

c.        Administration Costs. Administration Costs shall be paid from the Gross Settlement Amount to the QSF Administrator in an amount approved by the Court. The Parties agree to cooperate in the settlement administration process and to make all reasonable efforts to control and minimize the fees and costs incurred in the administration of the settlement.

d.        Participating Class Member Payments. After the deduction of the amounts in Sections 14(a) through (c) above, Settlement Awards shall be made to the Participating Class Members from the Net Settlement Amount as set forth below. Such Settlement Awards shall be made as payments for liquidated damages, penalties, and/or pre-judgment interest and shall be reported to the IRS on an IRS Form 1099 to the extent required by law.

11. **Calculation and Distribution of Settlement Awards.**

11.1    **Settlement Award Eligibility.** All Participating Class Members shall be paid a Settlement Award from the Net Settlement Amount. Any Class Member who fails to submit a timely Request for Exclusion by following the procedures set forth in the Notice shall

11

automatically be deemed a Participating Class Member whose rights and claims with respect to the issues raised in the Action are determined by any order the Court enters granting final approval, and any judgment the Court ultimately enters in this Action. Any such Participating Class Member's rights to pursue any Released Claims will be extinguished.

11.2    **Participating Class Member Settlement Awards.** A Participating Class Member's proportionate share of the Net Settlement Amount will be determined based on the number of weeks the Participating Class Member drove for NFI during the period relevant to the Action. Class Counsel shall electronically transfer or physically mail all Settlement Awards to Participating Class Members ~~and Aggrieved Employees~~ within thirty (30) days after the Effective Date or as soon as reasonably practicable thereafter. Class Counsel shall then provide to Defense Counsel written certification of the date of electronic transfer or physical mailing of checks. Participating Class Members will have ninety (90) calendar days from the date of mailing to cash their Settlement Payments (the "Acceptance Period"). Settlement Payments may thereafter be automatically canceled if not accepted within that time, at which time the right to recover any Settlement Award will be deemed void and of no further force and effect which will not affect or otherwise impact the enforceability of class member's release of all claims. Following the Acceptance Period, thirty days (30) will be permitted for requests for re-issuance of cancelled checks. With thirty (30) days remaining, a reminder will be sent via email and U.S. mail to those who have not yet cashed their Settlement Payments. Class Counsel, in their discretion, may also send additional reminders (by email, U.S. mail, and telephone) during and after the Acceptance period. Regardless of whether they accepted their Settlement Payments, Participating Class Members shall be deemed to have finally and forever released the Released Parties from the Released Claims.

11.3    **Remaining Monies.** If at the conclusion of the Acceptance Period and the 30-day period for check re-issuances, $15,000 or more remains from checks that are returned as undeliverable or are not negotiated, these funds shall be redistributed among Participating Class Members who have timely cashed their checks pro rata. If the amount remaining is less than $15,000, that amount will be considered too small to justify the expense of a redistribution, and the unclaimed funds will be donated to Wreaths Across America as a *cy pres* recipient. If the funds are redistributed among Participating Class Members who have timely cashed their checks pro rata, those individuals will have forty-five (45) days from the date of mailing to cash the checks from the redistribution after which time those checks may be automatically cancelled. Any unclaimed funds remaining after the redistribution will be donated to Wreaths Across America as a *cy pres* recipient.

## 12. Confidentiality / Non-Disclosure / Non-Solication.

12.1    The Parties will keep the terms of this Agreement confidential until Plaintiffs file their Motion for Preliminary Approval as contemplated by Section 3 above.

12.2    Named Plaintiffs, NFI, and counsel for the respective Parties agree not to disclose, publicize or make public statements about this settlement or its terms, provided, however, that the Parties and their counsel may disclose and make public statements about this settlement and its

terms to secure approval of this Settlement, and provided further that this provision does not prevent, impede, or interfere with Named Plaintiffs' rights to: (a) respond to an inquiry, provide testimony to, assist, file a charge with, or otherwise communicate with any federal, state, or local governmental agency, or regulatory authority; (b) make a disclosure or otherwise engage in activity protected under the whistleblower statutes administered by a federal, state, or local governmental agency or regulatory authority regarding a possible violation of law or regulation; (c) seek or receive any monetary award or bounty from any governmental agency or regulatory or law enforcement authority in connection with protected whistleblower activity; (d) respond to valid legal process (including a valid subpoena); or (e) engage in activity protected by the National Labor Relations Act, including the right to participate in Section 7 activity and cooperate with the National Labor Relations Board's investigative process. Class Counsel shall not, and Named Plaintiffs direct Class Counsel not to, publish or advertise the results of the Action or the existence or terms of this Agreement on their web site.

12.3     Notwithstanding the foregoing, nothing herein shall prevent Class Counsel from communicating with members of the Class about the Parties' settlement or the Agreement, and nothing herein shall prevent NFI from communicating with its employees on any subject.

12.4     To the extent consistent with governing professional rules and law, Class Counsel will not solicit or encourage any Settlement Class Member to reject, contest, or opt out of this settlement. Further, to the extent consistent with governing professional rules and law, Class Counsel will not represent, encourage, solicit, or otherwise assist any Settlement Class Member who contests the settlement or attempts to litigate with NFI over the Released Claims. Additionally, to the extent not prohibited by applicable professional rules or law, Class Counsel agrees not to represent, encourage, solicit, or otherwise assist any Settlement Class Member in any future litigation against NFI. Nothing in this Paragraph is intended to prevent or restrain Class Counsel from suggesting to any rejecting, contesting or opting-out Settlement Class Member the option of obtaining separate counsel.

**13. <u>Non-Disparagement.</u>** Named Plaintiffs agree and covenant that they will not at any time make, publish, or communicate to any person or entity or in any public form any maliciously false, defamatory, or disparaging remarks, comments, or statements concerning NFI or its services, its businesses, any of its employees, officers, or directors, or any of its existing or prospective customers or any other associated third parties, now or at any time in the future. This provision does not prevent, impede, or interfere with Named Plaintiffs' rights to: (a) respond to an inquiry, provide testimony to, assist, file a charge with, or otherwise communicate with any federal, state, or local governmental agency, or regulatory authority; (b) make a disclosure or otherwise engage in activity protected under the whistleblower statutes administered by a federal, state, or local governmental agency or regulatory authority regarding a possible violation of law or regulation; (c) seek or receive any monetary award or bounty from any governmental agency or regulatory or law enforcement authority in connection with protected whistleblower activity; (d) respond to valid legal process (including a valid subpoena); or (e) engage in activity protected by the National Labor Relations Act, including the right to participate in Section 7 activity and cooperate with the National Labor Relations Board's investigative process.

**14. <u>Arbitration.</u>** The Parties agree to meet and confer in good faith to resolve any disagreements over the implementation of the terms of this Agreement or any other documents necessary to effectuate the settlement. If such efforts are not successful, the Parties agree to binding arbitration before the American Arbitration Association in Camden, New Jersey, to resolve any disagreements over the implementation of the terms of this Agreement or any other documents necessary to effectuate the settlement. If ordered by that arbitrator, the prevailing Party in any such dispute will be awarded the costs of the arbitration and its attorneys' fees.

**15. <u>Documents and Discovery.</u>** Within sixty (60) days after the Settlement Effective Date, Class Counsel shall take steps necessary to destroy or erase all documents and data produced by NFI to Class Counsel in connection with the Action that is currently in Class Counsel's possession, custody, or control. Class Counsel shall certify to NFI in writing that they have made good faith efforts to comply with their obligations under this provision. Further, Class Counsel may and will keep their own work product and filed briefs and pleadings that may refer to, quote, or incorporate documents and data.

**16. <u>Miscellaneous.</u>**

16.1    **Cooperation Between the Parties; Further Acts.** The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all its terms. Each Party, upon the request of any other Party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

16.2    **NFI's Right to Rescind Settlement.** If five percent (5%) or more of the Settlement Class Members, or a number of Settlement Class Members whose Settlement Awards in the aggregate total 5% or more of the total Net Settlement Amount, file timely and valid requests for exclusion, then NFI will have the right to rescind the settlement and this Agreement, and the settlement and this Agreement, and all actions taken in their furtherance, will be null and void. Class Counsel must notify NFI within three (3) business days of receiving any request for exclusion that triggers this paragraph, and NFI must exercise its right under this paragraph within ten (10) business days of such notice.

16.3    **Inadmissibility of Settlement Agreement.** Except for purposes of settling the Action, or enforcing this Agreement's terms, resolving an alleged breach of this Agreement, or for resolution of tax or other legal issues arising from a payment under this Agreement, neither this Agreement, nor its terms, nor any document, statement, proceeding or conduct related to this Agreement, nor any reports or accounts thereof, shall be construed as, offered or admitted in evidence as, received as, or deemed to be evidence for any purpose adverse to the Parties, including without limitation, evidence of a presumption, concession, indication or admission by any of the Parties of any liability, fault, wrongdoing, omission, or damage.

16.4    **No Assignment.** Class Counsel and Named Plaintiffs, on behalf of the individual Settlement Class Members, represent and warrant that they have not assigned or transferred, or

purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Action, or any related action.

16.5    **Entire Agreement.** This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

16.6    **Binding Effect.** This Agreement shall be binding upon the Parties and, with respect to the Named Plaintiffs and all Participating Class Members, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

16.7    **Computation of Time.** For purposes of this Agreement, if the prescribed period in which to complete any required or permitted action expires on a Saturday, Sunday, or legal holiday (as defined by Fed. R. Civ. P. 6(a)(6)), such period shall be continued to the following business day.

16.8    **Arm's Length Transaction; Materiality of Terms.** The Parties have negotiated all the terms and conditions of this Agreement at arm's length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

16.9    **Captions.** The captions or headings of the Sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

16.10    **Construction.** The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

16.11    **Severability.** If any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful or unenforceable, the remaining portions of this Agreement will remain in full force and effect.

16.12    **Governing Law.** This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New Jersey, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

16.13    **Amendments, Modifications, Waivers to Be in Writing.** No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed

15

by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

16.14   **CAFA Notice.** NFI shall timely provide notice as required by the Class Action Fairness Act ("CAFA"), provide copies of such notice to Class Counsel, and advise the Court of compliance with CAFA notice no later than the deadline for filing the Motion for Final Approval.

16.15   **Agreement Signatures.** This Agreement is valid and binding upon the signatures of NFI's authorized representatives and all Named Plaintiffs. The Parties agree that electronic signature software (such as DocuSign) may be used to sign the Agreement, and that any signatures obtained through such software shall be valid.

16.16   **Counterparts.** The Parties may execute this Agreement in counterparts, including by facsimile or email. All executed counterparts and each of them shall be deemed to be one and the same instrument. All executed copies of this Agreement, and photocopies thereof (including facsimile and/or emailed copies of the signature pages) shall have the same force and effect and shall be as legally binding and enforceable as the original.

16.17   **No Signature Required by Settlement Class Members.** The Named Plaintiffs will execute this Agreement on behalf of all Participating Class Members. The Notice will advise all Settlement Class Members of the binding nature of the release, and such shall have the same force and effect as if the Agreement were executed by each Participating Class Member.

**IN WITNESS WHEREOF,** the Parties and Class Counsel each voluntarily and without coercion cause this Agreement to be signed and entered as of the respective dates written below.

NATIONAL FREIGHT, INC. AND NFI
INTERACTIVE LOGISTICS, LLC:

_____     _____

JOHN PORTILLO
DATED: _____        Title: _____

                                        Dated:_____

_____

RAFAEL SUAREZ
DATED: _____
                                        DEFENSE COUNSEL:

16

_____                _____
MARTIN DURAN                                    James N. Boudreau, Esq.
DATED: _____                  Reed Smith LLP

                                                DATED: _____


_____
GERMAN BENCOSME
DATED: _____



_____
EDIN VARGAS
DATED: _____



_____
LUIS HERNANDEZ
DATED: _____



_____
JOSUE PAZ
DATED: _____



_____
ALVARO CASTANEDA
DATED: _____



CLASS COUNSEL:


_____
Harrold L. Lichten, Esq.
Lichten & Liss-Riordan, P.C.

DATED: _____

17